UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
CROWN THEATRES, L.P.,                    Case No. 3:02 CV 2272 (AVC)

               Plaintiff,

  -against-

MILTON L. DALY, TAYLOR-LEIGH, INC.
JAMES C. CELLA, G.U.S. DEVELOPMENT,
INC., JAMES T. MARTINO, JAMES THOMAS
MARTINO ARCHITECT, P.C.,
RCD HUDSON, LLC, and ANNE DALY

               Defendants.
---------------------------------------------------------------X
JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECT, P.C.

               Third-Party Plaintiffs,

  - against –

B.B. CONSTRUCTION CONSULTANTS,          February 6, 2004
LTD., DAVID CLIFFORD,
and GLENN GARFINKEL,

               Third-Party Defendants
---------------------------------------------------------------X

**DECLARATION OF MARISA LANZA IN SUPPORT OF
DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION TO QUASH
PLAINTIFF CROWN THEATRE'S L.P.'S SUBPOENA SERVED ON
CITIGROUP, OR, IN THE ALTERNATIVE,
<u>FOR A PROTECTIVE ORDER</u>**

Marisa Lanza, pursuant to 28 U.S.C. § 1746, declares as follows:

    1.    I am an associate with Milber Makris Plousadis & Seiden LLP, attorneys for Defendants/Third-Party Plaintiffs James T. Martino and James Thomas Martino Architect, P.C. ("Martino Defendants") in the above-captioned matter.

1

2. This certification is submitted in support of the Martino Defendants' request pursuant to Rule 45(3)(a) of the Federal Rules of Civil Procedure for an Order quashing and dismissing Plaintiff Crown Theatres, L.P.'s subpoena served on Citigroup by its registered agent CT Corporation System, or, in the alternative, for an Order pursuant to Rule 26(c) for an Protective Order limiting the scope of the subpoena to those records the Court finds relevant

### STATEMENT OF FACTS

3. This is an action commenced by Plaintiff Crown Theatres, P.C. ("Crown") on or about December 20, 2002 seeking recovery of damages and other relief on various grounds. The allegations against the Martino Defendants sound in breach of contract and professional malpractice.

4. Plaintiff subsequently filed an Amended Complaint, dated February 19, 2002 asserting an additional cause of action for statutory theft as to defendant Milton Daly. Plaintiff subsequently filed a Second Amended Complaint, dated June 30, 2003 adding Anne Daly as a defendant under the theories of conversion, unjust enrichment and seeking avoidance of actual fraudulent transfer, as well as a cause of action for breach of fiduciary duty as to defendant Milton Daly.

5. Crown's Complaint, Amended Complaint and Second Amended Complaint (collectively referred to as the "Complaint") allege <u>two</u> causes of action (Count VIII and IX) against the Martino Defendants sounding in professional malpractice and breach of contract. For the convenience of the Court, Crown's Second Amended Complaint is attached hereto as Exhibit A.

6. Crown has also set forth in detail the specific allegations as to the Martino Defendants in Crown's answers to interrogatories and in Crown's expert report written by Peter Steffian of Steffian Bradley Architects, dated September 25, 2003. A copy of Crown's Responses to Interrogatories (without exhibits) is annexed hereto as Exhibit B and a copy of Mr. Steffian's report, dated September 25, 2003 is annexed hereto as Exhibit C. In addition, during the most recent telephone conference on September 5, 2004 with Your Honor, Lawrence S. Schaner, Esq., counsel for Crown, clearly identified the claims against the Martino Defendants as professional malpractice.

7. Clearly, there is no dispute that the allegations asserted by Crown against the Martino Defendants relate solely to whether their professional conduct violated the applicable standard of care.

## THE SUBPOENA

8. On or about January 21, 2004, Crown issued a Subpoena to Citigroup by its registered agent CT Corporation System for the Martino Defendants' financial records. The Subpoena was returnable February 3, 2004.

9. The Subpoena seeks the following financial records in connection with the Martino Defendants:

> 1. All documents relating to European American Bank (acquired by Citigroup in 2001) account number 2500017043449, including, without limitation: all periodic, monthly, quarterly or annual statements for the period 1996 to the present; all other evidence of deposits and withdrawals, including all checks, wire transfers and deposit items of $1,000 or more during the same period; all documents pertaining to the opening or closing of the account; and all correspondence or other communications with the account holder.

2. All documents relating to any checking, saving, money market, brokerage or other account in the name of James Thomas Martino, address believed to be 75 Nassau Avenue, Manhasset, NY, for the period January 1, 1996 to the present, including, without limitation: all periodic, monthly, quarterly or annual statement; all other evidence of deposits and withdrawals, including all checks, wire transfers and deposit items of $1,000 or more during the same period; all documents pertaining to the opening or the closing of any account; and all correspondence or other communications with the account holder.

3. All documents relating to any checking, saving, money market, brokerage or other account in the name of James Thomas Martino, Architect, P.C. address believed to be 14 Vanderventer Avenue, Port Washington, NY, 11050, for the period January 1, 1996 to the present, including, without limitation: all periodic, monthly, quarterly or annual statement; all other evidence of deposits and withdrawals, including all checks, wire transfers and deposit items of $1,000 or more during the same period; all documents pertaining to the opening or the closing of any account; and all correspondence or other communications with the account holder.

4. All letters, memoranda, notes, correspondence or other communication to, from or relating to James Thomas Martino or James Thomas Martino, Architect, P.C.

(hereinafter referred to as the "Subpoena") Annexed hereto as Exhibit D is a copy of the Subpoena with the affidavit of service and the cover letter accompanying the subpoena, dated January 30, 2004.

10. The Subpoena was served on Citigroup through its registered agent CT Corporation System on January 23, 2004. *See* Affidavit of Service annexed as part of Exhibit D.

11. Our office did not receive notice of Subpoena until one week later on Friday, January 30, 2004 at 4:08 p.m. (EST) via facsimile. <u>See</u> cover letter annexed as part of Exhibit D.

12. Our office immediately forwarded Plaintiff's counsel a letter requesting that the subpoena be withdrawn or adjourned as it did not provide the statutory notice set forth in Connecticut General Statute §36a-43, which governs the disclosure of financial records. Conn. Gen. Stat. §36a-43 provides that any subpoena served on a financial institution seeking the disclosure of financial records must be served on the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed. Annexed hereto as Exhibit E is a copy of February 2, 2004 letter.

13. Due to the inadequacy of the notice, Crown consented to an adjournment of the return date of the subpoena until February 10, 2004, to permit the Martino Defendants time to address the propriety of the subpoena. Annexed hereto as Exhibit F is a copy of Crown's February 2, 2004 letter in response.

**THE SUBPOENA SHOULD BE QUASHED AND DISMISSED, OR, IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE ISSUED LIMITING <u>THE SCOPE OF THE SUBPOENA.</u>**

14. As set forth in greater detail in the accompanying Memorandum of Law, the Subpoena should be quashed and dismissed on the following grounds:

    (1)    the subpoena is overbroad and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence; and

    (2)    the subpoena seeks the disclosure of privileged and protected documents that are not germane to the within litigation.

15. Rule 45 which authorizes the issuance and service of subpoena, provides that once any objection is made:

> The party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.

Fed. R. Civ. Proc. 45(c)(2)(B).

16. The Martino Defendants have set forth sufficient cause in its accompanying Memorandum of Law establishing that the subpoena is ambiguous, overbroad, irrelevant, an invasion of personal privacy rights and in the nature of post-judgment discovery. Accordingly, the Subpoena should be dismissed. In the alternative, if the Court does find some relevancy, the Court should issue a protective order limiting the scope of the Subpoena to those records that the Court finds relevant.

17. For the foregoing reasons, The Martino Defendants have demonstrated good cause for this Court to issue an Order pursuant to Rule 45(3)(a) of the Federal Rules of Civil Procedure quashing and dismissing Plaintiff Crown Theatres, L.P.'s subpoena served on Citigroup by its registered agent CT Corporation System, or, in the alternative, for an Protective Order pursuant to Rule 26(c) denying Plaintiff's access to the Martino Defendants' financial records.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of February 2004.

_____
Marisa Lanza

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CROWN THEATRES, L.P.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02CV 2272 AVC |
| ) | Jury Trial Demanded |
| **MILTON L. DALY, TAYLOR-LEIGH,** ) | |
| **INC., ANNE E. DALY, JAMES C.** ) | June 30, 2003 |
| **CELLA, G.U.S. DEVELOPMENT, INC.,** ) | |
| **JAMES T. MARTINO, JAMES THOMAS** ) | |
| **MARTINO, ARCHITECT, P.C., and RCD** ) | |
| **HUDSON, LLC,** ) | |
| ) | |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT

1. Plaintiff Crown Theatres, L.P. ("Crown Theatres") brings this action against Defendants Milton L. Daly ("Milton Daly"), Taylor-Leigh, Inc. ("Taylor-Leigh"), James C. Cella ("Cella"), and G.U.S. Development, Inc. ("GUS") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as fraud, conversion, civil conspiracy, statutory theft under Conn. Gen. Stat. § 52-564, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*; against Defendants James T. Martino ("Martino") and James Thomas Martino, Architect, P.C. (the "Martino firm") for breach of contract and professional negligence; against Defendant RCD Hudson, LLC ("RCD Hudson") for fraud and violation of CUTPA; against Defendants Milton Daly and Anne E. Daly ("Anne Daly") (collectively, the "Dalys") for conversion and unjust enrichment; and against Anne Daly for avoidance of fraudulent transfers, and against Milton Daly for statutory theft and breach of fiduciary duty. Through the use of a scheme involving

fraudulent invoices for construction services, Defendants caused Crown Theatres an economic loss in excess of $10,000,000. Of this loss, at least $4,200,000 was taken for the benefit of Defendants Milton and Anne Daly.

2. Plaintiff Crown Theatres, a company engaged in the business of owning, operating, and managing first-run movie theatres, has been in the process of expanding its operations since 1995, and now operates movie theatres in seven states. As part of its expansion, Crown Theatres constructed theatre-specific improvements at its new and existing theatres, and relied on Defendant Milton Daly, as its Chief Operating Officer and Senior Executive Vice President ("COO"), to manage the expansion, oversee construction and control costs. Using his position as COO, Defendant Milton Daly, acting supposedly on behalf of Crown Theatres, retained Martino for architectural services on the construction projects at new and existing theatres, and retained Robert L. Beacher ("Beacher") of B.B. Construction Consultants, Ltd. ("B.B. Construction") as Crown Theatres' construction consultant and on-site construction representative to facilitate and supervise the construction projects at new and existing theatres.

3. Beginning as early as October 1996, and continuing through at least May 2001, Defendant Milton Daly engaged in a pattern of racketeering activity with Defendant Taylor-Leigh to defraud Crown Theatres by concocting phony construction invoices for work which was not performed, and by overcharging for work actually performed, among other things. Defendant Martino, as architect on these projects, negligently signed or negligently permitted the signing of the Architect's Certificates on these fraudulent invoices. As a result, Crown Theatres lost in excess of $10,000,000.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over the RICO claims pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

5.  Venue is proper in this judicial district pursuant to 18 U.S.C. § 1964(c), and 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred within this judicial district.

## PARTIES

6.  Plaintiff Crown Theatres is an Illinois limited partnership with its principal place of business located at 64 North Main Street, Norwalk, Connecticut 06854 and with offices in New York, New York. Crown Theatres is engaged in interstate commerce.

7.  Crown Theatres owns, manages, and operates sixteen movie theatres in Greenwich, Hartford, Norwalk, Stamford, and Trumbull, Connecticut; Hialeah, Florida; Jupiter, Florida; Skokie, Illinois; Annapolis, Maryland; Minneapolis, Minnesota; Las Vegas, Nevada (manages and operates only); and New York, New York (manages and operates only).

8.  Defendant Milton Daly is the former COO of Crown Theatres.

9.  Defendant Taylor-Leigh, d/b/a Taylor/Leigh, Inc., is a Connecticut corporation with its principal place of business at 90 Davis Mill Court, Lawrenceville, Georgia 30044. On information and belief, Milton Daly is the president and sole director of Taylor-Leigh, and his wife Anne Daly is its secretary. On information and belief, Milton Daly or members of his family are the sole shareholders of Taylor-Leigh. Its registered agent is Gary Lorusso, c/o Tierney, Zullo, Flaherty & Murphy, P.C., 134 East Avenue, Norwalk, Connecticut 06851.

10. On information and belief, Taylor-Leigh has conducted other legitimate businesses, including Kangaroo Pouch Kids and a restaurant franchise in Norwalk, Connecticut commonly known as Rolly Polly.

11. Defendant Anne Daly is the wife of Milton Daly, and is the secretary of Taylor-Leigh.

12. Defendant Cella is a provider of consulting or construction services, and is a member of Hudson, LLC, itself a member of RCD Hudson, a Delaware limited liability company. RCD Hudson is the general contractor for the Crown Theatres construction projects in Hartford and Trumbull, Connecticut.

13. Defendant GUS is a purported provider of construction or consulting services. On information and belief, GUS is located at 468 E. Boston Post Road, Westport, Connecticut. On information and belief, GUS is an alter ego of Cella. On information and belief, GUS is a shell corporation with no legitimate business purpose and no principal place of business.

14. Defendants Milton Daly and Taylor-Leigh are sometimes referred to collectively as "Count I RICO Defendants," and Milton Daly, Taylor-Leigh, Cella, and GUS are sometimes referred to collectively as the "Count II RICO Defendants" in this Complaint.

15. Defendant RCD Hudson, a Delaware limited liability company, was the general contractor for the Hartford and Trumbull Projects, as defined below. On information and belief, Cella and Stuart Koshner, either directly or indirectly and by and through various entities, control RCD Hudson. RCD Hudson maintains its principal place of business at 299 West Houston Street, New York, New York 10014.

16. Defendants Milton Daly, Taylor-Leigh, Cella, GUS, and RCD Hudson are sometimes referred to collectively as the "CUTPA Defendants" in this complaint.

17. Defendant Martino worked as Crown Theatres' architect in connection with the construction of theatres in Connecticut, Florida, Illinois, Maryland, Minnesota, Nevada, and New York. Martino is licensed as an architect by the State of New York and all of the states where Crown Theatres had construction projects.

18. Defendant Martino firm is Martino's architectural firm. It is a New York professional corporation, and its principal place of business is 14 Vanderventer Avenue, Number L1, Port Washington, New York 11050. Defendant Martino firm also worked as Crown Theatres' architect in connection with the construction of theatres in Connecticut, Florida, Illinois, Maryland, Minnesota, Nevada, and New York.

## OTHER RELATED PERSONS

19. Taylor Leigh Daly is a daughter of Anne Daly and Milton Daly.

20. William Daly is a son of Anne Daly and Milton Daly and is a registered agent for Taylor-Leigh.

21. Traci Daly is a daughter of Anne Daly and Milton Daly, is a registered agent for Taylor-Leigh, and is an officer of Kangaroo Pouch Kids.

22. Jason Daly is a son of Anne Daly and Milton Daly.

23. Jeffrey Daly is a son of Anne Daly and Milton Daly.

24. Odyssey Entertainment, LLC ("Odyssey"), operates a movie theatre commonly known as the "Riviera Cinema 12" located at or about 110 Riviera Boulevard, Foley, Alabama 36535. Milton Daly is the chairman and chief executive officer, and Robert Abramsky is the chief operating officer.

25. On information and belief, Kangaroo Pouch Kids is a child care facility in Lawrenceville, Georgia, which is an alter ego of Taylor-Leigh.

26. Beacher, of B.B. Construction, is Crown Theatres' former construction consultant, and on-site construction representative for its construction-related theatre operations.

27. B.B. Construction is a New York corporation that had its principal place of business at certain relevant times in Lynbrook, New York, and in Woodmere, New York, and that presently maintains no offices. Beacher is the president and sole shareholder of B.B. Construction. B.B. Construction provides consulting services to the theatre construction and management industry.

28. Tiger Contracting, Inc. ("Tiger") is a Michigan corporation with no principal place of business.

29. Hewlett Contracting, d/b/a Hewlett Consulting, Inc. ("Hewlett"), was formerly a New York Corporation with its principal place of business in Lynbrook, New York.

30. Marlin Contracting, d/b/a/ Marlin Consulting, Inc. ("Marlin"), was formerly a Florida corporation with its principal place of business in Palm Beach Gardens, Florida.

31. Beacher controlled B.B. Construction, Tiger, Hewlett and Marlin.

32. Hudson Equities, Inc. ("Hudson Equities") is a New York corporation that maintains or maintained an address at 424 Madison Avenue, New York, New York 10017. Robert Wadsworth is Hudson Equities' registered agent. His address is 4455 East Camelback Road, Suite 216E, Phoenix, Arizona 85018. On information and belief, Cella is a principal of Hudson Equities.

## THE BUSINESS OF CROWN THEATRES

33. After its formation, Crown Theatres entered the theatre business by purchasing certain theatre construction assets from Cinamerica Theatres, L.P., a Delaware limited partnership, in 1991. At the time, Cinamerica operated eight theatres in Connecticut and the Gotham Theater in New York, New York, which were part of the theatre assets purchased by Crown Theatres. Two of the initial Cinamerica theatres are currently operated by Crown Theatres.

34. After building several theatres and entering into management contracts at others, Crown Theatres currently runs sixteen theatres in Connecticut, Florida, Illinois, Maryland, Minnesota, Nevada and New York.

35. In addition to its President, Daniel M. Crown, Crown Theatres has had three principal officers at certain relevant times from 1996 through 2001. Milton L. Daly was the COO. David S. Clifford was Executive Vice President and Chief Financial Officer. Since 1998, Glenn T. Garfinkel has been and continues as Executive Vice President and General Counsel.

36. As COO, Milton Daly was the most senior executive of the company and reported directly to the President, Daniel Crown. As COO, Milton Daly's duties and responsibilities included, without limitation, oversight of all operations, finance, human resources, legal and corporate administration functions. Milton Daly was also responsible for film bookings, concessions, facilities maintenance and repair, fiscal planning, budgeting, policy creation and implementation, and long-term strategic planning.

37. As part of his duties and responsibilities as COO, Milton Daly managed and oversaw all of Crown Theatres' construction projects, including its renovation and expansion

programs described more fully below. Milton Daly was responsible for the selection of new theatre site locations, theatre construction, theatre design, and the projection of costs and budgeting associated with theatre construction. Milton Daly was also responsible for and did approve all invoices for payment from Crown Theatres to third parties relating to the construction activities of Crown Theatres. Finally, Milton Daly was generally required to approve and sign all checks made payable to others by Crown Theatres if the amount of the check exceeded $5,000.

38. Crown Theatres relied upon Milton Daly to perform his duties and responsibilities as set forth in paragraph numbers 36 and 37, above.

39. From 1998 to 2001, as Crown Theatres entered the construction phase of its expansion, the opportunities for fraud by Milton Daly and Taylor-Leigh expanded.

### CROWN THEATRES' RENOVATION PROGRAM

40. After being hired by Crown Theatres in December 1995 and acting as COO and purportedly on behalf of Crown Theatres, Milton Daly continued to retain and personally supervise Beacher of B.B. Construction, and Martino and the Martino firm in connection with Crown Theatres' construction projects. Beacher of B.B. Construction became increasingly more involved with Crown Theatres in connection with theatre renovation projects in 1996 and 1997.

41. Milton Daly supervised Beacher of B.B. Construction in connection with major work at the SoNo Regent Theatre in Norwalk, Connecticut that took place after the initial construction was completed, as well as renovations at the Plaza Theatre in Greenwich, Connecticut.