caused checks obtained for the fraudulent invoices to be transmitted in interstate commerce in violation of 18 U.S.C. § 2314.

193.    The acts of transportation of stolen goods set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(1).

194.    In violation of 18 U.S.C. § 1956(a)(1)(B)(i), Milton Daly and Taylor-Leigh also committed multiple acts of money laundering pursuant to and in furtherance of their fraudulent schemes.  Milton Daly and Taylor-Leigh conducted numerous financial transactions affecting interstate commerce which involved the proceeds of specified unlawful activity, that is, mail and wire fraud, felonies under 18 U.S.C. §§ 1341 and 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of such unlawful activity.  Milton Daly and Taylor-Leigh knew that the funds involved in such financial transactions represented the proceeds of some form of unlawful activity as defined in 18 U.S.C. § 1956(c)(1).

195.    The acts of money laundering set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(1).

196.    Milton Daly and Taylor-Leigh have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

197.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Crown Theatres has been injured in its business and property in excess of $10,000,000, by which expenditure the Count I RICO Defendants have profited in the same amount.

## COUNT II: RICO CONSPIRACY § 1962(d)
(Against Milton Daly, Taylor-Leigh, Cella, and GUS)

198.    The allegations of paragraphs 1 through 197 are incorporated herein by reference.

199.    As set forth above, the Count II RICO Defendants conspired with other parties to violate 18 U.S.C. § 1962(c). Specifically, Milton Daly and Beacher, as Crown Theatres' COO and construction consultant and on-site construction representative, respectively, agreed to use their positions to relay such fraudulent invoices to Crown Theatres and to assure that payments were made.

200.    Cella agreed to use his position as a member in RCD Hudson, LLC, a general contractor for Crown Theatres, to submit fraudulent invoices from GUS as part of the scheme.

201.    The Count II RICO Defendants and Beacher agreed to use corporations under their control, and to incorporate additional shell corporations, including Hewlett and Tiger, as well as GUS, to submit fraudulent invoices to Crown Theatres, in order to obtain payment from Crown Theatres on those invoices.

202.    Defendant Taylor-Leigh, as an entity controlled by Defendant Milton Daly, was made a party to this agreement by Milton Daly's actions, and received payments in the form of kickbacks from the fraudulent invoices.

203.    Defendant GUS, as an entity controlled by Defendant Cella, was made a party to this agreement by Cella's actions, and submitted fraudulent invoices to Crown Theatres.

204.    Many of these fraudulent invoices, payments, or kickbacks were sent by Postal Service or interstate commercial carrier, and each of these actions caused Crown Theatres

to make payments by use of the Postal Service or interstate commercial carrier, including, without limitation, Federal Express, and were transported in interstate commerce.

205.    The Count II RICO Defendants and other parties to the conspiracy have intentionally conspired and agreed to directly and indirectly conduct and participate in the operation and management of the enterprise through a pattern of racketeering activity. The Count II RICO Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts by participating in the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

206.    As a direct and proximate result of the conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Crown Theatres has been injured in its business and property in an amount exceeding $10,000,000.

### COUNT III: FRAUD
(Against Milton Daly, Taylor-Leigh, Cella, and GUS)

207.    The allegations of paragraphs 1 through 206 are incorporated herein by reference.

208.    In presenting invoices for work which was never performed, or for payment in excess of the value of work actually performed and inflating the cost of certain materials, Beacher, B.B. Construction, Hewlett, Marlin, Tiger, Cella, and GUS intentionally misrepresented material facts to Crown Theatres, by representing that such work was performed, or that work of the value represented was in fact performed.

209.    Milton Daly, Cella, GUS and Beacher materially misrepresented such invoices as showing that work had, in fact, been performed, where such work was not performed.

-41-

and that the invoices represented the true and correct value of work performed at Crown Theatres' construction sites.

210.    Each of the above representations was, in fact, materially false, as the invoices presented to Crown Theatres were for work that was not, in fact, performed by such entities or on their behalf, and for payment in excess of the value of work actually performed.

211.    Having individually failed to perform all or part of the work represented by the invoices they submitted, Beacher, B.B. Construction, Hewlett, Marlin, Tiger, Cella, and GUS all knew that these representations were false.

212.    Milton Daly, being in affiliation with and directing the scheme to defraud Crown Theatres, knew and was aware of the falsity of the invoices.

213.    Milton Daly and Beacher further materially misrepresented such invoices as having valid Architect's Certificates when, in fact, Milton Daly and Beacher expressly knew the work had not been completed.

214.    Taylor-Leigh received payments from Beacher entities that received payments as a result of the fraudulent invoices.

215.    The Defendants named in this count, having knowingly submitted fraudulent invoices, having knowingly represented fraudulently submitted invoices as correct invoices, or having benefited economically from the fraudulent invoices, intended to defraud Crown Theatres and intended to benefit economically from such fraud.

216.    Crown Theatres and its officers, other than Milton Daly, reasonably relied on the representations of Defendant Milton Daly, including Milton Daly in his capacity as its COO, and reasonably believed such representations to be true.

217.    Having reasonably relied on Defendants' misrepresentations, Crown Theatres paid the fraudulent invoices and has been damaged in an amount in excess of $10,000,000, and the Defendants have been enriched by the same amount.

## COUNT IV: FRAUD
(Against Milton Daly)

218.    The allegations of paragraphs 1 through 217 are incorporated herein by reference.

219.    With Milton Daly's knowledge and approval, the Beacher entities knowingly submitted fraudulent billings for remodeling of Milton Daly's personal residence to Crown Theatres, with the intent that B.B. Construction would be reimbursed by Crown Theatres for the remodeling costs.

220.    In his role as COO, Milton Daly knowingly misrepresented to Crown Theatres that the fraudulent invoices were proper, approved such invoices for payment and caused Crown Theatres to pay such invoices.

221.    Crown Theatres justifiably relied on the misrepresentations made by Beacher and Milton Daly and paid B.B. Construction for the fraudulent billings.

222.    Crown Theatres suffered losses of at least $81,000 for Milton Daly's residence as a direct result of these particular fraudulent billing statements.

## COUNT V: FRAUD
(Against Milton Daly, Cella and RCD Hudson)

223.    The allegations of paragraphs 1 through 222 are incorporated herein by reference.

-43-

224.    On information and belief, Milton Daly, purporting to act on behalf of Crown Theatres, and Cella, acting on behalf of RCD Hudson, agreed to a contract price of approximately $3,350,000 in connection with the Trumbull Project.

225.    On information and belief, Cella, acting on behalf of RCD Hudson, and Milton Daly subsequently agreed to inflate the price of the contract from approximately $3,350,000 to approximately $3,510,000.

226.    On information and belief, Cella, acting on behalf of RCD Hudson, and Milton Daly inflated the contract price by fraudulently inflating certain line items of the contract, including, for example, site preparation and demolition.

227.    On information and belief, Cella, acting on behalf of RCD Hudson, and Milton Daly did so with the knowledge and intent of defrauding Crown Theatres.

228.    RCD Hudson is vicariously liable for the conduct of Cella.

229.    In reliance on the misrepresentations made by Milton Daly, Cella, and RCD Hudson, Crown Theatres paid the fraudulently inflated contract price.

230.    Having relied on these misrepresentations, Crown Theatres suffered damages, and the Defendants have been enriched by the same amount.

## COUNT VI: CIVIL CONSPIRACY
### (Against Milton Daly, Taylor-Leigh, Cella, and GUS)

231.    The allegations of paragraphs 1 through 230 are incorporated herein by reference.

232.    Defendant Milton Daly and Beacher entered into an agreement to defraud Crown Theatres and agreed to commit the fraudulent acts described in this Complaint by

submitting fraudulent invoices to Crown Theatres. They further agreed to split the proceeds on a 70/30 basis.

233.    Pursuant to their agreement and in furtherance of the fraudulent scheme, Milton Daly and Beacher did in fact cause such invoices to be submitted and paid, and did in fact split the proceeds.

234.    Defendant Taylor-Leigh, as an entity controlled by Defendant Milton Daly, was made a party to this agreement by Milton Daly's actions, and received payments or kickbacks from such invoices.

235.    Cella and GUS agreed with Milton Daly or Beacher or both to submit similar fraudulent invoices to Crown Theatres. Pursuant to their agreement to commit the fraudulent acts described in this Complaint, Cella and GUS did submit such invoices, did provide kickbacks to Milton Daly, and did retain portions of such payments.

236.    As a consequence of these various agreements, and as a result of the Count VI Defendants' conspiracy to defraud Crown Theatres, Plaintiff was in fact so defrauded and deprived of in excess of $10,000,000.

### COUNT VII: CONVERSION
(Against Milton Daly, Taylor-Leigh, Cella, and GUS)

237.    The allegations of paragraphs 1 through 236 are incorporated herein by reference.

238.    Plaintiff Crown Theatres was the legitimate owner of the monies Milton Daly caused Crown Theatres to pay by checks in connection with the fraudulently inflated contract and the fraudulently billed invoices for both the construction projects and the personal residence, which were submitted by Milton Daly, Beacher of B.B. Construction, Hewlett,

-45-

Marlin, Tiger, Cella, GUS and RCD Hudson.  Crown Theatres is entitled to all funds paid by such checks.

239.    The Defendants named in this count misappropriated the funds paid through these checks to their own unauthorized uses, or to the unauthorized use of other defendants and related persons without the permission of Crown Theatres.

240.    Those parties, including Defendant Taylor-Leigh, received such checks and improperly exercised control over these funds without authorization from Crown Theatres.

241.    Crown Theatres has been deprived of its rightful possession of all funds paid on the fraudulent invoices.

242.    As a result of these actions by the Defendants, Crown Theatres has been deprived of monies in excess of $10,000,000.

## COUNT VIII:  BREACH OF CONTRACT
(Against Martino and Martino Firm)

243.    The allegations of paragraphs 1 through 242 are incorporated herein by reference.

244.    Crown Theatres agreed with Martino and the Martino firm that Martino and the Martino firm would render professional architectural services in exchange for payment for services rendered by Crown Theatres.

245.    Crown Theatres performed under the agreement by, among other things, paying Martino and the Martino firm for architectural services.

246.    Martino and the Martino firm agreed to and had a duty to Crown Theatres to exercise reasonable care in the performance of professional architectural services, including, without limitation, the duty:

a.  To provide architectural services necessary to complete each project, including design, preparation of drawings and bidding documents, construction administration and project close out;

b.  To monitor and acknowledge substantial conformance of materials and workmanship in the manner established in the contract documents; and

c.  To certify on each of the Architect's Certificates submitted to Crown Theatres that the work specified had been completed and the contractor was entitled to payment of a specific amount, based on his personal observations at the site and other data.

247.  Martino and the Martino firm breached their duties to Crown Theatres by, among other things:

a.  Failing to provide construction inspection of each of the projects;

b.  Failing to monitor the projects to insure that work had been completed and materials furnished in the manner described in payment applications;

c.  Failing to apprise Crown Theatres that work described in payment applications had not been completed or furnished to the projects;

d.  Failing to apprise Crown Theatres that work described in payment applications was outside the scope of Crown Theatres' construction responsibilities at these projects; and

e.  Certifying to Crown Theatres, without conducting on-site inspection or reviewing pertinent data, that the work had progressed as indicated in the payment applications, that the quality of the work was in accordance with the contract documents, and that the contractor was entitled to payment.

-47-

248.    As a direct and proximate result of the foregoing breaches by Martino and the Martino firm, Crown Theatres paid the fraudulent invoices and Crown Theatres has sustained damages in excess of $10,000,000.

### COUNT IX: PROFESSIONAL NEGLIGENCE
(Against Martino and Martino Firm)

249.    The allegations of paragraphs 1 through 248 are incorporated herein by reference.

250.    Martino and the Martino firm, as architects, provided professional architectural services to Crown Theatres, and therefore incurred a duty to exercise reasonable care in the performance of professional architectural services, including, without limitation, the duty:

    a.    To provide architectural services necessary to complete each project, including design, preparation of drawings and bidding documents, construction administration and project close out;

    b.    To monitor and acknowledge substantial conformance of materials and workmanship in the manner established in the contract documents; and

    c.    To certify on each of the Architect's Certificates submitted to Crown Theatres that the work specified had been completed and the contractor was entitled to payment of a specific amount, based on Martino's personal observations at the site and other data.

251.    Martino and the Martino firm breached their duties to Crown Theatres by, among other things:

    a.    Failing to provide construction inspection of each of the projects;

-48-

b.    Failing to monitor the projects to insure that work had been completed and materials furnished in the manner described in payment applications;

c.    Failing to apprise Crown Theatres that work described in payment applications had not been completed or furnished to the projects;

d.    Failing to apprise Crown Theatres that work described in payment applications was outside the scope of Crown Theatres' construction responsibilities at these projects; and

e.    Certifying to Crown Theatres, without conducting on-site inspection or reviewing pertinent data, that the work had progressed as indicated in the payment applications, that the quality of the work was in accordance with the contract documents, and that the contractor was entitled to payment.

252.    Martino and the Martino firm were responsible for certifying on each Architect's Certificate submitted to Crown Theatres that the work specified had been completed and the contractor was entitled to payment of a specific amount, based on personal observations at the site and the information on the form.

253.    Through the exercise of reasonable care as architects, Martino and the Martino firm should have known that the work described on the fraudulent invoices created by Beacher and Milton Daly had not been completed, or was outside the scope of Crown Theatres' construction responsibilities at these projects.

254.    If Defendants Martino and the Martino firm had exercised reasonable care and had not certified the fraudulent invoices, Crown Theatres would not have paid those invoices and incurred damages of more than $10,000,000.

255.    If Martino and the Martino firm had exercised reasonable care and had discovered that the invoices were fraudulent, the pattern would have been exposed and Crown Theatres would not have continued to pay on those invoices.

256.    As a result, Crown Theatres suffered actually and proximately caused damages in excess of $10,000,000.

## COUNT X:  VIOLATION OF THE
## CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")
**(Against Milton Daly, Taylor-Leigh, Cella, GUS and RCD Hudson)**

257.    The allegations of paragraphs 1 through 256 are incorporated herein by reference.

258.    The CUTPA Defendants, by their actions described in paragraphs 1 through 254 herein, engaged in unfair and deceptive acts and practices in the conduct of trade or commerce in violation of CUTPA.

259.    The CUTPA Defendants' submissions of invoices for work and services not performed constitute unfair and deceptive acts performed in the conduct of trade or commerce.

260.    The CUTPA Defendants' submissions of invoices in excess of the value of the services or goods actually rendered or provided constitute unfair and deceptive acts performed in the conduct of trade or commerce.

261.    Milton Daly's actions which caused checks to be drawn on Crown Theatres' accounts for payment on the fraudulent invoices constitute unfair and deceptive acts performed in the conduct of trade or commerce.

262. Milton Daly's conversion of funds from Beacher entities and Taylor-Leigh to his personal use with the knowledge that these funds were fraudulently obtained constitutes unfair and deceptive acts performed in the conduct of trade or commerce.

263. Cella and GUS' payments to B. B. Construction, which have been described herein, constitute unfair and deceptive acts performed in the conduct of trade or commerce.

264. Milton Daly, Cella, and RCD Hudson's inflation of the contract for the Trumbull Project, which has been described herein, constitutes an unfair and deceptive act performed in the conduct of trade or commerce.

265. The CUTPA Defendants' actions described herein, both corporate and individual, offend public policy and violate the law.

266. The CUTPA Defendants' actions described herein, both corporate and individual, are unethical, unscrupulous, immoral, and oppressive.

267. The CUTPA Defendants' actions described herein, both corporate and individual, have caused substantial injury to Crown Theatres.

268. The CUTPA Defendants' actions caused Crown Theatres to be injured in an amount of at least $10,000,000.

269. The CUTPA Defendants' actions produced no legitimate benefit.

270. Crown Theatres could not have reasonably avoided the injuries it suffered because Milton Daly was Crown Theatres' COO and he was in charge of the payment of construction invoices.

271.    The CUTPA Defendants' unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce have directly and proximately caused Crown Theatres to suffer an ascertainable loss of money in excess of $10,000,000.

272.    Crown Theatres has standing to pursue claims against the CUTPA Defendants under CUTPA, Conn. Gen. Stat. § 42-110a, *et seq.*

273.    As a result of the CUTPA Defendants' violations of CUTPA, Crown Theatres has suffered a loss of more than $10,000,000.

### COUNT XI: STATUTORY THEFT
**(Against Milton Daly, Taylor-Leigh, Cella, and GUS)**

274.    The allegations of paragraphs 1 through 273 are incorporated herein by reference.

275.    Milton Daly, Taylor-Leigh, Cella and GUS ("Count XI Defendants") caused the submission of fraudulent invoices to Crown Theatres with the intent to deprive Crown Theatres of the payments on those invoices or with the intent to appropriate the payments to themselves or third parties.

276.    The Count XI Defendants wrongfully obtained funds from Crown Theatres by causing Crown Theatres to pay fraudulent invoices and by misappropriating funds paid on fraudulent invoices for their own use, without the authorization of Crown Theatres.

277.    Crown Theatres is the proper owner of these funds, and, as a result, Crown Theatres may pursue treble damages under Conn. Gen. Stat. § 52-564.

278.    As a result of the conduct of the Count XI Defendants, Crown Theatres has been actually and proximately damaged in the amount of at least $10,000,000.

## COUNT XII: STATUTORY THEFT
### (Against Milton Daly)

279.    The allegations of paragraphs 1 through 278 are incorporated herein by reference.

280.    Milton Daly caused invoices for work on the Heritage Island Home to be wrongfully billed to and paid by Crown Theatres.

281.    In so doing, Milton Daly acted with the intent to deprive Crown Theatres of property or to appropriate the same for himself or a third person.

282.    Milton Daly wrongfully obtained property from Crown Theatres by deceptively causing Crown Theatres to pay invoices for work on the Heritage Island Home and by misappropriating the money paid on the invoices for his own use, without the authorization of Crown Theatres.

283.    As a result of Milton Daly's conduct, Crown Theatres has been actually and proximately damaged by at least $81,000.

284.    Crown Theatres is the proper owner of the funds which Milton Daly wrongfully caused Crown Theatres to expend on his behalf.  Accordingly, Crown Theatres is entitled to treble damages under Conn. Gen. Stat. § 52-564.

## COUNT XIII: CONVERSION
### (Against Milton Daly and Anne Daly)

285.    The allegations of paragraphs 1 through 284 are incorporated herein by reference.

286.    Crown Theatres is the legitimate owner of the money Milton Daly caused Crown Theatres to pay for renovations on the Dalys' Heritage Island Home.