# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| CROWN THEATRES, LP, | : | CIVIL ACTION NO. |
|  | : | 3:02-CV-2272 (AVC) |
| Plaintiff, | : |  |
|  | : |  |
| VS. | : |  |
|  | : |  |
| MILTON L. DALY, ET AL., | : |  |
|  | : | FEBRUARY 24, 2004 |
| Defendants. | : |  |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ANNE DALY'S MOTION FOR SUMMARY JUDGMENT
## IN REGARD TO COUNTS XIV, XVI, XVII, XIX and XX
## OF THE PLAINTIFF'S SECOND AMENDED COMPLAINT

In Counts XIV, XVI, XIX and XX of the Second Amended Complaint, the plaintiff alleges that defendant Anne Daly is liable for conversion, unjust enrichment and fraudulent transfer based on certain transfers by her husband, defendant Milton Daly, of funds alleged to belong to the plaintiff. Because those claims involve monies that were transferred to an entity (Taylor-Leigh, Inc.) in which Anne Daly had no ownership interest and/or financial accounts in which the plaintiff had a joint interest with the transferor (her husband) but over which she actually exercised little or no prerogatives of ownership or control and from which transfer she derived virtually no benefit, defendant Anne Daly cannot be liable for the alleged conversion, unjust enrichment or fraudulent transfer as a matter of law. Accordingly, she is entitled to the entry of a summary judgment in her favor on such claims.

In Count XVII, the plaintiff challenges the payment of monies to defendant Anne Daly under the terms of a promissory note as a fraudulent transfer. However, because the monthly payments called for under the note were, at all times, payable to Anne Daly, such payments cannot, as a matter of law, give rise to liability for a fraudulent transfer. Accordingly, she is entitled to a summary judgment in her favor on Count XVII.

## THE SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court "asks whether the pleadings, discovery, and affidavits, if any, show that there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law." Hansen v. Continental Ins. Co., 940 F.2d 971, 975 (5th Cir. 1991). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Moreover, pursuant to F.R.C.P. 56(d), the court may grant partial summary judgment as to a portion of plaintiff's claim, and substantially narrow the issues that might remain in the case. See Yale Transp. Corp. v. Yellow Tuck & Coach Mfg. Co., 3 F.R.D. 440, 441 (S.D.N.Y. 1944).

2

## PERTINENT FACTS

All of the plaintiff's allegations in regard to defendant Anne Daly begin with the alleged conduct of defendant Milton Daly. For purposes of Anne Daly's motion for summary judgment only, the Court can accept as true the plaintiff's claim that Milton Daly took funds that belonged to the plaintiff and that he transferred those funds to various entities and accounts. The plaintiff's claims of liability against defendant Anne Daly in Counts XIV, XVI, XIX and XX, however, are based on the nature of the entity or account to which the transfer was made. This motion for summary judgment asks the Court to determine whether, in light of the nature of the entity or account to which the transfer was made by defendant Milton Daly, any liability may attach to defendant Anne Daly. As to Count XVII, the plaintiff's claim of liability, and the defendant's argument in support of summary judgment, are somewhat different, and both will be discussed in more detail below.

In moving for summary judgment, the defendant relies on certain facts alleged in the plaintiff's Second Amended Complaint, together with the facts set forth in the Affidavit of Anne Daly and the Affidavit of Milton Daly, both of which affidavits are attached hereto.

3

## A.    COUNT XIV

In Count XIV, the plaintiff claims that at least $4,200,000 that belonged to the plaintiff was diverted to defendant Taylor-Leigh, Inc. ("Taylor-Leigh") without the plaintiff's authorization. (Second Amended Complaint, ¶ 291, 292.) Taylor-Leigh is a corporation whose sole director and sole shareholder is defendant Milton Daly. (Second Amended Complaint, ¶ 9, 165; Affidavit of Milton Daly, ¶ 4.) Anne Daly is the Secretary of Taylor-Leigh. (Second Amended Complaint, ¶ 9; Affidavit of Milton Daly, ¶ 4.) In Count XIV, the plaintiff further claims that a portion of those funds were subsequently deposited by defendant Milton Daly into an investment portfolio account with Raymond James Financial Services, Inc. ("Investment Account"), which Investment Account was in the names of both defendant Milton Daly and defendant Anne Daly. (Second Amended Complaint, ¶ 163, 166.) Count XIV also alleges that the Investment Account funds were used to finance Odyssey Entertainment, LLC ("Odyssey"), an entity in which defendant Milton Daly is the controlling shareholder and in which defendant Anne Daly has no interest. (Second Amended Complaint, ¶ 171, 172.) Based on these allegations, Count XIV alleges that Anne Daly is liable for conversion.

However, as set forth in the accompanying affidavits, defendant Anne Daly exercises no control over Taylor-Leigh, no control over the Investment Account, and no

control over Odyssey. (Affidavit of Milton Daly, ¶ 4-6; Affidavit of Anne Daly, ¶ 4-6.) Furthermore, the only Odyssey funds over which Anne Daly has exercised control are five monthly payments to her (totaling $91,467), which payments were part of the repayment of a promissory note that obligated Odyssey to make payments to Milton Daly and Anne Daly. (Affidavit of Anne Daly, ¶ 5, 8.)

### B.    COUNT XVI

In Count XVI, the plaintiff alleges that Anne Daly was unjustly enriched by the diversion to Taylor-Leigh of at least $4,200,000 of the plaintiff's money. However, as set forth in the accompanying affidavits, defendant Anne Daly exercises no control over Taylor-Leigh. (Affidavit of Milton Daly, ¶ 4; Affidavit of Anne Daly, ¶ 4.)

### C.    COUNT XVII

Count XVII focuses on payments under a promissory note (the "Odyssey Note"), which obligated Odyssey to make payments to Milton Daly and Anne Daly. (Affidavit of Anne Daly, ¶ 8.) The plaintiff alleges that, beginning in April of 2003, Milton Daly caused Odyssey to make payments on the Odyssey Note solely to Anne Daly. (Second Amended Complaint, ¶ 307.) In Count XVII, the plaintiff claims this "transfer" of the right to receive payments constitutes a voidable fraudulent transfer. (Second Amended

Complaint, ¶ 308-310.)  Furthermore, at most, the payments made to Anne Daly under the Odyssey Note have totaled $91,467.  (Affidavit of Anne Daly, ¶ 8.)

D.    COUNTS XIX and XX

In Count XIX, the plaintiff alleges that the deposit of funds by Milton Daly into the Investment Account amounted to a fraudulent transfer to Anne Daly of a one-half interest in said Investment Account and seeks avoidance of that purported transfer. (Second Amended Complaint, ¶ 315-318.)  However, as set forth in the accompanying affidavits, defendant Anne Daly exercises no control over the Investment Account. (Affidavit of Milton Daly, ¶ 6; Affidavit of Anne Daly, ¶ 6.)

Similarly, in Count XX, the plaintiff alleges that there was a fraudulent transfer to Anne Daly when Milton Daly transferred monies to accounts maintained at Fleet Bank (the "Fleet Accounts"), which accounts were in the names of both Milton Daly and Anne Daly.  (Second Amended Complaint, ¶ 164-166, 321.)  However, as set forth in the accompanying affidavits, defendant Anne Daly had almost no involvement with the funds in the Fleet Accounts and has exercised virtually no control over the management or disposition of any funds in those accounts other than to write occasional checks for nominal sums to pay for groceries, some clothing and other small purchases.  (Affidavit of Milton Daly, ¶ 7; Affidavit of Anne Daly, ¶ 7.)  In Count XX, the plaintiff further

6

alleges that there was a fraudulent transfer of $325,000 from the Fleet Accounts to Anne Daly. However, as set forth in the accompanying affidavits, when Milton Daly and Anne Daly moved from Connecticut to Georgia, Anne Daly was given a check for the balance of the account ($325,000), which check was simply used to open a similar joint account in the names of both Milton Daly and Anne Daly, in Georgia. (Affidavit of Milton Daly, ¶ 7; Affidavit of Anne Daly, ¶ 7.) Finally, Count XX also alleges that Milton Daly made a fraudulent transfer of $84,000 from an Odyssey bank account to an account in the name of Anne Daly. (Second Amended Complaint, ¶ 170, 176, 321, 322.) However, as set forth in the accompanying Affidavit of Milton Daly, that money represented the net amount of an Odyssey payroll payment to Milton Daly which was compensation for his services to Odyssey, which earnings of Milton Daly were then wired to his wife, defendant Anne to be spent on household affairs. (Affidavit of Milton Daly, ¶ 8.)

    E.    <u>THE CONTRARY CLAIMS OF THE PLAINTIFF'S SO-CALLED EXPERT ARE NOT ENTITLED TO ANY WEIGHT IN THESE PROCEEDINGS</u>

In opposing defendant Anne Daly's Motion for Summary Judgment, the plaintiff will undoubtedly rely on the assertions of Frederick C. Hamilton, a forensic accountant, who it has identified as an expert witness. Pertinent portions of Hamilton's deposition testimony are attached hereto. At his deposition, Hamilton testified that it was his

opinion that Anne Daly "benefited from" the $4.2 Million that was received by Milton Daly and placed into joint accounts. <u>See</u> Transcript of Deposition of Frederick C. Hamilton ("Hamilton Deposition"), pp. 47-66. Hamilton's opinion was apparently based on the view that a wife (here, Anne Daly) will derive a benefit from money that her husband has obtained and placed in a joint account, even if the wife never personally used any of that money. <u>See</u> Hamilton Deposition, pp. 57-61. However, a careful review of that deposition testimony demonstrates that Hamilton based his so-called expert opinion on a theory that has not been tested in the forensic accounting community (Hamilton Deposition, p. 62); that has not been subject to peer review or publication (Hamilton Deposition, p. 62); that has not been the subject of any analysis to determine an identified or potential rate of error (Hamilton Deposition, pp. 62-64); that has no standards or controlling techniques (Hamilton Deposition, p. 64); and that is not generally accepted in the forensic accounting community (Hamilton Deposition, pp. 64-66). Rather, it is a theory that is based on Hamilton's experience alone. <u>See</u> Hamilton Deposition, pp. 65-66. Under such circumstances, Hamilton's analysis is inadmissible under the standards articulated by the Supreme Court in <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and in <u>Daubert v. Merrel Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),

and, therefore, Hamilton's analysis is entitled to no consideration by the Court at trial. For similar reasons, Hamilton's analysis is entitled to no consideration by the Court for purposes of opposing Anne Daly's motion for summary judgment. <u>See</u> F.R.Civ.P. 56(e) (summary judgment affidavits can only be based on testimony "as would be admissible in evidence").[1]

---

[1] It is also likely that the plaintiff will refer to Milton Daly's so-called "admission" that he believed that Anne Daly "benefited" from the $4.2 Million. In fact, the plaintiff's expert, Mr. Hamilton, indicated that he relied, in part, on that "admission" by Milton Daly. <u>See</u> Hamilton Deposition, p. 52. Yet, that so-called "admission" by Milton Daly may not be used against Anne Daly. An out-of-court "admission" may be used against the party who made the statement, not against another party (unless it was adopted by, authorized by, or made as an agent of that other party, which is not the case here). <u>See</u> F.R.Evid. 801(d)(2) (admission by party-opponent). Thus, Milton Daly's statement is not admissible against Anne Daly as a purported "admission." Likewise, Milton Daly's belief, i.e., opinion, that Anne Daly "benefited" from the $4.2 Million is inadmissible opinion evidence from a lay witness, and is not properly considered on that basis as well. <u>See</u> F.R.Evid. 701. Finally, it is improper for a witness, lay or expert, to testify to opinions, like the one here, that embrace legal conclusions, i.e., whether Anne Daly "benefited" from the money. <u>See</u> e.g., <u>Hygh v. Jacobs</u>, 961 F.2d 359, 363-64 (2d Cir. 1992); <u>Owen v. Kerr-McGee Corp.</u>, 698 F.2d 236, 239-40 (5th Cir. 1983). For these additional reasons, Hamilton's analysis is entitled to no consideration by the Court for purposes of opposing Anne Daly's motion for summary judgment.

## LEGAL ARGUMENT

### A.    COUNT XIV (CONVERSION)

Count XIV seeks recovery of damages for conversion.  "Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." <u>Devitt v. Manulik</u>, 176 Conn. 657, 660 (1979).  "It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm." <u>Aetna Life & Casualty Co. v. Union Trust Co.</u>, 230 Conn. 779, 790-91 (1994) (internal quotation marks omitted). Significantly, it is an action "'against one who has wrongfully appropriated the [plaintiff's property].'" <u>Id.</u> at 791, quoting D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed. 1968) § 25.

Here, the plaintiff alleges that the diversion of its funds to Taylor-Leigh and then to the Investment Account and then to Odyssey constitutes a conversion by defendant Anne Daly.  Yet, the evidence in this case fails to demonstrate, in regard to those funds, that defendant Anne Daly undertook any "unauthorized assumption and exercise of the right of ownership" or that she engaged in any "unauthorized act which deprives another of his property" that are required to support a claim of conversion.  As set forth

in the accompanying affidavits, defendant Anne Daly has no ownership interest in Taylor-Leigh and exercises no control over Taylor-Leigh. (Affidavit of Milton Daly, ¶ 4; Affidavit of Anne Daly, ¶ 4.) Further, although Anne Daly is a bare legal owner of an interest in the Investment Account, as set forth in the accompanying affidavits, defendant Anne Daly has exercised no control over the Investment Account. (Affidavit of Milton Daly, ¶ 6; Affidavit of Anne Daly, ¶ 6.) Finally, as set forth in the accompanying affidavits, defendant Anne Daly has no ownership interest in Odyssey and exercises no control over Odyssey. (Affidavit of Milton Daly, ¶ 5; Affidavit of Anne Daly, ¶ 5.) Thus, the evidence shows that Anne Daly did <u>nothing</u> with the funds.

At most, the evidence demonstrates that the Investment Account (into which the funds were placed by Taylor-Leigh, an entity that is neither owned nor controlled by defendant Anne Daly) was a joint account between Milton Daly and Anne Daly, without any proof that she exercised any dominion or control over the funds therein beyond being a mere record owner of the Investment Account. The evidence, then, fails to demonstrate that Anne Daly "wrongfully appropriated" the plaintiff's property, which is a necessary requirement in order to establish her liability for conversion.

This conclusion, moreover, is supported by the case of <u>Aetna Life & Casualty Co. v. Union Trust Co.</u>, 230 Conn. 779, 791-92 (1994). There, an attorney committed a

11

breach of trust and converted the funds of another that were under his care and control by directing the defendant bank in which those funds were deposited to apply the funds toward the payment of his outstanding personal loan to the bank. Notwithstanding that the defendant bank exercised dominion and control over the misappropriated funds and therefore clearly benefited from the misapplication of the trust funds; id. at 788; the Connecticut Supreme Court concluded that this was not a sufficient basis to find the bank liable for conversion because there was insufficient evidence that "the party sought to be held liable has engaged in conduct that *wrongfully* has harmed the plaintiff. . . . Under the facts of this case, the defendant did not engage in wrongful or unconscionable conduct, and was not unjustly enriched, by receiving the funds from [the attorney's] trust account in payment of [the attorney's] debts to the defendant." Id. at 791-92 (emphasis in original). Similar reasoning necessarily applies here, where defendant Anne Daly has exercised no control over the plaintiff's funds and has engaged in no conduct to support the conclusion that she has wrongfully harmed the plaintiff.

Based on these facts, the plaintiff cannot prove any conversion of its funds as alleged by the plaintiff in Count XIV. Consequently, defendant Anne Daly is entitled to a judgment in her favor as a matter of law on Count XIV.

## B.    COUNT XVI (UNJUST ENRICHMENT)

Count XVI seeks recovery of damages for unjust enrichment based on the diversion of the plaintiffs' funds to Taylor-Leigh. Yet, as previously stated, while Anne Daly is the Secretary of Taylor-Leigh, she is neither a shareholder nor a director of that corporation. She exercises no ownership or control over Taylor-Leigh. (Affidavit of Milton Daly, ¶ 4; Affidavit of Anne Daly, ¶ 4.) The aforementioned the case of <u>Aetna Life & Casualty Co. v. Union Trust Co.</u>, 230 Conn. 779, 791-92 (1994), also rejected a claim for a constructive trust based on a theory of unjust enrichment. Thus, the plaintiff cannot prevail on its claim that Anne Daly should be found liable for unjust enrichment because the funds allegedly belonging to the plaintiff were paid to Taylor-Leigh. A plaintiff seeking recovery for unjust enrichment must prove (1) that the defendant was benefited, (2) that the defendant unjustly did not pay the plaintiff for the benefits, and (3) that the failure of payment was to the plaintiff's detriment. <u>Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.</u>, 231 Conn. 276, 283 (1994). Here, the evidence does not demonstrate that Anne Daly "benefited" from the alleged misappropriation of the plaintiff's funds where the funds merely went to an entity in which she had no ownership interest and over which she never exercised any control. More importantly, even if Anne Daly was a beneficiary of Milton Daly's allegedly

13

wrongful act, a beneficiary of another's wrongful conduct who has no knowledge of that conduct is not "unjustly" enriched. See Vanacore v. Kennedy, 86 F. Supp. 2d 42, 52 (D. Conn. 1998), aff'd, 208 F.3d 204 (2d Cir. 2000).  While Milton Daly told Anne Daly, in 2001, that he had a problem with the plaintiff and that he was going to be sued, defendant Anne Daly was not then (or subsequently thereto, until she was sued in this case) informed that the plaintiff claimed an interest in any Taylor-Leigh funds, or that improper proceeds from the plaintiff's business were the source of Taylor-Leigh funds as is alleged in this action. (Affidavit of Anne Daly, ¶ 9.)

Accordingly, defendant Anne Daly is entitled to a summary judgment on the plaintiff's claim of unjust enrichment in Count XVI of the Second Amended Complaint.

C.    COUNT XVII    (FRAUDULENT TRANSFER OF PAYMENTS UNDER THE ODYSSEY NOTE)

Count XVII challenges the receipt by Anne Daly of payments on a loan to Odyssey as a fraudulent transfer by Milton Daly.  The gravamen of the plaintiff's complaint is that payments on that loan had been made to Milton Daly, but that, in April of 2003, he directed that Odyssey make the loan payments to defendant Anne Daly.  The plaintiff contends that having the loan payments made to Anne Daly as opposed to Milton Daly

amounts to a fraudulent transfer.  The payments made to Anne Daly under the Odyssey Note have totaled $91.467.  (Affidavit of Anne Daly, ¶ 8.)

It is undisputed that the Odyssey Note is payable to both Milton Daly and Anne Daly.  (Affidavit of Anne Daly, ¶ 8.)  Therefore, all periodic payments due under the Odyssey Note are due and payable to Anne Daly, as well as Milton Daly.  (Affidavit of Anne Daly, ¶ 8.)  Since Anne Daly was a payee under the Note, the challenged payment to her cannot constitute a fraudulent transfer.[2]  Furthermore, at the very least, if somehow there was a "fraudulent transfer" of Milton Daly's purported one-half interest in the loan payments, then the plaintiff's claim under Count XVII would amount to one-half of $91,467, or a maximum of $45,733.50.  If that be the case, then the Court can, at the very least, utilize F.R.Civ.P. 56(d) to narrow the claim under Count XVII to whether the plaintiff is entitled to that sum.

In addition, to the extent that the plaintiff is challenging the loan repayment based on the source of the funds loaned to Odyssey, without explicitly stating so in the allegations that are set forth in Count XVII, then the plaintiff's claim is similarly limited

---

[2]  That the payment of a promissory note to any one of multiple payees cannot constitute a fraudulent transfer was conceded by the plaintiff's forensic accounting expert during the hearing before this Court on the plaintiff's application for a prejudgment remedy against defendant Anne Daly.  Moreover, the payment of a promissory note to any one of its payees does not qualify as a "transfer" under the statutory definition of that term as set forth in Conn. Gen. Stat. § 52-552b(12).

in scope for the following additional reasons. Such a claim would urge that the repayment of the Odyssey Note is somehow a fraudulent transfer because *a portion* of the monies that were lent were purportedly obtained unlawfully by Milton Daly. Yet, it has been admitted by the plaintiff that $1.5 million of that loan amount, *that is, around half of the amount that was lent to Odyssey*, was from the proceeds of the sale of the Connecticut home that was owned by Milton and Anne Daly. <u>See</u> Plaintiff's Memorandum of Law in Support of Application For A Prejudgment Remedy Against Defendant Anne Daly (dated September 4, 2003) at pp. 8-9. Thus, while the half of each monthly payment on the loan is repaying money from a purportedly ill-gotten source, the other half of each monthly payment on the loan is properly repaying Milton Daly and Anne Daly for the funds that were generated from the sale of their real property. As such, that portion of the loan payments is not reachable by the plaintiff under the guise of a fraudulent transfer claim. <u>Cf.</u> <u>D.H.R. Construction Co. v. Donnelly</u>, 180 Conn. 430, 433-34 (1980) (recognizing that, to the extent that a portion of funds used to purchase property were not furnished to defendant by her debtor husband, then defendant's claim to the subject property is protected in that amount against claims of fraudulent conveyance by debtor's creditors). Consequently, of the total $91,467 in payments to defendant Anne Daly under the Odyssey Note that are being challenged in Count XVII,

at most only one-half of that amount (totaling $45,733.50) can be claimed as a fraudulent transfer. If that is in fact the basis of the plaintiff's claim in Count XVII, then the Court can, at the very least, utilize F.R.Civ.P. 56(d) to narrow the claim under Count XVII to whether the plaintiff is entitled to that sum.

Accordingly, based on the foregoing, as to Count XVII, defendant Anne Daly is entitled to a judgment in her favor as a matter of law or, alternatively, a ruling pursuant to Rule 56(d) that the amount at issue under this count is no more than $45,733.50.

D.    COUNTS XIX and XX (FRAUDULENT TRANSFER OF MONIES INTO JOINT ACCOUNTS AND OTHER PAYMENTS)

1.    The Deposit of Funds Into Joint Accounts is Not a Fraudulent Transfer

In Counts XIX and XX, the plaintiff claims, *inter alia*, that there has been an actionable fraudulent transfer simply because Milton Daly has deposited funds into accounts (i.e., the Investment Account and the Fleet Accounts) that are maintained jointly in the names of both Milton Daly and defendant Anne Daly. The plaintiff's claim is based on the provisions of the Uniform Fraudulent Transfer Act ("UFTA"), Conn. Gen. Stat. §§ 52-552a *et seq*. However, as a matter of law, that claim conflicts with the statutory definition of a "transfer" under the UFTA, as well as with well-settled

Connecticut law governing the rights of creditors to funds that are deposited in jointly-held bank accounts.

The predicate for any claimed "fraudulent transfer" is that there must have been a "transfer" from the debtor (here, Milton Daly) to another party. See Conn. Gen. Stat. §§ 52-552e, 52-552f. Here, the plaintiff maintains that a "fraudulent transfer" occurred when Milton Daly deposited money into one or more bank accounts that are jointly-held by Milton and his wife, defendant Anne Daly. However, the UFTA, in Conn. Gen. Stat. § 52-552b(12), defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrances." (Emphasis added.) Obviously, since Milton Daly maintains a legal interest in all of the funds deposited in the joint bank accounts that are the subject of the plaintiff's claim of a fraudulent transfer, no transfer has occurred under § 52-552b(12) where Milton Daly has disposed of and parted with *nothing* by merely allowing joint *access* to those funds.

The case of Fleet Bank Connecticut, N.A. v. Carillo, 240 Conn. 343 (1997) necessarily confirms this application of § 52-552b(12) to the circumstances of this case. In Carillo, the Connecticut Supreme Court held that a judgment creditor of the holder of

an interest in a joint bank account may execute upon the <u>entire</u> balance in the account. Since the purpose of the UFTA is to prevent a debtor from fraudulently putting his assets beyond the reach of creditors, it is clear that placing money in a joint account does not do that because "a coholder's property interest in the joint account exposes that account, in its entirety, to the creditor's collection powers, in the absence of statutory or common law protections not present here." <u>Id.</u>, 352.

This is not a case in which the exclusive (or joint) ownership of property by the husband was changed to the exclusive ownership of the property by another, his wife. Such a case would surely constitute a "transfer." In such a case, the husband starts by owning an asset and ends up with no interest in the asset because he has given away all rights of ownership. Clearly, in such a case, the husband has "dispos[ed] of or part[ed] with" his asset, within the definition of a "transfer" under § 52-552b(12), by changing the ownership of the asset to become that solely of his wife. A remedy is provided to the creditor under the UFTA in such a case because the change in legal ownership has placed the asset beyond the reach of the husband's creditor(s). Yet, that is not what happened here. Instead, the plaintiff claims that there was a "transfer" of funds to Anne Daly *notwithstanding Milton Daly's <u>continuing</u> ownership interest <u>in the entirety of the funds that have been deposited in the Investment Account and the Fleet Accounts.</u>*

Here, the change from the husband's sole ownership of property to his joint ownership with his wife has not altered his continuing status as an owner of the funds and, under Carillo, has not in any way adversely affected the plaintiff's continuing ability to execute on the entirety of the funds in any of the joint accounts. Under such circumstances, moreover, no fraudulent transfer claim is necessary for the plaintiff to seek relief against that asset in the hands of the husband (Milton Daly). Rather, the plaintiff has the direct right to seize any funds in the aforesaid accounts since Milton Daly never transferred his ownership rights therein.

Thus, the UFTA does not support the plaintiff's claim of liability for the funds that have been transferred to a jointly-held account based on the mere fact that the subject account is also in the name of the defendant Anne Daly. Notwithstanding that Anne Daly does have access to the funds that have been deposited in the joint accounts, those funds – in their entirety – are still owned by Milton Daly, just as they were owned by him in their entirety before any deposit into the joint accounts was made. Additionally, under Carillo, those funds – in their entirety – are subject to the collection powers of the plaintiff. Neither Milton Daly's ownership interest in the asset, nor the plaintiff remedies with respect to the same, are any different because of the joint ownership of the Investment Account or the Fleet Accounts. Accordingly, the plaintiff

cannot successfully maintain that there has been any "fraudulent transfer" by virtue of the deposit of monies into either the Investment Account (Count XIX) or the Fleet Accounts (Count XX), and the defendant Anne Daly is entitled to judgment as a matter of law on such claims.

      2.    <u>There Was No Fraudulent Transfer of $325,000 to Anne Daly</u>

In Count XX, the plaintiff also challenges, as a fraudulent transfer, the fact that Anne Daly was given a check for $325,000 from the Fleet Accounts. However, as set forth in the accompanying Affidavit of Anne Daly, when Milton Daly and Anne Daly moved from Connecticut to Florida, that money ($325,000) represented the balance of funds in the jointly-held Fleet Accounts, and that check was simply used to open a similar joint account in the names of both Milton Daly and Anne Daly, in Florida. (Affidavit of Milton Daly, ¶ 7; Affidavit of Anne Daly, ¶ 7.) In other words, the $325,000 was simply moved from one jointly-held account to another jointly-held account, with all parties – Milton Daly, Anne Daly, **and the plaintiff** – maintaining identical rights in and to such funds before and after the movement of the funds. Under such circumstances, for the same reasons set forth in the preceding section of this brief, there was, as a matter of law, no transfer of the $325,000 that could give rise to liability under the UFTA. Alternatively, even if there was some momentary legal transfer to Anne Daly,

21

her restoration of the status quo ante by depositing those funds in a joint account identical to the account from which they came means that there is no relief that this Court can grant in regard to that alleged fraudulent transfer. See Robinson v. Coughlin, 266 Conn. 1 (2003) (holding that no UFTA remedies are applicable where transferee has restored status quo ante by returning property to control of the debtor so that the property is once again subject to creditor remedies).

Accordingly, the plaintiff cannot successfully maintain that there has been any "fraudulent transfer" in regard to the $325,000 that was moved from one joint account to another joint account, and the defendant Anne Daly is entitled to judgment as a matter of law on that claim.

3.    The Payment of $84,000 to Anne Daly Was Not a Fraudulent Transfer

Count XX also alleges that Milton Daly made a fraudulent transfer of $84,000 from an Odyssey bank account to an account in the name of Anne Daly. Second Amended Complaint, ¶ 170, 176, 321, 322. However, as set forth in the accompanying Affidavit of Milton Daly, that money represented the net amount of an Odyssey payroll payment to Milton Daly which was compensation for his services to Odyssey, which earnings of Milton Daly were then wired to his wife, defendant Anne Daly. (Affidavit of

Milton Daly, ¶ 8.) There is no factual dispute that those funds are not part of the proceeds that the plaintiff claims were misappropriated by Milton Daly.

Accordingly, the plaintiff cannot successfully maintain that there has been any "fraudulent transfer" in regard to the $84,000 that was wired from an Odyssey bank account to an account in the name of Anne Daly, and the defendant Anne Daly is entitled to judgment as a matter of law on that claim.

## CONCLUSION

For all of the foregoing reasons, there are no genuine issues of material fact in regard to the plaintiff's claims in Counts XIV, XVI, XVII, XIX and XX of the Second Amended Complaint, and defendant Anne Daly is entitled to the entry of a judgment in her favor on those claims. Accordingly, defendant Anne Daly's motion for summary judgment should be granted in its entirety. Alternatively, the Court should grant a summary judgment in favor of defendant Anne Daly on Counts XIV, XVI, XIX and XX for the all of the foregoing reasons, and utilize F.R.Civ.P. 56(d) to narrow the plaintiff's claim under Count XVII to, at most, $45,733.50.

DEFENDANT,
ANNE DALY

By_____
Kerry M. Wisser of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT  06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct01205