UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2004 MAR 10 P 12:59
U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| CROWN THEATRES, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02CV2272AVC |
| ) | Judge Alfred V. Covello |
| MILTON L. DALY, TAYLOR-LEIGH, ) | |
| INC., ANNE E. DALY, JAMES C. ) | March 10, 2004 |
| CELLA, G.U.S. DEVELOPMENT, INC., ) | |
| JAMES T. MARTINO, JAMES ) | |
| THOMAS MARTINO, ARCHITECT, ) | |
| P.C., and RCD HUDSON, LLC, ) | |
| ) | |
| Defendants. ) | |

### CROWN THEATRES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL MILTON DALY'S PRODUCTION OF DOCUMENTS

Defendant Milton L. Daly ("Daly") asserts that his electronic mail and personal computer are "off limits" for purposes of the document request served by plaintiff Crown Theatres, L.P. ("Crown Theatres") on the grounds that the computer was purportedly not acquired until 2001. But the allegations of improper conduct directed against Daly and his wife, defendant Anne E. Daly, extend well into 2003. And, Crown Theatres has obtained copies of e-mail sent by Daly to third parties in 2002, that contain highly relevant admissions by Daly of his wrongdoing. Crown Theatres also has obtained an e-mail message authored by Daly in November 2003, in which he expresses vile, anti-Semitic views concerning the Crown family, which help to explain his actions.

Daly admitted at his deposition that he committed despicable acts of fraud and dishonesty – stealing millions from Crown Theatres, his former employer. He has sought to hide

his theft and the movement of the stolen funds. He should be compelled to produce his e-mail and permit the inspection by Crown Theatres of his computer.

## BACKGROUND

This case concerns a large, financial fraud under which Daly, Crown Theatres' former chief operating officer, and others engaged in an illicit scheme to steal millions of dollars from Crown Theatres in connection with its construction of movie theatre complexes around the country. At the heart of the fraud was a scheme between Daly and Robert Beacher ("Beacher"), Crown Theatres' former construction consultant, to cause Crown Theatres to make payments on sham construction invoices. At Daly's direction, Beacher submitted fraudulent construction invoices to Crown Theatres, which Daly approved and caused Crown Theatres to pay. After receiving the stolen money, Beacher kicked back approximately seventy percent of it to Daly. Between approximately 1996 and May 2001, Daly and Beacher stole more than $6 million.

At his deposition, Daly admitted that he defrauded Crown Theatres of at least $6.2 million, and that he and his wife received at least $4.2 million of this amount. (Deposition of Milton Daly of May 21, 2003 ("Daly Dep. I"), at 34-37, 126, attached hereto as Exhibit A.) He further admitted that he and Beacher entered into an agreement by which they would split money that Crown Theatres paid Beacher and that the proceeds of the fraud would be divided 70/30, with Daly receiving 70% of the moneys and Beacher keeping 30%. (Daly Dep. I at 134-36; Deposition of Milton Daly of August 5-6, 2003 ("Daly Dep. II"), at 225-26, attached hereto as Exhibit B.) Daly conceded that he was guilty of "self dealing," breaching his "fiduciary responsibility," and that what he did was "wrong." (Daly Dep. I at 140-41.)

Since 2001, Daly and his wife, defendant Anne E. Daly, have gone to elaborate lengths to conceal the fraud and the money they stole. Crown Theatres has determined that the Dalys diverted the stolen funds into a series of bank accounts that they controlled and into

various investments. The full extent of the fraud, however, and the location of much of the stolen money has yet to be revealed.

In December 2002, Crown Theatres filed this action against Daly and others to recover its substantial losses. The complaint, as amended, asserts claims against Daly for RICO violations, fraud, conversion, civil conspiracy, unjust enrichment, and statutory theft. Crown Theatres also alleges that Daly and his wife engaged in numerous fraudulent conveyances well into 2003, in an attempt to hide the proceeds of the fraud. On January 23, 2003, this Court granted Crown Theatres' motion for a prejudgment remedy against Daly in the amount of $6.2 million, finding "there was a reasonable likelihood that the defendant has fraudulently hidden or withheld money, property or effects." (Order of January 23, 2003.) Concerned that Daly might destroy key evidence, on February 20, 2003, Crown Theatres filed a motion for the preservation of documents, which this Court granted in substantial part. (Order of April 14, 2003.)

**Crown Theatres' Document Request**

On March 11, 2003, Crown Theatres served its First Request for the Production of Documents to Defendant Milton L. Daly (the "Document Request," attached hereto as Exhibit C.) In Request Number 31, Crown Theatres requested that Daly produce his "computers," computer "hard drives" and "emails." In addition, Crown Theatres requested that Daly produce "all documents" relating to a large number of topics, including for example:

- "conversations or meetings [with defendant] James Martino . . . [or defendant] Cella . . . ." (Request 1.)

- "communications or meetings . . . concerning the "Theatre Projects." (Request 4.)

- "the Theatre Projects," including "invoices" and "payments" relating to the Theatre Projects. (Request 5, 9 and 11.)

- "work performed or allegedly performed by James Martino or the Martino Firm . . . ." (Request 13.)

- "Taylor-Leigh's financial transactions . . . ." [The kickbacks were paid into the account of an entity owned by Daly called "Taylor-Leigh."] (Request 15.)

- "Hewlett, Marlin or Tiger [fictitious entities that submitted applications for payment to Crown Theatres]." (Request 17.)

- "GUS" [another fictitious entity] and B.B. Construction [Beacher's firm]." (Requests 64 and 68.)

- "payments to Cella, GUS, Hudson Equities, Beacher, B.B. Construction, Hewlett, Marlin or Tiger." (Request 22.)

- Daly's "federal and state income tax returns," "financial statements," and "bank accounts (including without limitation checking accounts . . . .)." (Requests 32, 35 and 36.)

- Daly's "brokerage accounts," "title to real property" and "title to automobiles, boats . . . or other vehicles." (Requests 41, 42 and 43.)

- Daly's "stocks, bonds . . . or other investments," "gifts or loans of money or property" and "use of credit cards." (Request 47, 50 and 57.)

- "financial transaction[s] by or between Milton L. Daly [and members of his family]." (Request 59.)

The Document Request defines the term "document" to include "e-mail," "computer files and disks." (Exhibit C at 3.)

Daly objected to the Document Request and produced no documents. (Exhibit D.) After protracted discussions, Daly belatedly produced a copy of his passport. He claims to have in his possession no other responsive documents except those which may appear on his computer. (Declaration of Adam N. Hirsch at ¶ 7, a copy of which is attached hereto as Exhibit E.) Daly has refused to permit Crown Theatres to inspect his computer. He has also refused to search it for responsive documents. (Id. at ¶ 9.) He contends that he did not acquire his computer until 2001 and, thus, any documents on it would be irrelevant to the matters at issue in this litigation. (Id. at ¶ 7.) Daly has made it clear that he will not permit the inspection of his computer or produce his e-mail absent a court order. (Id. at ¶¶ 5, 9.)

**Daly's Incriminating E-Mail Messages**

Crown Theatres has obtained from one of Daly's business partners, Robert Abramsky, copies of email messages sent by Daly in 2002 that are highly relevant to the pending litigation and contain significant admissions of Daly's culpability. At a meeting with Abramsky in Atlanta, Georgia on December 17, 2002, Daly confessed that he had taken $4.2 million from Crown Theatres and that doing so had been a mistake. (Declaration of Robert Abramsky, ¶ 10, a copy of which is attached as Exhibit C to Crown Theatres' Application for Prejudgment Remedy, filed January 23, 2003.) Following the meeting, on December 23, 2002, Daly e-mailed to Abramsky: "I have made one mistake in my life. I don't need to make another." (Exhibit F.) On December 31, 2002, Daly sent another e-mail message to Abramsky:

> You decided to or you thought you were going to protect your interests by telling everyone who would listen what I told you. Bad mistake. I don't need to be told what I did was wrong. I take full responsibility. That's why I told you.

(Exhibit G.)

In an e-mail to Abramsky dated November 26, 2003, Daly expressed his anti-Semitic hatred of the Crown family, the owners of Crown Theatres:

> Crown knows you already....They will discard you like toilet paper ...down the sewer when they can't use you anymore...(deservidely so) [sic] the same as you do to every one....that is the Jew life style in the world and you epitomize it to the fullest....As you said to me a hundred times....The Crowns did not get what they got by being nice people...well... you fit the glove as well and you will get yours from them in a matter of time...a short time....

(Exhibit H.)

## ARGUMENT

### I. DALY SHOULD BE COMPELLED TO PRODUCE HIS ELECTRONIC DOCUMENTS AND PERMIT THE INSPECTION OF HIS COMPUTER.

Crown Theatres' requests for Daly's e-mail and to inspect his personal computer are reasonably calculated to lead to the discovery of admissible evidence. Daly should be compelled to produce his electronic documents, including his e-mail, and Crown Theatres should be given access to and be permitted to inspect Daly's computer. As part of its inspection, Crown Theatres should be permitted to attempt to recover documents that Daly may have attempted to delete.

The scope of discovery afforded civil litigants under the Federal Rules of Civil Procedures is broad. See Harris v. Nelson, 394 U.S. 286, 297 (1969) ("[Rule 26] has been generously construed to provide a great deal of latitude for discovery"); Graham v. Casey's General Stores, 206 F.R.D. 251, 253 (S.D. Ind. 2002) ("courts employ a liberal discovery standard" even after recent amendments). Parties may conduct discovery on all subjects relating to the claims and defenses of the parties so long as the discovery is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). See also McQuade v. Michael Gassner Mechanical & Elec. Contractors, 587 F. Supp 1183, 1190 (D.Conn. 1984) (possible inadmissibility at trial is not an adequate reason to foreclose discovery).

Daly's only excuse for not producing his electronic documents and for not permitting Crown Theatres to inspect his computer is that Daly allegedly did not obtain his personal computer until 2001, sometime after he ceased working for Crown Theatres. Daly asserts that the computer, therefore, cannot contain relevant information. Daly's contention lacks merit.

The probability that Daly's computer contains discoverable evidence is extremely high. Crown Theatres has already obtained highly relevant e-mail messages that Daly sent in 2002, in which he admits to wrongdoing. Crown Theatres has also obtained a copy of an e-mail message written by Daly in 2003, in which he makes anti-Semitic statements regarding the Crown family – statements which may help to explain why he felt that he could steal millions of dollars from Crown Theatres. It is likely that Crown Theatres has only discovered the tip of the iceberg with respect to Daly's electronic documents. He should be required to produce the rest. See Rowe Entertainment, Inc. v. The William Morris Agency, 205 F.R.D. 421, 424, 428 (S.D.N.Y. 2002) (prior discovery of relevant documents indicated that the defendant's e-mail was properly discoverable and likely to yield relevant information); see also Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("electronic documents are no less subject to disclosure than paper records").

Even if Crown Theatres had not already learned of relevant post-2001 e-mail, Daly's objection would still be unfounded. Crown Theatres alleges in its complaint that Daly and his wife committed fraudulent transfers that occurred in 2002 and 2003. (See Second Amended Complaint, Counts XVII, XIX and XX).[1] Crown Theatres believes that Daly's efforts to conceal assets and to cover-up the full extent of his wrongdoing are continuing to the present. Daly should not be permitted to hide potentially admissible evidence behind an arbitrary 2001 cut-off date.

---

[1] Count XVII of the Second Amended Complaint concerns fraudulent transfers made by Milton and Anne Daly in 2003 relating to the repayment of money they loaned to Odyssey Entertainment, LLC, a company owned and controlled by Milton Daly. Count XIX concerns fraudulent transfers made by Daly when, in 2001, he moved proceeds of the fraud through checking and investment accounts he co-owned with Anne Daly. Count XX concerns a fraudulent wire transfer of approximately $84,000 made by Milton Daly to Anne Daly on December 31, 2002, ten days after the initial complaint was filed in this matter.

Daly should also be compelled to allow Crown Theatres to inspect his computer and copy its hard drive. In light of Daly's deceptive conduct, Crown Theatres should not be forced to take Daly's word for whether his computer contains responsive documents. Rather, Crown Theatres should be allowed to look for itself. Moreover, Crown Theatres should be permitted to copy, image or "mirror" Daly's computer hard drive as necessary in order to search for and attempt to restore documents that Daly may have attempted to delete. See Zabulake, 217 F.R.D. at 317 (allowing discovery of "deleted" electronic files); Rowe Entertainment, Inc., 204 F.R.D. at 428 (allowing plaintiff to copy, or "mirror" defendant's hard drives.).

## II.   DALY SHOULD BE MADE TO BEAR THE COSTS OF THIS MOTION.

Under Rule 37 of the Federal Rules of Civil Procedure, the court "shall" award the moving party its expenses, including reasonable attorney's fees, unless the opposing party's non-disclosure was "substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4)(A). Crown Theatres should not have been required to bring this motion. Its requests for Daly's e-mail and for access to his computer were entirely reasonable and well-within the scope of permissible discovery. Conversely, Daly's objection to producing post-2001 documents was baseless. The fact that Crown Theatres has already obtained relevant e-mail authored by Daly in 2002 and 2003, wholly undermines his position. So, too, does the fact that the complaint alleges acts of misconduct on the part of both Dalys in 2002 and 2003. Daly's objection was not substantially justified, and he should be required to pay Crown Theatres' reasonable attorney's fees and costs. See Omega Eng'g, Inc. v. Omega, S.A., No. 3:98cv2464, 2001 U.S. Dist. LEXIS 2016, *19 (D. Conn. 2001) ("An award of expenses is warranted in this case as the court concludes that [the discovery] objections were largely unjustified."); Land Ocean Logistics v. Aqua Gulf Corp., 181 F.R.D. 229 (W.D.N.Y. 1998) (costs awarded to moving party because non-moving party's refusal to produce documents

was not substantially justified). See also Selletti v. Carey, 173 F.3d 104, 110 (2d Cir. 1999) (noting that Rule 37 places the burden on the disobedient party to avoid expenses).

WHEREFORE, Crown Theatres respectfully requests that this Court grant its motion to compel Milton Daly's production of documents and that it specifically order him (1) to produce all of his e-mail and other electronic documents, (2) allow Crown Theatres to inspect his computer and copy or "mirror" its hard drive, and (3) pay Crown Theatres' attorneys' fees and costs associated with bringing this motion.

CROWN THEATRES, L.P.

By:_____
H. James Pickerstein (Bar No. Ct 05094)
Jodi Zils Gagné (Bar No. Ct 24376)
PEPE & HAZARD, LLP
30 Jelliff Lane
Southport, CT 06490
(203) 319-4000
(203) 259-0251 (fax)
hpickerstein@pepehazard.com
jgagne@pepehazard.com

and

                                      Craig C. Martin (Bar No. Ct 12198)  
                                      Lawrence S. Schaner (Bar No. Ct 24756)  
                                      JENNER & BLOCK LLP  
                                      One IBM Plaza  
                                      Chicago, IL  60611  
                                      (312) 222-9350  
                                      312) 840-7776 (fax)  
                                      cmartin@jenner.com  
                                      lschaner@jenner.com

March 10, 2004

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served all counsel of record in this action with a copy of the **Motion to Compel Milton Daly's Production of Documents and Memorandum of Law in Support of its Motion to Compel Milton Daly's Production of Documents,** by mailing a copy of the same by United States Mail, postage prepaid, to the following:

Kerry M. Wisser
Weinstein & Wisser, P.C.
29 South Main Street
Suite 207
West Hartford, CT 06107

Mark Seiden
Marisa Lanza
Milber, Makris, Plousadis & Seiden, L.L.P.
3 Barker Ave.
6th Floor
White Plains, NY 10601

Robert M. Frost
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
P.O. Box 1740
Bridgeport, CT 06601-1740

_____

Dated: March 10, 2004