# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------X
CROWN THEATRES, L.P.,                     :        Case No.: 3:02 CV 2272 (AVC)
                                          :
          Plaintiff,                      :
                                          :
     - against -                          :
                                          :
MILTON L. DALY, TAYLOR-LEIGH             :
INC., ANNE E. DALY, JAMES C.             :
CELLA, G.U.S. DEVELOPMENT, INC.,        :
JAMES T. MARTINO and JAMES              :
THOMAS MARTINO, ARCHITECTS,             :
P.C. and RCD HUDSON, LLC,               :
                                          :
          Defendants,                     :
-----------------------------------------------------X
JAMES T. MARTINO and JAMES              :
THOMAS MARTINO ARCHITECTS, P.C          :
                                          :
          Third-Party Plaintiffs,        :
                                          :
     - against -                          :
                                          :
B.B. CONSTRUCTION CONSULTANTS,          :
LTD., DAVID CLIFFORD and GLENN          :        March 15, 2004
GARFINKEL,                               :
                                          :
          Third-Party Defendants         :
-----------------------------------------------------X
```

## THE MARTINO DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO QUASH PLAINTIFF CROWN THEATRE'S SUBPOENA SERVED ON CITIGROUP, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER.

Defendants/Third-Party Plaintiffs JAMES T. MARTINO and JAMES THOMAS MARTINO ARCHITECTS, P.C. (the "Martino Defendants") submit this memorandum of law in further support of its motion for an Order pursuant to Rule 45(3)(a) of the Federal Rules of Civil Procedure quashing and dismissing Plaintiff Crown Theatres, L.P.'s ("Crown") subpoena served

on Citigroup for the Martino Defendants' financial records, or, in the alternative, for an Order pursuant to Rule 26(c) for a Protective Order limiting the scope of the subpoena to those records that Court finds relevant.

Crown's opposition to the within motion asserts that the documents sought are relevant since they will to lead to the discovery of admissible evidence as to issues pending in this litigation against the Martino Defendants as well as to the Martino Defendants' credibility. However, not only has Crown misconstrued its own pleadings against the Martino Defendants, but Crown's argument fails to present any valid reason permitting the disclosure of the financial records sought through the subpoena.  As set forth in greater detail in our moving papers, the subpoena should be quashed and dismissed on the grounds that the subpoena is ambiguous, overbroad, irrelevant, an invasion of personal privacy rights and in the nature of post-judgment remedy.

## ARGUMENT

### THE MARTINO DEFENDANTS' FINANCIAL RECORDS ARE IRRELEVANT TO CROWN'S ALLEGATIONS OF PROFESSIONAL NEGLIGENCE AND BREACH OF CONTRACT.

Crown's Memorandum in Opposition ("Crown's Memo") mischaracterizes its own pleadings against the Martino Defendants.  All of Crown's pleadings, discovery responses, expert reports and Crown's Memo, assert that the Martino Defendants "committed professional negligence and breached their contractual duties to Crown Theatres." _See_ Crown's Memo at p.5. Therefore, there is no logical or relevant need for the disclosure of the Martino Defendants' financial records to establish a _prima facie_ case of professional negligence or breach of contract based on the allegation that The Martino Defendants failed to conduct on-site inspections prior to

certifying contractors' payment applications.  *See* Consolidated Rail Corp. v. U.S., 812 F.2d. 1444 (3d Cir. 1987).

**a).     The Martino Defendants' Financial Records Are Neither Germane Nor Relevant To The Within Litigation, Which Asserts Two Cause of Action Sounding In Breach of Contract and Professional Negligence.**

There is no allegation plead against the Martino Defendants that payment of referral fees to a non-party is in some manner improper or somehow caused Crown to sustain damages.  Nor is there any allegation that Martino Defendants were involved in the alleged embezzlement scheme propounded by co-defendant Milton Daly ("Daly") and non-party Robert Beacher ("Beacher").  *See* Counts VIII and IX of the Second Amended Complaint, annexed to Lanza Declaration as Exhibit A.

**(i)     Payment of referral fees are not at issue in the within litigation.**

Crown specifically alleges in its Second Amended Complaint and Interrogatories Answers the alleged conduct it claims was negligent and/or resulted in breach of contract. Throughout the entire sixty-one page Complaint, two subsequent amendments and Crown's Interrogatories Answers, Crown has never asserted that the Martino Defendants payment of referral fees constitutes professional malpractice or breach of contract.  Therefore, Crown is incorrect in its statement that payments of referral fees are at issue in this litigation.

In fact, in Crown's Memorandum of Law in Opposition, Crown does not allege that the financial records are relevant to establish Crown's claims of professional negligence and breach of contract asserted as Counts VIII and IX in their Second Amended Complaint.  Instead, they seek the information to "explain why Martino was willing to sign off on millions of dollars worth of payment applications without making required site visits or otherwise fulfilling his duties as the architect of record."  *See* Crown's Memo at p.2.  Martino's state of mind is wholly irrelevant

to whether the processing of payment application on the Crown theatre projects constituted a departure from the applicable standard of professional care.[1]  Crown's opposition completely disregards the fact that it has asserted a claim for negligence and breach of contract and that an alleged motive for signing payment applications, has no bearing on its claims against the Martino Defendants.

Crown would have the Court construe Rule 26 of the Federal Rules of Evidence so broad as essentially limitless.  Rule 26 sets forth that only discovery that is reasonably calculated to lead to the discovery of admissible evidence is permissible.  As set forth in greater detail in section (b), evidence of the Martino Defendants' practice of providing Beacher with referral fees in appreciation for recommending work to the Martino Defendants does not establish or help establish any element of negligence or breach of contract.  In fact, the issuance of sums for referral of work is not improper or unethical and is a very common practice in many business contexts.  *See* Expert Report of Ronald Bertone ("Bertone Rpt") dated March 11, 2004, annexed hereto as Exhibit A at pp. 15-17.

Courts have frequently limited discovery to prevent a party from conducting fishing expeditions when the discovery sought is not germane to their theory or when a party is using a complaint as a "hunting license" to explore potential additional claims without demonstrating a real or practical need for the information.  *See* McCurdy v. Wedgewood Capital Management Co., Inc., 1998 U.S. Dist. Lexis 18875 (E.D. PA 1998); Surety Association of America v. Republic Insurance Company, 388 F.2d 412 (2d Cir. 1967); Consolidated Rail Corp. v. U.S., 812 F.2d 1444 (3d Cir. 1987).

---

[1] Martino's testimony, corroborated by the Construction Manager and trade contractors, is that he reviewed the requisitions to confirm that the work was performed and that it generally conformed to the plans and specifications. The Construction Manager, who negotiated the construction contracts and schedule of payments, determined the quantity of work performed and amounts due to the contractors.

**(ii)**    **Referral fees are not "clear-cut" evidence of negligence.**

Crown seeks eight (8) years of financial information from the Martino Defendants on the assumption that referral fees are "clear-cut evidence" of negligence.[2]

However, Crown's architectural expert, Mr. Steffian admits in his deposition testimony that the bases for his expert opinion are flawed:

Q:    Let me ask you this question, Mr. Steffian. Isn't it true that neither the AIA Code of Ethics and Professional Conduct nor the Rules of Conduct of the National Counsel of Architectural Registration Boards has a prohibition against paying referral fees?

A:    Well, I think that NCARB Rules of Conduct Number 5.3 that says: An architect shall neither offer nor make any gifts other than that of nominal value, including, for example, reasonable entertainment and hospitality, with the intent of influencing the judgment of an existing or prospective client in connection with a project of which the architect is interested. I think that's exactly what happened between Mr. Martino and Mr. Beacher.

Q:    Okay. So an architect shall neither – I'm reading Rule 5.3. An architect shall neither offer nor make any gift other than a gift of nominal value, including, for example, reasonable entertainment and hospitality, with the intent of influencing a judgment of an existing or prospective client in connection with a project in which the architect is interested. Now, is Bob Beacher an existing or prospective client of Jim Martino?

A:    His is an existing and prospective client's representative; and in, I think a real sense and act, on Mr. Martino's behalf in that – that relationship.

\*          \*          \*

---

[2] Crown's architectural expert, Peter Steffian's initial report of September 25, 2003 makes a broad statements without any specific rule/code reference that the Martino Defendants violated the Code of Ethics and Professional Conduct of the American Institute of Architect and the Rules of Conduct of the National Council of Architectural Registration Broad. In fact, the first mention of any specific violations did not arise until Mr. Steffian's impermissible second supplemental report of March 2, 2004, which was issued as a result of Mr. Steffian's deposition testimony wherein he admitted that he could not support his conclusions that Martino breached "the laws, rules, regulations and ethical standards of each and every state where he is registered." Further, Mr. Steffian's second supplement report is in violation of the Court's Scheduling Order and agreement among the parties. The Court should note that the Martino Defendants have rejected and returned Mr. Steffian's March 2, 2004 report as being in violation of this Court's Scheduling Orders, which provides that all Plaintiff's expert reports were to be issued on or before November 30, 2003. Furthermore, the March 2, 2004 report is also inconsistent with the agreement between counsels that Mr. Steffian would be permitted to issue a supplemental report after Mr. Martino's deposition, which was held on February 10, 2004 but before Mr. Steffian's deposition was conducted on February 17, 2004 (This matter was discussed before your honor during the February 5, 2004 telephone conference to discuss deposition scheduling.)

Q:  I'll ask it again. Is it your opinion on each and every project in which there is an owner's rep, that the owner's rep is a client of the architect?

A:  Not in each and every project.

                *       *       *

Q:  So are you saying that Beacher is not a client of Martino?

A:  I said, technically, I agree with you, yes.

Deposition of Peter Steffian, dated February 17, 2004 ("Steffian Depo.") at p.217-220, annexed hereto as Exhibit B.[3]

Crown's assertion that financial records are relevant as against the Martino Defendants' for negligence and breach of contract claim is also flawed in that it assumes that referral fees are improper. Under Crown's theory, any professional who pays a referral fee to a third party is providing a "kickback" and thereby breaching professional ethics.

Crown attempts to unjustly bias the relationship between Martino and Beacher in the context of the corruption within Crown's own corporate framework even though Crown admits that Martino had no involvement with or knowledge of any conspiracy between the Construction Manager (Beacher) and Crown's chief operating officer (Daly). In fact, as Martino and Beacher testified it was a long-standing practice for the Martino Defendants to issue referral fees or dinner to Beacher during their 25-30 years of working together on all projects, even those that took place before Crown Theatres.

Q:  Mr. Beacher, did Mr. Martino ever make any payments to you?

A:  Yes, he did.

Q:  And what were they for?

A:  Referral fees.

Q:  And what do you mean by "referral fee"?

A:  Call it a finder's fee if you may. This went on for a period of approximately 25 years that I worked with Mr. Martino. When I would introduce him to clients, he would get work from clients, and from time to time, he would pay me a referral fee.

---

[3] In the interest of brevity, the Martino Defendants have only attached the relevant and cited pages of Peter Steffian's deposition transcript to its memorandum in further support of its motion.

Q:    And for the referral fee, did you perform any consulting work or any work for Mr. Martino?
A:    No, none whatsoever.
Q:    So this was purely a referral fee?
A:    Purely a referral fee.

Deposition of Robert Beacher, dated February 25-26, 2004 ("Beacher Depo.") at p. 256-257, annexed hereto as Exhibit C.[4]

Significantly the referral fees were paid to B.B. Construction Consulting/Beacher and not to Martino's client, *Crown*. Furthermore, the Martino Defendants negotiated its architectural fees with Crown directly. *See* Crown's Memo at p.15; and Martino Depo. at p. 90-91, attached to Crown's Memo as Exhibit 1. Beacher was not involved in the negotiation of the Martino Defendants' architectural fees.

**b)    The Martino Defendants' Financial Records Are Not Relevant To the Issue Of Mr. Martino's Credibility As Alleged By Crown Theatres.**

Crown asserts that the Martino Defendants' financial records "are critical to asserting Martino's credibility." However, they have failed to present any logical reason why the financial records are "critical" to their allegation of "untruthfulness," which is denied by the Martino Defendants. Crown asserts <u>two</u> causes of action against the Martino Defendants based on professional malpractice and/or breach of contract in certifying payment applications on six movie theatre projects.

**(i)    The Martino Defendants' financial records do not establish whether Mr. Martino was allegedly untruthful at his depositions.**

To the extent that Crown construes the testimony of Mr. Martino from January 10, 2004 and February 10, 2004 to be in conflict, which is denied by the Martino Defendants, Crown may try to impeach Martino's trial testimony with what it contends is prior inconsistent statements.

---

[4] In the interest of brevity, the Martino Defendants have only attached the relevant and cited pages of Robert Beacher's deposition transcript to its memorandum in further support of its motion.

Crown does not require eight (8) years of the Martino Defendants' personal and business financial records unrelated to Crown, to attempt to impeach Martino's credibility. To the extent Crown, at trial, may seek to present evidence impeaching the veracity of Mr. Martino, all Crown requires is the deposition transcripts, not years of financial records having nothing to do with the projects at issue.

**(ii)    Rule 608(b) Of the Federal Rules of Evidence prohibit extrinsic evidence of conduct for the purpose of attacking or supporting a witness' credibility.**

The Federal Rules of Civil Procedure do not permit limitless discovery. In fact, discovery as to the impeachment of a witness is constrained in the same way as other discovery, i.e. by determining whether it is reasonably likely to lead to admissible evidence. *See* Rule 26(b). Rule 608(b) of the Federal Rules of Evidence entitled *Evidence of Character and Conduct of Witness* specifically provides:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, **may not be proved by extrinsic evidence.** [5]

Fed. R. Evid. Rule 608(b)(emphasis added)

Clearly, the Martino Defendants' financial records are extrinsic evidence and are therefore inadmissible at trial for the purpose of attacking Mr. Martino's credibility. In addition, since the only allegations against the Martino Defendants sound in professional negligence in failing to conduct "construction inspection of each of the projects" prior to certifying payment applications, veracity is not an issue in the claim. *See* Complaint & Interrogatories Answers, annexed as Exhibit A and B to Lanza Declaration.

---

[5] Rule 608(b) proves for two exceptions, which the Court, may determine probative, in its discretion, permit testimony in those situations (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character of truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. In other words, when the witness has been convicted of crime or when the witness has testified as to his truthfulness.

Finally, Crown, in a footnote, cites to the matter of <u>Davidson Pipe Company v. Laventhol & Horwath</u>, 120 F.R.D. 455 (S.D.N.Y. 1988) as outlining the factors to consider in determining whether to allow discovery for the purposes of attacking a witness' credibility and concludes, without any analysis, that the factors are applicable herein. Crown conducts no analysis of this discussion because the <u>Davidson</u>'s factors weight against production of the documents requested. For example, the first factor requires that the "prior acts in question must demonstrate a propensity for deception." <u>Davidson</u> at 462. How is it possible that paying referral fees, a common practice in many industries, demonstrates a propensity for deception? Clearly, paying referral fees has no relationship to having a propensity for deception. A further example is the fourth factor that centers on the "relationship between the subject matter of the prior deceptive act and that of the instant litigation." <u>Davidson</u> at 463. In the matter at hand, the alleged prior deceptive act (i.e. paying referral fees) is wholly unrelated to the allegations of professional negligence and breach of contract.

Crown's opposition memorandum has conveniently omitted from the record before the Court that the alleged referrals between Mr. Martino and Robert Beacher do not relate to solely to Crown. It was a common practice of Mr. Martino to express gratitude for business referrals; a practice observed in many industries.[6]

> Q:    Did you pay Mr. Beacher referral fees for work on projects you did for clients other than Crown Theatres?
> A:    Yes.
>
> *        *        *
>
> Q:    Did you pay him [Beacher] referral fees for work you did for other movie theatre clients?

---

[6] In fact, during the deposition of Mr. Steffian, Mr. Steffian testifies that he has taken clients out of dinner (Steffian at pg 211), to sporting events (pg 212 – 213) and invites them to holiday parties (Steffian at p 215). Mr. Steffian admits that these types of benefits would not be considered unethical or uncustomary in any industry (pg 216). <u>See</u> Exhibit B.

A:      Yes.

Q:      Did you pay Mr. Beacher referral fees for all projects that he referred to you?

A:      In one form or another yes.

        *       *       *

Q:      In additional to paying him referral fees, did you compensate him in other ways?

A:      Yes.

Q:      How.

A:      Bought him dinner, depending on the size of the project.

Martino Depo. at pp. 242, 243 – 244, attached to Crown's Memo as Exhibit 1.

**(iii)    Martino's testimony at his deposition was not untruthful.**

Crown concludes that Martino's testimony of January 15, 2004 was not "truthful." However, reading the testimony in context and in its entirety, demonstrates that the testimony is not inconsistent but rather that Crown has misconstrued Martino's testimony. Martino's second day of testimony clarifies his earlier testimony. For example, during the first day of his deposition, Martino testified that he did not recall paying any money to Mr. Beacher. On his second day of deposition, Martino clarified his testimony in that checks were written to B.B. Consulting for payment of referral fees, not to Mr. Beacher. (Martino Depo. at p. 277-285, attached to Crown's Memo as Exhibit 1)

**c)     In Determining Their Discoverability, It Is Immaterial Whether The Financial Records Sought Are Relevant To Martino's Co-Defendants**

Without citing any support for its position, Crown argues that the documents sought are relevant to Crown's claims for fraud, conspiracy and RICO violations against the Martino Defendants' co-defendants.

The payment of referral fees was made between the Martino Defendants and B.B. Construction Consulting. Crown has not asserted any claims directly against B.B. Construction

Consulting ("B.B.") or Beacher in this lawsuit. There is no logical connection between payment of referral fees to B.B. and Crown's allegations against co-defendants Daly and Cella for their alleged involvement in a "scheme" to misappropriate monies. Crown has not and cannot allege that the Martino Defendants were involved in any "scheme." In fact, the pre-trial testimony confirms that the Martino Defendants were not involved in any alleged "scheme." *See* Beacher Depo. at p. 81-85, annexed as Exhibit C.

Furthermore, the relationship between Martino and Beacher is unrelated to the allegations asserted herein, *i.e.* that the Martino Defendants were negligent and/or breached its contract or that co-defendants Daly and Cella committed fraud, conspiracy and/or RICO violations. Not only has Beacher stated that the Martino Defendants were uninvolved, but Beacher has voluntarily produced its own bank records. In fact, Crown admits that it has already obtained the information it seeks from the Martino Defendants from Beacher's banking records. *See* Crown's Memo at p.6. In short, there is no good faith basis for Crown's heavy-handed, irrelevant requests in its subpoena.

## CROWN THEATRES SHOULD NOT BE ENTITLED TO COSTS AND ATTORNEY'S FEES INCURRED IN OPPOSING THE WITHIN MOTION.

Crown attempts to "muscle" the Martino Defendants and its counsel, by seeking costs and fess for the Martino Defendants' efforts to protect itself against Crown's wrongful overreaching subpoena and abuse of process. Crown presents no evidence to suggest that the within motion was made in bad faith or without substantial justification.

The standard applied by the Court in a sanction analysis is the absence of substantial justification. Substantial justification is defined as the existence of a genuine dispute or if reasonable people could differ as to the appropriateness of the motion. Alexander v. FBI, 186 F.R.D. 144 (D.D.C. 1999). Clearly, as set forth in its motion papers, the Martino Defendants are

11

substantially justified in seeking to prevent a clear abuse of the discovery process by Crown. Unlike Crown, the Martino Defendants have cited numerous cases where the Court has found financial records as beyond the scope of permissible discovery. *See* Memo of Law In Support.

Crown's allegations that The Martino Defendants filed the within motion in an effort to prevent Crown from learning that Martino perjured himself during the first day of his deposition is both unfounded and reprehensible. As discussed above, the deposition testimony of Mr. Martino speaks for itself. The Martino Defendants have brought the within motion to prevent Crown from its continuing efforts to prosecute the within action without any regard to the rules of this Court or Court orders issued herein. Crown's subpoena is consistent with its long history of discovery abuses in this action.

To the extent that the within motion is granted, the Martino Defendants request that pursuant to Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure, Crown should pay the Martino Defendants' costs and attorney fees incurred in filing the within motion due to Crown's knowing service of an improper subpoena and for Crown's complete disregard for the discovery process.

## CONCLUSION

This Court is permitted to limit the scope of discovery by inquiring into the purpose for which the party seeks the information. *See* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978). The Court should limit the scope of discovery, including a subpoena, to the relevant issues and not permit the discovery of unrelated documents. As set forth above, the Martino Defendants have set forth numerous grounds as to why the documents sought are not relevant, germane or can even reasonably lead to the discovery of admissible evidence.

For the foregoing reasons and those reasons set forth in the Martino Defendants' Memorandum of Law in Support of its Motion to Quash Crown's Subpoena Served on Citigroup, The Martino Defendants respectfully request that the Court issue an Order pursuant to Rule 45(3)(a) of the Federal Rules of Civil Procedure quashing and dismissing Plaintiff Crown's subpoena served on Citigroup, or in the alternative, for a Protective Order pursuant to Rule 26(c) limiting the scope of the subpoena to those records the Court finds relevant. The Martino Defendants also respectfully request that Crown be ordered to pay the reasonable costs and attorneys' fees incurred by The Martino Defendant in making the within motion.

RESPECTFULLY SUBMITTED,

DEFENDANTS/THIRD-PARTY PLAINTIFFS
JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECTS, P.C.


By  _____
       Mark Seiden (CT 24637)
       Marisa Lanza (CT 24554)
       MILBER MAKRIS PLOUSADIS
       & SEIDEN, LLP
       3 Barker Avenue, 6th Floor
       White Plains, New York 10601
       (914) 681-8700
       (914) 681-8709 (fax)
       mseiden@milbermakris.com
       mlanza@milbermakris.com

13

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of The Defendants' Memorandum in Further Support of its Motion to Quash Plaintiff Crown Theatre's Subpoena Served on Citigroup, or, in the Alternative, for a Protective Order was served by first class mail, postage prepaid, on the 15th day of March 2004, upon:

Lawrence S. Schaner, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, Illinois 60611

H. James Pickerstein, Esq.
Pepe & Hazard, LLP
30 Jelliff Lane
Southport, CT 06490

Kerry M. Wisser, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Robert M. Frost
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd
P.O. Box 1740
Bridgeport, CT 06601

Marisa Lanza