Exhibit A

# ARCHITECT'S INVESTIGATION REPORT

OF

CROWN THEATRES, L.P. V. MILTON L. DALY,
TAYLOR-LEIGH, INC., ANNE E. DALY,
JAMES C. CELLA, G.U.S. DEVELOPMENT, INC.,
JAMES T. MARTINO, JAMES THOMAS MARTINO, ARCHITECT, P.C.
AND RCD HUDSON, LLC.

PREPARED FOR

LAW OFFICES OF
MILBER, MAKRIS, PLOUSADIS, & SEIDEN, LLP

PREPARED BY
RONALD P. BERTONE, FAIA

11 MARCH 2004

A.  INTRODUCTION:

James Thomas Martino, Architect, P.C., ("Martino") was engaged by Crown Theatres, L.P., ("Crown") to provide architectural services associated with renovation work at a theater facility in Greenwich, CT, in December of 1995. Starting in early 1996, Martino was again retained by Crown, pursuant to an agreement to render designated professional services, in conjunction with theaters in Trumbull, CT; Hartford, CT; Jupiter, FL; Miami Gardens (Hialeah), FL; Annapolis, MD; and Skokie, IL. It is alleged that during the course of construction of these six theater projects, construction funds were misappropriated by, and through an arrangement between, Milton Daly, Chief Operating Officer and Senior Executive Vice President of Crown, and Robert Beacher of B.B. Construction Consultants, Ltd., ("Beacher") On-Site Construction Representative for Crown Theatres.[1] Further, in 2001, Martino presented a proposal to Crown Theatres to provide architectural services for a project in Minneapolis, MN. Martino did provide some services on the Minneapolis, MN, project.

It is alleged that Architect Martino committed a breach of contract and professional negligence. It is further alleged that Martino failed to exercise reasonable care in the performance of professional architectural services.

Robson Lapina, Inc., was retained by Milber, Makris, Plousadis, & Seiden, LLP, to review and evaluate the professional services provided by James T. Martino, AIA, and the firm of James Thomas Martino, Architect, P.C. This review and evaluation was performed by Ronald P. Bertone, FAIA.

B.  MATERIAL AVAILABLE FOR REVIEW:

1. Letter from J. Martino to M. Daly dated 11/26/97; Re: Fee Proposals with proposals attached.
2. Letter from Martino to R. D. Scinto, Inc., (R. Scinto) dated revised July 8, 1998. (Proposal for Trumbull, CT).
3. Crown Theatres 1999 Construction Schedule dated 9/4/98.
4. Project Manual Section 00100 - Instructions to Bidders (Hartford, CT) dated 1/18/99.
5. Project Manual Section 00310 - Tender Form (Hartford, CT) dated 1/18/99.
6. Project Manual Section 00800 - Supplementary Conditions (Miami Gardens; Hialeah, FL) dated 7/1/99.
7. Invoices from J. Martino to M. Daly (Crown); Re: "1348 Minneapolis," dated 10/4/00, 10/4/00, 12/14/00, 12/14/00.
8. Transmittal from J. Martino to M. Daly (Crown) dated 2/16/01; Re: Minneapolis Project with attached "List of Responsibilities."
9. Letter J. Martino to M. Daly (Crown) dated 4/12/01; Re: Proposal for Architectural Services, Minneapolis.

---

[1] Report by Frederick C. Hamilton; CPA, CFE of Kroll, Zolfo, Cooper; dated Sept. 30, 2003.

1

**Robson Lapina**

ARCHITECT'S REPORT                                              March 11, 2004
Crown Theatres, L.P. v. Milton L. Daly, etc.                    03BA0411

(Material Available for Review / Cont.)

10. Letter J. Martino to M. Daly (Crown) dated 5/14/01; Re: Proposal for Architectural Services, Minneapolis.
11. Proof of Loss to the National Union Fire Insurance Co., of Pittsburgh, PA; No. 873-3587; dated June 2001.
12. "Meeting at Crown" dated July 5, 2001.
13. "Interview Notes - James Martino" dated July 11, 2001.
14. "Interview Notes - Jaime Cella" dated July 11, 2001.
15. "Summary of Information" received from Jenner & Block dated 10/15/02; Re: Milton Daly.
16. Declaration of William L. Jennings dated January 22, 2003, with attachments.
17. Declaration of Robert L. Beacher dated January 22, 2003.
18. Declaration of Robert Abramsky dated January 22, 2003, with Exhibit A.
19. Plaintiff Crown Theatres' Response to Daly and Taylor-Leigh's Interrogatories and Requests for Production dated April 9, 2003.
20. Defendant Milton L. Daly's Responses to Plaintiff Crown Theatres' Request for the Production of Documents to Defendant Milton L. Daly dated April 15, 2003.
21. Defendant Milton L. Daly's Responses to Interrogatories dated April 15, 2003.
22. Plaintiff Crown Theatres' Second Set of Interrogatories and Requests for the Production of Documents to Defendants Milton L. Daly and Taylor-Leigh, Inc., dated April 23, 2003.
23. Defendants James T. Martino and James Thomas Martino, Architects, PC's Answers to Plaintiff Crown Theatres', PC's First Set of Interrogatories dated April 24, 2003.
24. Second Amended Complaint, U.S. District Court for the District of Connecticut (Case No. 3: 02CV 2272 AVC), dated June 30, 2003.
25. Deposition of Milton L. Daly, Vol. 1, dated August 5, 2003.
26. Deposition of Milton L. Daly, Vol. 2, dated August 6, 2003.
27. Defendants James T. Martino and James Thomas Martino, Architects, PC's Answer to Plaintiff's Second Amended Complaint dated August 27, 2003.
28. Answer to Second Amended Complaint (Milton Daly, Taylor-Leigh, Inc., and Anne Daly) dated September 3, 2003.
29. Declaration of Lisa Wood dated September 4, 2003.
30. Crown Theatres' Responses to Milton Daly and Taylor-Leigh, Inc.'s, Second Set of Interrogatories and Requests for Production Addressed to the Plaintiff dated September 17, 2003.
31. Letter from Jenner & Block (L. Schaner) to P. Steffian dated September 19, 2003, with letter from P. Steffian dated September 17, 2003, attached.
32. Report by Peter Steffian, FAIA, NCARB; dated September 25, 2003.
33. Report by Frederick C. Hamilton, CPA, CFE; dated September 30, 2003.
34. Letter from SB Architects (P. Steffian) to Jenner & Block (L. Schaner) dated November 12, 2003, with 1987 Edition AIA Documents A201, A101, and B141 attached.
35. "Construction Deficiencies," (no date), Bates stamped K02121.
36. Deposition of James Martino dated January 15, 2004.

2

ARCHITECT'S REPORT March 11, 2004
Crown Theatres, L.P. v. Milton L. Daly, etc. 03BA0411

(Material Available for Review / Cont.)

37. Continued Deposition of James Martino dated February 10, 2004.
38. Letter from Jenner & Block (L. Schaner) to K. Wisser, M. Seiden, and R. Frost dated February 13, 2004, with letter from P. Steffian dated February 13, 2004, attached.
39. Deposition of Peter Steffian dated February 17, 2004.
40. Letter from P. Steffian to L. Schaner dated March 2, 2004.
41. Martino Invoices:

   A. Trumbull, CT: 9/30/98, 8/31/99, 10/31/99, 11/30/99, 12/31/99, 1/31/00, 3/31/00, 5/9/00, 8/1/00, 9/18/00.
   B. Miami, FL: 8/31/99, 9/18/00, 10/19/00, 11/22/00, 12/8/00.
   C. Skokie, IL: 12/31/98, 3/5/99, 4/30/99, 6/1/99, 9/30/99, 6/5/00, 10/19/00, 11/20/00, 12/8/00.
   D. Jupiter, FL: 8/31/98, 2/4/99, 3/5/99, 6/30/99, 8/31/99, 9/30/99, 7/11/00, 12/8/00.
   E. Hartford, CT: 4/30/98, 9/30/98, 6/30/99, 7/31/99, 9/30/99, 10/31/99, 11/30/99, 12/31/99, 1/31/00, 3/15/00 (two), 3/31/00, 4/19/00, 5/9/00, 6/5/00, 7/11/00, 9/18/00, 11/20/00, 12/8/00.
   F. Annapolis, MD: 8/31/98, 12/31/98, 3/31/99, 7/31/99, 3/15/00, 3/31/00, 5/9/00, 9/18/00.
   G. Misc. Invoices: Kips Bay, NY: 2/3/97; SoNo Regent: 4/18/97, 5/29/97; Stamford, CT: 4/30/97, 6/20/97, 6/30/97, 7/18/97, 10/7/97; Royale Theatre: 10/7/97, 11/19/97; Greenwich, CT: 3/31/99, Danbury, CT: 8/31/99; Glenview, IL: 3/15/00; Ridgeway: 7/13/00.

42. Applications for Payment/Invoices:

   A. WAAS
      (1.) The Grand/Miami Gardens, FL:

         a. Applications for Payment 1, 2, 3, 4, 4A, 5, 6, 7, 8, 9, 10, 14, 15, 16, and 20.
         b. Applications For Payment 1, 2, and 3 (Concrete Work).
         c. Applications For Payment 1, 2, 3, and 4 (Drywall).
         d. Extra Work Invoice - Wall Cap dated 9/8/00.
         e. Extra Work Invoice - Wall Cap Installation dated 10/25/00.
         f. Extra Work Invoice - Access Door dated 10/30/00.
         g. Extra Work Invoice - Roof dated 11/30/00.
         h. Extra Work Invoice - Survey of Sewer Laterals dated 11/30/00.
         i. Copies of Checks from Crown Theatre: 11/3/99, 12/1/99, 1/12/00, 2/2/00, 3/8/00, 4/13/00, 6/7/00, 7/12/00, 11/15/00, and 12/13/00.

3

**Robson Lapina**

ARCHITECT'S REPORT March 11, 2004
Crown Theatres, L.P. v. Milton L. Daly, etc. 03BA0411

(Material Available for Review / Cont.)

    (2.) Trumbull, CT:

        a. Invoice - Ceramic Tile dated 12/8/99.

B. Price Acoustics
   (1.) Trumbull, CT:

      a. Application for Payment 1 - Drywall.
      b. Application for Payment (no number) - Drywall.
      c. Application for Payment 3 - Carpentry.

C. Heffner & Weber
   (1.) Annapolis Mall, MD:

      a. Applications for Payment 1, 2, 3, 4, 4 Revised, 5, and 6.
      b. Extra Work Invoice - Cleaning dated 8/4/00.

D. GUS Development
   (1.) Hartford, CT:

      a. Application for Payment (no number) dated 6/9/99.

   (2.) Trumbull, CT:

      a. Application for Payment 1.

E. Tiger Contracting
   (1.) Hartford, CT:

      a. Application for Payment 4.

   (2.) Skokie, IL:

      a. Applications for Payment 1, 2, 3, 5, and 5a.

F. Hewlett Contracting
   (1.) Annapolis, MD:

      a. Applications for Payment 1, 2, and 3.
      b. Application for Payment 1 - Remedial Requirements.

4

**Robson Lapina**

ARCHITECT'S REPORT                                      March 11, 2004
Crown Theatres, L.P. v. Milton L. Daly, etc.            03BA0411

(Material Available for Review / Cont.)

    G.    <u>Marlin Contracting</u>
        (1.)    Miami Lakes, FL:

            a.    Applications for Payment 1, 2, 3, 4, and 5.
            b.    Additional Work Invoices - 7/13/00, 7/17/00, 7/28/00, 8/15/00, 8/25/00, and 10/3/00.

        (2.)    Hartford, CT:

            a.    Application for Payment 6 (Miami Lakes Theatre) - "Hartford" handwritten on top of Miami Lakes.

        (3.)    Jupiter, FL:

            a.    Applications for Payment 1, 2, 3, 4, 5, 6, and 7.
            b.    Additional Work Invoices - 7/13/00, 8/6/00, 8/7/00, and 8/14/00.
            c.    Check from Crown Theatres dated 4/18/01 - Sidewall Fixtures.

    H.    <u>B.B. Construction Consultants</u>
        (1.)    Crown Theatre Litigation 11-2163 - Invoices from B & B.

        (2.)    Annapolis, MD:

            a.    Invoices - 9/9/99, 9/22/99, 3/9/00, 3/30/00 (two), 5/11/00, 5/12/00, 5/14/00, 5/19/00, and 5/22/00.

        (3.)    Jupiter, FL:

            a.    Invoice - Plan Review Services dated 6/14/99.
            b.    Invoice - Expediting Services dated 6/28/99.
            c.    Invoice - Building Permit & Fire Department Fees dated 8/19/99.
            d.    Invoice - Additional Fire Department & Building Department Fees dated 11/23/99.
            e.    Invoice - Interior Step Lights dated 3/16/00.
            f.    Invoice - Electrical, Toilet Accessories, and Finish Hardware dated 5/19/00.
            g.    Change Order - Projection Booth Platforms dated 6/15/00.

**Robson Lapina**

ARCHITECT'S REPORT                                                    March 11, 2004
Crown Theatres, L.P. v. Milton L. Daly, etc.                          03BA0411

(Material Available for Review / Cont.)

    (4.)    Miami Lakes, FL:

        a.    Invoice - Shell Permit Fee dated 7/7/99.
        b.    Invoice - Filing Fee dated 7/28/99.
        c.    Invoice - Temporary Utility Service dated 11/2/99.
        d.    Invoice - Storm Damage Replacement dated 11/2/99.
        e.    Invoice - Gravel Road dated 12/9/99.
        f.    Invoice - Revision Permit Fees dated 1/13/00.
        g.    Invoice - HVAC Evaluation dated 3/9/00.
        h.    Invoice - Wall Sconce Fixtures dated 3/24/00.
        i.    Invoice - Toilet Accessories dated 3/30/00.
        j.    Invoice - Electrical Changes dated 4/18/00.
        k.    Invoice - Fiber Optic Ceiling dated 4/20/00.
        l.    Invoice - Grease Trap dated 4/26/00.
        m.    Invoice - Additional Fill Interior dated 4/26/00
        n.    Invoice - Hardware Specification Changes dated 5/9/00.
        o.    Invoice - Rendering dated 5/18/00.
        p.    Invoice - THX Baffel Walls dated 5/22/00.
        q.    Invoice - Electrical dated 6/1/00.

    (5.)    Hartford, CT:

        a.    Invoice - Arch. Review Req. dated 7/16/99.
        b.    Invoice - Additional Interior Gravel dated 8/5/00.
        c.    Invoice - Drywall Changes dated 5/9/00.
        d.    Invoice - Electrical Changes dated 5/9/00.
        e.    Invoice - Artist/Paint Fiber Optic Ceiling dated 5/23/00.
        f.    Invoice - Fiber Optic Ceiling dated 5/23/00.
        g.    Invoice - THX Baffle Walls dated 5/25/00.
        h.    Invoice - Box Office Revisions dated 6/13/00.
        i.    Invoice - Additional Drywall dated 6/16/00.
        j.    Invoice - Drywall Revisions dated 6/23/00.
        k.    Invoice - Concrete/HVAC/Paint/Sonic Fixtures dated 6/29/00.

    (6.)    Trumbull, CT:

        a.    Invoice - Stucco Finish dated 5/23/00.

    (7.)    Skokie, IL:

        a.    Invoice - Expediting Services dated 9/22/99.
        b.    Invoice - Filing Fee dated 10/11/99.
        c.    Invoice - Permit Fee dated 12/2/99.
        d.    Invoice - HVAC Evaluation dated 3/9/00.

**Robson Lapina**

(Material Available for Review / Cont.)

   (8.) Danbury, CT: Invoice - Zoning Board Req. dated 12/2/99.

   (9.) Miscellaneous transfer of funds from B.B. to Taylor/Leigh Inc., with copies of checks (No Date)

   (10.) Bills from B.B. to Daly for work performed at Daly Residence.

 I. <u>The Donwall Corp.</u>
  (1.) Trumbull, CT:

   a. Application for Payment - 11/30/99.

 J. <u>McGuire Brothers Painting</u>
  (1) Trumbull, CT:

   a. Application for Payment - 12/30/99.

  (2) Hartford, CT:

   a. Application for Payment - 6/23/00.

 K. <u>J & G Glass Co., Inc.</u>
  (1) Trumbull, CT:

   a. Application for Payment - 5/31/00.

 L. <u>R.C.D. Hudson:</u>
  (1) Hartford, CT:

   a. Application for Payment - 11/30/99.
   b. Application for Payment - 12/31/99.
   c. Application for Payment - 3/31/00.
   d. Invoice - 6/15/00 (Application #17).

  (2) Trumbull, CT

   a. Application for Payment - 7/31/99 w/attached subcontractor applications.

 M. <u>Johnson Caulking:</u>
  (1) Hartford, CT:

   a. Application for Payment - 6/30/00.

ARCHITECT'S REPORT  
Crown Theatres, L.P. v. Milton L. Daly, etc.

March 11, 2004  
03BA0411

(Material Available for Review / Cont.)

    N.    Interstate Welding & Mechanical Co., Inc.:
        (1)    Hartford, CT:

            a.    Applications for Payment - 6/30/00 (HVAC and Plumbing).

    O.    Leonard A. Krous, Co., Inc.:
        (1)    Annapolis, MD:

            a.    Application for Payment - 3/20/00.
            b.    Application for Payment - 4/30/00.
            c.    Application for Payment - 6/30/00.

    P.    Livingston Fire Protection of Baltimore:
        (1)    Annapolis, MD:

            a.    Application for Payment - 6/30/00.

    Q.    E.W. Howell Co., Inc.:
        (1)    Skokie, IL:

            a.    Application for Payment - 1/8/00.

    R..    MHW General Contractors:
        (1)    Miami, FL:

            a.    Application for Payment - 10/31/99.

    S.    Midwest Masonry, Inc.:
        (1)    Skokie, IL

            a.    Application for Payment - 9/30/00.

    T.    Shepard Steel Co., Inc.:
        (1)    Hartford, CT

            a.    Application for Payment - 9/30/99.
            b.    Application for Payment - 10/14/99.
            c.    Application for Payment - 11/30/99.
            d.    Application for Payment - 3/31/00.

    U.    Castle Concrete Corp.:
        (1)    Hartford, CT

            a.    Application for Payment - 9/30/99.

8

(Material Available for Review / Cont.)

    V.    <u>Aspen Air Conditioning, Inc.</u>:
        (1)    Miami Lakes, FL

            a.    Application for Payment - 10/25/00.

    W.    <u>B & N Construction, LLC</u>:
        (1)    Hartford, CT

            a.    Application for Payment - 1/14/00.

C.    ALLEGED COMPLAINT:

The "Second Amended Complaint," dated June 30, 2003, states that the complaint against Martino is for alleged "breach of contract and professional negligence." It further alleges:

(1)    Martino, as architect on these projects, negligently signed or negligently permitted the signing of the Architect's Certificate.
(2)    Martino incurred a duty to exercise reasonable care in the performance of professional architectural services.

D.    ARCHITECT'S SERVICES RELATED TO COMPLAINT:

James Thomas Martino, Architect, P.C., provided architectural services to Crown in conjunction with several new and renovation theater projects. The fee arrangements and services to be provided were agreed to by both Martino and Crown and were predicated on a proposal generated by Martino which was reviewed and approved by Crown.

The July 8, 1998, proposal for services to be provided during the building construction phase for the Trumbull, CT, project, indicates that, "An Authorized Representative of James Thomas Martino, Architect, P.C., shall visit the Site at an interval of one (1) per month for the purpose of verifying that the 'As-Built' conditions are in full compliance with the construction documents. Included in this Agreement is a total of ten (10) site visits." The proposal for the project in Minneapolis, MN, prepared in 2001, indicates, "Monthly site visits during construction: Monthly site visits to the job site to observe that the work is being performed in accordance with the Contract Documents and the requirements of Crown Theatres." Martino, or a representative of the Martino Firm, performed site visits associated with each theater project. On certain projects, specifically Annapolis, Miami, and/or Skokie, Martino was instructed by Daly not to make regular site visits because they were unnecessary and duplicated the work Beacher was already rendering as site inspection services.[2] The frequency of Martino's site visits were reflected on Martino's invoices to Crown and were discussed at regularly scheduled project meetings at Crown's Connecticut Offices.

---

    [2]    Deposition of James Martino, Page 109, dated January 15, 2004.

9

AIA Document G702 - Application and Certificate for Payment indicates, "The undersigned Contractor certifies that to the best of the Contractor's knowledge, information, and belief, the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that the current payment shown herein is now due." This statement is then required to be notarized to form an affidavit certifying that the document was sworn and subscribed by the contractor, in the presence of the notary. The Certificate for Payment states, "In accordance with the Contract Documents, based on on-site observations and the data comprising this Application, the Architect certifies to the Owner, that to the best of the Architect's knowledge, information, and belief, the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the amount certified." Martino, or a representative of the Martino Firm, signed certain Applications for Payment. However, many Applications for Payment were not signed by Martino, but nevertheless were processed and paid by Crown. Moreover, on certain other Applications for Payment, Martino's signature was made, without Martino's knowledge, advice, or consent.

E.  PROJECT CONSTRUCTION PROCEDURES:

On each of the projects, where it is alleged that Martino failed to comply with the applicable Standard of Care in the performance of his construction administration phase duties as an architect, Crown Theatres had retained a full-time project representative to review design and construction documents, prepare cost estimates, administer the bidding phase, negotiate the scope and price for trade contractors, negotiate the schedule of values for payment of trade contractors, value engineering, review proposed substitutions, and inspect construction. Crown retained Robert Beacher, doing business as B.B. Construction Consultants, Ltd., in this capacity, as its full time project representative.

Robert Beacher, B.B. Construction Consultants, Ltd., serving as a construction consultant or construction manager, was responsible for construction of all theaters.[3] B.B. Construction Consultants was hired to act on the owner's behalf in matters of constructability, cost and schedule, and to ensure effective management of the projects during the construction phase. The traditional process of design/bid/build took place with the addition of B.B. Construction Consultants, "Crown's Authorized Representative," overseeing and supervising the project delivery process.

Prior to being retained by Crown Theatres, Beacher was a contractor who had built a number of other theater facilities.

---

[3]  Deposition of Milton Daly, Page 115; dated August 5, 2003.

ARCHITECT'S REPORT
Crown Theatres, L.P. v. Milton L. Daly, etc.

March 11, 2004
03BA0411

Since the linear progression of design/bid/build was maintained, with B.B. Construction Consultants having involvement in each phase and in the quality of the project, it was understood by Crown that this would provide a degree of security and reliability in relation to construction of each project. The authorized representative's supervision during construction was arranged, by Crown, to evaluate the progress and quality of the construction and to approve payment to contractors through review, approval of, and placing his signature on each Contractor's Applications for Payment. These Applications were signed by Beacher prior to delivery to Martino. According to Crown, it was Beacher's responsibility to make sure that each contract was fulfilled to its fullest body of execution.[4]

F.   ARCHITECTURAL ANALYSIS:

A contract for architectural services can take many forms. It can be a written agreement or an oral agreement. Written agreements may be "Standard Forms," letter agreements, purchase orders, or a variety of formats. If an architect or an engineer submits a proposal to a client and then begins to perform services, based on that proposal, and submits invoices, which the client pays, an agreement has been established. Here, Martino submitted a proposal for professional services regarding the Trumbull project; this proposal was verbally accepted by Crown, Martino rendered services pursuant to that agreement, rendered invoices for his services consistent with that agreement, and received payment from Crown in accordance with the agreement. The same agreement governed all six (6) projects, except to the extent that Martino submitted a separate fee proposal for each project.

Several nationally recognized standards, publications, and professional organizations have studied and defined the Standard of Care for design professionals. These include the publication, "Understanding and Managing Risk: A Guide and Voluntary Education Program for Design Professionals," Copyright 1998, by the Victor O. Schinnerer and Company, Inc., along with the Risk Management Committee of the American Institute of Architects (AIA), and the Professional Liability Committee of the Professional Engineers in Private Practice Division of the National Society of Professional Engineers (NSPE/PEPP). These organizations indicate that design professionals typically encounter five generic types of contracts: oral agreements, letter agreements, purchase orders, standard form agreements, and custom agreements. Accordingly, the proposal prepared by Martino, and agreed to by Crown, would constitute a letter agreement. Pursuant to the Schinnerer "Guide," when discussing letter agreements, it stipulates, "The letter itself should address project specific information and terms such as the specific scope of services; owner obligations; compensation, including amount and basis of compensation and payment schedule; provisions relating to schedule or time for performance of the professional service; and identification of additional services offered to the client." With the exception of provisions relating to schedule or time for performance of service, the proposals prepared by Martino address the necessary items of a letter agreement. No documentation was reviewed indicating that Crown

---

[4] Deposition of Milton Daly, Page 127; dated August 5, 2003.

11

**— Robson Lapina —**

Theatres requested or required a schedule or time for performance of service to be added to the agreement.

By delineating the required items within his proposals to Crown, Martino complied with the applicable Standard of Care in preparing and arriving at an agreement for professional services with his client.

The proposals prepared by Martino, which became the agreements between Martino and Crown, did not define specific construction administration services above and beyond "review for approval of all shop drawings, samples, and submissions, as called for in the construction documents, for conformance with the project requirements and compliance with all building codes pertaining to this project, and visiting the site for the purposes of verifying that the "As-Built" conditions were in full compliance with the construction documents." Martino, or a representative from the Martino firm, did visit the construction sites and made on-site observations pursuant to the agreements with Crown.

The architect's responsibility, during the construction phase site visits, is to observe the work for general conformance with the intent of design documents. The design professional does not supervise or direct the work during such visits. Rather, the work is observed to determine whether it appears that it will generally comply with the requirements of the contract documents when completed. If defects or deficiencies are observed, they are reported to the owner and contractor so they can be corrected and their effects minimized. These are general observations or evaluations, not inspections of the work. This level of service, as performed by Martino, is in conformance with the contract documents,[5] and is consistent with the applicable Standard of Care in making construction phase site visits.

The Architect's Certificate for Payment, as stated on AIA Document G702 - Application and Certificate for Payment, was previously quoted in Part D above. It is important to review that statement at this time. "In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information, and belief, the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the contractor is entitled to payment of the amount certified." With respect to the subject projects, the following items should be noted:

1.  Martino, or a representative from his firm, did, among numerous other construction phase services, visit the site and made on-site observations in order to certify to the owner that to the best of their knowledge, information, and belief, the work completed at the time of that inspection was in accordance with the Contract Documents. Martino was only retained to visit the construction site for each theater project once per month. Further, on the Annapolis, Jupiter, and Skokie projects,

---

[5]   AIA Document A201, General Conditions of the Contract for Construction - 1987 Edition; Article 4.

12

Martino was directed not to make site visits as duplications of Beacher's services.[6] Nevertheless, Martino did make site visits on these projects. Based on a site visit of once per month, areas of the work might have been enclosed, covered up, or in other ways unable to be viewed at the time of the on-site observation. Since this might have been the case in conjunction with certain aspects of the work, Martino was entitled to rely on inspection certifications from Municipal Code Officials who might have inspected portions of the work prior to their being enclosed. Also, Martino was entitled to rely on the signed certifications by the owner's full time authorized representative who was in attendance at the site. These certifications, as to the quantities of work completed and monies due to the contractors, per their schedule of values, were prepared by B.B. Construction Consultants, Ltd., as part of the owner's requirement. If an architect is providing full construction administration services to a client, without involvement by a full time owner's authorized representative, he or she may provide more extensive site visits to monitor construction progress.

2. Martino's certifications were related to quality of work and its conformity to design documents. Martino relied upon Beacher's certifications regarding dollar amounts that were due to contractors in his signing of the Applications for Payment. Beacher, doing business as B.B. Construction Consultants, Ltd., had negotiated the contracts with contractors and subcontractors as well as the Schedule of Values for interim progress payments. Beacher's certification, as to the quantity and/or percentage of work completed by a respective contractor, was provided to Martino as qualified information for Martino's signature.

3. Martino reviewed the work with regard to quality being in accordance with the Contract Documents; and therefore, he complied with the agreement with Crown. Martino also learned the progress and quality of the work through his attendance at regular progress meetings, review of site notes, review of progress photos, discussions with Beacher,[7] responses to RFI's, discussions with contractors, and review of project correspondence. In so doing, Martino complied with the applicable Standard of Care in conjunction with the Applications for Payment.

Although no agreement between Robert Beacher or B.B. Construction Consultants, Ltd., and Crown was available for review, all of the documentation that was reviewed establishes the role of the "owner's authorized project representative," is akin to the "construction manager as agent," previously indicated above.

The "CM-Agent's" authority extends beyond managerial and financial responsibility to include contractual and legal authority. The CM-Agent typically is responsible for:

---

[6] Deposition of James Martino, Page 109; dated January 15, 2004.

[7] Deposition of James Martino, Pages 457-458; dated February 10, 2004.

13

**Robson Lapina**