Page 1

```
           UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF CONNECTICUT
              CASE NO. 3:02CV2272AVC
CROWN THEATRES, L.P.,

          Plaintiff,

     vs.

MILTON L. DALY, TAYLOR-LEIGH, INC.,
ANNE E. DALY, JAMES C. CELLA, G.U.S.
DEVELOPMENT, INC., JAMES T. MARTINO and
JAMES THOMAS MARTINO, ARCHITECT, P.C.,

          Defendants.
_____/


     VIDEOTAPED DEPOSITION OF ROBERT L. BEACHER
              VOLUME I, PAGES 1 - 124


           Wednesday, February 25, 2004
              10:24 a.m. - 5:19 p.m.
           Suite 1500
           200 East Broward Boulevard
           Fort Lauderdale, Florida 33301


Reported By:
Theresa Tomaselli, RPR, RMR
Notary Public, State of Florida
Esquire Deposition Services
Fort Lauderdale Office
Phone - 800.211.3376
    954.331.4400
```

Page 2

```
APPEARANCES:
On behalf of the Plaintiff:
    JENNER & BLOCK, LLP
    One IBM Plaza
    Chicago, Illinois 60611
    BY: CRAIG C. MARTIN, ESQUIRE
    AND: MATTHEW H. RICE, ESQUIRE
    AND: LAWRENCE S. SCHANER, ESQUIRE

On behalf of the Defendants, Milton L. Daly,
Anne E. Daly and Taylor-Leigh, Inc.:

    WEINSTEIN & WISSER, P.C.
    Suite 207
    29 South Main Street
    West Hartford, Connecticut 06107
    BY: KERRY M. WISSER, ESQUIRE

On behalf of the Defendants, James T. Martino, and
James Thomas Martino, Architect, P.C.:

    MILBER, MAKRIS, PLOUSADIS & SEIDEN, L.L.P.
    Suite 200
    108 Corporate Park Drive
    White Plains, New York 10604
    BY: MARISA LANZA, ESQUIRE

ALSO PRESENT:
    DANIEL CROWN
    GARY FISHER, Videographer
```

Page 3

```
                    - - -
                  I N D E X
                    - - -

DIRECT (ROBERT L. BEACHER)
BY MR. MARTIN.................................. 5


                    - - -
                 E X H I B I T S
                    - - -

Deposition I.D. Exhibit No. 1................... 8
Deposition I.D. Exhibit No. 2................... 9
Deposition I.D. Exhibit No. 3................... 9
Deposition I.D. Exhibit Nos. 4 & 5............. 27
Deposition I.D. Exhibit No. 6.................. 42
Deposition I.D. Exhibit No. 7.................. 52
Deposition I.D. Exhibit No. 8.................. 76
Deposition I.D. Exhibit No. 9.................. 86
Deposition I.D. Exhibit No. 10................. 86
Deposition I.D. Exhibit No. 11................. 86
Deposition I.D. Exhibit No. 12................. 89
Deposition I.D. Exhibit No. 13................. 99
Deposition I.D. Exhibit No. 14................. 99
Deposition I.D. Exhibit Nos. 15 - 21.......... 102
```

Page 4

PROCEEDINGS

THE VIDEOGRAPHER: We are now going on the video record. The time on the monitor is 10:24 a.m. Today is Wednesday, the 25th day of February, 2004.

We are here at 200 South Broward Boulevard, Fort Lauderdale, Florida, for the purpose of taking the videotaped deposition of Robert L. Beacher, Crown Theatres versus Daly, et al., which is filed in the United States District Court in Connecticut.

The videographer is Gary Fisher of Esquire. The court reporter is Terry Tomaselli of Esquire.

Will counsel announce their appearances for the record and swear in the witness.

MR. MARTIN: Craig Martin, Larry Schaner, and Matthew Rice for Crown Theatres.

MR. WISSER: Kerry Wisser, W-i-s-s-e-r, on behalf of Milt Daly, Anne Daly, and Taylor-Leigh, Inc.

MS. LANZA: Marisa Lanza from Milber, Makris, Plousadis & Seiden for the Defendants, James T. Martino and James Thomas Martino, Architect, P.C.

Page 81

1  Q. Did he say anything?
2  A. No, no. He laughed. He put his M on
3  it. He approved it and couldn't wait to get the
4  money.
5      MR. WISSER: Objection. Move to strike.
6  BY MR. MARTIN:
7  Q. When you say "he couldn't wait to get
8  the money," did he say anything to you in that
9  regard?
10  A. Yeah -- not that I recall exactly on a,
11  you know, a particular instance, but in most
12  instances, he approved it and sent it down that
13  same day for payment.
14  Q. Turn to the third page of Exhibit 8.
15  And what is that document?
16  A. That was a cover letter that I wrote to
17  Jim Martino telling Jim that I reviewed and I
18  approved the -- it was a normal type of cover
19  letter that I would put together.
20  Q. And --
21  A. In most instances, just to have Jimmy
22  sign off on the paperwork.
23  Q. Does this document contain your
24  signature?
25  A. Yes, it does.

Page 82

1  Q. Does it contain Mr. Daly's signature?
2  A. Yes, it does.
3  Q. Did you send it to Mr. Martino?
4  A. I don't think I sent it to Mr. Martino,
5  no.
6  Q. Did you hand-deliver it?
7  A. Jimmy probably would have gotten the
8  whole package, and this was either done in my car
9  while we were driving up to Crown office, because
10  that's how we normally did it; or, I would have the
11  whole stacks of pay applications, of which I would
12  give it all to Jimmy to sign. You know, just --
13  you know, just major stacks.
14      Speaking out of turn, Jimmy had nothing
15  to do with what transpired with this -- with these
16  actions. I told Jimmy, because if Jimmy would ask
17  me a question, I would say: Jimmy, it's on a
18  need-to-know basis what we are doing and you just
19  don't need to know.
20  Q. Well, okay.
21  A. All right. So --
22  Q. With regard to Mr. -- let's pause on
23  that for a moment.
24      With regard to Mr. Martino, you've
25  looked -- in preparing for your deposition, you've

Page 83

1  looked through a lot of documents, correct?
2  A. Yes, I certainly have.
3  Q. The -- and you've looked through a lot
4  of these AIA forms just like -- similar to the one
5  that's marked as Deposition Exhibit Number 8,
6  correct?
7  A. Correct.
8  Q. And it's fair to say that most of those
9  AIA forms have either Mr. Martino's signature on it
10  or a signature, your signature, which Mr. Martino
11  gave you authority to sign on his behalf, correct?
12      MS. LANZA: Objection to form.
13      THE WITNESS: That's correct.
14  BY MR. MARTIN:
15  Q. And the -- you and Mr. Martino had
16  discussions with regard -- with regard to the
17  subject matter here today, correct?
18      Let me ask you in a different way,
19  Mr. Beacher.
20      Mr. Martino from time to time came to
21  you and told you that he thought things were
22  suspicious with regard to some of these invoices?
23      MS. LANZA: Objection. Leading.
24      MR. WISSER: Join in the objection.
25      THE WITNESS: I don't know if we ever

Page 84

1  had that kind of a discussion.
2  BY MR. MARTIN:
3  Q. Did Mr. Martino ever ask you what some
4  of these invoices were for?
5      MS. LANZA: Same objection.
6      THE WITNESS: When they were submitted?
7  No, never asked me about any invoice, whether
8  it was legitimate or it was fictitious. Just
9  sign it off and let's get going because, you
10  know, we have so much work to do.
11  BY MR. MARTIN:
12  Q. The -- when does the conversation -- you
13  just told us about a conversation with Mr. Martino
14  in which he asks you about invoices and you say:
15  Jimmy, it's on a need-to-know basis?
16  A. It would -- it would --
17  Q. How did that conversation come about?
18      MR. WISSER: Hold on.
19      MS. LANZA: It mischaracterizes his
20  prior testimony.
21      MR. WISSER: Leading, and it is
22  mischaracterization of testimony. Also, so
23  that we have a clear record, let's make sure
24  you finish before he answers.
25      THE WITNESS: I apologize.