**Steffian Bradley Architects**   Boston • London

February 13, 2004

Lawrence S. Schaner, Esquire
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611-7603

RE:   Crown Theatres, LP v. Milton Daly, et al.
      SBA Project No. 707.000

Dear Attorney Schaner,

The following is a supplement to my September 25, 2003 report on the above referenced matter.

- <u>Materials Reviewed Since September 25, 2003</u>

   I have reviewed the drawings prepared by James Thomas Martino, Architects, P.C. (Martino) and their consulting engineers for the following six Crown Theatre complexes: The Grand, Miami FL; Annapolis Mall, Annapolis MD; Quarry Road, Trumbull, CT; Abocoa, Jupiter, FL; 18 Theatre Complex, Skokie, IL; and New Park Avenue, Hartford, CT. I have also been present at the first day (January 15, 2004) of the Deposition of Mr. James T. Martino and have a copy of the Martino second day deposition transcript. I have observed the deposition of Mr. Richard Michael Waas of Waas Construction Co. of Miami FL taken on February 4, 2004 and have a copy of the transcript. I have seen or have copies of the Exhibits to each of the above depositions.

   I have read the Deposition Transcripts of Glenn Todd Garfinkel, in house council to Crown Theatres, L.P. and the Deposition Transcript of Frederick C. Hamilton CPA, CFF of Kroll Zolfo Cooper, as well as read his report on the case dated September 30, 2003.

   I have read the agreement for services between James Thomas Martino, Architect P.C. and R. D. Scinto, Inc. for the Crown Marquis Theatre, Tudor Lane, Trumbull, CT, dated July 8, 1998 revised (Martino Project No. 96-1259).

- <u>Observations</u>

   Mr. Martino in his Depositions stated more than once that his scope of services for each theatre project for Crown Theatres, L. P. was as described in his letter agreement between James Thomas Martino, Architect, P.C. and R. D. Scinto, Inc. for the Crown Marquis Theatre in Trumbull, CT. (Trumbull Agreement)

   The Trumbull Agreement among other things says the following:

Architecture

Urban Design

Planning

Interiors

Lighting

100 Summer Street
Boston, MA
02110.2106

T 617.305.7100
F 617.305.7199

www.steffian.com

"NOTE: This agreement specifically excludes any site development work, I.E.: site drainage, site lighting, landscaping, contour designs, etc.

**Pre Construction Phase:** This firm shall prepare Bid Documents in accordance with Crown Theatres Lease Requirements and shall assist R. D. Scinto, Inc. in providing information and assistance to all bidders during bidding process. This firm will participate in preparing the Construction Contract between the General Contractor and the Developer. This firm will also respond to any municipality or utility company requests concerning the proposed Addition/Alteration to the Crown Marquis Theatre only."

"**Building Construction Phase:** This firm shall review for approval all shop drawings, samples and submissions as called for in the Construction Documents for conformance with the project requirements and compliance with all Building Codes pertaining to this project. An authorized representative of James Thomas Martino, Architect, P.C. shall visit the Site at an interval of one (1) per month for the purposes of verifying that the "As-Built" conditions are in full compliance with the Construction Documents. Included in this Agreement is a total of ten (10) site visits. Should Additional Site Visits be required, each site visit will be billed monthly (See Additional Services)."

R. D. Scinto, Inc. shall furnish a certified land survey of the site to this Architect. The survey shall include all existing grades and contours, "As-Built" conditions, lines of streets, alleys, pavements, adjoining properties, rights-of-way, easements, zoning, etc. Additionally, R. D. Scinto will also provide any and all information concerning available utilities, required Borings, Soils Reports and Geotechnical Reports. The Soils Reports shall include foundation design recommendations, foundation drainage recommendations, rock removal and mass rock evacuation."

- Conclusions

From Mr. Martino's agreement on the Trumbull CT project, we see that Martino has agreed to perform conventional Standard Basic Services except where he excludes all site development work from his scope of service. Given that Martino claims that the Trumbull Agreement is the basis for the other five Crown Theatre projects scope of work it follows that Martino excluded site development work from his scope of services on the Miami, Jupiter, Hartford, Annapolis and Skokie projects.

In reviewing the Crown Theatres leases for each of the six Crown Theatre projects for which Martino was the Architect, one finds that the site development work was always the responsibility of the landlord with no direct cost to Crown Theatres. I understand that Martino was sent copies of each Crown Theatre lease for his review and comment and to guide him in to performing his services as noted in the Trumbull agreement.

In reviewing the James Thomas Martino, Architects, P.C. drawings for the six Crown Theatre projects we found that Martino and his consulting engineers designed and documented no site development work beyond the theatre complex building with the exception in some cases of



the sidewalk immediately adjacent to the building and the documentation of the entry points for electric, telephone, water and sewer utilities serving the buildings.

Looking specifically at the Miami and Jupiter Theatre projects we find in Martino Exhibit 11 a list of 69 <u>Qualifications To Contract</u> dated September 7, 1999 for the <u>Crown Theatre Miami Lakes "The Grand"</u> project to be constructed by Waas Construction Co.

Looking at individual numbered qualifications we find:

>68. THE FOLLOWING ITEMS BY OTHERS
>
>   E) ALL CIVIL IMPROVEMENTS EXCEPT FOR SIDEWALKS ADJACENT TO BUILDING
>   F) ALL LANDSCAPING
>   H) ALL SURVEYS
>
>69. THE CONTRACTOR SPECIFICALLY EXCLUDES ALL SITE DEVELOPMENT WORK, UNDERGROUND UTILITIES, SITE PREPORATION AS WELL AS ANY WORK NOT INDICATED IN THE CONSTRUCTION DOCUMENTS PREPARED BY JAMES MARTINO, ARCHITECT.

The entire list of Qualifications to the Contract for the Miami Construction Contract was forwarded to Martino from the owner's representative Bob Beacher of BB Construction on 10/4/99 with a hand written note as follows:

> "Jim, use this for a guide to the Jupiter V.E. work. These are the items we accepted on Miami"

This document further verifies that Martino had detailed knowledge that the site development work was not part of the Crown Theatres Contract for construction with Wass Construction Co. We further know that the site development work was not to be included in the Crown Theatres Jupiter project.

In reviewing the Crown Theatre Jupiter project we see that Martino has followed the instructions from BB Construction and has not shown any site development work in the Contract Documents prepared by James Thomas Martino, Architects and their consulting engineers. In fact the sidewalk immediately adjacent to the theatre building is dotted in, not hard line drawn, indicating that it is not part of the scope of work. Also on drawings A-18, A-26 and A-24, Martino has included the following note:

> "Note:
>
> All site work I.E. concrete sidewalks, concrete curbs, asphalt paving, etc. to be supplied and installed by the Developer (NIC)."



Also on structured drawing S-1 and S-10 sidewalks are shown however the drawings are also noted"

"All sidewalks are NIC"

NIC is the standard industry abbreviation for NOT IN CONTRACT.

In looking at the monthly Applications and Certificates for Payment, AIA Document G702, submitted by Waas Construction Company for the Miami Crown Theatres project (Martino Exhibit 13 and 14) we see on the continuation sheets a breakdown of the various categories of work under Column B, Description of Work, and the dollar value of each category under Schedule of Work under Column C, we see expressed in the first four items: 01 - Excavation & Fill; 02 - Soil Treatment; 03 - Building Concrete; and 04 - Lightweight Concrete the description and cost to Waas Construction for work which includes the site work, foundations and adjacent sidewalk associated with the Crown Theatre building. The cost of these four line items is over one million dollars.

These Applications and Certificates for Payment as well as others were reviewed, signed and certified by Martino as Architect for the project.

Martino also reviewed, signed and certified payment applications submitted by Marlin Contracting through BB Construction for added "Site Preparation" under a lump sum amount of $700,000 as well as six additional change orders totaling $113,845 worth of change orders, (Martino Exhibits 8 and 9).

Martino knew, should have known or should have questioned the Marlin Applications for Payment and not signed and certified them for payment by Crown since the work was:

- Obviously outside the scope of the Crown Theatres Contract with Waas Construction Co.

- Undocumented by Marlin or BB Construction.

- A large Lump Sum amount of $700,000 without the expected breakdown of the Description of Work and Schedule of Values enabling the architect to calculate and verify the amount of work completed and its value.

- Unknown to Martino since he was unaware of its need, scope and cost.

- Not documented in the Martino Contract Documents including those of his consulting Engineers.

- Not observed at the site by Martino as being performed.

- Also the address used by Marlin Contracting was the same as Bob Beacher's Florida home, which Martino had visited.



In looking at the Jupiter project we see a repeat of the devious procedures practiced in Miami.

> Martino signed and certified to the applications for payment from the general contractor which indicated the scope and cost for the site work, excavation, back fill, foundations etc. for the site work necessary only to build the Crown Theatre building.
>
> Again Martino signed and certified applications for payment from BB Construction for extra site work performed by Marlin Contacting. In the Jupiter projects the initial extra site work cost was for one million seventy thousand dollars ($1,070,000) with additional change order work totaling another $199,400.
>
> In both Miami and Jupiter Martino also signed and certified the added site work out of sequence. In Miami, Martino, not having certified to the first three applications for payment for portions of the $700,000 of added site preparations (Martino Exhibits 5, 6 and 7) certified to applications for payment four and five. At the Crown Theatre project in Jupiter FL, Martino signed and certified application for payment numbers 2 through 6 skipping number 1 and 7. These are highly questionable and unprofessional practices. (Martino Exhibits 19 through 23).
>
> Mr. Martino's signing and certifying numerous applications for payment by Crown Theatres without knowing what work was performed, if at all, or that it was not the responsibility of his client Crown Theatres to perform or to pay for; and knowingly that the certifications were performed without on-site personal visual verification of the completed work. These practices represent an extreme dereliction of the architect's duty to his client and in my professional opinion represent gross negligence on the part of James T. Martino.
>
> In Martino's second day of depositions, Mr. Martino admitted to making "seven or eight" payments to Crown Theatres Owner's Representative, Bob Beacher. Four such payments totaled over $90,000 and were characterized by Martino as "referral fees" to Beacher for Crown Theatres' work. These referral fees or kickbacks were unknown to Crown Theatres, Martino's client, and thus would be characterized as unethical conduct by both the American Institute of Architects (AIA) and the National Council of Architects Registration Board (NCARB) of which Mr. Martino is a member
>
> The AIA's Ethical Standard states:
>
> > E.S.3.2  Conflict of Interest: Members should avoid conflicts if interest in their professional practice and fully disclose all unavoidable conflicts as they arise.
>
> The AIA's Rule goes on to explain:
>
> > Rule 3.201  A Member shall not render professional services if the Member's professional judgment could be affected by responsibilities to another project or person, or by the Member's own interests, unless all those who rely on the Member's judgment consent after full disclosure.



The NCARB Rules of Conduct states:

> 5.3   An architect shall neither offer nor make any gifts, other that of nominal value (including for example, reasonable entertainment and hospitality), with the intent of influencing the judgment of an existing or prospective client in connection with a project in which the architect is interested,

In my opinion Mr. Martino has severely broken the trust of his client Crown Theatres and thus violated the ethical standards of the profession of architecture as promulgated by the American Institute of Architects and the National Council of Architectural Registration Boards.

I further believe if researched, Mr. Martino would be found to have breached the laws, rules, regulations and ethical standards of each and every state where he is registered.

Mr. James T. Martino has not lived up to the standard of care expected of an architect performing the services he preformed in each location.

I am in the process of reviewing other information and reserve the right to amend and supplement this report should I learn further information that might be relevant to this matter.

Respectfully Submitted,

*Peter Steffian*

Peter Steffian, FAIA, NCARB
Principal