UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CROWN THEATRES, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02CV2272AVC |
| ) | Jury Trial Demanded |
| MILTON L. DALY, TAYLOR-LEIGH, ) | |
| INC., ANNE E. DALY, JAMES C. ) | |
| CELLA, G.U.S. DEVELOPMENT, INC., ) | April 30, 2004 |
| JAMES T. MARTINO AND JAMES ) | |
| THOMAS MARTINO, ARCHITECT, ) | |
| P.C., and RCD HUDSON, LLC, ) | |
| ) | |
| Defendants. ) | |

**CROWN THEATRES' LOCAL RULE 56(a)(1) STATEMENT
IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AGAINST MILTON L. DALY AND TAYLOR-LEIGH, INC.**

In support of its Motion for Summary Judgment Against Milton L. Daly and Taylor-Leigh, Inc., as to Counts VII, X, XIV, XVI, and XXI of the Second Amended Complaint, Plaintiff Crown Theatres, L.P., hereby files this Statement pursuant to Local Rule 56(a)(1).

**STATEMENT OF MATERIAL UNDISPUTED FACTS**

1.  Defendant Milton L. Daly ("Daly") was the executive vice president and chief operating officer of Crown Theatres, L.P. ("Crown Theatres") from early 1996 until June 2001. (Deposition of Milton L. Daly, May 21, 2003 ("Daly Dep. I") at 15 (Exhibit A);[a] Deposition of Milton L. Daly, August 5-6, 2003 ("Daly Dep. II") at 52, 76-77 (Exhibit B).) He reported to Daniel Crown, president of Crown Theatres. (Daly Dep. II at 77.)

2.  Daly was responsible for implementing the policies and procedures of Crown Theatres, for negotiating on its behalf, and for its financial viability. (Daly Dep. II at 80.)

---

[a] The exhibits hereto are contained in Crown Theatres' separate appendix in support of its Motion for Summary Judgment Against Milton L. Daly and Taylor-Leigh, Inc.

JZG/32310/2/677018v1
04/30/04-HRT/

His duties included overseeing a large movie theatre expansion program, which involved construction projects at sites throughout the United States. (Id. at 87-91.) In that role, he was responsible for approving construction-related expenditures. (Id. at 191-93, 358-60.)

3. Daly retained Robert Beacher ("Beacher"), a construction consultant, and his firm B.B. Construction Consultants, to provide consulting and construction-related services in connection with the theatre projects. (Id. at 114-15; Milton Daly and Taylor-Leigh, Inc.'s Responses to Crown Theatres' Second Set of Interrogatories and Requests for Production, dated May 23, 2003 ("Daly Resp. to 2nd Interrog.") No. 15, (Exhibit C).)

4. Daly and Beacher devised a scheme to steal money from Crown Theatres, by which Beacher, through B.B. Construction and other entities that he controlled (collectively, the "Beacher entities"), submitted sham invoices to Crown Theatres, which Daly approved and caused Crown Theatres to pay. (Daly Dep. II at 204-06; see also Deposition of Robert L. Beacher ("Beacher Dep."), February 25-26, 2004, at 15-16 (Exhibit D).)

5. Many of the invoices were submitted on behalf of fictitious entities that performed no work. (Beacher Dep. at 15-16.)

6. The fictitious entities included: Marlin Consulting, Inc.; Hewlett Consulting, Inc. and Tiger Consulting, Ltd. These entities had no employees and performed no work on any of the theatre projects. Beacher submitted to Daly bills on behalf of these entities for millions of dollars worth of phantom services. (Testimony of Frederick C. "Kip" Hamilton, Prejudgment Remedy Hearing, September 18, 2003 ("Hamilton PJR Testimony") at 24-26 (Exhibit E).)

7. Contractors on the theatre projects presented applications for change orders to Beacher, who then, directly or through one of the Beacher entities, created new

invoices that inflated the amounts purportedly due. Beacher submitted the inflated invoices to Crown Theatres, which paid the inflated charges. Beacher then paid the contractors the amounts that they had invoiced. He and Daly pocketed the difference. (Exhibit F.)

8. The proceeds from the Daly/Beacher scheme were divided 70/30, with 70 percent going to Daly and 30 percent going to Beacher. (Id.; Daly Dep. I at 134-36; see also Beacher Dep. at 17; Daly Resp. to 2nd Interrog. No. 15.)

9. Between approximately 1996 and May 2001, Daly caused Crown Theatres to pay in excess of $6 million to Beacher's companies. (Daly Dep. II at 207.) Of this amount, at least $4.2 million was passed through to Daly by Beacher, by way of defendant Taylor-Leigh, Inc. (Id.; Daly Dep. I at 136-38.)

10. In all, Beacher and Daly misappropriated at least $6.016 million.[b] (Report of Frederick C. "Kip" Hamilton ("Hamilton Report"), dated September 30, 2003, at 10 (Exhibit G).)

11. Once at Taylor-Leigh, the funds were distributed across a wide range of Daly and his wife's personal accounts and liabilities. (Declaration of Frederick C. "Kip" Hamilton, dated April 21, 2004 ("Hamilton Decl."), ¶¶ 5-11 (Exhibit K).)

12. Daly used the money taken from Crown Theatres for a wide range of activities that benefited himself and his family, including payments for home renovations, car

---

[b] Recently discovered documents disclose that the amount misappropriated from Crown Theatres, in fact, exceeds $6.9 million, approximately $900,000 more than was earlier believed. (Updated Kroll Analysis, attached hereto as Exhibit J.) If this matter proceeds to trial, Crown Theatres will be prepared to prove damages using the $6.9 million figure. However, for the purposes of this motion and to eliminate possible factual disputes, Crown Theatres assumes that the amount taken was $6.016 million. Daly and Beacher each admit that at least $6 million was wrongfully taken. (Daly Dep. II at 207; Beacher Dep. at 14.)

3

payments, groceries, credit card bills, mortgage payments, investments in the stock market and an investment in a movie theater. (Hamilton Decl. ¶ 12.)

13. Daly resigned from Crown Theatres on June 1, 2001, following Crown Theatres' discovery that the movie theatre renovation and construction projects were experiencing large cost overruns. (Daly Dep. II at 20, 174-76.)

14. Daly admitted at his depositions that he caused Crown Theatres to pay at least $6 million, and that he and his wife received at least $4.2 million of this amount. (Daly Dep. I at 34-37; Daly Dep. II at 207.) He further admitted that, in exchange for this money, neither he nor Taylor-Leigh, Inc. performed any work. (Daly Dep. I at 36-37.)

15. Daly admitted at his depositions that he and Beacher entered into an agreement by which they would split money that Crown Theatres paid Beacher. (Daly Dep. I at 35-36.)

16. Daly admitted at his deposition that the funds taken from Crown Theatres would be divided 70/30, with Daly receiving 70%. (Daly Dep. II at 227.)

17. Daly acknowledged that approximately $6 million was taken from Crown Theatres and that 70 percent of this amount, or approximately $4.2 million, wound up in accounts that he controlled. (Daly Dep. II at 207.)

18. Daly also admitted that his involvement in the scheme with Beacher was not disclosed to Crown Theatres (Daly Dep. II at 218-19), that his actions were wrong, and that they constituted self-dealing. (Daly Dep. II at 139.)

19. Daly further admitted that he "had a fiduciary responsibility," and "[t]hat [his] fiduciary responsibility was not upheld by self-dealing." (Daly Dep. I at 141; see also Defendant Milton L. Daly's Memorandum in Opposition to Motion to Compel Production of

4

Documents, dated March 15, 2004, at 2 ("[T]he defendant has admitted, since the inception of this litigation, that he was responsible for "self dealing" and that he violated his fiduciary duty as an officer of the plaintiff.").)

        CROWN THEATRES, L.P.

By: _____
H. James Pickerstein (Bar No. Ct 05094)
Jodi Zils Gagné (Bar No. Ct 24376)
PEPE & HAZARD, LLP
30 Jelliff Lane
Southport, CT 06490
(203) 319-4000
(203) 259-0251 (fax)
hpickerstein@pepehazard.com
jgagne@pepehazard.com

and

Craig C. Martin (Bar No. Ct 12198)
Lawrence S. Schaner (Bar No. Ct 24756)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350
(312) 840-7776 (fax)
cmartin@jenner.com
lschaner@jenner.com

Dated: April 30, 2004

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have served all counsel of record in this action with a copy of the foregoing by mailing a copy of the same by United States Mail, postage prepaid, to the following parties:

Kerry M. Wisser
Weinstein & Wisser, P.C.
29 South Main Street
Suite 207
West Hartford, CT  06107

Marisa Lanza
Milber, Makris, Plousadis & Seiden, L.L.P.
108 Corporate Park Drive
Suite 200
White Plains, NY  10604

Robert M. Frost
Zeldes, Needle & Cooper P.C.
1000 Lafayette Blvd.
P.O. Box 1740
Bridgeport, CT  06601

_____
Jodi Zils Gagne

Dated:  April 30, 2004

JZG/32310/2/677018v1
04/30/04-HRT/