UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
CROWN THEATRES, L.P.,                         Case No. 3:02 CV 2272 (AVC)

                    Plaintiff,

        -against-

MILTON L. DALY, TAYLOR-LEIGH, INC.
ANNE E. DALY, JAMES C. CELLA, G.U.S.
DEVELOPMENT, INC., JAMES T. MARTINO,
JAMES THOMAS MARTINO ARCHITECT,
P.C. and RCD HUDSON, LLC,

                    Defendants.
---------------------------------------------------------------X
JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECT, P.C.

                    Third-Party Plaintiffs,

        - against –

B.B. CONSTRUCTION CONSULTANTS,              April 23, 2004
LTD., DAVID CLIFFORD, and GLENN
GARFINKEL,

                    Third-Party Defendants.
---------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE MARTINO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT IN REGARD TO COUNTS VIII AND IX OF
THE PLAINTIFF'S SECOND AMENDED COMPLAINT.**

In Counts VIII (breach of contract) and IX (professional negligence) of the Second Amended Complaint, the Plaintiff alleges that Defendants James T. Martino and James Thomas Martino Architects, P.C. (the "Martino Defendants") are liable for breach of contract and professional negligence. These claims are uncognizable as a matter of law for three reasons. First, this Court should dismiss all claims against the Martino Defendants on the grounds that the

intentional conduct of third parties in allegedly conspiring to embezzle monies from multiple construction projects constitutes a superceding cause that severs any causal chain between the alleged negligent conduct on the part of the Martino Defendants and Plaintiff's claimed injuries.

Second, Count IX of Plaintiff's Second Amended Complaint sounding in negligence should be dismissed on the grounds that Count VIII of Plaintiff's claim asserts a breach of contract claim against the Martino Defendants for the same conduct. A breach of contract claim can not be transformed into a tort claim absent a violation of a legal duty independent of the contract itself.

Third, four out of twenty-nine payment applications allegedly negligently approved by the Martino Defendants are time-barred under the applicable statute of limitations.

Accordingly, as set forth in greater detail below, the Martino Defendants are entitled to the entry of an Order for summary judgment dismissing all of Plaintiff's claim.

## THE SUMMARY JUDGMENT STANDARD

A Court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court "asks whether the pleadings, discovery and affidavits, if any, show that there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law." Hansen v. Continental Ins. Co., 940 F.2d 971, 975 (5th Cir. 1991). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Moreover, pursuant to F.R.C.P. 56(d), the court may grant partial summary judgment as to a portion of plaintiff's claim, and substantially narrow the issues

2

that might remain in the case. <u>See</u> <u>Yale Transp. Corp. v. Yellow Truck & Coach Mfg. Co.</u>, 3 F.R.D. 440, 441 (S.D.N.Y. 1944).

## PERTINENT FACTS

Crown Theatres, P.C. ("Crown") commenced this action on December 20, 2002 seeking recovery of damages and other relief on various grounds. All of Crown's allegations in connection with the Martino Defendants stem from the Martino Defendants performance of architectural services. As to the remaining defendants, Crown alleges that this case concerns a large, financial fraud under which Daly, Crown's former chief operating officer, Robert Beacher, Crown's owner representative, and to some degree James Cella engaged in an illicit scheme to misappropriate approximately $6.2 millions dollars from Crown in connection with its construction of six movie theatres.

According to Crown, Daly was responsible for, without limitation, oversight of all operations, finance, human resources, legal and corporate administration functions. He was also responsible for managing and overseeing Crown's construction projects, including its renovation and expansion programs, for approving all invoices for payment from Crown to third parties relating to the construction activities, and for approving and signing all checks made payable to third parties by Crown if the amount of the check exceeded $5,000. <u>See</u> Crown's Second Amended Complaint at ¶¶ 36-37, as Exhibit A to Certification of Mark Seiden (hereinafter "Seiden Certif."). Daly in connection with his responsibilities retained the services of Robert Beacher ("Beacher") of B.B. Construction Consultants, Ltd. ("B.B. Construction") as Crown's construction consultant, on-site representative and owner's representative in connection with Crown's expansion program. <u>See</u> Crown's Second Amended Complaint at ¶43 as Exhibit A to Seiden Certif. Crown contends that Daly and Beacher prepared and submitted false "application

3

and certificate for payment" (AIA Form G702) and over-inflated construction invoices for approximately $6.2 million dollars. Daly admits that he did entered into an "arrangement" with Beacher, but maintains that the "arrangement" was to share profits realized by Beacher's companies for work performed by Beacher's various entities on behalf of Crown. Irrespective of the source of the money, Daly and Beacher split the monies received on a 70/30 split, wherein Daly received 70% and Beacher received 30%. Crown has never asserted that the Martino Defendants were involved or aware of the arrangement between Daly and Beacher. Crown has asserted numerous causes of action in its Second Amended Complaint on various grounds including, violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §1961, *et seq.*, fraud, conversion, civil conspiracy, unjust enrichment, statutory theft, and violation of the Connecticut Unfair Trade Practice Act, Conn. Gen. Stat. §42-110, *et seq.*, against Milton Daly, Taylor-Leigh, Inc., Anne E. Daly, James Cella, GUS Development and RCD Hudson.

As to the Martino's Defendants, Crown alleges two counts (Counts VIII and IX) sounding in breach of contract and professional malpractice. Specifically, Crown alleges that the Martino Defendants were negligent and breached its contract with Crown by: (1) failing to provide construction inspection of each of the projects and (2) certifying to Crown Theatres, without conducting on-site inspection or reviewing pertinent dates, that the work progressed as indicated in the payment applications, that the quality of the work was in accordance with the contract documents, and that the contractor was entitled to payment. *See* Crown's Second Amended Complaint at ¶¶ 247 and 251 as Exhibit A to Seiden Certif. The underlying bases for asserting the breach of contract and negligence claims against the Martino Defendants are identical.

## LEGAL ARGUMENT

### POINT I

### THIS COURT SHOULD DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT BECAUSE SINCE THE ALLEGED CONDUCT BY THE MARTINO DEFENDANTS WAS NOT THE PROXIMATE CAUSE OF PLAINTIFF'S CLAIMED INJURY, AS A MATTER OF LAW.

It is hornbook law that in any negligence claim, the plaintiff has the burden of proof to establish that the defendant owed a duty of care, which was breached by the defendant's failure to meet the appropriate standard of care and that breach was the proximate cause of the actual harm suffered by the plaintiff. Coburn v. Lenox Homes, Inc., 186 Conn. 370, 441 A.2d 620 (1982); Coste v. Riverside Motors, Inc., 24 Conn. App. 109, 585 A.2d 1263 (App. 1990).

Connecticut has long recognized the concept of "proximate cause" as a limitation on the extent to which the law will trace the consequences of negligent act. Paige v. St. Andrew's Roman Catholic Church Corp., 250 Conn. 14, 734 A.2d 85 (1999); Coburn v. Lenox Homes, Inc., 186 Conn. 370, 441 A.2d 620 (1981); see also Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99 (1928). In other words, in order to state a cognizable claim, the negligence must be a substantial factor in producing the injuries. See Grody v. Tulin, 170 Conn. 443, 365 A.2d 1076 (1976). A claim is not cognizable if the conduct of a third-person or other forces intervened breaking the causal chain thereby preventing the defendant from being liable for the harm caused by another's conduct. See Burns v. Gleason Plant Sec., Inc., 10 Conn. App. 480, 523 A.2d 940 (App. 1987).

A)  **The Alleged Negligent Conduct Of The Martino Defendants Was Not The Substantial Factor in Causing Plaintiff's Alleged Damages And Thereby Not The Proximate Cause Of Crown's Damages**

In support of its breach of contract and negligence claims against the Martino Defendants, Plaintiff would need to establish that the Martino Defendants alleged negligence in

5

the processing of contractors' pay applications proximately caused Defendant Daly and Beacher/B.B. Construction to willfully embezzle $6.2 million from Crown. Even assuming for purposes of this motion only, a departure from the applicable standard of professional care in processing pay applications, such negligence could not have proximately caused Daly and/or Beacher to manifest the intent to embezzle monies from Crown. Accordingly the claims against the Martino Defendants fail as a matter of law.

Plaintiff must prove not only a departure from the standard of professional care, but also that the departure is the substantial factor in the resulting harm and thereby the proximate cause of that harm. Boehm v. Kish, 201 Conn. 385, 517 A.2d 624 (1986); Kowal v. Hofher, 181 Conn. 355, 436 A.2d 1 (1980); Coburn v. Lenox Homes, Inc., 186 Conn. 370, 441 A.2d 620 (1981). "A causal relationship between the defendant's wrongful conduct and the plaintiff's injury is a fundamental element without which a plaintiff has no case." Grody Grody v. Tulin, 170 Conn. 443, 448, 365 A.2d 1076 (1976) *citing* Lombardi v. J.A. Bergren Dairy Farms, Inc., 153 Conn. 19, 22, 213 A.2d 449 (1965). "If the chain of causation of the damage, when traced from the beginning to the end, includes an act or omission which, even if wrongful or negligent, is or becomes of no consequence in the results or so trivial as to be a mere incident of the operating cause, it is not such a factor as will impose liability for those results." Grody at 448-449 *citing* Connellman v. Coffy, 122 Conn. 136, 142, 187 A. 901 (1936). "Reasonable anticipation is not the basis upon which proximate causation is determined." Mourison v. Hansen, 128 Conn. 62, 20 A.2d 84 (1941). The Plaintiff is only entitled to recovery of those damages proximately caused by the defendants' wrongdoing. Id. Thus, even though a defendant may have breached a duty of care to a plaintiff, if that breach was not a proximate cause of the injury, there can be no liability. Id.

6

Typically proximate cause is a question of fact, however it becomes a question of law appropriate for summary judgment, when "the mind of a fair and reasonable person could reach only one conclusion." Coste v. Riverside Motors, Inc., 24 Conn. App. 109, 114, 585 A.2d 1263 (App. 1990) *citing* Hughes v. National Car Rental, Inc., 22 Conn. App. 586, 577 A.2d 1132 (App. 1990); Burns v. Gleason Plant Security, Inc., 10 Conn. App. 480, 523 A.2d 940 (App. 1987). Based on Plaintiff's Second Amended Complaint and accepting the allegations against the Martino Defendants as true (for the sole purpose of this motion), a fair and reasonable person could reach but one conclusion, *i.e.* that Crown's damages were the direct and sole result of the intentional conduct of Daly and Beacher.

Connecticut courts recognize legal causation has having two components, both of which need to be satisfied to establish that the defendant's conduct was the legal cause of the plaintiff's harm/injury. The first is "cause in fact" -- would the injury have occurred was it not for the defendant's alleged wrongful conduct. Stewart v. Federated Department Stores, Inc., 234 Conn. 597, 662 A.2d 753 (1995); Coburn supra.; Merhi v. Becker, 164 Conn. 516, 325 A.2d 270 (1973); *see also* Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99 (1928) (Andrews, J., dissenting)(In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice.) In other words, the injury would not have occurred in the precise way that it did occur but for the defendant's conduct. Boehn v. Kish, 201 Conn. 385, 517 A.2d 624 (1986); Coste, supra.

The second component is "proximate cause" or "legal causation," which is satisfied if the plaintiff can prove that the defendant's conduct was a substantial factor in the resulting harm, a reasonable connection between the act or omission of the defendant and the harm suffered by the

7

plaintiff. Stewart, supra. "Proximate cause results from a sequence of events unbroken by a superceding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." Coburn at 20 (citations omitted). Therefore, an intervening cause, such as a criminal or intentional act, may relieve a defendant of liability when, in those circumstances, the chain of proximate cause is broken. Mumley v. Lenco Industries, Inc., 1999 U.S. App. LEXIS 4234 (2d Cir. March 15, 1999)(The intervening cause defense is designed to relieve defendant of liability in those instances where the chain of proximate cause is broken.); Burns v. Gleason Plant Security, Inc., 10 Conn. App. 480, 523 A.2d. 940 (App. 1987)("Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superceding cause may break that causal connection if it so entirely supersedes the operation of the defendant's negligent that it alone, without his negligence contributing thereto in any degree, produces the injury; or it must be the non-concurring culpable act of a human being who is legally responsible for such act").

(i) **Causation-in-fact has not been established as Crown's injury would have occurred irrespective of the alleged conduct of The Martino Defendants.**

Assuming *arguendo*, that Crown may establish that the Martino Defendants processing of pay applications constituted a departure from the applicable standard of professional care, which is expressly denied, cause-in-fact is not established, as the alleged acts do not bear a legal and causal connection to the alleged injuries sufficient to establish a cognizable claim. The decisive question in the present case is whether the facts presented by the plaintiff and accepted true for the purpose of this motion, are sufficient to support an inference of causation in fact. *See* Boehm, supra. Plaintiff's essential argument is that had the Martino Defendants not signed the allegedly fraudulent invoices, Crown Theatres would not have paid those invoices and the "arrangement/pattern" would have been exposed. *See* Second Amended Complaint ¶¶ 248, 254

8

& 255 as Exhibit A to Seiden Certif. However, based on the pre-trial record, Crown would have sustained its alleged injuries irrespective of the conduct of the Martino Defendants.

Crown's theory is flawed for several reasons. First, assuming the Martino Defendants had not signed the payment applications, Crown would still have suffered the same damages through the alleged misappropriation of funds by Daly and Beacher (the "arrangement"). Daly was the Chief Operating Officer of Crown. He was responsible for the day-to-day operations of the company, including overseeing and authorizing the payment of pay applications. There is no dispute as to the duties and responsibilities of Daly. *See* Plaintiff's Second Amended Complaint at ¶¶6-9 as Exhibit A to Seiden Certif. Since Crown retained the full time services of a construction manager for the projects, Crown determined that there was no need for the Martino Defendants to make extensive site visits on each of the projects, since the services would be duplicative of those of the construction manager, Beacher. *See* James Martino Deposition Transcript, dated January 15, 2004, at pp. 109-111 as Exhibit G to Seiden Certif.

In fact, Crown's accounting department was instructed to pay any type of invoice, including payment applications, as long as it contained Daly's original signature. *See* David Clifford Deposition Transcript, dated March 12, 2004 at pp. 175-177 as Exhibit J to Seiden Certif. The accounting department was not relying upon the Martino Defendants in processing and paying pay applications. David Clifford, the former executive vice president and chief financial officer for Crown from 1996 to 2002, testified that it was the policy and procedure for the accounting to department to pay invoices subject to Daly's approval. The accounting department made no inquiry into whether the Martino Defendants' had approved the pay applications.

Q: So according to the individual who actually received the pay application in the accounting department they were looking just to determine whether Mr. Daly's signature was on the pay app to pay it?

A: It there was a big M on it, it had come back to them through Milt, it was to be paid.

Q: If there are pay applications that do not have Mr. Beacher's signature on it or do not have Mr. Martino's signature on it but had Mr. Daly's they would still be paid?

A: Correct.

Objection

Q: Is that true?

A: Yes. Because they didn't know – they were looking for Milt's signature. They did not know Jim Martino's signature should be on it or Bob Beacher's. It's not normal procedure.

Q: So the normal procedure in Crown was as long as it had Mr. Daly's signature on it certain pay applications or invoices could be paid?

A: It if had Mr. Daly's signature on them, my signature on it or Dan Crown's signature on it it would be paid.

Q: So it's only those three signatures - - -

A: Or Glenn Garfinkle. Glenn Garfinkle had signing authority too.

Q: So those four individuals that you just testified to, if one of those four signatures appeared on an invoice, pay application, bill or anything it was authorized to be paid by the accounting department.

A: Correct.

*See* David Clifford Deposition Transcript, dated March 12, 2004 at pp. 175-177 as Exhibit J to Seiden Certif.

Moreover, Crown did not rely upon the Martino Defendants' signature as predicate for paying invoices. It is Crown's argument that Daly, the same individual Crown is alleging derived and implemented the embezzlement scheme to misappropriate $6.2 million dollars, was

10

the only individual at Crown that verified that the Martino Defendants had actually signed the pay applications.

> Q: Your accounting department. Then how is it that Crown relied on Mr. Martino's signature? Isn't the accounting department paying Crown's invoices?
>
> A: They are doing a job. And their job is, according to certain procedures and controls, one of theirs is not to check for a signature of – they wouldn't know that. They are accounts payable people.
>
> Q: Whose job was it at Crown to check to make sure all the signatures were on the pay applications?
>
> A: Milt Daly's
>
> Q: The same individual that you are alleging fraudulently misappropriated funds from Crown?
>
> A: Absolutely.
>
> Q: So the thief was supposed to check to make sure that all the signatures are there?
>
> A: That's correct.

See David Clifford Deposition Transcript, dated March 12, 2004 at pp. 275-276 as Exhibit J to Seiden Certif.

It is uncognizable, as a matter of law that Crown's injury would have occurred were it not for the Martino Defendants' alleged negligent conduct. Clearly, the embezzlement would have occurred with or without the Martino Defendants involvement, because the only individual at Crown that was verifying that the "architect" executed a limited certification on the pay application was the same individual that was embezzling the money.

Secondly, Crown paid numerous payment applications, without the signature of the Martino Defendants or with fraudulent signatures. Not only was it Crown's procedure to process pay application, as long as the pay applications contained Daly's signature, but many applications were in fact paid without the Martino Defendants' signature. For example, during

the deposition of James Martino, he was questioned at length concerning the twenty-nine payment applications at issue herein. On several occasion, Martino testified that his signature was not present on the payment application.

    Q:    Mr. Martino, do you see your signature anywhere on Martino Exhibit 10[1]?

    A:    No.

*See* Martino Deposition Transcript, dated January 15, 2004 at p. 139 as Exhibit G to Seiden Certif.; *See also* Martino Deposition Transcript, dated January 15, 2004 at pp. 128, 130 and 133 as Exhibit G to Seiden Certif.

Simply stated, Crown cannot establish that the conduct of the Martino Defendants was cause of its damages, because on numerous occasions the very pay applications, which Crown alleges are fraudulent, were paid without the Martino Defendants' signature/approval. Therefore, the documentary evidence clearly established that Crown did not rely upon the Martino Defendants in processing pay application.

In conclusion, Crown's basic theory that negligence is established against the Martino Defendants based on the principle that had the Martino Defendants not signed the allegedly fraudulent invoices, Crown Theatres would not have paid those invoices and the "arrangement/pattern" would have been exposed, is erroneous, as a matter of law. The pre-trial record establishes that the pay applications were paid based only upon Daly's approval and not upon the Martino Defendants signature. Accordingly, it was not the Martino Defendants alleged departure from the standard of care that resulted in Crown's injury. It is an oxymoron for Crown to contend that the individual they alleged to have embezzled money would not have embezzled monies but for the Martino Defendants' signature on certain contractor's pay applications.

---

[1] Martino Exhibit 10 was identified for the record as Application and Certificate for Payment to Owner Crown Theatres, L.P. from contractor Marlin Contracting via architect James Thomas Martino, P.C. for the Miami Lakes Theatre project. It's application number six for the period July 1, 2000. *See* Martino Deposition Transcript, dated January 15, 2004 at pp. 138-139 as Exhibit G to Seiden Certif. It has also been identified by Crown as an alleged fraudulent payment application, which is at issue in the litigation.

Therefore, the first components for establishing proximate causation, the "cause in fact," cannot be established as a matter of law. There is only one logical interpretation of the facts that the injury allegedly sustained by Crown would have occurred even in the absence of the Martino Defendants' act or omission.

**(ii)     Legal causation has not been established because the intentional conduct of other parties created a superceding cause that relieves the Martino Defendants of liability and severs the chain of proximate causation.**

Crown is attempting to hold the Martino Defendants liable for the conduct of its own Chief Operating Officer, who allegedly misappropriated corporate funds, as well as the conduct of Robert Beacher, Crown's owner's representative and construction manager for the various construction projects at issue in this action. However, the intentional conduct of Daly and Beacher severs the connection between the alleged act or omission of the Martino Defendants and the harm suffered by Crown, thereby creating a superseding cause.

The concept of an intervening force is embodied in the principle of superseding cause. *Restatement (Second) of Torts: Negligence* §§ 440 – 453. "Superseding cause is defined as an act of a third person or other forces which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Restatement (Second) of Torts: Negligence* § 440. A superceding cause relieves the actor from liability, irrespective of whether his conduct was or was not a substantial factor in causing the harm. Therefore, with the presence of a superceding cause, there is no need to determine whether the conduct was or was not the substantial factor in bringing about the harm. Id. In other words, it is the intervening force that actively produces the resulting harm.

Accordingly, the sole proximate cause of Crown's damages was the alleged intentional conduct of third parties, not any alleged negligent act or omission of the Martino Defendants.

13

Therefore, the intentional conduct of Daly and Beacher, breaks the causal connection and supercedes the alleged negligent conduct of the Martino Defendants. The evidence clearly established that the conduct of Daly and/or Beacher was the direct and exclusive cause of Plaintiff's injuries and not "caused" by the alleged conduct of the Martino Defendants' in failing to conduct on-site visits, or in failing to discovery the alleged fraud. *See* Point 1(A)(i) above. The alleged "scheme" does not "flow from" the Martino Defendants' breach, but rather from the intentional acts of others.

There is no question as to the existence of some type of arrangement between Daly and Beacher. Daly admits he had an "arrangement[2]" with Beacher, which amounted to a form of "self-dealing."

> Q: That leads to some follow-up questions for me. It's your intent to disgorge yourself or repay the $4.2 million?
>
> A: We've been negotiating, Mr. Martin, since –
>
> Q: I'm sorry, that –
>
> A: The answer is yes. I'm willing – The answer is yes.
>
> Q: That's your intent, right?
>
> A: That's the intent, to pay it.
>
> Q: And why is that your intent?
>
> A: Because it is a form of self-dealing, which was wrong. Doesn't belong to me. If I knew it belonged to me, if I knew that this was going on to the level that it came out to be, I would have never done this. It was wrong. We're been talking since September-August of 2001 when this surfaced. And –

---

[2] According to Mr. Daly's May 21, 2003 deposition testimony, Mr. Daly's understanding of his relationship with Beacher was that BB Construction was in fact doing work for Crown with an expectation that the work being performed by BB Construction was going to provide a savings to Crown. Once the work was performed for Crown, Daly understood that any profits derived from BB Construction performance of the work was then going to be split 70/30 between Beacher and Daly. Daly understood that his 70% share was a percentage of the profits derived from BB Construction. *See* Daly's Deposition Transcript May 21, 2003 at pp. 134-137 as Exhibit E to Seiden Certif.

14

> MR. WISSER: You've answered the question.
>
> Q: Why do you say it's a form of self-dealing?
>
> A: Because I should have never done that. I thought that the company was going to derive a lot of savings through Mr. Beacher's companies by taking portions of the jobs, him handling it, saving the company money.
> I was being paid a salary by Crown Theatres. The arrangement should have never been made. He should have just supervised the jobs, instead of stating that he was going to do the work, which was never done. So therefore, it was wrong. It was wrong thing to do.

*See* Daly's Deposition Transcript, dated May 21, 2003 at pp. 139-140 as Exhibit E to Seiden Certif.

On the other hand, Robert Beacher testified on February 25, 2004 that the "arrangement" between himself and Mr. Daly was different. Mr. Beacher testified:

> Q: And so your best testimony is that approximately $6 million was stolen by you, Mr. B. -- you, Mr. Daly, and to some extent, Mr. Cella, correct?
>
> A: Correct.
>
> Q: And your best testimony is that Mr. Daly stole approximately 4.2 million, correct?
>
> OBJECTION
>
> A: Correct.
>
> \*   \*   \*
>
> Q: Explain and describe the basis for your testimony that Mr. Daly stole $4.2 million from Crown Theatres.
>
> OBJECTION
>
> A: Mr. Daly devised a scheme of where he wanted -- he was having trouble getting his equity agreement completed with Crown. And he was very upset about it, and to say it mildly, extremely upset about it.
> So, Milt felt that he was entitled to have these fees. After -- when I say "these fees" -- and let me walk you through of how I'm trying to put this into proper words.
> After I would negotiate a contract amount through a bidding process with a particular general contractor that was going to be the contractor awarded one of the jobs, I would go back to Milt and tell Milt: I put to bed the contract amount.

15

>Hypothetically, let's say $7 million on one of the project. Milt would then say to me the very next day: This is great; you did a good job. He says: Give me an invoice for a million-one, million-tow, whatever amount he would pick out.
>
>At the point in time, I would prepare the invoice, I would fax it over to him which would have been a continuation sheet on the AIA form for his review, his approval, so that the numbers – so he could check out how I was going to bill it in the described numbers. All right.
>
>Then in most cases, immediately after it was done, after – within the next day the contract was signed, I would submit a bill for a vast amount of work that was never performed.
>
>This all leads back to, you know, where – you know . . .

*See* Beacher's Deposition Transcript, dated February 25, 2004 at pp. 14-16 as Exhibit I to Seiden Certif.

Notwithstanding that Daly and Crown dispute over the exact intent and nature of the "arrangement" between Daly and Beacher, the fact remains that under either understanding, it was the intentional conduct of Daly and Beacher that caused Crown to sustain it alleged damages. It is up to the trier of fact to determine, whose version of the facts is more credible. However, under either version, it is patently clear is that the alleged injury sustained by Crown would have occurred irrespective of the conduct of the Martino Defendants.

If the defendant' conduct neither caused nor permitted the intervening act or if the intervening act was not reasonably foreseeable, then the intervening act severs any causal connection between the original negligence and the claimed damages. The Courts have also recognized that if the act of a third-party was of such an extraordinary nature as to attenuates the defendant's negligence from the ultimate injury that responsibility for the injury may not reasonably be attributed to the defendants. *See* The Lusitania, Petition of Cunard S.S. Co., Limited, 251 Fed 715, 732-37 (S.D.N.Y. 1918) (holding that negligence of owner of Lusitania was not a legal cause of passenger's deaths where act of German Navy in torpedoing that ship was unprecedented in history.)

When the chain of causation between the defendant's negligence and the plaintiff's damages is broken by some independent intervening cause, which entirely supersedes the defendant's negligence, the injuries that follows defendant's negligence in a natural sequence will continue to be caused by the defendant's negligence, no matter what other forces may have intervened. See Corey v. Phillips, 126 Conn. 246, 10 A.2d 370 (1939). However, if the intervention supercedes the defendant's negligence and the damages no longer flow from the defendant's negligence, negligence can no longer reasonably be held to be a substantial factor in producing the damages and the defendant would not be liable for them. See Corey v. Phillips, 126 Conn. 246, 10 A.2d 370 (1939); Kiniry v. Danbury Hospital, 183 Conn. 448, 439 A.2d 408 (1981); Wasfi v. Chaddha, 218 Conn. 200, 588 A.2d 204 (1991). In the matter at hand, the natural sequence of damages that would have flowed from the Martino Defendants' negligence would have not caused the misappropriation of fund by either Daly and/or Beacher. The alleged intentional conduct of Daly and Beacher, under either version of truth, is not a reasonably anticipated event.

The only time that the intentional or criminal acts of third-party would not constitute a superceding cause, if at the time of the alleged negligent conduct, the individual realized or should have realized the likelihood that such a situation might be created, and that a third party might avail himself of the opportunity to commit such a tort or crime, which is foreseeable. See Somma v. Gracey, 15 Conn. App. 371, 544 A.2d 668 (App. 1988); See Restatement (Second) of Torts: Negligence §442B (1965). There has been no evidence or allegation that the Martino Defendants were aware of the alleged "arrangement" between Daly and Beacher as plead by Crown or that the "arrangement" was foreseeable. In fact, the evidence establishes that no one, including the Martino Defendants, had reason to doubt the veracity of either Daly or Beacher.