Both Daly and Beacher have extensive experience in movie theatre industry. For example, Daly had been involved in the movie theatre business for the most part of his adult life in various capacities from individual theatre manager to senior vice president of major movie theatre companies like Northeast Amusements, United Artists and Warner Brothers International *See* Milton Daly's Deposition Transcript, dated August 5, 2003 at pp. 8-25 as Exhibit F to Seiden Certif.; *See* Robert Beacher's Deposition Transcript, dated February 25, 2004 at pp.33-35 as Exhibit I to Seiden Certif.

If the Court accepts Crown's liability theory, then it would be foreseeable that any chief operating officer or any owner's representative/construction manager would "embezzle" money without any evidence of such propensities. In order to establish legal causation this Court would have to accept the proportion that it is foreseeable to suspect any chief operating officer of wrongdoing or misappropriation of funds, even without any evidence of same. The Martino Defendants had no reason to suspect or foresee that Daly and/or Beacher may have misappropriated funds.

> Q: So you [James T. Martino] had worked on approximately 7 projects with Mr. Beacher regarding construction of theatre projects before you worked together with him as Crown's owner representative, correct?
>
> A: That's correct.
>
> Q: In all of those seven prior construction projects of theatres, at the end of those projects, no issues that arose that led you to believe that Mr. Beacher was untrustworthy, correct?
>
> A: Not that I was aware of.
>
> \*   \*   \*
>
> Q: As a contractor [Mr. Beacher] on those projects, you did no become aware of any issues regarding the billing that he submitted for work performed, correct?
>
> A: Correct.

18

> Q: There was no indication on those seven projects that Mr. Beacher had submitted any inflated invoices, correct?
>
> A: Correct.
>
> Q: And no indication that Mr. Beacher had submitted any fraudulent invoices, correct?
>
> A: Correct.
>
> Q: And as a result of your experience with Mr. Beacher on those seven theatre projects, you came to learn that Mr. Beacher had quite a bit of knowledge in regard to the construction aspect of theatres, correct?
>
> A: Absolutely.

*See* James T. Martino's Deposition Transcript, Dated February 10, 2004 at pp. 452-454 as Exhibit H to Seiden Certif.

It is illogical to suggest that an architect would anticipate that a client's chief operating officer and independent construction manager/owner's representative would join forces to misappropriate corporate funding. The fundamental injury causing activity is the "arrangement" not the alleged error or omission of the Martino Defendants. The harm sustained by Crown was the direct result of the intentional conduct of third parties and not within the scope of the risk created by the Martino Defendant's conduct. *See Restatement (Second) of Torts; Negligence*, §442B. The Martino Defendants neither foresaw nor could have foreseen the manner in which this particular harm was brought about through the intentionally tortious and/or criminal intervention.

Since, proximate cause turns on whether an independent, intentional and possible criminal conduct constitutes an intervening act that supercedes and severs the causal connection between the Martino Defendants' purportedly negligent acts and Crown's damages, such a determination is clearly a question of law.

In conclusion, Crown has failed to establish that the Martino Defendant's negligence was the substantial factor in causing its injury. The pre-trial record before the Court clearly establishes there is no proximate cause between the Martino Defendants' alleged conduct and Crown's injuries. Therefore there can be no liability and Plaintiff's Second Amended Complaint should be dismissed, in its entirety, as to the Martino Defendants.

## POINT II

### COUNT IX OF PLAINTIFF'S SECOND AMENDED COMPLAINT SOUNDING IN NEGLIGENCE SHOULD BE DISMISSED AS IT IS AN UNJUSTIFIED ATTEMPT TO TRANSFORM THE UNDERLYING BREACH OF CONTRACT ACTION INTO A TORT CLAIM.

At the heart of Crown's allegations against the Martino Defendants is that the Martino Defendants breached their contractual duties in the performance of their architectural services. Crown's Second Amended Complaint against the Martino Defendants sounds in both breach of contract and professional negligence. However, according to principles set forth under both New York and Connecticut common law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island Railroad Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). Therefore, the Martino Defendants' alleged liability in tort "must spring from circumstances extraneous to, and not constituting elements of the contract." Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-57, 516 N.E.2d 190. See also Gazo v. City of Stamford, 225 Conn. 245, 765 A.2d 505 (2001). Since Crown fails to allege that the Martino Defendants violated a legal duty independent of the contract itself, the Martino Defendants' present motion should be granted and Crown's Count IX should be dismissed in its entirety.

20

A)  **Under Connecticut's Choice of Law Principles, New York Law Should Apply to Crown's Claims Against the Martino Defendants.**

In its Second Amended Complaint, Plaintiff states that "a substantial part of the events giving rise to this action occurred within this judicial district." See Plaintiff's Second Amended Complaint at ¶5 as Exhibit A to Seiden Certif. However, although: (a) the parties' negotiated the agreement in both New York and Connecticut; and (b) the "place of contracting" is unclear[3], the weight of factors suggests that New York, not Connecticut, enjoys the most significant relationship to the parties' agreement.

When deciding state claims based on supplemental jurisdiction pursuant to 18 U.S.C. § 1367, federal courts must apply the choice of law rules of the forum state to determine which state's substantive law governs the claim at issue. Hanna v. Plumer, 380 U.S. 460, 14 L. Ed.2d 8, 85 S.Ct. 1136 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 82 L.Ed. 1188, 58 S.Ct. 817 (1938); MM Global Services, Inc. v. The Dow Chemical Company, 283 F.Supp.2d 689 (D.CT 2003); Blake-McIntosh v. Cadbury Beverages, Inc., 1999 U.S. Dist. LEXIS 12801 (D.CT June 25, 1999). Connecticut choice of law provisions provides that the courts must select the law of the state having the most "significant relationship" to the occurrence and the parties to the dispute. MM Global Services, Inc. v. The Dow Chemical Company, 283 F.Supp.2d at 699; Reichold Chemicals, Inc. v. Hartford Accident & Indemnity Company, 243 Conn. 401, 703 A.2d 1132 (1997); Interface Flooring Systems, Inc. v. Aetna Casualty and Surety Company, et al., 261 Conn. 601, 804 A.2d 201 (2002). See also England v. Reliance Insurance Co., 2004 Conn. Super. LEXIS 402 (J.D at Ansonia, Feb. 24, 2004); Anely v. Allstate Insurance Company, 2002 Conn. Super. LEXIS 129 (J.D. at Stamford-Norwalk, Jan. 9, 2002).

---

[3] "These contacts are, "of less importance when there is no one single place of negotiation and agreement, as for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." Restatement (Second) of Conflict of Laws, § 188 cmt. e, (1971).

21

In Reichold, the Connecticut Supreme Court abandoned the ancient *lex loci contractus*[4] rule in favor of the significant relationship test set forth in the Restatement (Second) of Conflict of Laws (hereinafter, "Restatement" or "Restatement (Second)"). Reichold 243 Conn. at 409; MM Global Services, Inc. v. The Dow Chemical Company, 283 F.Supp.2d at 698-99; Blake-McIntosh v. Cadbury Beverages, Inc., 1999 U.S. Dist. LEXIS *15-16. The significant relationship test applies if a contract does not contain a choice of law provision. Reichold Chemicals, Inc. v. Hartford Accident & Indemnity Co., 252 Conn. 774, 781, 750 A.2d 1051 (2000); England, supra. In Reichold, the Court discussed the Restatement analysis:

> Section 6(2) of the Restatement (Second), which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the "most significant relationship": "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Id., at 409-10. *See also* Interface Flooring Systems, Inc., 261 Conn. at 608-609; Miller v. American Bank Note Holographics, Inc., 2003 Conn. Super. LEXIS 1578 (J.D. of Stamford-Norwalk, May 22, 2003).

If application of a particular state's law would further its underlying policy, that state is said to have an "interest." Id., at 410. If two or more states have conflicting "interests," the court must determine which interests give rise to the "most significant relationship" under § 188 of the Restatement. Id. Section 188(2) of the Restatement (Second) sets forth several rebuttable presumptions regarding which state enjoys the "most significant relationship." Interface Flooring Systems, Inc., 261 Conn. at 609. These presumptions are: (a) the place of contracting,

---

[4] The abandoned *lex loci contractus* approach to choice of law looks primarily to the law of the state in which the contract was made.

(b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Id. These contacts should be evaluated according to their relative importance to the particular issue. Blake-McIntosh v. Cadbury Beverages, Inc., 1999 U.S. Dist. LEXIS 12801 *15-16. Put another way, the analysis set forth under the Restatement "create[s] a presumption in favor of the application of the law of the state where 'the bulk of the contracting transactions took place . . ." Interface Flooring Systems, Inc., 261 Conn. at 610, *citing* Reichold Chemicals, Inc. v. Hartford Accident & Indemnity Co., 243 Conn. at 414.

In the present matter, New York, not Connecticut, has the most significant relationship to the parties' agreement. First, the bulk of the Martino Defendants' performance under the parties' agreement took place at its principal place of business ("office") located at 14 Vanderventer Avenue in Port Washington, New York. From their New York office, the Martino Defendants designed preliminary schemes for each project. From their New York office, the Martino Defendants finalized design drawings and prepared construction documents for the projects. From their New York office, the Martino defendants prepared and issued working drawings and project specifications. From their New York office, the Martino Defendants responded to requests for information (questions) from contractors. From their New York office, the Martino Defendants processed contractors' shop drawings. In fact, the Martino Defendants' only performance within Connecticut was site visits to two of the six projects at issue in this litigation (the Hartford and Trumbull projects) and to meet with Crown's corporate officers, whose home office is located in Norwalk, Connecticut. These site visits and meetings constituted only a small portion of the Martino Defendants' aggregate performance under the parties' agreement. In

23

short, the Martino Defendants performed a vast majority their professional services from their New York office.

Second, policy considerations also support the conclusion that New York has the most significant relationship to the parties' agreement. Since the Martino Defendants: (a) performed the bulk of their services under the agreement from its New York office; and (b) are a New York professional corporation, this Court will facilitate interstate commerce between New York and Connecticut by affording the Martino Defendants protection of its home state. New York has a greater interest in protecting and monitoring the conduct of architects that practice and actually perform their services in New York. Connecticut's only relationship to the work performed by the Martino Defendants is that its client resides in Connecticut. Not applying New York law to the conduct of the Martino Defendant would unduly impose liability on the Martino Defendants in every state that the Martino Defendants' client maintains its home office, without any consideration that the overwhelming majority of actual architectural work was performed in New York. Finally, Connecticut's only "interest" in the merits of Plaintiff's claims against the Martino Defendants is that Connecticut is Plaintiff's principle place of business and therefore, chosen for the sole reason as being the more convenient venue for Plaintiff to litigate the present action in its entirety.

The weight of factors strongly suggests that Connecticut's interest in the parties' agreement fails to trump the conclusion that New York law should govern the agreement between Plaintiff and the Martino Defendants. Therefore, New York law should apply.

**B)** **Crown's Cause of Action for Negligence Fails As A Matter Of Law.**

Under well-settled principles, New York law provides that a claim for breach of contract cannot be re-casted by employing language familiar to tort law, to create a tort claim unless a

legal duty independent of the contract itself has been violated. In other words, a tort claim must be derived from liability extraneous to the elements of the breach of contract. Clark-Fitzpatrick, Inc. v. Long Island Railroad Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). Count IX of Crown's Second Amended Complaint fails to allege that the Martino Defendants violated a legal duty independent of the contract itself and therefore should be dismissed in its entirety.

The New York Court of Appeals held in Clark-Fitzpatrick, Inc. v. Long Island Railroad Company, 70 N.Y.2d 382, 385-86, that the plaintiff sued the defendant, Long Island Rail Road Company ("LIRR"), on the basis that defendant was unprepared to proceed with a construction project awarded to plaintiff. Plaintiff's alleged breach of contract, quasi contract, fraud, gross negligence and negligence. Id. Based on the Defendant moving to dismiss the causes of action sounding in negligence,[5] the Court of Appeals concluded that the negligence counts were properly dismissed because the plaintiff failed to allege the violation of a legal duty independent of the contract itself. Id., at 389. The court stated that, "in its cause of action for gross negligence, plaintiff alleges that defendant failed to exercise 'due care' in designing the project, locating utility lines, acquiring necessary property rights, and informing plaintiff of problems with the project before construction began . . . [e]ach of these allegations, however, is merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract." Id., at 390 (emphasis added). The Court also emphasized that, "the damages plaintiff allegedly sustained as a consequence of defendant's violation of a 'duty of due care' in designing the project were clearly within the contemplation of the written agreement, as indicated by the design change and adjusted compensation provisions

---

[5] The defendant also moved to dismiss the cause of action sounding in quasi contract, and sought dismissal of the demand for punitive damages on the ground that, as a public benefit corporation, it was immune from such damages.

25

of the contract." Id. Finally, the Court concluded that, "[m]erely charging a breach of a 'duty of due care', [sic] employing language familiar to tort law, does not, *without more,* transform a simple breach of contract into a tort claim" Id. (emphasis added).

In the present matter, Plaintiff merely incorporates by reference each and every allegation contained in its breach of contract claim into its professional negligence claim. See Counts VIII and IX of Plaintiff's Second Amended Complaint at ¶¶ 243-56 as Exhibit A to Seiden Certif. All Plaintiff adds to the negligence claim is boilerplate language familiar to tort law. Crown fails to allege that the Martino Defendants violated a "duty of care" independent of the alleged obligations provided for in the contract itself. By merely stating that, "Martino and the Martino firm, as architects, provided professional architectural services to Crown Theaters, and therefore incurred a duty to exercise reasonable care in the performance of professional architectural services . . . ," Crown cannot transform its contract action into one sounding in tort. Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-57, 516 N.E.2d 190; *See also* Board of Education of the Hudson City School District v. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 517 N.Y.S.2d 1360 (1987); SSDW Co. v. Feldman Misthopoulos, 151 A.D.2d 293, 542 N.Y.S.2d 565 (1st Dep't 1989); Wecker v. Quaderer, 237 A.D.2d 512, 655 N.Y.S.2d 93, 94 (2d Dep't 1997); Briar Contracting Corp. v. City of New York, 156 A.D.2d 628, 550 N.Y.S.2d 717, 718 (2d Dep't 1989); Rothberg v. Reichelt, 270 A.D.2d 760, 705 N.Y.S.2d 115, 118 (3d Dep't 2000).

Clearly, the primary allegations against the Martino Defendants rest upon the Martino Defendants alleged failure to properly perform its contractual obligations regarding processing contractors payment applications. The determination of whether the Martino Defendants failed to properly perform that service is a contractual dispute between Crown, as the owner and the

26

Martino Defendants, as the architect. Crown has no allegation as to the adequacy of the Martino Defendants design services of the movie theatres. Rather, Crown maintains that the Martino Defendants negligently performed their contractual duties to Crown in failing to detect the scheme/embezzlement. This is not a case where the Owner is suing the Architect for a negligent architectural design. Rather, Crown's allegation of negligence is merely an attempt to assert a claim for negligence when its true claim derives from a theory of breach of contract.

The case law is clear, that "(M)erely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." Morse/Diesel v. Trinity Industries, Inc. 859 F.2d 242, 250 (2d Cir. 1988), *citing* Board of Education of the Hudson City School District v. Sargent Webster Crenshaw & Folley, 125 A.D.2d 27, 511 N.Y.S.2d 961, *aff'd* 71 N.Y.2d 21, 26, 523 N.Y.S.2d 475, 477 (1987). Therefore, Plaintiff's tort claim fails to state a cause of action and Count IX of Plaintiff's Second Amended Complaint should be dismissed.

**C)** **Even If The Court Disagrees that New York Law Does Not Apply, Connecticut Common Law Also Precludes Crown From Recovering Under A Negligence Theory.**

Even if this Court concludes that Connecticut law governs this action, Connecticut courts have explicitly and implicitly adopted the principles set in Clark-Fitzpatrick, *supra*. As a result, Plaintiff has also improperly asserted a negligence claim against the Martino Defendants under Connecticut common law.

In John T. Brady and Company v. City of Stamford, 220 Conn. 432, 448, 599 A.2d 370, 378 (1991), the Connecticut Supreme Court described the New York Court of Appeals' reasoning in Clark-Fitzpatrick as "especially persuasive." The Court quoting from Clark-Fitzpatrick, concluded that, "[i]t is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement . . ." Id.

27

Similarly, in Meaney v. Connecticut Hospital Association, Inc., 250 Conn. 500, 517-18, 735 A.2d 813, 823 (1999) the Court again endorsed the Clark-Fitzpatrick holding. There, the Court stated that, "[i]t is often said that an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter." See also Interior Tech., Inc. v. Baker Props. Ltd. Ptshp., 1999 Conn. Super. LEXIS 318, 10 (J.D. at Ansonia, Feb. 9, 1999) (1999) ("Our Supreme Court, quoting from the case of Clark-Fitzpatrick v. Long Island R.R. Co., makes the following quote: 'It is impermissible . . . to seek damages in an action sounding in quasi-contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed and the scope of which clearly covers the dispute between the parties . . .'").

The Connecticut Supreme Court has independently concluded that a plaintiff may not convert tort liability into contractual liability by merely invoking contract language in his complaint. In Gazo v. City of Stamford, 255 Conn. 245, 247-248, 765 A.2d 505 (2001), the plaintiff was allegedly injured when he slipped and fell on an icy sidewalk in Stamford, Connecticut. Plaintiff's counts against Defendant Pierni sounded in negligence, absolute public nuisance and public nuisance arising out of negligence. Id., at 248. Plaintiff also brought a breach of contract claim against Defendant Pierni on the basis that, as parties to the contract, the tenant and Pierni intended to create a direct benefit to business invitees such as the plaintiff by making the subject sidewalk safe for pedestrian travel. Id. Specifically, plaintiff argued that he was a third party beneficiary of the contract. Id.

Defendant Pierni moved for summary judgment on the negligence count and moved to strike plaintiff's breach of contract claim. Id. The basis for Pierni's summary judgment motion was that it did not owe a duty of care to the plaintiff. Id. The basis for Pierni's motion to strike

28

was that the breach of contract count failed to allege that Pierni intended to assume a direct obligation to the plaintiff so as to render him a third party beneficiary of the contract. Id. On appeal, the Connecticut Supreme Court reversed the trial court's judgment regarding Pierni's motion for summary judgment. Id., at 268. However, the Court affirmed the trial court's ruling regarding Pierni's motion to strike. The Court concluded that:

> [D]espite the specificity of [Plaintiff's] allegations and the established standard of review thereof, we conclude that, as a matter of law, the plaintiff may not be considered a third party beneficiary of the contract between Chase Bank and Pierni. Put another way, the liability of Pierni to the plaintiff, if any, is based on principles of tort law, and the plaintiff may not convert that liability into one sounding in contract merely by talismanically invoking contract language in his complaint . . . Just as putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender, <u>putting a contract tag on a tort claim will not change its essential character. An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law.</u> When the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading.

Id., at 261-263 (emphasis added).

Under the principles set forth in Gazo, the Martino Defendants' alleged breach of the contract may not simultaneously be considered a tort absent the violation of a legal duty independent of the contract itself. At best, Plaintiff fails to sufficiently identify a legal duty arising from circumstances extraneous to, and not constituting elements of, the parties' agreement. Plaintiff merely incorporates by reference the breach of contract count into the negligence count. In either instance, Plaintiff's negligence allegations are uncognizable under the principles set forth in Clark-Fitzpatrick and Gazo. Therefore, this Court should grant the

29

Martino Defendants' Motion for Summary Judgment as to Count IX of Plaintiff's Second Amended Complaint under either New York or Connecticut law.

**POINT III**

**FOUR PAYMENT APPLICATIONS ALLEGEDLY NEGLIGENTLY APPROVED BY THE MARTINO DEFENDANTS ARE TIME-BARRED**

As set forth above in greater detail (*See* Point II above), under Connecticut's choice of law principal, New York law should apply to Plaintiff's allegations of breach of contract and professional negligence against the Martino Defendants. Under well-settled New York law, the statute of limitations for asserting a claim against a professional, whether sounding in negligence or breach of contract is three years.

CPLR § 214(6) states, in pertinent part, that:

> The following actions must be commenced within three years:
> ...
> (6) an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort;

N.Y. Civ. Prac. L. & R. § 214(6) (McKinney 2000).

Clearly, CPLR § 214(6) provides that any action against an architect or engineer based in contract or tort must be commenced within three years from the date the cause of action accrues. Id.; see also CPLR § 203(a)(the time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed); IFD Construction Corp. v. Corddry Carpenter Dietz and Zack, 253 A.D.2d 89, 685 N.Y.S.2d 670 (1st Dep't 1999).

As such, a portion of Plaintiff's claims against the Martino Defendants for breach of contract and negligence are time-barred under the applicable statute of limitations. Specifically, four of the twenty-nine payment applications Plaintiff's allege that the Martino Defendant's

30

negligently approved, were issued more than three years prior to Plaintiff's commencement of the instant action.

In Crown's responses to the Martino Defendants' Interrogatories and Requests for Production (hereinafter "Crown's Interrogatories"), Crown specifically outlines the twenty-nine payment applications it claims are at issue herein:

> [a]ll of the payment applications in Exhibit 1 were negligently approved by the architect or someone acting on behalf of the architect.

*See* Crown's Response To Interrogatories and Requests For Production to Defendants James T. Martino and James Thomas Martino, Architect, P.C as Exhibit D to Seiden Certif. Exhibit 1 of Crown's Interrogatories sets forth a schedule of twenty-nine payment applications allegedly approved by the Martino Defendants forming the bases of damages for Crown's claims. Based on the fact that Crown commenced the present action against the Martino Defendants on December 20, 2002 with the filing of Plaintiff's original Complaint, four of the twenty-nine payment applications were allegedly negligently approved more than three years prior to the commencement of the within action. Hence, the following four payment applications are time-barred:

(1) Payment Application by GUS Development in the amount of $451,500 dated June 6, 1999 (unexecuted by the Martino Defendants);

(2) Payment Application by GUS Development in the amount of $125,000 dated July 26, 1999 (executed by the Martino Defendants July 26, 1999);

(3) Payment Application by Marlin Contracting in the amount of $245,000 dated October 1, 1999 (unexecuted by the Martino Defendants); and

(4) Payment Application by Marlin Contracting in the amount of $180,000 dated October 28, 1999 (executed by the Martino Defendants October 28, 1999).

31

The statute of limitation starts to run from the time the cause of action accrues. "In cases against architects or contractors, the accrual date for statute of limitations purposes is completion of performance." City School District of the City of Newburgh v. Hugh Stubbins and Associates, Inc., 85 N.Y.2d 535, 538, 626 N.Y.S.2d 741 (1995)(citations omitted). "Completion is not a statutorily defined word but must be judicially interpreted in light of the given situation and the responsibilities of the parties in carrying out their agreement." Parsons Brinckerhoff Quade & Douglas, Inc. v. EnergyPro Construction Partners, 271 A.D.2d 233, 234, 707 N.Y.S.2d 30, 31, (1st Dep't 2000) *quoting* Board of Education of Tri-Valley Central School District at Grahamsville v. Celotex Corp., 88 A.D.2d 713, 714, 451 N.Y.S.2d 290, 291 (3d Dep't 1982).

Crown has alleged its claims upon twenty-nine specific and independent acts of negligence, *i.e. approving the payment applications*. Therefore, the statute of limitations with respect to these claims begins to run at the date of injury, in this case the date that each individual payment application was allegedly negligently approved by the Martino Defendants. In other words, the date that the cause of action accrues for the purpose of the negligent approval of the payment application, starts running each and every time that the Martino Defendants allegedly approved the payment applications. The alleged approval of the payment applications was the completion of performance by the Martino Defendants for the purpose of the allegations herein. In short, each alleged approval of a payment application is its own separate alleged act of negligence/breach of contract with its own statute of limitation.

As Plaintiff's negligence and breach of contract claims are subject to the three-year limitation found in CPLR §214(6) and Plaintiff's commenced this action on December 20, 2002, four payment applications which were approved more than 3 years prior to the action and are therefore time-barred. There is no question of material fact as to the dates when the applications

32

were processed by the Martino Defendants. Accordingly, partial summary judgment should be granted in favor of the Martino Defendants as to the four payment applications that are time-barred.

## CONCLUSION

For all of the foregoing reasons, The Martino Defendants respectfully requests that this Court grants summary judgment be entered in their favor on Count VIII (breach of contract) and IX (professional negligence) of the Plaintiff's Second Amended Complaint.

RESPECTFULLY SUBMITTED,

DEFENDANTS/THIRD-PARTY PLAINTIFFS
JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECTS, P.C.

By: _____
Mark Seiden (ct 24637)
Marisa Lanza (ct 24554)
MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10604
(914) 681-8700
(914) 681-8709 (fax)
mseiden@milbermakris.com
mlanza@milbermakris.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify and I a copy of the foregoing **Memorandum Of Law In Support Of The Martino Defendants' Motion For Summary Judgment In Regard To Counts VIII And IX Of The Plaintiff's Second Amended Complaint** was served by first class mail, postage prepaid, on all counsel of record in this action on the 26th day of April 2004, upon:

Craig C. Martin, Esq.
Lawrence S. Schaner, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611

H. James Pickerstein, Esq.
Jodi Zils Gagne, Esq.
Pepe & Hazard, LLP
30 Jelliff Lane
Southport, CT 06490

Kerry M. Wisser, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Robert M. Frost
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd
P.O. Box 1740
Bridgeport, CT 06601

Marisa Lanza