Page 1

```
 1

 2     IN THE UNITED STATES DISTRICT COURT

 3     FOR THE DISTRICT OF CONNECTICUT

 4     -------------------------------X
       CROWN THEATRES, L.P.
 5

 6                Plaintiff

 7          vs.

 8     MILTON L. DALY, TAYLOR-LEIGH,
       INC., ANNE E. DALY, JAMES C.
 9     CELLA, G.U.S. DEVELOPMENT,
       INC., JAMES T. MARTINO and
10     JAMES THOMAS MARTINO,
       ARCHITECT
11

12                Defendants.
       -------------------------------X
13

14

15

16          DEPOSITION OF DAVID CLIFFORD

17             White Plains, New York

18            Friday, March 12, 2004

19

20

21

22

23

24     Reported by:
       HOWARD CHAIM CSR
25     JOB NO. 158306
```

## Page 2

March 12, 2004
10 a.m.

Deposition of DAVID CLIFFORD, held at the offices of Milber Makris Plousadis Seiden, 3 Barker Avenue, White Plains, New York, pursuant to Notice, before HOWARD CHAIM, a Certified Shorthand Reporter and Notary Public of the State of New York.

## Page 3

APPEARANCES:

JENNER & BLOCK, LLP
Attorneys for Plaintiff
   One IBM Plaza
   Chicago, Illinois 60611
BY: CRAIG C. MARTIN, ESQ.

MILBER MAKRIS PLOUSADIS SEIDEN
Attorneys for Defendants
   3 Barker Avenue - 6th Floor
   White Plains, New York 10601
BY: MARISA LANZA, ESQ.

ALSO PRESENT:
   DAN CROWN

## Page 4

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for the respective parties herein, that filing and sealing be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

## Page 5

DAVID CLIFFORD, residing at 717 Rolling Hills Drive, Fairfield, Connecticut 06824 called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY
MS. LANZA:

Q. Good morning, Mr. Clifford. My name is Marisa Lanza and I represent James Thomas Martino and James Thomas Martino, Architect in connection with the lawsuit pending by Crown Theatres.

Before we start have you ever been deposed before?

A. Yes.

Q. So I am just going to give you some ground rules about depositions and which you probably already know already. I need to you keep your voice up so the court reporter can transcribe it.

I also need you to let me finish my question before you answer even though you might know what I am asking you. And

Page 214

```
 1        David Clifford
 2   basis?
 3       A.  They had annual audits.
 4          MR. MARTIN: He said, yes, they
 5       had annual audits.
 6       Q.  Did you ask Siegle Sacks whether
 7   they had uncovered anything suspicious on
 8   prior audits?
 9       A.  I wouldn't have to ask. They
10   would tell me if they did.
11       Q.  Did Siegle Sacks tell you that
12   they had uncovered anything suspicious on
13   prior audits?
14       A.  Obviously not.
15       Q.  Did you ask Mr. Press at Siegle
16   Sacks how come they didn't uncover anything
17   suspicious on their prior audits?
18       A.  No.
19       Q.  How come you didn't ask anyone at
20   Siegle Sacks how come they didn't uncover
21   anything suspicious?
22       A.  Because they followed auditing
23   procedures. And you wouldn't necessarily
24   undercover fraud and collusion.
25       Q.  They conducted an audit of
```

Page 215

```
 1        David Clifford
 2   Crown's entire financial records, correct?
 3          MR. MARTIN: Object to the form
 4       of the question. Entire financial
 5       records.
 6          You can answer the question if you
 7       understand it.
 8       A.  A forensic audit is different than
 9   an audit of a company's financial books and
10   records. They don't audit every number.
11   They test. That's GAAP auditing
12   procedures.
13          So not necessarily would an audit
14   catch this, unless they specifically
15   audited each individual project which GAAP
16   does not require you to do.
17       Q.  Did Crown ask Siegle Sacks to
18   audit each individual project?
19       A.  No.
20       Q.  Do you know why Crown didn't do
21   an individual audit for each project?
22       A.  Because we trusted the
23   professionals that we had doing them.
24       Q.  But that was the senior
25   management team at Crown.
```

Page 216

```
 1        David Clifford
 2       A.  That was Jim Martino and Bob
 3   Beacher.
 4       Q.  Daly was involved in the
 5   day-to-day operations as --
 6       A.  No --
 7          THE REPORTER: Would you repeat
 8       your question?
 9       Q.  Daly was responsible for the
10   day-to-day operation as were you
11   responsible for at least preparing the
12   budgets in the financial side of the
13   projects. So that team also included you
14   and Mr. Daly?
15          MR. MARTIN: Object to the form
16       of the question.
17       Q.  Is that a yes?
18       A.  I don't understand. You double
19   asked the questions.
20          MR. MARTIN: Do you understand
21       the question?
22       A.  No, I don't.
23       Q.  In addition --
24          MR. MARTIN: Ask another
25       question.
```

Page 217

```
 1        David Clifford
 2       Q.  The question was you trusted the
 3   team in connection with not doing
 4   individual audits for each project,
 5   correct?
 6       A.  Correct.
 7       Q.  But part of that team was also
 8   Mr. Daly, correct?
 9       A.  Correct.
10       Q.  Yourself?
11       A.  No.
12       Q.  You were not involved in
13   preparing the budgets?
14       A.  I was in charge of the budgets
15   but not as far as auditing the projects.
16       Q.  But the work that you did was
17   also a basis for other people to rely on?
18          MR. MARTIN: Object. It's
19       argumentative. He's testified he
20       trusted Daly, Martino and Beacher.
21          MS. LANZA: And he says --
22       Q.  What I am trying to find out is
23   you were involved in the construction?
24       A.  Correct. But you asked me why I
25   would have it audited.
```

Page 270

1  David Clifford
2  A. Yes.
3      MR. MARTIN: Object. Irrelevant.
4  Q. How did Mr. Beacher help you?
5      MR. MARTIN: Objection.
6  Irrelevant.
7  Q. You can still answer.
8  A. Mr. Beacher built my basement for
9  me. And he showed me how to secure my deck
10 to my house.
11 Q. Did you pay Mr. Beacher for the
12 work that he did on your home?
13 A. No.
14     MR. MARTIN: Same objection.
15     THE WITNESS: Sorry, Craig.
16 Q. How about Mr. Martino, did
17 Mr. Martino assist you in any manner in the
18 work that was done in your house?
19 A. He did rudimentary drawings of my
20 basement, so Beacher did lay it out.
21 Q. Did Mr. Martino do anything else?
22 A. No.
23 Q. Did you pay Mr. Martino for the
24 drawings that he prepared?
25 A. No. He wouldn't let me. Neither

Page 271

1      David Clifford
2  would Beacher, by the way.
3      MS. LANZA: Why don't you ask
4      your couple of questions while I look
5      at my notes and I think then we might
6      be done.
7      MR. MARTIN: Sure.
8  EXAMINATION BY
9  MR MARTIN:
10 Q. Did you disclose to anyone at
11 Crown Theatres that Beacher and Martino
12 assisted you with your house?
13 A. Yes, I did.
14 Q. Who?
15 A. Dan Crown.
16 Q. Did he express any objection.
17 A. No.
18 Q. Was Jim Crown a member of the
19 Crown Theatres board of directors?
20 A. Yes.
21 Q. With regard to the -- in making
22 payment for the construction program using
23 the AIA documents submitted to Crown
24 Theatres did Crown Theatres rely upon the
25 approvals of Beacher, Martino and Daly?

Page 272

1      David Clifford
2      MS. LANZA: Objection. There is
3      no foundation, and he didn't have that
4      knowledge.
5  A. Yes.
6  Q. And with regard to Mr. Martino,
7  how did you rely -- how did Crown Theatres
8  rely on Mr. Martino?
9      MS. LANZA: Objection. Same
10     objection.
11 A. He is a licensed architect.
12 Q. Did Crown Theatres rely on
13 Mr. Martino's signature on the AIA
14 documents?
15     MS. LANZA: Same objection.
16 A. 100 percent.
17 Q. Why?
18 A. Because he has to -- he is a
19 licensed architect and we trusted him.
20 Q. As the CFO did you personally
21 rely on Mr. Martino's signature on the AIA
22 documents?
23 A. 100 percent.
24 Q. And why?
25 A. Because I trusted him and he is a

Page 273

1      David Clifford
2  licensed architect.
3  Q. With regard to Mr. Beacher, as
4  the CFO did you rely on his approval on the
5  AIA documents?
6      MS. LANZA: I think you said
7      Mr. Beacher.
8      MR. MARTIN: I did.
9      MS. LANZA: As the CFO.
10 A. Me as the CFO.
11     MS. LANZA: Oh, you as the CFO.
12 A. Yes, I did.
13 Q. Why did you rely on Mr. Beacher?
14 A. Because of his experience. He
15 was employed by us to do exactly that job.
16 Q. Did Crown Theatres rely upon
17 Mr. Daly's approval on the ace AIA forms?
18 A. Absolutely.
19 Q. Why?
20 A. Because it was his job.
21 Q. And as the CFO did you ever rely
22 on Mr. Daly's approval?
23 A. Yes, I did.
24     MR. MARTIN: That's all I have.
25 EXAMINATION BY

Page 274

1    David Clifford
2    MS. LANZA:
3        Q.  In connection with your testimony
4    about Crown relying on Mr. Martino's
5    signature in those situations where pay
6    applications were paid without
7    Mr. Martino's signature how is it possible
8    that Crown relied on his signature?
9        MR. MARTIN: Object to the form
10       of the question. It calls for him to
11       speculate.
12       MS. LANZA: I will withdraw the
13       question.
14       Q.  Pay applications were paid by
15   Crown Theatres without Mr. Martino's
16   signature; is that correct?
17       A.  Not that I recall.
18       Q.  So if there are pay applications
19   that were paid without Mr. Martino's
20   signature, then the fact that Crown relied
21   on his signature would be incorrect in
22   those situations?
23       MR. MARTIN: Object. It's
24       argumentative and it calls for him to
25       speculate on things that he doesn't

Page 275

1    David Clifford
2        know.
3        MS. LANZA: He can answer the
4        question over your objection. You
5        can't direct him not to answer.
6        MR. MARTIN: I will direct him not
7        to guess or speculate.
8        A.  Well, I will answer the question
9    in that, again, my accounting department
10   who paid those was not relying on Jim
11   Martino's signature.
12       Q.  Your accounting department. Then
13   how is it that Crown relied on
14   Mr. Martino's signature? Isn't the
15   accounting department paying Crown's
16   invoices?
17       A.  They are doing a job. And their
18   job is, according to certain procedures and
19   controls, one of theirs is not to check for
20   a signature of — they wouldn't know that.
21   They are accounts payable people.
22       Q.  Whose job was it at Crown to
23   check to make sure all the signatures were
24   on the pay applications?
25       A.  Milt Daly's.

Page 276

1    David Clifford
2        Q.  The same individual that you are
3    alleging fraudulently misappropriated funds
4    from Crown?
5        A.  Absolutely.
6        Q.  So the thief was supposed to
7    check to make sure that all the signatures
8    are there?
9        A.  That's correct.
10       Q.  In the situations where pay
11   applications were paid without
12   Mr. Martino's signature but had Mr. Daly's
13   signature they would still have been paid
14   by Crown through your accounts payable
15   department?
16       A.  That's correct.
17       Q.  When you reviewed the pay
18   applications you weren't checking for
19   Mr. Martino's signature, were you?
20       A.  Sure I was.
21       Q.  Were you looking for Mr. Daly's
22   signature?
23       A.  Absolutely.
24       Q.  If you came across a pay
25   application that did not have Mr. Martino's

Page 277

1    David Clifford
2    signature did you still okay it for
3    payment?
4        A.  No, not that I know of.
5        Q.  So if there is a pay application
6    there that is approved for payment but did
7    not have Mr. Martino's signature, then
8    wouldn't you say it would be incorrect?
9        A.  It would be a mistake.
10       MR. MARTIN: Objection. Calls
11       for him to speculate.
12       Q.  What about, did Mr. Beacher submit
13   invoices from B&B Consulting?
14       A.  All the time.
15       Q.  Did you have a chance to review
16   any of those invoices submitted by
17   Mr. Beacher?
18       A.  No.
19       Q.  Were those invoice also paid by
20   your department?
21       A.  Yes, they were.
22       Q.  Was your department also looking
23   for signatures of Mr. Daly?
24       A.  Absolutely.
25       Q.  Did B&B's invoices have to be

Page 278

1    David Clifford
2  approved by anyone else beside Mr. Daly?
3      A. No.
4      Q. Did they require any other
5  signatures besides Mr. Daly?
6      A. No.
7      Q. What about the invoices submitted
8  by Mr. Martino, who had approved those
9  invoice also prior to payment?
10     A. Milt Daly.
11     Q. Did you review Mr. Martino's
12 invoices?
13     A. No.
14     Q. Did anyone else's signature have
15 to be on Mr. Daly's -- I am sorry,
16 Mr. Martino's invoices for Crown to pay
17 those invoices?
18     A. No.
19        MS. LANZA: I have nothing
20 further.
21 EXAMINATION BY
22 MR. MARTIN:
23     Q. Why did Crown Theatres require
24 the signature of Mr. Martino on the AIA
25 forms prior to payment?

Page 279

1    David Clifford
2       MS. LANZA: Objection. Lack
3  foundation. He doesn't know.
4      A. Because the form requires his name
5  to be on it. It requires to be notarized.
6      Q. The AIA form?
7      A. The AIA form does.
8        MR. MARTIN: That's all.
9        We reserve signature.
10       (Time noted: 3:45 p.m.)
11
12       _____
13           DAVID CLIFFORD
14 Subscribed and sworn to before me
15 this ___ day of _____, 2004.
16
17 _____

Page 280

CERTIFICATE
STATE OF NEW YORK   )
                    : ss.
COUNTY OF WESTCHESTER)

   I, HOWARD CHAIM, a Certified
Shorthand Reporter and Notary Public
within and for the State of New York,
do hereby certify:
   That DAVID CLIFFORD, the witness
whose deposition is hereinbefore set
forth, was duly sworn by me and that
such deposition is a true record of the
testimony given by the witness.
   I further certify that I am not
related to any of the parties to this
action by blood or marriage, and that I
am in no way interested in the outcome
of this matter.
   IN WITNESS WHEREOF, I have
hereunto set my hand this 15th day of
March, 2004

                    _____
                        HOWARD CHAIM, CSR

Page 281

---------------I N D E X---------------
WITNESS          EXAMINATION BY  PAGE
David Clifford   Ms. Lanza       5, 273
                 Mr. Martin      271, 278


----------INFORMATION REQUESTS--------
Direction not to answer........... 95
Direction not to answer........... 95
Direction not to answer........... 95
Direction not to answer.......... 256
Direction not to answer.......... 257
Direction not to answer.......... 257
Direction not to answer.......... 258
Direction not to answer.......... 258
Direction not to answer.......... 261

--------------EXHIBITS----------------
CLIFFORD                    FOR ID
Clifford Exhibit 1, five-page document
Bates stamped CTM 00005770 through 5774
................................... 196