## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

CROWN THEATRES, L.P.,

                Plaintiff,

   -against-

MILTON L. DALY, TAYLOR-LEIGH, INC.
ANNE E. DALY, JAMES C. CELLA, G.U.S.
DEVELOPMENT, INC., JAMES T. MARTINO,
JAMES THOMAS MARTINO ARCHITECT,
P.C. and RCD HUDSON, LLC,

                Defendants.

Case No.  3:02 CV 2272 (AVC)

-----------------------------------------------------------------X

JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECT, P.C.

                Third-Party Plaintiffs,

   - against –

B.B. CONSTRUCTION CONSULTANTS,
LTD., DAVID CLIFFORD, and GLENN
GARFINKEL,

                Third-Party Defendants.

May 21, 2004

-----------------------------------------------------------------X

### MEMORANDUM OF LAW IN OPPOSITION TO CROWN THEATRE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JAMES T. MARTINO AND JAMES THOMAS MARTINO ARCHITECTS, P.C.

Defendants/Third-Party Plaintiffs James T. Martino ("Martino") and James Thomas Martino Architect, P.C. (the "Martino Firm") (hereinafter collectively referred to as the "Martino Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Crown Theatres L.P.'s Motion for Partial Summary Judgment. For the reasons set forth below, the within motion should be denied in its entirety.

## REPLY STATEMENT OF FACTS

Crown Theatres, L.P. ("Crown"), in support of its motion for summary judgment, suggests that its tilted rendition of the facts is undisputed. However, Crown distorts, omits and excludes relevant portions of the pre-trial record from the Court's consideration.

Crown's Second Amended Complaint alleges two counts (Counts VIII and IX) sounding in breach of contract and professional malpractice against the Martino Defendants. Specifically, Crown alleges that the Martino Defendants were negligent and breached its contract with Crown by: (1) failing to provide construction inspection of each of the projects and (2) certifying to Crown Theatres, without conducting on-site inspection or reviewing pertinent dates, that the work progressed as indicated in the payment applications, that the quality of the work was in accordance with the contract documents, and that the contractor was entitled to payment. (Crown's Second Amended Complaint at ¶¶ 247 and 251, annexed as Exhibit A[1]). The underlying bases for asserting the breach of contract and negligence claims against the Martino Defendants are identical.

Crown's statement of facts maintains that the Martino Defendants assert that the "Letter Agreement" establishes the terms of the agreement between Crown and the Martino Defendants. However, Crown fails to state that the agreement between Crown and the Martino Defendants was subsequently modified/amended by and between Martino and Milton Daly ("Daly"), Crown's Chief Operating Officer. Daly specifically eliminated/modified the term addressing monthly on-site visits by directing the Martino Defendants not to make site visits on certain out-of-town projects as those services would be duplicative of Robert Beacher ("Beacher"), who served as Crown's construction manager and owner's representative. (Deposition Transcript of James T. Martino at p. 109, annexed as Exhibit D). Beacher performed the on-site visits and was

---

[1] Exhibits referenced herein are contained in the Martino Defendants separate appendix.

responsible for all cost aspects of the projects. (Deposition Transcript of James T. Martino at pp. 109 and 295-296, annexed as Exhibit D).

Furthermore, Crown attempts to set forth the "process" undertaken by the Martino Defendants in processing payment applications. However, Crown's rendition of the "facts" is completely inaccurate and erroneous. Martino testified at length concerning his procedure for "processing" payment applications. Crown misleads the Court by intentionally omitting critical facts concerning the true manner in which the payment applications were processed. The Martino Defendants relied upon the prior certification of Beacher, as well as numerous other factors, including, inter alia, attendance at regular progress meetings, review of shop drawings and progress photos, discussions with Beacher, responses to RFI's, discussions with contractors, review of project correspondence, inspection certifications from local municipal officials as well as on-site visits prior to signing payment applications. (Deposition of James T. Martino at pp. 201-202, 325-326, 329-330, 335-337, 370-371 and 457-458, annexed as Exhibit D; see also Ronald Bertone's report, dated March 11, 2004 at p. 13, annexed as Exhibit L; Deposition of Ronald Bertone at pp. 111-118, annexed as Exhibit E).

Crown's statement of facts also distorts the Martino Defendants' Interrogatory Answers. Martino testified that the eighty-three dates set forth in the Interrogatory Answers are the dates that Martino, individually, visited the various sites as determined from his billing records, four to five year later (Deposition of James T. Martino at pp. 79-83, annexed as Exhibit D). The Interrogatory Answers, which are fully responsive to the question presented, are not a complete picture of the facts, since they do not represent the dates that other employees from the Martino Firm visited the project sites and, in fact, other employees from the Martino Firm did visit the various jobs sites. (Deposition of James T. Martino at pp. 81-83 and 264-265, annexed as

3

Exhibit D; Deposition of Timothy R. Harman at p. 45, annexed as Exhibit I; Deposition of

Richard Waas at pp. 82-83, annexed as Exhibit J; Deposition of Jeff Lee at pp. 20 and 47-48,

annexed as Exhibit K).

## LEGAL ARGUMENTS

## POINT I

### CROWN IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CONTRACT CLAIM AS AGAINST THE MARTINO DEFENDANTS

In any claim for breach of contract, the fundamental question for the Court to decide is if

the party breached the contract. "In a civil case, the general burden of proof rests upon the

plaintiff." Somers v. LeVasseur, 230 Conn. 560, 568 (1994) (Internal quotation marks omitted.)

"[A] breach of contract claim ... requires proof by a preponderance of the evidence." Foley v.

Huntington Company, 42 Conn.App. 712, 746, 682 A.2d 1026 (1996), *cert. denied*, 239 Conn.

931, 683 A.2d 397 (1996) *citing* Waicunas v. Macari, 151 Conn. 134, 137, 193 A.2d 709 (1963).

The Connecticut Supreme Court has stated that the preponderance of the evidence test "means

simply that the evidence must, when considered fairly and impartially, induce a reasonable belief

that the fact in issue is true." (Internal quotation marks omitted) State v. Warren, 169 Conn. 207,

213, 363 A.2d 91 (1975).

Crown's entire argument, while disputing that the "Letter Agreement" provides the basis

for "agreement" between the Martino Firm and Crown, rests on the concept that the Martino

Defendants breached the terms of the "Letter Agreement" by not making up to ten (10) monthly

site visits. Crown's motion for summary judgment should be denied in its entirety, because there

are material questions of fact as to the terms of the contract, whether the contract was modified,

whether there was a breach of contract by the Martino Defendants and whether the alleged breach was material.

The sole basis for Crown's motion for summary judgment is that the "Letter Agreement" is a fully integrated agreement that was never modified by the parties. Crown's summary judgment motion, however, is flawed in numerous respects. First, Crown fails to assert in any of its pleading that it is seeking recovery based on the Martino Defendants failure to make monthly site visits pursuant to the "Letter Agreement." Second and more importantly, the terms and obligations in the "Letter Agreement" were subsequently modified by Crown, through Milton Daly, Crown's Chief Operating Officer, specifically to eliminate the Martino Defendants' site visit obligations on certain out-of-town projects. Finally, the Martino Defendants satisfied the terms and conditions of the "Letter Agreement" by making at least ten (10) site visits.

A.    **Crown Fails To Assert In Any Pleading That It Is Seeking Recovery Based On The Martino Defendants Failure To Make Monthly Site Visits Pursuant To The "Letter Agreement."**

It is a foundational purpose of the complaint to limit the issues to be decided at the trial and to prevent surprise. Board of Education v. Commission on Human Rights & Opportunities, 177 Conn. 75, 411 A.2d 40 (1979); Lundlberg v. Kovacs, 172 Conn. 229, 374 A.2d 201 (1977). The right of a plaintiff to recover is limited to the allegations set forth in the pleadings. Kawasaki Kisen Kaisha, Ltd. V. Indomar, Ltd., 173 Conn. 269, 377 A.2d 316 (1977); Strimiska v. Yates, 158 Conn. 179, 257 A.2d 814 (1969); Nash Engineering Co. v. Norwalk, 137 Conn. 235, 75 A.2d 496 (1950). "A plaintiff may not allege one cause of action and recover upon another. Facts found but not averred cannot be made the basis for a recovery." Francis v. Hollauer, 1 Conn.App. 693, 475 A.2d 326 (1984) *citing* Malone v. Steinberg, 138 Conn. 718, 89 A.2d 213 (1952); *see also* Schaller v. Roadside Inn, Inc., 154 Conn. 61, 221 A.2d 263 (1966).

Crown clearly and specifically set forth in numerous pleadings the alleged conduct of the Martino Defendants, which according to Crown, establishes that the Martino Defendants breached its agreement with Crown.  In the Second Amended Complaint, Crown specifically alleges that Martino and the Martino Firm breached their duties to Crown Theatres by:

a.    Failing to provide construction inspection of each of the projects;

b.    Failing to monitor the projects to insure that the work had been completed and materials furnished in the manner described in payment applications;

c.    Failing to apprise Crown Theatres that work described in payment applications had not been completed or furnished to the projects;

d.    Failing to apprise Crown Theatres that work described in payment applications was outside the scope of Crown Theatres' construction responsibilities at these projects; and

e.    Certifying to Crown Theatres, without conducting on-site inspection or reviewing pertinent data that the work had progressed as indicated in the payment applications, that the quality of the work was in accordance with the contract documents, and that the contractor was entitled to payment.

Crown's Second Amended Complaint at ¶ 247, annexed as Exhibit A.

Furthermore, in Crown's Interrogatory Answers to the Martino Defendants Crown alleges:

> Martino Defendants failed to perform on-site observations, failed to adequately inspect, monitor and supervise work; failed to insure the work had been completed; failed to insure that proper materials had been furnished; certified payment applications where the work had not progresses as indicated, . . .

Crown Interrogatory Answers at p. 5, response to Interrogatory 1(x), annexed as Exhibit B.

Crown's Interrogatory Answers also note that its claims against the Martino Defendants for breach of contract rest upon the Martino Defendants failure to perform and discharge its functions and responsibilities reasonably expected of a licensed professional architect engaged to work on a series of major construction projects throughout the United States. *See* Crown Interrogatory Answers at p. 11, response to Interrogatory 10, annexed as Exhibit B.  Crown particularized its understanding of the Martino Defendants' role and responsibility in its response

to Interrogatories 3 and 4, which makes absolutely no reference to a failure to make monthly site visits:

> He was responsible for performing and discharging all functions and responsibilities reasonably to be expected of a licensed professional architect engaged to work on a series of major construction projects throughout the United States. His duties included ensuring that work on the Theatre Projects was performed in a proper manner with proper materials, and to certify payment to contractors only upon verification that contractors had performed the work as stated in the applications for payment. His responsibilities included the preparation of drawings and specifications; performing on-site obligations; inspection, monitoring and supervising work; insuring that work had been completed; insuring that property materials were furnished; certifying that work had progressed as indicated on payment applications; certifying that work was in accordance with contract documents; certifying that work described on payment applications was performed; certifying that the quality of the work was in accordance with contract documents; conducting on-site observations in connection with certifying payment applications; informing Crown Theatres that work described in payment applications had not been performed; and informing Crown Theatres if work described in payment applications was outside the scope of Crown Theatres' responsibilities. Martino's duties are spelled out in part in the architect's certificates for payment which he signed.

Crown Interrogatory Answers at pp. 6-7, response to Interrogatories 3 and 4, annexed as Exhibit B.

Crown avers no allegations in any pleading, including the Second Amended Complaint and Interrogatory Answers, which allege or even suggest "the Martino Defendants breached the terms of the Letter Agreement by not making monthly site visits." Crown is only entitled to recover for those allegations, which it has plead and provided specific information to the Martino Defendants. Connecticut law prohibits Crown from asserting any new allegations at this late stage of the litigation. It is unduly prejudicial to the within Defendants for Crown to assert

additional grounds for seeking recovery, since discovery has been complete for approximately

two months and this matter is currently scheduled for trial on July 1, 2004.

**B.      Crown Omits Testimony That The Terms And Obligations In The "Letter      Agreement" Were Subsequently Modified By Crown To Eliminate The Martino Defendants' Site Visit Obligations.**

Crown incorrectly asserts, "the Martino Defendants maintain that their contractual

relationship with Crown Theatres is spelled out by the Letter Agreement." However, Crown

conveniently omits that Martino testified not only that the "Letter Agreement" served as the basis

for subsequent agreements with Crown on the various individual theater projects (Deposition of

James T. Martino at p. 90, annexed as Exhibit D), but, more importantly, that the "Letter

Agreement" was subsequently modified by Crown, through its Chief Operating Officer, Daly, to

eliminate the requirement of on-site visits:

> Q:      Why didn't you always make on-site inspections at Annapolis, Miami and Skokie before signing architect certificates?
>
> A:      Because one of the Friday morning meetings, Mr. Daly made the announcement that Bob Beacher [Robert Beacher – Crown's independent owner's representative/construction manager] would be the eyes and ears for Crown Theatres at the job sites. And therefore, Martino will not be going because Crown feels it's a duplication of services. And since Bob is going to be there, Bob will take care of that service.

Deposition Transcript of James T. Martino at p. 109, annexed as Exhibit D; _See also_ Deposition
Transcript of James T. Martino at p. 297, annexed as Exhibit D.

Clearly, the testimony of Martino as to any subsequent modification of the "Letter

Agreement" raises a triable question of fact for the jury to determine the specific terms of the

Martino Defendants' contractual obligations with Crown, and whether these terms were

materially breached.

**C.    The Martino Defendants Satisfied The Terms And Conditions Of The**
**"Letter Agreement" By Making At Least Ten (10) Site Visits.**

Crown moves for summary judgment on the basis of a single line in a four-page document, without any reference to the remaining portion of that provision. The "Letter Agreement" also provides for a total of ten (10) site visits. The Interrogatory Answers by the Martino Defendants sets forth admissible evidence that Martino, himself, on four out of the six subject projects performed at least ten (10) site visits and on one project (Hartford, Connecticut) performed as many as twenty-seven site visits. _See_ The Martino Defendants' Interrogatory Answers, response to Interrogatory 2 for Hartford, annexed as Exhibit C.

Furthermore, Crown seeks to mislead the Court by suggesting that the information provided in the Martino Defendants' Interrogatory Answers is the number of visits performed and dates of those visits by the Martino Defendants. However, the eighty-three different dates set forth in the Martino Defendants' Interrogatory Answers are only the dates that Martino individually visited the site based on information extrapolated from billing records that are four to five years old. _See_ Deposition of James T. Martino at pp. 79-82, annexed as Exhibit D. The Interrogatory Answers represent the dates that Martino, individually, went to the various sites, and do not reference site visits performed by other employees of his firm. _See_ Deposition of James T. Martino at pp. 81-83, annexed as Exhibit D. Martino testified that various other individuals employed by the Martino Firm visited the job site to perform on-site inspections.

Q:    But, in fact, you didn't visit the sites once a month, did you?

Mr. Seiden:    On which projects are you referring?

A.    I am assuming you are speaking about this Trumbull project in your
question.

Q:    In this question, sir, let's answer it regarding Trumbull.

A:      I submitted dates of when I went there.  Could there have been dates when someone from my staff might have went there also, yes.
So I can't say, sitting here right now, whether we did every month or not.  I believe we did.

Deposition of James T. Martino at pp. 264-265, annexed as Exhibit D.

This was supported by other testimony, including that of Timothy R. Harman, vice-president of design and construction of Heffner & Weber, the general contractor on the Annapolis project, who testified that either Martino or a representative from the Martino Firm came out to the site monthly.

Q:      And if you didn't meet him [Martino] there when did you meet him first?

A:      At the job site.

Q:      And at what phase or stage of work was that?

A:      He came out, and it was either him or his representative monthly.

Deposition of Timothy R. Harman at p. 45, annexed as Exhibit I.

Furthermore, several other non-party witnesses who appeared on behalf of the various general contractors confirmed that other employees of the Martino Firm performed on-site visits. Richard Waas, president of Waas Construction Company, the general contractor on the Miami project testified that he recalled Gary Schiede, from the Martino firm, visiting the site.  _See_ Deposition of Richard Waas at pp. 82-83, annexed as Exhibit J.  Jeff Lee, vice-president of operations of Coastal Construction, the general contractor on the Jupiter project testified that Gary Schiede was at the site.  _See_ Deposition of Jeff Lee at pp. 20 and 47-48, annexed as Exhibit K.

Therefore, the Martino Defendants Interrogatory Answers are not the total count on the frequency of visits by the Martino Defendants.  It is up to the trier of fact to determine whether

the Martino Defendants, based on the terms of the contract, as modified, made the requisite number of site visits.

The frequency of the Martino Defendants visits is also intertwined with the purpose of a site visits.   An architectural site visit is performed to determine whether the completed construction generally conforms to the intent of the plans and specifications.  Accordingly, site visits are made at intervals appropriate to the stage of construction.  Crown without explanation attempts to paint a picture of unjustified lengthy gaps between the visits.  Crown fails to address the reasons for the intervals between visits conducted by Martino, himself.  For example, an initial visit was made for the purpose of conducting an existing condition survey, locating the site and surveying the site for field conditions.  Other visits many not have been made for several months because during that period design drawings may have been prepared, the contractor selected and preliminary construction started (for example site work).  All this work must be accomplished before the need arises to conduct a further site visit.  Another scenario is that at times construction may not be proceeding timely or that outside forces impacted the construction schedule.  It would be illogical and wasteful for an architect to make monthly site visits when there was no construction or at a stage of construction where a site visit was unnecessary. Furthermore, during the winter months, construction often slows down and at times stops completely.  Accordingly, a monthly site visit would be unnecessary.

In conclusion, Crown has failed to establish its burden of proof for summary judgment. Not only do the parties dispute the applicable terms of the agreements between Crown and the Martino Defendants, but there are also questions of fact as to whether the Martino Defendants satisfied these terms.  Since summary judgment shall only be granted if there is no genuine issue of material fact after viewing all the evidence in light most favorable to the non-moving parties

(the Martino Defendants), Crown's motion for summary judgment on its breach of contract claim should be denied. Summary Judgment is only appropriate when there is only one conclusion that could be reached by a fair and reasonable person, similar to a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); see also Morascini v. Commissioner of Public Safety, 236 Conn. 781, 808, 236 A.2d 1340 (1996); Sherwood v. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). A reasonable and fair person could find that the terms of the agreement were modified/amended thereby eliminating the provision requiring on-site visits, or, in the alternative, that the Martino Defendants conducted the requisite number of on-site visits. The evidence and testimony submitted by the Martino Defendants herein overwhelmingly establishes the existence of material questions of fact. Accordingly, Crown's motion for summary judgment as to the breach of contract claim should be denied it its entirety.

## POINT II

### CROWN IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS PROFESSIONAL NEGLIGENCE CLAIM AGAINST THE MARTINO DEFENDANTS

Crown also seeks summary judgment on its professional negligence claim alleging that the Martino Defendants deviated from the standard of care by signing architect's certificates for fictitious entities and for paying "referral fees" to Beacher, Crown's owner's representative/construction manager. Generally, "issues of negligence are ordinarily not susceptible of summary judgment adjudication but should be resolved by trial in the ordinary manner." Muraca v. Bailey's Express, Inc., 1993 WL 197771 (Conn.Super. May 28, 1993)[2] citing Spencer v. Good Earth Restaurant Corp., 164 Conn. 194, 319 A.2d 403 (1972); see also Fogarty v. Rashaw, 193 Conn. 442, 476 A.2d 582 (1984).

---

[2] Annexed as Exhibit O.

12

A.      **Crown Has Failed To Establish, As A Matter Of Law, That The Martino Defendants Handling Of The Architect's Certificate Was A Deviation From The Standard Of Care.**

Crown is not entitled to summary judgment on its professional negligence claim based on the manner in which the Martino Defendants may have signed the architect's certificate. First, there is no evidence to establish that the Martino Defendant deviated from the applicable professional standard of care. At a minimum, there are questions of fact created by the competing opinions of the two experts witnesses. Second, even assuming that the Martino Defendants deviated from the applicable professional standard of care, Crown has not and cannot establish that if any deviation existed, that the deviation was the proximate cause of Crown's damages.

i)      **The two architectural experts dispute whether The Martino Defendants deviated from the applicable professional standard of care.**

Crown misinforms the Court concerning the evidence and testimony set forth in this case by its liability expert witness, Peter Steffian ("Steffian") and the Martino Defendants expert witness, Ronald Bertone ("Bertone"). Crown cites, out of context, to six lines of Bertone's 230-page deposition transcript without providing the Court with the full context in which the question quoted on page 14 of Crown's Memorandum of Law was asked. Specifically, the prior questions and answers clarify and establish the facts upon which Bertone responded. The entire section reads as follows:

> Q:      Let me ask you this. If Mr. Beacher handed Mr. Martino a stack of payment applications and said to Mr. Martino sign them and Mr. Martino went ahead and signed them, would Mr. Martino's conduct comply with the standard of reasonable professional care for an architect?
>
> Ms. Lanza:      Just under those very limited facts that you have given him? Nothing else?
>
> A:      Repeat the question, please.

13

(Record read.)

A.    And there was no discussion preceding that statement?

Q:    Yes.

A:    And there was no review by Martino of the construction photos or visits to the construction site or anything else involving the compliance with the contract documents?

Q:    Yes, If Mr. Beacher simply handed the stack of payment applications to Mr. Martino and said sign them and Mr. Martino based only on that proceeded to sign the architect certificates, would that be acceptable for a professional architect?

A:    I would have to say no.

Deposition of Ronald Bertone at pp. 126-127, annexed as Exhibit E.

Bertone did not opine in this testimony on the method in which the Martino Defendants actually reviewed the payment applications at issue. The response was limited to the assumed factual scenario, which is not consistent with the Martino testimony as to the professional services he rendered prior to processing the pay applications.    Bertone in his report and deposition repeatedly referenced to what Martino testified as his "review" process and what specifically it entailed:

> Martino reviewed the work with regard to quality being in accordance with the Contract Documents; and therefore, he complied with the agreement with Crown.  Martino also learned the progress and quality of the work through his attendance at regular progress meetings, review of site notes, review of progress photos, discussions with Beacher, responses to RFI's, discussions with contractors, and review of project correspondence. In doing so, Martino complied with the applicable Standard of Care in conjunction with the Application for Payment.

Ronald Bertone's report, dated March 11, 2004 at p. 13 (emphasis added), annexed as Exhibit L; *see also* Deposition of Ronald Bertone at p. 111-118, annexed as Exhibit E; Deposition of James T. Martino at pp. 201-202, 325-326, 329-330, 335-337, 370-371 and 457-458, annexed as Exhibit D.

14

Crown continues throughout its moving papers to misquote testimony and evidence. On page 15 of its moving papers, Crown references that Bertone "punted on the subject" in connection with whether Martino "should have noticed that the fictitious invoices were fraudulent." In the actual testimony, Bertone testified that he did not have an opinion as to whether the invoices were fictitious or whether Crown should have paid them.

> Q:    Do you agree that Crown Theatres should not have been caused to pay money to Hewlett, Tiger, Marlin and G.U.S.?
>
> A:    I can't answer that.
>
> Q:    Why not?
>
> A:    Because I haven't evaluated that portion of the project.
>
> Q:    Do you have an opinion as to whether the payment applications submitted by Marlin, Tiger, Hewlett and G.U.S. were fraudulent?
>
> A:    No, I don't have an opinion on that.

Deposition of Ronald Bertone at p. 175, annexed as Exhibit E.

Nowhere does Bertone "punt" on the issue or refuse to provide his expert opinion. Bertone's position on all the relevant issues as they apply to the Martino Defendants is clear. Bertone was retained to provide his expert opinion as to the conduct of the Martino Defendants; not whether the invoices were fraudulent. That Crown may not like Bertone's ultimate conclusion does not excuse Crown from attempting to deceive the Court as to the substances of his opinion. Bertone's professional opinion is that the Martino Defendants did not deviate from the standard of care:

> Within the bounds of reasonable architectural and technical certainty and subject to revisions should additional information become available, it is my professional opinion that James T. Martino, AIA, Architect, doing business as James Thomas Martino, Architect, P.C., did comply with the Standard of