> Reasonable Professional Care in furnishing architect services to
> Crown Theatres.

Ronald Bertone's report, dated March 11, 2004 at p. 17 (emphasis added), annexed as Exhibit L. This testimony alone raises an issue of fact sufficient to defeat Crown's motion for summary judgment on the professional negligence claim.

Furthermore, Crown cites to the Steffian's Second Supplemental Report of March 2, 2004, which totals 16 pages. The Martino Defendants rejected this report on March 4, 2004, as violating the then applicable Case Management Order of October 16, 2003.[3]  _See_ Case Management Order, dated October 16, 2004, annexed as Exhibit M.  The Case Management Order provided that all of Plaintiff's expert reports were to be issued on or before November 30, 2003.  The March 4, 2004 report was thus issued in direct violation of the October 16, 2003 Case Management Order.   The March 4, 2004 report was also inconsistent with the parties understanding that Steffian would issue one supplemental report after the deposition of Martino was completed but before Steffian was deposed on February 17, 2004.  Steffian did issue a supplement report consistent with the parties understanding on February 13, 2004.  Furthermore, the March 2, 2004 report was also issued after the deadline for defendants to conduct expert depositions on or before February 25, 2004.   Therefore, the Court should not consider the opinion set forth therein. _See_ Mark Seiden's letter dated March 4, 2004, annexed as Exhibit N.

**ii)     The Martino Defendants did not deviate from the applicable standard of care in connection with the Payment Applications.**

In support of its position that the Martino Defendants deviated from the standard of care, Crown has only referenced the opinion of its expert witness. Crown alleges that the "review" process utilized by the Martino Defendants was solely Martino signing-off on payment

---

[3] The subsequent case management order issued by the Court did not affect the deadline to file expert reports.

applications while in the car with Beacher. Crown ignores a plethora of testimony and evidence regarding the entirety of "review" process.

The evidence and testimony submitted in this case demonstrates that the Martino Defendants reasonably relied upon the representation of Beacher and on various other independent factors, such as attendance at regular progress meetings, review of site notes, plans, shop drawings and progress photos, discussions with Beacher, prior certification of Beacher, responses to RFI's, discussions with contractors, review of project correspondence and even on-site visits prior to signing payment applications. *See* Deposition of James T. Martino at pp. 201-202, 325-326, 329-330, 335-337, 370-371 and 457-458, annexed as Exhibit D; *see also* Ronald Bertone's report, dated March 11, 2004 at p. 13, annexed as exhibit L; Deposition of Ronald Bertone at pp. 111-118, annexed as Exhibit E. The Martino Defendants were also entitled to rely on the inspection certifications from local municipal officials. *See* Ronald Bertone's Report, dated March 11, 2004 at p. 13, annexed as Exhibit L. Clearly, there was much more to the "review" process than what Crown has presented to the Court in its moving papers. In fact, it is Steffian who "punts" on the issue of professional negligence by failing to address the actual process undertaken by the Martino Defendants. It is Steffian who is silent when rendering an opinion on this full and accurate set of facts disclosed during discovery.

Furthermore, the manner in which Crown delegated the responsibilities of the various parties, including the division of tasks among Beacher and the Martino Defendants, required Beacher to certify the amount due to the contractors; not the Martino Defendants. The Martino Defendants were not involved in certifying the amounts due to the contractors. In fact, the Martino Defendants were not involved in negotiating the leases with the landlords, the issuance of construction contracts, the division of labor between Crown and the landlord or scope of

17

work/schedule of values for the trade contractor. *See* Deposition of James T. Martino at pp. 206, 215-216 and 295-296, annexed as Exhibit D; *See also*, Deposition of Robert Beacher at pp. 68-69, 79-80, 95-97, 153-154, 202 and 204, annexed as Exhibit F; Deposition of Richard Waas, president of Waas Construction (Miami Project) at p. 100 (Beacher negotiated the contract on behalf of Crown. Martino had no involvement with the negotiation of the general contract), annexed as Exhibit J; Deposition of Timothy R. Harman, vice-president of design and construction for Heffner & Weber (Annapolis Project) at p. 123 (Beacher negotiated the general contract between Crown and Heffner & Weber for the Annapolis project), annexed as Exhibit I; Deposition of Jeff Lee, vice-president of operations for Coastal Construction Group (Jupiter project) at p. 16 (Coastal's primary contact with Crown was Beacher), and at p. 18-19 (Coastal did not have contact with Martino during the negotiation of their contract or during the bidding phase), annexed as Exhibit K.

Therefore, it is not a departure from the standard of care for Martino to acknowledge that he did not know the identity (including addresses) of the hundreds of trade contractors, subcontractors and suppliers on the projects or the dollar amount or scope of their individual contracts. The expansion program undertaken by Crown encompassed more than the six projects at issue herein.    The Martino Defendants were retained by Crown to act as the architect of record.  As such, the Martino Defendants were only to opine, to the best of its knowledge, information and belief that the contractor's work generally conformed to the intent of the construction documents, *i.e.* the drawings and specifications.  Crown, fully aware of the Martino Defendants' limited scope, retained the services of Beacher and/or B.B. Construction Consultants (Beacher's entity) to act as the "eyes and ears" (owner's representative/construction manager) of Crown on the various projects.  Not only does the testimony of the various general

18

contractors support this fact, but Beacher, himself, corroborates the active and involved role undertaken by him. Id. Deposition of Robert Beacher at pp. 68-69, 79-80, 95-97, 153-154, 202 and 204, annexed as Exhibit F; *See also* Deposition of Milton Daly at p. 115, annexed as Exhibit G. It was Beacher who was obligated to supervise construction, to evaluate the progress and quality of the work and to approve the percentage and amount of the payment applications. *See* Deposition of Richard Waas, president of Waas Construction (Miami project) at pp. 37- 38 (The application of payment would be forwarded to Robert Beacher for either approve or corrections before being issued for payment), annexed as exhibit J; Deposition of Timothy R. Harman, vice-president of design and construction for Heffner & Weber (Annapolis Project) at pp. 51-52 and 53-54 (The requisitions and change orders were submitted to Beacher and not to the Martino Defendants), annexed as Exhibit I; Deposition of Jeff Lee, vice-president of operations for Coastal Construction Group (Jupiter project) at pp. 55-56 (Notwithstanding the fact that Coastal's contract was with the landlord, change orders were submitted to Crown through Beacher), annexed as Exhibit K.

Crown also disregards the fact that the "architect's certificate" is not absolute or unqualified. As explained in greater detail by Bertone in his report and deposition, the Martino Defendants complied with the Architect's Certificate:

> In accordance with the Contract Documents, *[drawings and specs prepared by the Martino Defendants]* based on on-site observations *[which were performed by the Martino Defendants]* and the data comprising the above application *[based on a review of documents (see above a listing of the various documents), discussions with Beacher and contractors and prior certification of Beacher, as owner's representative/construction manager]*, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief *[qualified and conditional]* the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Document *[generally conforms with*

19

> *the intent of the contract documents]*, and the Contractor is entitled
> to payment of the AMOUNT CERTIFIED.

<u>See</u> Ronald Bertone's report, dated March 11, 2004 at p. 12-13, annexed as Exhibit L.

Bertone also points out that the Standard Form of Agreement Between Owner and

Architect, AIA Document B141 (1987 Edition)[4] contains a specific provision addressing the

issue of Certificate of Payments (a/k/a Payment Applications).  The AIA states that the

> issuance of a Certificate of Payment shall not be a representation
> that the architect has (1) made exhaustive or continuous on-site
> inspections to check the quality or quantity of the work . . . or (3)
> reviewed copies of requisitions received from Subcontractors and
> material suppliers and other data requested by the Owner to
> substantiate the Contractor's right to payment or (4) ascertained
> how or for what purpose the Contractor has used money previously
> paid on account of the Contract Sum.

<u>See</u> Ronald Bertone's report, dated March 11, 2004 at pp. 14-15, annexed as Exhibit L.  The

same standard agreement also provides that it is the Owner's responsibility to furnish all services

necessary to "verify the Contractor's Applications or Payment."  <u>Id</u>.

iii)    **Assuming *arguendo* Crown can establish a deviation from the
standard of care, Crown cannot as a matter of law establish that the
deviation was the proximate cause of its damages.**

It is hornbook law that in any negligence claim, the plaintiff has the burden of proof to

establish that the defendant owed a duty of care, that the defendant breached that duty by failing

to meet the appropriate standard of care and that breach was the proximate cause of the actual

harm suffered by the plaintiff.  <u>Coburn v. Lenox Homes, Inc.</u>, 186 Conn. 370, 441 A.2d 620

(1982); <u>Coste v. Riverside Motors, Inc.</u>, 24 Conn. App. 109, 585 A.2d 1263 (App. 1990).

Notwithstanding Crown's rendition of the elements for a successful negligence claim, Crown

---

[4] This standard form of agreement is published by the American Institute of Architects and is considered a standard within the industry.

fails to address the key element of professional negligence specifically that the breach was the proximate cause of the actual harm suffered by the plaintiff.

The Martino Defendants have filed their own motion for summary judgment seeking the dismissal of Crown's two counts sounding in breach of contract and professional negligence on the grounds that Crown has failed to establish that the alleged conduct of the Martino Defendants was the proximate cause of Crown's damages.  A complete and detailed discussion of Crown's failure to set forth that the alleged negligence conduct of the Martino Defendants was a substantial factor in producing Crown's damages and/or that the conduct of third-parties (Daly and Beacher) broke the causal chain thereby preventing the Martino Defendant from being liable for the harm caused by another's conduct is contained in the Martino Defendants' Memorandum Of Law In Support Of Their Motion For Summary Judgment.

Simply stated, if Crown's contention is assumed that there was a departure from the applicable standard of professional care in processing pay applications, such negligence could not have proximately have caused Daly and/or Beacher to manifest the intent to embezzle monies from Crown. There is no dispute that Crown's damages were the direct result of Daly and Beacher's intent to embezzle Crown's money.  Crown put Daly in one of the highest position of authority in Crown organization.  Daly was charged with the responsibility for oversight of all operations, finance, human resources, legal and corporate administration functions. He was also responsible for managing and overseeing Crown's construction projects, including its renovation and expansion programs, for approving all invoices for payment from Crown to third parties relating to the construction activities, and for approving and signing all checks made payable to third parties by Crown if the amount of the check exceeded $5,000. *See* Crown's Second Amended Complaint at ¶¶ 36–37, annexed as Exhibit A.  Therefore, not only

21

did Crown not rely upon the Martino Defendants' signature as predicate for paying invoices, since Crown's accounting department paid all invoices solely upon the signature of Milton Daly (*See* David Clifford Deposition Transcript, dated March 12, 2004 at pp. 175-177, annexed as Exhibit H), but Crown paid numerous payment applications, without the signature of the Martino Defendants or with fraudulent signatures.

Crown is seeking summary judgment on its professional negligence claim solely on the mistaken belief that it has established a departure from the standard of care. As set forth above, Crown has not established a departure from the standard of care, but Crown also fails to prove, as a matter of law, that the alleged conduct of the Martino Defendants was the proximate cause of its damages. Crown must prove not only a departure from the standard of professional care, but also that the departure is the substantial factor in the resulting harm and thereby the proximate cause of that harm. Boehm v. Kish, 201 Conn. 385, 517 A.2d 624 (1986); Kowal v. Hofher, 181 Conn. 355, 436 A.2d 1 (1980); Coburn v. Lenox Homes, Inc., 186 Conn. 370, 441 A.2d 620 (1981). Crown is only entitled to seek recovery for those damages proximately caused by the defendants' wrongdoing. Mourison v. Hansen, 128 Conn. 62, 20 A.2d 84 (1941). Thus, even if we assume that the Martino Defendants breached the standard of care, as alleged by Crown, if that breach was not a proximate cause of the injury, there can be no liability. Id.

**B.     The Payment of "Referral Fees" Is Not Relevant To The Within Action.**

Crown attempts to seek summary judgment against the Martino Defendant based on a claim, which it has failed to assert in any of its pleadings. As set forth in section I(a) above, Crown is only entitled to seek recovery for the allegations plead in its pleadings. Nowhere in Crown's Second Amended Complaint or Interrogatory Answers has Crown alleged that it

22

seeking to recover against the Martino Defendants for allegedly violating an ethical regulatory provision.

More importantly, Crown, as a matter of law, cannot seek damages against the Martino Defendants based on a violation of ethical regulations. Crown's moving papers concludes that the Martino Defendants practice of forwarding Beacher money for the referral of business is a violation of applicable state law and constitutes negligence per se. However, these ethical regulations are sources of monitoring and regulating architects that practice within their respective states and do not give rise to civil liabilities. Woodbridge Care LLC v. Englebrecht & Griffin Architects, P.C., 1997 WL 162808 (Conn.Super. Mar. 27, 1997).

Crown presents no authority for its claim that an alleged breach of professional ethical code constitutes a cause of action. The two cases cited by Crown are distinguishable and not on point with the facts herein. The Court in Heritage Village Master Ass'n v. Heritage Village Water Co., 30 Conn.App. 693, 622 A.2d 578 (1993) found that a jury could find negligence per se if they first found that the defendant water company failed to provide safe and adequate water pursuant to the regulations mandated by Connecticut Department of Public Utility. The Court in Shackles v. Pfizer, 2003 Conn.Super. LEXIS 3237 (Dec. 1, 2003) dealt with the application of penal code on issue of harassment towards a civil action against plaintiff's employer and whether Plaintiff could establish the two-prong test for negligence per se. Neither holding is applicable to the matter at hand. Crown makes no attempt to even argue that it is able to establish the two-prong test for negligence per se.

However, in a case on point, the Court in Woodbridge Care LLC v. Englebrecht & Griffin Architects, P.C., 1997 WL 162808 (Conn.Super. Mar. 27, 1997), found that while "violation of the AIA Code of Ethics may subject an architect or a firm to disciplinary sanctions

23

by the profession, the Code does not create a cause of action upon which a civil remedy may be based, and the plaintiff has therefore failed to prove a likelihood of success on the merits of that claim." Woodbridge, 1997 WL at *3 (emphasis added). *See also* Leavenworth v. Mathes, 38 Conn.App. 476, 661 A.2d 632 (1995); Noble v. Marshall, 23 Conn.App. 227, 579 A.2d 594 (1990).

Moreover, there is a battle of the experts between Steffian (Crown's architectural expert)[5] and Bertone (the Martino Defendants' architectural expert) as to whether the payment of "referral fees" is a violation of certain architectural licensing regulations. Bertone in a very detailed and length opinion analyzed the relationship between the Martino Defendants and Beacher and their long-standing practice. Bertone's opinion is that the payment of sums of money by the Martino Defendants to Beacher does not violate any architectural licensing regulations or code of ethics cited by Crown. *See* Ronald Bertone's report, dated March 11, 2004 at pp. 15-17, annexed as Exhibit L. Bertone opines that

> Martino did not violate any rules, laws, or regulations of any State Board governing the practice of architecture within any of the states in which he provided services to Crown Theatres. Martino did not violate the American Institute of Architects Code of Ethics and Professional Conduct or the National Council of Architectural Registration Board's Rules of Conduct in the performance of professional architectural services provided to Crown Theatres.

*See* Ronald Bertone's report, dated March 11, 2004 at p. 18, annexed as Exhibit L.

---

[5] Notwithstanding the fact that Crown makes no reference to its own architectural expert report on the issue of "referral fees," Steffian only discusses the potential violation of Connecticut and New York regulations (as well as regulations in Illinois, Maryland and Florida) in the March 2, 2004 report. As noted above, this report was issued well after the deadline to issue expert reports and produce Steffian for depositions.

24

## POINT III

**THE MARTINO DEFENDANTS HAVE RAISED NUMEROUS QUESTIONS OF FACT
SUFFICIENT FOR A DENIAL OF CROWN'S SUMMARY JUDGMENT**

Crown's motion for summary judgment is filled with erroneous and inaccurate statements of fact and law. As set forth above at great length, Crown is not entitled to summary judgment on either its contract or professional negligence claims. Crown failed to present sufficient evidence to establish its entitlement to summary judgment on its contract claim. Crown has not plead that it is seeking recovery on the basis that the Martino Defendants failed to make monthly site visits pursuant to the "Letter Agreement," but the evidence establishes that the Martino Defendants did satisfy the terms and conditions of the "Letter Agreement" by making at least ten site visits, and the Interrogatory Answers evidences only the approximate dates upon which Martino, individually visited the sites and not whether any other employees from the Martino Firm conducted site visits. Furthermore, Crown does not even advise the Court of testimony confirming that the "Letter Agreement" was subsequently modified/amended by Crown, through Milton Daly. Therefore, these facts clearly create a question of fact for the jury.

Crown has also failed to present sufficient evidence establishing that there is no question of fact as to the issue of professional negligence. There is disputed expert testimony on whether the alleged conduct of the Martino Defendants was a deviation of the applicable standard of care. Furthermore, Crown cannot and has not established that if a deviation of the standard of care existed, it was not the proximate cause of its damages. Finally, Crown cannot, as a matter of law, seek damages against the Martino Defendants based on a violation of ethical regulations.

25

## CONCLUSION

In conclusion, Crown is not entitled to summary judgment, since the facts and inferences when viewed in light most favorable to the non-moving party, raise numerous and genuine issues of material facts to be reserved for trial. Therefore, Crown's motion for summary judgment should be denied in its entirety.

RESPECTFULLY SUBMITTED,

DEFENDANTS/THIRD-PARTY PLAINTIFFS
JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECTS, P.C.

By: _____

      Mark Seiden (ct 24637)
      Marisa Lanza (ct 24554)
      MILBER MAKRIS PLOUSADIS
      & SEIDEN, LLP
      3 Barker Avenue, 6th Floor
      White Plains, New York 10604
      (914) 681-8700
      (914) 681-8709 (fax)
      mseiden@milbermakris.com
      mlanza@milbermakris.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify and I a copy of the foregoing **Memorandum Of Law In Opposition to Crown Theatre's Motion For Partial Summary Judgment Against James T. Martino and James Thomas Martino Architects, P.C.** was served by first class mail, postage prepaid, on all counsel of record in this action on the 21st day of May 2004, upon:

Craig C. Martin, Esq.
Lawrence S. Schaner, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611

H. James Pickerstein, Esq.
Jodi Zils Gagne, Esq.
Pepe & Hazard, LLP
30 Jelliff Lane
Southport, CT 06490

Kerry M. Wisser, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Robert M. Frost
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd
P.O. Box 1740
Bridgeport, CT 06601

Marisa Lanza