UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
CROWN THEATRES, L.P.,                          Case No. 3:02 CV 2272 (AVC)

              Plaintiff,

  -against-

MILTON L. DALY, TAYLOR-LEIGH, INC.
ANNE E. DALY, JAMES C. CELLA, G.U.S.
DEVELOPMENT, INC., JAMES T. MARTINO,
JAMES THOMAS MARTINO ARCHITECT,
P.C. and RCD HUDSON, LLC,

              Defendants.
---------------------------------------------------------------X
JAMES T. MARTINO and JAMES THOMAS
MARTINO ARCHITECT, P.C.

              Third-Party Plaintiffs,

  - against –

B.B. CONSTRUCTION CONSULTANTS,              May 21, 2004
LTD., DAVID CLIFFORD, and GLENN
GARFINKEL,

              Third-Party Defendants.
---------------------------------------------------------------X

## LOCAL RULE 56(a)(2) STATEMENT

In opposition to Plaintiff's Motion for Partial Summary Judgment, dated April 30, 2004 against the Defendants James T. Martino ("Martino") and James Thomas Martino Architects, P.C., ("Martino Firm")(collectively the "Martino Defendants") the Defendants James T. Martino and James Thomas Martino Architects, P.C., hereby responds by filing this Statement pursuant to Local Rule 56(a)(2):

1.  Denied, in that Martino Firm was retained by Crown Theatres to provide architectural services in connection with Crown Theatres' expansion program. (The Martino Defendants' Answer to Crown Theatres' Second Amended Complaint at ¶2; Deposition of James T. Martino at pp. 253-254)

2.  Admitted.

3.  Denied, in that the "Letter Agreement" was subsequently modified by agreement between Martino and Crown, acting through Milton Daly, its Chief Operating Officer, to not make site visits on certain projects as those services would be duplicative of Robert Beacher ("Beacher"), who served as Crown's construction manager and owner's representative and that the "Letter Agreement" also provides for a total of ten (10) site visits. (Deposition of James T. Martino at pp. 109, 297 and 261).

4.  Denied, in that the dates set forth in the Martino Defendants' Interrogatory Answers are not the total count on the frequency of visits by the Martino Defendants from (Deposition of James T. Martino at pp. 81-83), since these are the dates that Martino was able to extrapolated from billing records four to five years old and the Interrogatory Answers do not reference site visits performed by other employees of the Martino Firm. (Deposition of James T. Martino at p. 81-83; Deposition of Timothy R. Harman at p. 45; Deposition of Richard Waas at p. 82-83; Deposition of Jeff Lee at pp. 20, 47-48)

5.  Denied, in that Martino testified he signed the section entitled "Architect's Certificate For Payment" contained on the payment applications, which were marked as his deposition as Exhibits 18-23. (Deposition of James T. Martino at pp. 194-195 and 197-199). Furthermore, see response to number 4, above.

6. Denied, in that Martino testified he signed the section entitled "Architect's Certificate For Payment" contained on the payment applications, which were marked as his deposition as Exhibits 31-33. (Deposition of James T. Martino at pp. 194-195 and 197-199). Furthermore, see response to number 4, above.

7. Denied, in that Martino testified that he recognized his signature on two payment applications and he signed the section entitled "Architect's Certificate For Payment" contained on the payment applications, which were marked as his deposition as Exhibits 8 and 9. (Deposition of James T. Martino at pp. 135-137). Furthermore, see response to number 4, above.

8. Denied, in that Martino testified that he recognized his signature on the section entitled "Architect's Certificate For Payment" contained on the payment application, which were marked as his deposition as Exhibits 4, 35-37 and 39. (Deposition of James T. Martino at pp. 342, 350, 352, 354 and 356). Furthermore, see response to number 4 above. In addition, the statement calls for a legal conclusion as to the meaning of "approved."

9. Denied, in that Martino testified that he recognized his signature on the section entitled "Architect's Certificate For Payment" contained on the payment application, which was marked at his deposition as Exhibit 40. (Deposition of James T. Martino at pp. 363-364). Furthermore, see response to number 4 above. In addition, the statement calls for a legal conclusion as to the meaning of "certified."

10. Denied, in that Martino testified he recognized his signature on the section entitled "Architect's Certification For Payment" contained on the payment application, which was marked at his deposition as Exhibit 41. (Deposition of James T. Martino at p. 374). Furthermore, see response to number 4 above. In addition, the statement calls for a legal conclusion as to the meaning of "certified."

11. Admit that Beacher was Crown's on-site owner's representative/construction manager, but deny the remaining portions of the paragraph. It omits critical facts concerning the true manner in which the payment applications were processed. (Deposition of James T. Martino at pp. 201-202, 325-326, 329-330, 335-337, 370-371 and 457-458).

12. Admitted.

13. Denied, in that the Martino Defendants were not involved in negotiating the leases with the landlords, the issuance of construction contracts, the division of labor between Crown and the landlord or scope of work/schedule of values for the trade contractors. Furthermore, the Martino Defendants reasonable relied upon the prior certifications of Robert Beacher. (Deposition of James T. Martino at pp. 206, 215-216, 295-196).

14. The Martino Defendants are unable to admit or deny this statement, as it calls for information outside the information, knowledge or belief of these Defendants.

15. The Martino Defendants are unable to admit or deny this statement, as it calls for information outside the information, knowledge or belief of these Defendants, however, on certain payment applications the addresses of Marlin Consulting and Hewlett Consulting on payment application are the same as Beacher's homes in New York and Florida. (Deposition of James T. Martino at pp. 289 and 316)

16. Denied, in that the statement calls for a legal conclusion as to whether the nineteen referenced invoices are "fraudulent."

17. Admitted.

18. Admit that Martino and Beacher have know each other for approximately twenty-five years, however, Beacher introduced Martino to various clients that Beacher was also involved with. (Deposition of James T. Martino at pp. 52-53 and 60-64).

19. Denied, to the extent that "authenticated" calls for a legal conclusion and whether checks made payable to B.B. Construction Consultants is a Beacher's business.

20. Admitted.

### Disputed Issues of Material Fact

Crown in support of its motion for summary judgment relies upon its tilted rendition of the facts as being undisputed. However, Crown distorts, omits and excludes relevant portions of the pre-trial record from the Court's consideration. There are numerous disputed issues of material fact, which prohibit a granting of summary judgment. The Martino Defendants' position is more fully set forth in their Memorandum of Law In Opposition to Crown's Motion for Partial Summary Judgment, which has been filed in regards to the pending motion for summary judgment. However, a summary is as follows:

1. The Crown's contention that the "Letter Agreement" establishes the terms of the agreement between Crown and the Martino Defendants is incorrect. The agreement between Crown and the Martino Defendants was subsequently modified/amended by and between Martino and Milton Daly ("Daly"), Crown's Chief Operating Officer, wherein, Daly specifically eliminated/modified the term addressing monthly on-site visits by directing the Martino Defendants to not make site visits on certain projects since those services would be duplicative of Robert Beacher ("Beacher"), who served as Crown's construction manager and owner's representative. (Deposition Transcript of James T. Martino at pp. 109 and 297).

2. Crown fails to assert in any of its pleading that it is seeking recovery based on the Martino Defendants failure to make monthly site visits pursuant to the "Letter Agreement." Therefore, Crown is only entitled to recover for those allegations, which it has plead and

provided specific information to the Martino Defendants because Connecticut law prohibits Crown from asserting any new allegations at this late stage of the litigation. (Crown's Second Amended Complaint and Crown Interrogatory Answers).

3.  The Martino Defendants Interrogatory Answers are the dates that Martino, individually, visited the various sites as determined from his billing records, four to five years later. The Interrogatory Answers are not a complete picture of the facts, since they do not represent the dates that other employees from the Martino Firm visited the project sites. Therefore, the Interrogatory Answers are not the total count on the frequency of visits by the Martino Defendants. It is up to the trier of fact to determine whether the Martino Defendants, based on the terms of the contract, as modified, made the requisite number of site visits. (Deposition of James T. Martino at pp. 79-82).

4.  The Martino Defendants Interrogatory Answers evidence that the Martino Defendants satisfied the terms and conditions of the "Letter Agreement" by making at least ten (10) site visits on the various projects. (The Martino Defendants' Interrogatory Answers).

5.  There is no evidence to establish that the Martino Defendant deviated from the applicable professional standard of care. (Ronald Bertone's report, dated March 11, 2004 at p. 13).

6.  The competing opinions of the two experts witnesses on whether the Martino Defendants breach its contract with Crown and whether the Martino Defendants deviated from the applicable standard of care, at a minimum, raises genuine questions of fact to be resolved by the trier of fact.

7.  The review "process" undertaken by the Martino Defendants in processing payment application encompassed more than what is alleged by Crown. In fact, the lengthy

process included the Martino Defendants relying upon the prior certification of Beacher, as well as numerous other factors, including, <u>inter alia,</u> attendance at regular progress meetings, review of shop drawings and progress photos, discussions with Beacher, responses to RFI's, discussions with contractors, review of project correspondence, inspection certifications from local municipal officials as well as on-site visits prior to signing payment applications. (Deposition of James T. Martino at pp. 201-202, 325-326, 329-330, 335-337, 370-371 and 457-458).

8. Beacher, not the Martino Defendants, was responsible for performing the on-site visits and for all cost aspects of the projects, including negotiating the leases with the landlords, the issuance of construction contracts, the division of labor between Crown and the landlord or scope of work/schedule of values for the trade contractor. (Deposition of James T. Martino at pp. 206, 215-216 and 295-296).

9. The Architect's Certificate of Payment is a qualified and conditional certificate by the Martino Defendants, who signs the certificate to the best of its knowledge, information and belief that the contractor's work generally conformed to the intent of the construction documents, *i.e.* the drawings and specifications. Crown was fully aware of the Martino Defendants' limited scope and had retained the services of Beacher to act as the "eyes and ears" for Crown in lieu of the Martino Defendants limited role. (Ronald Bertone's report, dated March 11, 2004 at p. 12-13).

10. Assuming *arguendo*, that the Martino Defendants deviated from the applicable professional standard of care, Crown has not and cannot establish that if any deviation existed, that the deviation was the proximate cause of Crown's damages.

11. Crown, as a matter of law, cannot seek damages against the Martino Defendants based on a violation of ethical regulations because Crown failed to plead such a claim in its

pleadings and ethical regulations are sources of monitoring and regulating architects' practice, which do not give rise to civil liabilities.

12. The expert opinion of Ronald Bertone is that the Martino Defendants practice of paying "referral fees" does not violate any architectural licensing regulations or code of ethics cited by Crown. (Ronald Bertone's report, dated March 11, 2004 at pp. 15-17).

13. In conclusion, Crown has also failed to present sufficient evidence establishing that there is no question of fact as to the issue of breach of contract or professional negligence to substantiate a granting of summary judgment as to liability.

RESPECTFULLY SUBMITTED,

DEFENDANTS/THIRD-PARTY PLAINTIFFS JAMES T. MARTINO and JAMES THOMAS MARTINO ARCHITECTS, P.C.

By: _____
Mark Seiden (ct 24637)
Marisa Lanza (ct 24554)
MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10604
(914) 681-8700
(914) 681-8709 (fax)
mseiden@milbermakris.com
mlanza@milbermakris.com

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify and I a copy of the foregoing **Local Rule 56(a)(2) Statement** was served by first class mail, postage prepaid, on all counsel of record in this action on the 21st day of May 2004, upon:

Craig C. Martin, Esq.
Lawrence S. Schaner, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611

H. James Pickerstein, Esq.
Jodi Zils Gagne, Esq.
Pepe & Hazard, LLP
30 Jelliff Lane
Southport, CT 06490

Kerry M. Wisser, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Robert M. Frost
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd
P.O. Box 1740
Bridgeport, CT 06601

_____
Marisa Lanza

2