## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CROWN THEATRES, L.P.,     )
                                  )

      Plaintiff,       )
                                  )

       v.            )     Case No. 3:02CV2272AVC
                                  )     Jury Trial Demanded

MILTON L. DALY, TAYLOR-LEIGH, )
INC., ANNE E. DALY, JAMES C.   )
CELLA, G.U.S. DEVELOPMENT, INC., )     May 28, 2004
JAMES T. MARTINO AND JAMES  )
THOMAS MARTINO, ARCHITECT,  )
P.C., and RCD HUDSON, LLC,    )
                                    )

      Defendants.    )

## CROWN THEATRES' MEMORANDUM IN OPPOSITION TO DEFENDANT ANNE DALY'S MOTION TO STRIKE SUMMARY JUDGMENT AFFIDAVIT

Defendant Anne E. Daly's motion to strike the declaration of plaintiff Crown Theatres' forensic accountant is, at its core, an attempt to exclude facts which show that she made misleading – if not outright false – statements in the affidavit she submitted in support of her motion for summary judgment. In that affidavit, she swore that she only wrote a few checks for everyday items on the accounts that she and her husband, defendant Milton L. Daly, jointly owned during the period in which those accounts were flush with funds that Milton had stolen from Crown Theatres. But Crown Theatres blew the whistle on that spurious claim in its opposition to Anne's motion. In a declaration that accompanied Crown Theatres' opposition brief, Crown Theatres' expert forensic accountant, Frederick C. "Kip" Hamilton, demonstrated that in fact Anne had written over 1,100 checks from four of the Dalys' joint accounts, totaling over $350,000.

Confronted with the truth, Anne does not deny that she wrote these checks. Instead, she filed the instant motion in an attempt to exclude the evidence from consideration by

this Court – to pretend that it never happened. But her assertions that Mr. Hamilton's declaration is barred because it comes too late or that it in some unexplained way allegedly contradicts his deposition testimony are without merit. Anne cannot make Mr. Hamilton's declaration and the facts which it contains disappear, and her motion should be denied.

## BACKGROUND

Anne Daly's husband, Milton Daly, was Crown Theatres' former chief operating officer. As the second highest ranking person at the company, he abused his position by conspiring with Robert Beacher, a construction consultant, to steal millions of dollars from Crown Theatres. Under Daly and Beacher's scheme, Beacher submitted to Crown Theatres fraudulent invoices from fictitious entities for work that was never performed or for work that was billed at an inflated rate. Daly caused those invoices to be paid, and the resulting proceeds of the fraud were split between Daly and Beacher. Beacher kept 30% and kicked back 70% to Daly by way of defendant Taylor-Leigh, Inc., a closely-held corporation controlled by the Dalys. From Taylor-Leigh, Daly transferred funds to personal accounts and investments which he and his wife jointly owned.

During the course of discovery, Crown Theatres retained Kip Hamilton, a forensic accountant, to serve as a testifying expert. On September 18, 2003, Hamilton testified at the hearing on Crown Theatres' application for a prejudgment remedy against Anne Daly. He explained how he had traced the funds stolen by Milton Daly to Taylor-Leigh and from there to a series of accounts and investments owned jointly by the Dalys. (Testimony of Frederick C. Hamilton, Prejudgment Remedy Hearing, September 18, 2003, at 14-17, 25-29, 34, attached hereto as Exhibit A.) He further showed that Anne had the authority to withdraw funds and write checks on the various accounts, that the Dalys pooled their resources, and that Milton expended the stolen moneys on Anne's behalf and on behalf of the Daly family. (Id. at 70-73, 89-90.)

2

Based on his findings, Hamilton opined that Anne benefited from the stolen funds. (Id. at 91-92.)

Under the Court's Amended Scheduling order of August 12, 2003 (the "Scheduling Order"), Crown Theatres' expert reports were due on September 30, 2003. On the date that it was due, Crown Theatres served opposing counsel with Hamilton's report (the "Report"), pertinent sections of which are attached hereto as Exhibit B. In the Report, Hamilton repeated his findings that money from the stolen funds was deposited into accounts that Anne and Milton jointly owned and controlled, and over which Anne had signature authority, and that the Dalys shared their assets and had done so over the course of the more than 38-years of their marriage. He further stated that Anne benefited from the stolen funds as a result of the foregoing and the fact that Milton expended stolen funds on her behalf. (Report at 1, 5.) The Report clearly stated that Hamilton's investigation was ongoing and that he reserved the right to revise the Report should additional documentation or information become available. (Id. at 19.)

Hamilton was deposed by opposing counsel on December 23, 2003. His deposition was continued and subsequently completed on January 26, 2004. (Pertinent excerpts from Hamilton's deposition testimony ("Hamilton Dep.") are attached hereto as Exhibit C.) At his deposition, he testified repeatedly that Anne Daly received the benefit of the funds deposited into both the Taylor-Leigh Citibank account and the Dalys' personal accounts:

> Q.   Hamilton, do you have an opinion as to whether stolen money flowed to accounts or investments that Anne Daly owned or controlled?
>
> A.   I do as I opined previously funds did flow into those accounts.
>
> Q.   When you say opined previously when did you do that?
>
> A.   Both in my report and in my prior deposition. I believe through some discussion with Mr. Wisser.

Q.     Did you also talk about this at the preliminary, the prejudgment remedy hearing?

A.     I did. I had the same opinion at that time.

(Hamilton Dep. at 533-34; <u>see also</u> 47-66.)

Hamilton also testified that his investigation as to the benefit received by Anne

Daly was ongoing:

Q.     Okay. In regard to your theories as to why Anne Daly benefited that we discussed, is there still an ongoing investigation as it relates to her and how she may have benefited?

A.     To the extent that other available bank statement information to help us track that forensic trial, yes, or – I'm sorry, I'll restate that. Yes, in the fact that we are still pursuing various bank statements and cancelled checks to trace the flow of funds that went from TLI got to various accounts controlled by Mr. and Mrs. Daly or Mrs. Daly or Mr. Daly individually.

(Hamilton Dep. at 331.)

On February 25, 2004, Anne moved for summary judgment. She argued that she

could not be liable for conversion or unjust enrichment because she did not exercise ownership

or control over the stolen funds and she did not derive any benefit from them. In support of her

motion, Anne submitted an affidavit in which she stated:

With one exception, my [sic.] I have had almost no involvement with the funds in those accounts, and I have exercised no control over the management or disposition of any funds in those accounts other than to write occasional checks for nominal sums to pay for groceries, some clothing and other small purchases.

(Affidavit of Anne Daly, dated February 18, 2004, ¶ 7, attached hereto as Exhibit D.)

Crown Theatres filed a memorandum in opposition to Anne's motion for

summary judgment. It also filed its own cross-motion for summary judgment. Crown Theatres

included with its memorandum a declaration by Kip Hamilton which laid out the details

concerning the benefit Anne received and the control she exercised over the stolen monies.

4

(Declaration of Kip Hamilton ("Hamilton Decl."), a copy of which, including the exhibits objected to by Anne Daly's motion, is attached hereto as Exhibit E.)  Specifically, he traced the flow of the stolen money to the Dalys' various accounts and showed how Anne had written over 1,100 checks totaling over $350,000, on four different accounts into which funds stolen from Crown Theatres had been deposited.  (Hamilton Decl., ¶¶ 6-11.)  Attached to his declaration were lists of these checks, by date, payee and amount.  (Hamilton Decl., Attachments 2 and 3.) Hamilton further explained that Milton expended large sums of stolen funds on purchases that benefited Anne and the Daly family, such as payments for the mortgage, groceries, car repairs, credit card payments, home remodeling, home furnishings and taxes.  (Id., ¶ 12, Exhibit 4.)

On May 18, 2004, defendants Milton Daly, Anne Daly and Taylor-Leigh moved this Court for an extension of time for the parties to file their joint trial memorandum.  This Court granted the motion, and the trial memorandum is now due on August 31, 2004.  No trial date has been set.

## ARGUMENT

### I.    THE HAMILTON DECLARATION IS NOT AN UNTIMELY SUPPLEMENT TO HIS EXPERT REPORT.

Anne's assertion that Hamilton's declaration is a "new report" that should be excluded because it was provided after this Court's deadline cannot withstand scrutiny.  As an initial matter, Hamilton's declaration (the "Declaration") is not a new expert report because it does not contain new opinions.  Hamilton's finding that Anne benefited from Milton's fraud has been clear since Hamilton's testimony at the Prejudgment Remedy Hearing in September 2003. This conclusion was repeated in his Report, and it was repeated again, at length, at his

deposition.[1]  Also, the Declaration primarily recites facts, not opinions, which could be introduced into evidence with or without Hamilton.  In particular, it attaches and discusses schedules detailing checks written by Anne and Milton Daly.  The checks themselves have been produced pursuant to subpoenas and have been made available to all parties.  They will appear on Crown Theatres' exhibit list.  The Declaration is also proper because it satisfies all of the requirements for an opposing affidavit under Fed. R. Civ. P. 56(e).  See DeBari v. Town of Middleton, No. 97-CV-1422, 1998 U.S. Dist. LEXIS 20102, at *4 (N.D.N.Y. Dec. 22, 1998) (holding the submission of expert's affidavit in opposition to motion for summary judgment was proper).

Furthermore, the Federal Rules of Civil Procedure expressly permit – indeed, they require – parties to supplement the reports of their experts.  Rule 26(a)(2) governs the disclosure of expert testimony.  It provides that the parties "shall supplement these disclosures when required under subdivision (e)(1)."  Rule 26(e)(1), in turn, specifies that the duty to supplement

> extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

This Court's deadline for submitting the disclosures called for in Rule 26(a)(3) is now August 31, 2004.  Thus, to the extent that the Declaration contains supplemental opinions or findings, it is plainly timely.

---

[1] At most, the Declaration merely elaborates on the bases for Hamilton's opinion, which is entirely proper.  See Huntsman Chem. Corp. v. Holland Plastics Co., No. 98-4157, 2000 U.S. App. LEXIS, 3083 at *11-14 (10th Cir. Feb. 29, 2000) (holding that district court abused its discretion by refusing to consider expert's affidavit that did not espouse new opinions but instead merely clarified opinions set forth in expert's earlier report).  (All unpublished cases cited in this memorandum are attached hereto as Exhibit F.)

Anne insists that the Declaration violates the Scheduling Order.  There is nothing, however, in the Scheduling Order that prohibits supplementation.  The order simply states that "the plaintiff shall designate all trial experts and provide opposing counsel with reports from retained experts on or before September 30, 2003 . . . ."  Crown Theatres complied:  It identified its trial experts and produced copies of their reports.

Even if the Declaration were technically late (which it is not), Crown Theatres should not be barred from offering the facts and conclusions that it contains.  The preclusion of evidence is a "drastic remedy that will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard for the rules."  Montefiore Med. Ctr. v. Am. Prot. Ins. Co., 226 F. Supp. 2d 470, 476 (S.D.N.Y. 2002).  When faced with requests to exclude untimely expert reports, courts consider:  (1) whether the moving party suffers surprise or prejudice; (2) whether the party could cure that prejudice; and (3) whether there was bad faith or willfulness in complying with the court's order.  Equant Integrations Svcs. Inc. v. United Rentals, 217 F.R.D. 113, 117 (D. Conn. 2003).  Each of these factors favors the consideration of the Declaration.

First, Anne has not suffered surprise or prejudice.  She has known the substance of Hamilton's opinions since September 2003, and she has been on notice, both from Hamilton's report and his deposition, that Hamilton's investigation was ongoing and that he reserved the right to supplement his report.  In addition, the information set forth in the Declaration largely states information that Anne has known all along:  for example, the identity of bank accounts that she jointly owned with her husband and the checks that she wrote on those accounts.  The details concerning the use of the funds in the Dalys' joint accounts, such as Milton's expenditures on items that benefited Anne, have always been readily available to Anne as an

7

account owner. Further, she was on notice that Crown Theatres had subpoenaed her banking records and received copies of canceled checks. Succinctly put, Anne cannot plausibly claim surprise or prejudice by virtue of being confronted with the details of her own bank accounts. Moreover, even if Anne could demonstrate prejudice (which she cannot), any prejudice could easily be cured by allowing an additional deposition or the submission of interrogatories concerning any new material in the Declaration.

As a general matter, courts refuse to strike supplemental expert reports in the absence incurable prejudice. For example, in <u>Mathers v. Northshore Mining Co.</u>, 217 F.R.D. 474 (D. Minn. 2003), the district court denied a motion to strike a supplemental expert report attached to a motion for class certification. The court ruled that the report was admissible because defendants failed to show any actual prejudice. <u>Id.</u> at 483. As in the case at bar, the court's scheduling order had not prohibited supplementation of expert reports, the expert had stated in his deposition that supplementation was possible, the supplemental report contained many of the same opinions as the expert's original report, the additional opinions relied on data provided by the other party, and defendants made no attempt to cure any potential prejudice. <u>Id.</u>

Similarly, in <u>Sherrod v. Lingle</u>, 223 F.3d 605 (7th Cir. 2000), plaintiff submitted a supplement to its expert's report after the court-imposed deadline for the service of expert reports. The district court excluded the supplement on the grounds that it was in violation of the court's scheduling order. <u>Id.</u> at 613. The Seventh Circuit, however, reversed, finding that since there was no prejudice to the opposing party, it was an abuse of discretion to impose such a "drastic sanction . . . considering the harmless nature of the plaintiff's failure to comply with the discovery order." <u>Id.</u>; <u>see also</u> <u>Ferrera & DiMercurio</u>, 240 F.3d 1, 10-11 (1st Cir. 2001) (where no prejudice found, no abuse of discretion to admit expert testimony that only expanded scope of

prior testimony); <u>McHugh v. Olympia Entertainment, Inc.</u>, 37 Fed. Appx. 730, 736 (6th Cir. 2002) (no abuse of discretion to allow change of position of expert at trial where not a departure from the general scheme of his report and no showing of prejudice).

   With respect to the final factor, there is no evidence of bad faith or the willful violation of this Court's order. Crown Theatres timely disclosed its experts and produced their reports. Hamilton expressly stated in his report and at his deposition that his investigation was ongoing. All parties knew that Crown Theatres was continuing to seek the Dalys' bank records by means of subpoenas to their banks – subpoenas made necessary by the Dalys' own inability or unwillingness to produce copies of their own financial records. Most of the more than 1,100 checks that Anne wrote using stolen funds were among the documents that Hamilton did not review until after his deposition. Moreover, the Declaration was prepared only after Anne moved for summary judgment, erroneously asserting that she wrote only a handful of checks and that she did not derive any benefit from the stolen funds.

   Finally, the cases which Anne relies upon are readily distinguishable. In <u>Schweizer v. Dekalb Swine Breeders, Inc.</u>, 954 F. Supp. 1495 (D. Kan. 1997), the court struck the affidavit of an expert that was tendered long after the parties' Rule 26(a)(3) disclosures were due, and the opinions expressed in the affidavit differed significantly from those in the expert's report. Here, the Rule 26(a)(3) disclosure deadline is more than three months in the future, and the findings and conclusions in Hamilton's declaration are entirely consistent with those which he stated in his report and at his deposition. Anne also cites <u>Reid v. Lockheed Martin Aeronautics Co.</u>, 205 F.R.D. 655 (N.D. Ga. 2001), for the proposition that Hamilton should not be permitted to supplement his original report. However, in that case, the expert testified at his deposition that he "understood that his original reports would not be supplemented," that "he did

not have any undisclosed opinions," and that "he was not waiting on any additional information and had no plans to engage in any more analysis." Id. at 662. Here, Hamilton has been completely forthcoming about the continuing nature of his investigation.

## II.    HAMILTON'S DECLARATION DOES NOT CONTRADICT HIS DEPOSITION TESTIMONY.

Anne asserts that Mr. Hamilton's declaration is improper because it is "inconsistent with his prior deposition testimony." (A. Daly Br. at 2.) She does not, however, identify any inconsistency. The reason that she does not identify any inconsistency is because there is none. The Declaration is entirely in line with Hamilton's deposition testimony, as well as his report and his testimony at the hearing on the prejudgment remedy.

The two cases on which Anne relies – Hayes and Perma Research[2]– are wholly inapposite. Both stand for the proposition that a party cannot create a disputed issue of fact by submitting an affidavit that directly contradicts the witness' earlier deposition testimony. Mr. Hamilton's declaration does not contradict his deposition testimony. Instead, the Declaration shows that Anne's assertions that she did not write a significant number of checks or derive benefits from the stolen funds are simply erroneous. Any suggestion that Hamilton submitted a so-called "sham" affidavit is baseless.

---

[2]The cases, Hayes v. New York City Department of Corrections, 84 F.3d 614 (2d Cir. 1996); Perma Research & Develop. Co. v. Singer Co., 410 F.2d 572 (2d Cir. 1969), are cited by Anne at page 2 of her memorandum.

## CONCLUSION

For the foregoing reasons, Defendant Anne Daly's Motion to Strike Summary Judgment Affidavit should be denied.

CROWN THEATRES, L.P.

By: _____

H. James Pickerstein (Bar No. Ct 05094)
Jodi Zils Gagné (Bar No. Ct 24376)
PEPE & HAZARD, LLP
30 Jelliff Lane
Southport, CT 06490
(203) 319-4000
(203) 259-0251 (fax)
hpickerstein@pepehazard.com
jgagne@pepehazard.com

and

Craig C. Martin (Bar No. Ct 12198)
Lawrence S. Schaner (Bar No. Ct 24756)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350
312) 840-7776 (fax)
cmartin@jenner.com
lschaner@jenner.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served all counsel of record in this action with a copy of the **Memorandum in Opposition to Defendant Anne Daly's Motion to Strike Summary Judgment Affidavit,** by mailing a copy of the same by United States Mail, postage prepaid, to the following:

Kerry M. Wisser
Weinstein & Wisser, P.C.
29 South Main Street
Suite 207
West Hartford, CT 06107

Mark Seiden
Marisa Lanza
Milber, Makris, Plousadis & Seiden, L.L.P.
3 Barker Ave.
6th Floor
White Plains, NY 10601

Robert M. Frost
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
P.O. Box 1740
Bridgeport, CT 06601-1740

_____
Jodi Zils Gagné

Dated: May 28, 2004