# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CROWN THEATRES, LP, | : | CIVIL ACTION NO. |
| | : | 3:02-CV-2272 (AVC) |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| MILTON L. DALY, ET AL., | : | |
| | : | JUNE 10, 2004 |
| Defendants. | : | |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANT ANNE DALY'S MOTION TO STRIKE
## SUMMARY JUDGMENT AFFIDAVIT

Not surprisingly, the plaintiff has filed a memorandum of law in opposition to defendant Anne Daly's Motion to Strike, which motion is directed at the Declaration of Frederick C. Hamilton on which the plaintiff relies to oppose Anne Daly's motion for summary judgment (and the plaintiff's own cross-motion for summary judgment). In that opposing memorandum, the plaintiff attempts to create confusion regarding both its disclosure obligation and the nature of the information that it has now belatedly disclosed in an attempt to understate the prejudice that the plaintiff's conduct has caused in regard to the defendant's ability to adequately prepare for trial. The

defendant will now try to respond, point-by-point, to the various arguments proffered by the plaintiff in opposition to the pending motion.

First, while the checks at issue are physical evidence, the relevance of those checks vis-à-vis the legal issues in this case only comes from the expert testimony that the plaintiff's expert (Frederick C. Hamilton) is able to render based on his opinion as to how those checks related to the plaintiff's claims. It is the expert review and opinion that is at issue, not the checks themselves. Throughout its opposition brief, the plaintiff subtly blurs the distinction in a misguided attempt to allow belated and undisclosed expert opinion simply because that opinion is purportedly based on documentary evidence. Yet, if our rules of disclosure regarding expert witnesses mean anything, it is that full and timely disclosure is intended to allow opposing parties to know the substance of an expert's opinion and the information on which he bases that opinion. Here, the plaintiff has been caught supplementing its expert's opinion without any indication that it intended to alert the defendant to that supplementation prior to the trial of this case. That is contrary to the letter and the spirit of our rules of discovery.

Second, while the plaintiff attempts to assert what the "truth" is, its version of the facts serves only to distort the truth. An examination of the information that is

attached to the Hamilton affidavit regarding the 1162 checks signed by Anne Daly reveals that that information supports the statement in Paragraph 7 of her affidavit. The listing of the 1162 checks demonstrates that, consistent with her affidavit testimony, she wrote occasional checks for small amounts for groceries, clothing or other small purchases. The 1162 checks cover a period of approximately 5 years, meaning that, on average, Anne Daly wrote only 220 checks per year. Moreover, the vast majority of those checks were for purchases of under $200, and many checks were, in fact, for purchases at grocery stores, clothing stores, pharmacies and the like. In fact, 486 of the 1162 checks were written to food stores, and 134 checks were written to discount stores. Thus, Anne Daly's statement that she would "write occasional checks for nominal sums to pay for groceries, some clothing and other small purchases" is consistent with the information that has been put forth by the plaintiff.

More significantly, the existence of these checks is not evidence that is determinative of anything. It is undisputed in this case that both Milton Daly and Anne Daly had sources of income other than the funds that the plaintiff claims were wrongfully taken by Milton Daly. It is undisputed that Milton Daly was paid over $200,000 in salary while working for the plaintiff. Also, Anne Daly worked during portions of the pertinent time period, earning her own salary. (Likewise, defendant

Taylor-Leigh, Inc. had its own sources of money from the operation of a day care center, etc.)  Thus, the checks by themselves cannot provide any information regarding the "source" of their funds.  That is why the plaintiff tries to rely on the testimony of its so-called expert witness, Mr. Hamilton.

Next, on page 5 of its brief, the plaintiff asserts that the challenged affidavit is not a "new report" because it gives the same opinion.  Of course, that misses the point.  The challenged affidavit testimony now asserts that the expert's opinion is based a review of over 1000 additional documents that were not a basis for his opinion when his deposition was taken by the defendants.  Clearly, because of the manner in which the plaintiff has proceeded, the defendant has been denied the ability to cross-examine the expert witness regarding the basis for his opinion.  The sole purpose of the requirement, under Rule 26(a)(2), to fully disclose not only the names of expert witnesses but also a report that sets forth "a complete statement of all opinions to be expressed and the basis and reasons therefore" and "the data or other information considered by the witness in forming the opinions" and "any exhibits to be used as a summary of or support for the opinions," is to allow the opposing party to conduct discovery regarding those expert opinions pursuant to Rule 26(b)(4).  Likewise, the obligation of timely supplementation under Rule 26(e) would mean little if the

supplementation did not occur during the time when a further deposition of the expert witness may be taken. Here, the time to take the depositions of expert witnesses ended on December 31, 2003. Clearly, when, as is the case here, new information is to be relied upon by one party, the other party must be given an opportunity to utilize discovery, most likely a deposition, to cross-examine the witness about the new information. The plaintiff, however, has failed to supplement its prior disclosures. Instead, the plaintiff has chosen to submit new information by way of an affidavit once the lacuna in the expert's prior testimony has been pointed out in the context of a defendant's motion for summary judgment. If anything, the rules are designed to avoid the very trial by ambush that has been used by the plaintiff here and that the plaintiff now argues should be permitted. The plaintiff's suggestion that it did not have to reveal the precise basis of its expert's opinions prior to or during his deposition, but could wait until it was required to make its Rule 26(a)(3) disclosures on the eve of trial makes a mockery of Rules 26(a)(2) and 26(b)(4).

Under these circumstances, the surprise and prejudice to the defendants is evident. Nowhere in Hamilton's report are these checks mentioned. At his deposition, Hamilton admitted that he did not have a basis for his testimony, sufficient to meet the <u>Daubert</u> standards, in regard to his opinion that Anne Daly "benefited" from the funds

purportedly taken by Milton Daly.[1] Had the information regarding the checks and Hamilton's opinion based thereon been revealed in his report (or seasonably

---

[1] On page 10 of its opposition brief, the plaintiff claims that Hamilton's new affidavit does not contradict his prior testimony. Yet, on pages 7-9 of Anne Daly's brief in support of her motion for summary judgment, the defendant discusses the deficiencies in Hamilton's so-called expert opinion. At his deposition, Hamilton testified that it was his opinion that Anne Daly "benefited from" the $4.2 Million that was received by Milton Daly and placed into joint accounts. See Transcript of Deposition of Frederick C. Hamilton ("Hamilton Deposition"), pp. 47-66. Hamilton's opinion was apparently based on the view that a wife (here, Anne Daly) will derive a benefit from money that her husband has obtained and placed in a joint account, even if the wife never personally used any of that money. See Hamilton Deposition, pp. 57-61. However, a careful review of that deposition testimony demonstrates that Hamilton based his so-called expert opinion on a theory that has not been tested in the forensic accounting community (Hamilton Deposition, p. 62); that has not been subject to peer review or publication (Hamilton Deposition, p. 62); that has not been the subject of any analysis to determine an identified or potential rate of error (Hamilton Deposition, pp. 62-64); that has no standards or controlling techniques (Hamilton Deposition, p. 64); and that is not generally accepted in the forensic accounting community (Hamilton Deposition, pp. 64-66). Rather, it is a theory that is based on Hamilton's experience alone. See Hamilton Deposition, pp. 65-66. Under such circumstances, Hamilton's analysis is inadmissible under the standards articulated by the Supreme Court in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and in Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and, therefore, Hamilton's analysis is entitled to no consideration by the Court at trial. For similar reasons, Hamilton's analysis is entitled to no consideration by the Court for purposes of opposing Anne Daly's motion for summary judgment. See F.R.Civ.P. 56(e) (summary judgment affidavits can only be based on testimony "as would be admissible in evidence"). Clearly, the challenged portions of the Hamilton affidavit and the new information on which it relies seek to correct, if not contradict, his prior testimony in a desperate attempt by the plaintiff to support the admissibility of Hamilton's opinion evidence now that it has been challenged by the defendant in moving for summary judgment.

thereafter), then at his deposition Hamilton could have been (and would have been) cross-examined regarding the same.  It is believed that, had the defendants known of the new basis for Hamilton's opinion, cross-examination of Hamilton would have revealed that he cannot identify the "source" of the funds that allowed these checks to be written.  Clearly, the source of the funds is a critical assumption underlying Hamilton's opinion that needs to be tested by cross-examination.  Yet, the plaintiff's after-the-fact revelation of this information makes such pretrial preparation impossible.

Moreover, that prejudice to the defendants cannot be cured, unless the opportunity to conduct further discovery is reopened by the Court.  Further, no full cure is evident unless the plaintiff is required, at its expense, to produce Hamilton for a deposition at the office of the undersigned for a further deposition.

Finally, under the circumstances here, it appears that the plaintiff's failure to seasonably disclose the additional expert testimony was willful.  No formal supplement to Hamilton's report has ever been offered by the plaintiff.  Instead, the plaintiff has used the occasion of its opposition to a motion for summary judgment (and its cross-motion for summary judgment) to spring this information on the defendants and the court.  In fact, on page 9 of its opposition brief, the plaintiff admits that "the

Declaration was prepared only after Anne [Daly] moved for summary judgment . . . ." It thus appears that the plaintiff was only forthcoming in revealing this information when it did because of the pending motion for summary judgment filed by Anne Daly. Had that motion not been filed, then presumably the plaintiff would have waited until the deadline for the filing of the Trial Memorandum (which was May 31, 2004, at the time when the motions were filed, but which is now August 31, 2004) to fully disclose the apparent basis of its expert's opinion.

     The plaintiff's argument that its summary judgment affidavit can be based on information that has never been revealed during the discovery period is contrary to orderly pretrial disclosure and preparation on which our rules of procedure are based. The plaintiff's manner of proceeding has deprived the defendants of a full and fair opportunity to discover the basis of the expert's opinion and to reveal the faulty assumptions and speculation on which it is based. Deprived of that cross-examination during pretrial discovery, the defendants have been disadvantaged both in respect to the pending motions for summary judgment and in regard to the impending trial which those motions are intended to avoid.

     Under these circumstances, the offending portions of the Hamilton affidavit (Paragraphs 6-12 and Exhibits 2-4 referenced therein and attached thereto) should be

stricken by the Court and should be disregarded by the Court in its determination of the pending motion and cross-motion for summary judgment.

          DEFENDANT,
          ANNE DALY

By_____
  Kerry M. Wisser of
  WEINSTEIN & WISSER, P.C.
  29 South Main Street, Suite 207
  West Hartford, CT  06107
  Telephone No. (860) 561-2628
  Facsimile No. (860) 521-6150
  Federal Bar No. ct01205

## **CERTIFICATION**

  This is to certify that on the 10th day of June, 2004, a copy of the foregoing was served upon the following counsel of record by way of First Class Mail, postage prepaid:

Harold James Pickerstein, Esquire
Jodi Zils Gagne, Attorney
Pepe & Hazard
30 Jelliff Lane
Southport, CT 06890-4000

Craig C. Martin, Esquire
Lawrence S. Schaner, Esquire
Jenner & Block
One IBM Plaza
Chicago, IL 60611-7603

Mark Seiden, Esquire
Marisa Lanza, Attorney
Milber Makris Polusadis & Seiden, LLP
108 Corporate Park Drive, Suite 200
White Plains, NY 10604

Robert M. Frost, Jr., Esquire
Zeldes, Needle & Cooper
1000 Lafayette Boulevard
Bridgeport, CT 06601

                _____
                  Kerry M. Wisser