UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CROWN THEATRES, L.P., )
)
Plaintiff, )
)
v. )     Case No. 3:02CV2272AVC
)     Jury Trial Demanded
MILTON L. DALY, TAYLOR-LEIGH, )
INC., ANNE E. DALY, JAMES C. )
CELLA, G.U.S. DEVELOPMENT, INC., )     June 14, 2004
JAMES T. MARTINO AND JAMES )
THOMAS MARTINO, ARCHITECT, )
P.C., and RCD HUDSON, LLC, )
)
Defendants. )

## CROWN THEATRES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JAMES T. MARTINO AND JAMES THOMAS MARTINO ARCHITECT, P.C.

Defendants James T. Martino and James Thomas Martino Architect, P.C. (collectively

"Martino") make several interesting but irrelevant factual assertions in their opposition to Crown

Theatres, L.P.'s Motion for Partial Summary Judgment. These peripheral matters do not cloud

the undisputed facts: Martino breached his contract with Crown Theatres by failing to make

required monthly site visits; Martino was negligent when he signed payment applications in large

stacks without any meaningful review; Martino should have known that the payment applications

were fraudulent; and Martino was negligent when he paid tens of thousands of dollars in

kickbacks to Crown Theatres' construction consultant. Summary judgment with respect to

liability should be entered on each of these issues.

## ARGUMENT

## I.    MARTINO BREACHED THE SITE VISIT PROVISION OF THE CONTRACT.

As Crown Theatres explained in its opening brief, Martino's failure to make regular site

visits violated an unsigned letter agreement ("Letter Agreement") that Martino has alleged

defines the terms of his engagement. (Crown Theatres' Mem. of Law in Supp. Its Mot. for Partial Summ. J. ("Crown Br.") at 3-4.) The Letter Agreement required that Martino visit the construction site monthly "for the purposes of verifying that the "As-Built" conditions are in full compliance with the Construction Documents." (Letter Agreement, Ex. B to Crown Br., at 2.)

Martino claims that the Letter Agreement was orally modified to release him from his obligation to make monthly site visits. (Mem. of Law in Opp'n. to Crown Theatres' Mot. for Partial Summ. J. ("Martino Br.") at 8.) This "unsubstantiated, self-serving testimony" does not create a disputed issue of material fact. FDIC v. Nat'l Union Fire Ins. Co., 205 F.3d 66, 71 (2d Cir. 2000). And Martino testified that this alleged modification only related to three of the six theatre projects: Annapolis, Miami and Skokie. (Martino Dep. at 109-12, attached as Ex. A.) Thus, even if Martino's testimony creates a disputed issue of material fact with respect to the terms of the agreement as they applied to those three projects, the site visit requirement remained in effect on the other three projects: the Jupiter, Hartford and Trumbull projects.

Martino offers his Interrogatory Answers to show that at least ten site visits were made on four of the six projects. (Martino Br. at 9.) This misses the point -- the Letter Agreement bound Martino to make monthly site visits during the Construction Phase. (Letter Agreement at 2.) The undisputed evidence shows that:

- On the Jupiter project, Martino did not make a site visit between January 11, 1999 and January 8, 2001, though he admits certifying at least five fraudulent payment applications totaling $1,042,500 during the summer of 2000. (Crown Br. at 5.)

- On the Hartford project, Martino did not make a site visit between September 23, 1998 and June 9, 1999, when he certified a fraudulent application for payment in the amount of $451,500. (Crown Br. at 6.)

- On the Trumbull Project, Martino did not make a site visit between September 1, 1998 and August 31, 1999, even though he certified a fraudulent payment application for $125,000, on July 26, 1999. (Id.)

- 2 -

Martino suggests that employees from his firm made additional visits to the construction sites not reflected in his interrogatory answers. (Martino Br. at 9.) But the interrogatories specifically asked for the dates of site visits by "James Martino and all of his past and present employees, servants or agents, and defendant James Thomas Martino, Architect, P.C. and its current or former officers, directors, employees and agents . . . ." (Pl.'s First Set of Interrogs. at 2, attached as Ex. B.) Martino's answers do not say that they were intended to apply only to Martino individually. (Defs.' Ans. to Pl.'s First Set of Interrogs. at 5, Ex. C to Crown Br.) These answers were certified by Martino on behalf of himself and the firm and were further confirmed in sworn testimony at his deposition. (Id. at 11; Martino Dep. at 78-79.) Martino did not submit supplemental answers providing additional dates upon which representatives of his firm visited the sites.

Furthermore, the evidence of additional site visits offered by Martino does not create an issue of material fact. It is well-settled that conclusory statements, speculation or conjecture are not sufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Here, the evidence of additional site visits offered by Martino is wanting. The testimony of James Martino is particularly unenlightening when he speculates that "someone from my staff might have went there also." (Martino Dep. at 263-64.) Crown Theatres does not dispute that representatives of the Martino firm in fact visited the sites, but there is no indication of the dates that they did so, that they did so with any regularity, or that they visited the site for the purpose of "verifying that the "As-Built" conditions [were] in full compliance with the Construction Documents" as required by the Letter Agreement.

JZG/32310/2/682801v1
06/14/04-HRT/

All Martino is able to muster is vague references from the depositions of several general contractors. Martino leaves out pertinent testimony in his citations to the record. For example, Jeff Lee, general contractor on the Jupiter project, testified:

> Q.    Were other people from Mr. Martino's firm on the job site? I think that you mentioned that he had an assistant who was working
>
> A.    There was a gentleman. I don't recall his name. He was not on the site with any regularity either.

(Lee Dep. at 47-48, Ex. Q to Crown Br.) None of the testimony cited by Martino is specific enough to raise a disputed issue of material fact that there were in fact monthly visits to the job sites to verify that work was performed. See Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (facts presented must be "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions"); Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) (assertion unsupported by evidence insufficient to create disputed issue of fact).

Martino does not dispute the facts – he failed to visit the site for months prior to signing fraudulent payment applications on the Jupiter, Hartford and Trumbull projects. His assertion that others from his firm may have made visits is not substantiated by actual facts. Therefore, Crown Theatres is entitled to partial summary judgment on Count VIII, at the very least with respect to breach of contract on the Jupiter, Hartford and Trumbull projects. See Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024 (2d Cir. 1995) (affirming award of partial summary judgment on breach of contract claim); Nat'l Utility Serv., Inc. v. J.R. Sexton, Inc., Civil No. N-88-324 (JAC), 1989 U.S. Dist. LEXIS 18320 (D. Conn. Nov. 3, 1989) (awarding same).

## II.    MARTINO BREACHED HIS PROFESSIONAL DUTY TO CROWN THEATRES.

Martino's appeal to the broad conclusions of his expert is unavailing. At his deposition, Ronald Bertone, Martino's expert, agreed that simply signing a stack of payment applications

-4-

without further review would violate the applicable standard of care.  (Bertone Dep. at 127,

attached as Ex. C.)  In an attempt to hide Bertone's damaging admissions, Martino accuses

Crown Theatres of quoting Bertone out of context.  (Martino Br. at 13.)  But the "context" does

not change the meaning or import of Bertone's answer.  He was asked a hypothetical question

that mirrored the facts admitted by Martino at his deposition -- that Martino's practice was to

regularly sign stacks of payment applications in the car or at Crown Theatres' offices after

Robert Beacher had told him that they had been reviewed, so "sign[] the f***ing things."

(Martino Dep. at 267-8.)  When asked whether it would be proper to sign payment applications

under such circumstances, Bertone gave the obvious answer: "I would have to say no."  (Bertone

Dep. at 126-27.)  There is no disagreement between the experts that when Martino signed

payment applications in this manner, he violated the applicable standard of care.

Martino argues that he did more than just sign the payment applications on command.

He then describes the sources of information available to him, including submittals, shop

drawings and the like.  (Martino Br. at 17.)  But the testimony is undisputed that his regular

practice was to simply sign-off on the payment applications in stacks, in the passenger seat of a

car.  Whether Martino could have taken the time to go back to his office, review the information

available, make phone calls to speak to general contractors, review reports of local officials,

speak with his subordinates, look at progress photos or review correspondence is entirely beside

the point: he did not take those steps and Crown Theatres lost millions as a result.  Crown

Theatres is therefore entitled to partial summary judgment on the issue that Martino's practice of

certifying payment applications en masse violated the applicable standard of care.

Crown Theatres is also entitled to partial summary judgment on the issue that Martino

breached his professional duty by failing to detect that the payment applications were fraudulent.

- 5 -

Martino accuses Crown Theatres of mischaracterizing Bertone's testimony as "punting" -- but

Crown Theatres got it exactly right:

> Q.    Do you have an opinion as to whether Mr. Martino should have detected
>       that the payment applications that he signed were submitted by sham
>       contractors?
>
> A.    No, I don't have an opinion on that.  My opinion based on the preceding
>       question is predicated that I am -- what bothers me most is that a client
>       takes advantage of an architect the way they do.  The way they did.
>
> Q.    You don't have an opinion whether Mr. Martino should have detected that
>       the payment applications that he was signing in many cases were
>       submitted by sham contractors?
>
> A.    No, I don't have an opinion on that.

(Bertone Dep. at 156.)  Mr. Bertone further testified as to the reason for his lack of opinion:

> Q.    Do you agree that Crown Theatres should not have been caused to pay
>       money to Hewlett, Tiger, Marlin and G.U.S.?
>
> A.    I can't answer that.
>
> Q.    Why not?
>
> A.    Because I haven't evaluated that portion of the project.
>
> Q.    Do you have an opinion as to whether the payment applications submitted
>       by Marlin, Tiger, Hewlett and G.U.S. were fraudulent?
>
> A.    No, I don't have an opinion on that.

(Id. at 175.)  Thus, when Crown Theatres stated that Bertone "punted," it was being, if anything,

generous.  His testimony makes it clear that Bertone, for whatever reason, did not consider

whether Martino should have noticed the fraud, even though he reviewed the same fraudulent

applications in preparing his report. (Bertone Report at 4-5, Ex. L to Martino Br.)  In contrast,

Crown Theatres' expert Peter Steffian opines that Martino should have detected that the payment

applications were fraudulent and alerted his client. (Supp. Report of Peter Steffian, February 13,

2004 ("Feb. 13 Supp."), at 4-5; Supp. Report of Peter Steffian, March 2, 2004 ("Mar. 2 Supp."),

at 4, 5, 8, 11, Exs. R and T to Crown Br.)  Any "battle of the experts" is illusory.[1]

      Martino protests that this Court should not consider Steffian's second supplemental

report. But the March 2, 2004 report was properly submitted pursuant to Rule 26(e)(1).  The

October 16, 2003 Scheduling Order did not preclude Steffian from submitting a supplemental

report, and there was never an understanding that he would submit only one supplement. (Letter

of L. Schaner to M. Seiden, dated March 5, 2004 ("Schaner Letter"), attached as Ex. D.)  Indeed,

Martino was placed on notice when Steffian stated in his February 13, 2004 report that he was

"in the process of reviewing other information and reserve[d] the right to amend and supplement

this report should I learn further information . . . ." (Feb. 13 Supp. at 6.)  And Steffian did

receive new information – Martino testified about four of the six projects and admitted that he

paid undisclosed referral fees at his February 10, 2004 deposition.  Further, Martino has not been

prejudiced.  The March 4, 2004 supplement was submitted a full week before Bertone submitted

his report.  Bertone reviewed the supplement, a copy of which was in his files, and testified on its

contents at his deposition, where it was marked as an exhibit.  (Bertone Report at 3; Bertone

Dep. at 197-204.)  Finally, there has been no attempt to cure any potential prejudice.  Martino

has had over three months to request leave to depose Steffian about the additional material.  (See

Schaner Letter.)  Therefore, this Court should not disregard Steffian's March 2 supplemental

report. See Sherrod v. Lingle, 223 F.3d 605, 613 (7th Cir. 2000) (refusing to strike supplemental

expert report where there was no actual prejudice); Mathers v. Northshore Mining Co., 217

F.R.D. 474, 483 (D. Minn. 2003) (same).

---

[1] Martino also contends that Crown Theatres cannot establish that Martino's negligence was the
proximate cause of Crown Theatres' damages.  In this motion for partial summary judgment,
Crown Theatres only seeks judgment as a matter of law that Martino was negligent.  The issue
raised by Martino goes to the amount of damages, which is not the subject of this motion.

Crown Theatres also seeks summary judgment as to liability with respect to the kickbacks paid by Martino on the grounds that violation of professional regulations is negligence per se. (Crown Br. at 16-18.) Martino does not deny that the payments were made. He does not argue that the payments were proper. Rather, he simply claims that the regulations that he violated do not "give rise to civil liabilities." (Martino Br. at 23.) Martino misses the point – Crown Theatres agrees, as the case cited by Martino holds, that the AIA Code of Ethics does not create a cause of action. But Crown Theatres' argument, which Martino does not dispute, is that violation of a state administrative regulation is negligence per se. (Crown Br. 16-17.)[2] Martino violated the regulations by paying kickbacks, the regulations were specifically designed to prevent such behavior, and Crown Theatres, as Martino's client, is part of the population that the regulations were designed to protect. (Crown Br. at 16-17.)

Martino was negligent: when he signed payment applications without taking the time to properly review them; when he failed to notice the obvious signs that the applications were fraudulent; and when he paid thousands of dollars in kickbacks. This Court should enter partial summary judgment in favor of Crown Theatres on Count IX. See Baker v. Dorfman, No. 97 CIV 7512 (DLC), 1998 U.S. Dist. LEXIS 14702, at *16-17 (S.D.N.Y. Sept. 17, 1998) (awarding partial summary judgment as to liability in negligence action) (attached as Ex. E.)

## III.    CROWN THEATRES SATISFIED THE LIBERAL NOTICE  PLEADING REQUIREMENT OF FED. R. CIV. P. 8.

Martino asserts that Crown Theatres' breach of contract claim and its negligence claim with respect to the payment of kickbacks should be disregarded, because "facts found but not

---

[2] The other cases cited by Martino are inapplicable. In Leavenworth v. Mathes, 38 Conn. App. 476, 661 A.2d 632 (App. Ct. 1995), the court held that rules of professional conduct governing the legal profession do not create a cause of action. Similarly, Noble v. Marshall, 23 Conn. App. 227, 579 A.2d 594 (1990), stands only for the proposition that a violation of rules of professional conduct cannot form the basis of a CUTPA claim.

- 8 -

averred cannot be made the basis for a recovery." (Martino Br. at 5.) But this action is governed by the Federal Rules of Civil Procedure, not Connecticut law. See Ford v. Clement, 834 F. Supp. 72, 78 (S.D.N.Y. 1993). The liberal notice pleading requirements of the Federal Rules require only a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). See also Fed. R. Civ. P. 8(e). To comply, the defendant need only be given fair notice of the claim and grounds upon which it rests. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002).

Martino has been given more than adequate notice of Crown Theatres' claims. The Second Amended Complaint and Crown Theatres' Interrogatory Answers plainly state that Martino breached his contract by failing to make site visits. (Pl. 2nd Am. Compl. ¶¶ 247; Pl. Ans. to Defs. First Set of Interrogs. nos. 1(x), 3, 4.) That the complaint does not specifically plead the "Letter Agreement" is irrelevant. Further, Martino could not possibly be prejudiced. The Letter Agreement was produced to Crown Theatres by Martino and is the very document that Martino claims describes his contractual duties. (Crown Br. at 3.)[3]

Martino also contends that Crown Theatres did not plead that Martino was negligent with regard to the payment of "referral fees." (Martino Br. at 22.) But Crown Theatres did not know about the so-called referral fees until it discovered the relevant bank records and Martino finally confessed to the payments at the second session of his deposition (having denied making such payments during the first session). Nonetheless, Crown Theatres has given ample notice of its claim. Its complaint pleads that the Martino defendants are liable for negligence (Pl. 2nd Am. Compl. ¶¶ 250-51), and within days of learning of the referral fee payments, Crown Theatres' expert supplemented his report to include the opinion that the payments were improper and

---

[3] Crown Theatres does not concede that this document is the contract. It has accepted Martino's assertion for the purposes of the present motion. (Crown Br. at 4 n. 2.)

- 9 -

violated the duties of an architect to his client. (Feb. 13 Supp. at 5-6.) And this Court ruled that

evidence of payments by Martino to Beacher were "probative on the issue of whether Martino

breached the relevant standard of care." (Ruling and Order on Defs. Mot. to Quash or Modify

Subpoena, April 7, 2004, at 5.) Whether Martino likes it or not, the referral fee issue is in this

case. See Swierkiewicz, 534 U.S. at 512-13.

## CONCLUSION

For the foregoing reasons, Crown Theatres' Motion for Partial Summary Judgment

against James T. Martino and James Thomas Martino, Architect, P.C., should be granted with

respect to liability on Counts VIII and IX of the Second Amended Complaint.

CROWN THEATRES, L.P.

By: _____

H. James Pickerstein (Bar No. Ct 05094)
Jodi Zils Gagné (Bar No. Ct 24376)
PEPE & HAZARD, LLP
30 Jelliff Lane
Southport, CT  06490
(203) 319-4000
(203) 259-0251 (fax)
hpickerstein@pepehazard.com
jgagne@pepehazard.com

and

Craig C. Martin (Bar No. Ct 12198)
Lawrence S. Schaner (Bar No. Ct 24756)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 222-9350
(312) 840-7776 (fax)
cmartin@jenner.com
lschaner@jenner.com

JZG/32310/2/682801v1
06/14/04-HRT/

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served all counsel of record in

this action with a copy of **Crown Theatres' Reply Memorandum in Support of Its Motion**

**for Partial Summary Judgment Against James T. Martino and James Thomas Martino**

**Architect, P.C.**, by mailing a copy of the same by United States Mail, postage prepaid, to the

following:

> Kerry M. Wisser
> Weinstein & Wisser, P.C.
> 29 South Main Street
> Suite 207
> West Hartford, CT 06107
>
> Mark Seiden
> Marisa Lanza
> Milber, Makris, Plousadis & Seiden, L.L.P.
> 3 Barker Ave.
> 6th Floor
> White Plains, NY 10601
>
> Robert M. Frost
> Zeldes, Needle & Cooper
> 1000 Lafayette Blvd.
> P.O. Box 1740
> Bridgeport, CT 06601-1740

_____
Jodi Zils Gagné

Dated: June 14, 2004

- 11 -