UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CROWN THEATRES, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02CV2272AVC |
| ) | Jury Trial Demanded |
| MILTON L. DALY, TAYLOR-LEIGH, ) | |
| INC., ANNE E. DALY, JAMES C. ) | |
| CELLA, G.U.S. DEVELOPMENT, INC., ) | June 14, 2004 |
| JAMES T. MARTINO AND JAMES ) | |
| THOMAS MARTINO, ARCHITECT, ) | |
| P.C., and RCD HUDSON, LLC, ) | |
| ) | |
| Defendants. ) | |

## CROWN THEATRES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST MILTON L. DALY AND TAYLOR-LEIGH, INC.

Caught red-handed, Milton Daly admits that he breached his fiduciary duties to his employer, plaintiff Crown Theatres, L.P. In a clever gambit, however, he asserts that his liability should be limited to the $4.2 million that wound up in his pocket, rather than the more than $6 million that he stole with the aid of his collaborator, Robert Beacher. He also asserts that this Court may not award prejudgment interest on a motion for summary judgment, and, thus, Crown Theatres is not entitled to be made whole without undergoing a trial. But Daly is wrong on both counts. The undisputed facts demonstrate that Daly, who admits to entering into an "arrangement" with Beacher which led to the theft of over $6 million, is liable for the entire $6.016 million loss. Moreover, this Court can and should award prejudgment interest as a matter of law where, as here, the facts which support such an award are not in dispute. This Court should, therefore, enter judgment in favor of Crown Theatres on its claim against Daly for breach of fiduciary duty in the amount of $6.016 million, plus prejudgment interest.

In addition, this Court should enter judgment against Daly on Crown Theatres' claims for conversion, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). It should also enter judgment against defendant Taylor-Leigh, Inc. on Crown Theatres' claim against it for conversion.

## ARGUMENT

The essential facts are not disputed. In connection with a movie theatre construction program for which he was responsible, Daly, the former number-two-ranking official at Crown Theatres, entered into a kickback scheme with outside consultant Robert Beacher. Daly agreed to hire Beacher's firm in exchange for the payment of millions of dollars in kickbacks. The scheme netted in excess of $6 million, the proceeds of which were divided 70/30, with 70% going to Daly and 30% to Beacher. Daly's share was deposited into the checking account of Daly's closely-held company, Taylor-Leigh. The funds were then moved to accounts and investments owned by Daly and his wife.

Daly disputes none of this. Instead, in an attempt to manufacture issues of fact, he raises a series of false issues and purported factual conflicts. None of these alleged issues or conflicts, however, is material. Moreover, Daly's efforts to cap his exposure at $4.2 million depends upon erroneous applications of the law. Daly does not deserve to be let off easy, and the law does not provide him with the escape that he seeks.

**I.    DALY'S FALSE ISSUES SHOULD BE DISREGARDED.**

Daly raises two false issues that should be disposed of at the outset. First, he asserts that Crown Theatres' motion depends "upon this Court accepting the testimony of Robert Beacher as credible." (Mem. of Law of Defs. Milton L. Daly and Taylor-Leigh, Inc. in Opp'n. to Pl's Mot. for Summ. J. ("Daly Br."), dated May 21, 2004, at 10.) Crown Theatres does not, however, rely on Beacher's testimony. It relies on Daly's own admissions and the undisputed trail of payments

2

which lead from Crown Theatres to Daly's company, Taylor-Leigh -- and from there to a host of the Dalys' other accounts and investments. Beacher's testimony merely corroborates the already damning evidence. Second, Daly asserts that this Court should strike the declaration of Crown Theatres' forensic accountant, Kip Hamilton, and his updated damages analysis which shows that Daly and Beacher actually stole at least $900,000 more than earlier believed. The argument is another red-herring because Crown Theatres' summary judgment motion does not depend on the updated damages analysis or the Hamilton declaration. Indeed, Crown Theatres expressly stated that it would not rely on the updated data for purposes of its summary judgment motion, but would assume for this motion that the amount taken totaled $6.016 million, the amount in Mr. Hamilton's original report and an amount that Daly does not dispute. (Crown Theatres' Mem. of Law in Supp. of its Mot. for Summ. J. Against Milton L. Daly and Taylor-Leigh, Inc. ("Crown Br."), filed April 30, 2004, at 4 n. 5.)[1]

## II. DALY'S ADMITTED BREACH OF HIS FIDUCIARY DUTIES MAKES HIM LIABLE AS A MATTER OF LAW FOR THE ENTIRE $6.016 MILLION.

Daly admits that judgment should be entered against him on Crown Theatres' Count XXI claim for breach of fiduciary duty. (Daly Br. at 14.) He argues, however, that the amount of damages should be limited to the $4.2 million in kickbacks that he received from Beacher, as opposed to the $6.016 million that was wrongfully taken from Crown Theatres. (Id. at 17-18.) But Daly was not simply the passive recipient of money that should have been turned over to his employer. Instead, he admits that he entered into an "arrangement" with Beacher pursuant to

---

[1] Hamilton's declaration merely provides added details regarding the uses to which Daly put the stolen funds after he received them. Daly does not dispute that he actually received the funds. Nor does he quarrel with any of the facts in Mr. Hamilton's declaration – facts that are reflected in the checks and other financial records that Crown Theatres obtained in response to third-party subpoenas. The declaration and updated analysis should not be stricken for the reasons set forth in Crown Theatres' opposition to Daly's motion to strike.

3

which he agreed to "funnel[]" work to Beacher. (Id. at 18.) In return, Daly got 70% of Beacher's so-called "profits." (Id. at 9.) Daly's undisclosed arrangement with Beacher itself, which Daly furthered by approving the payment of millions of dollars of invoices, constituted a breach of fiduciary duty. See Vigneau v. Storch Engineers, No. CV89-0700122S, 1995 Conn. Super. LEXIS 3361, at *10-11 (Super. Ct. Dec. 4, 1995) (agreement involving self-dealing breached fiduciary duty); Mec-Gar v. Hard, No. CV020077396S, 2002 Conn. Super. LEXIS 3314, at *7-10 (Super. Ct. Oct. 2, 2002) (same); Pergament v. Green, No. CV86 0084907 S, 1992 Conn. Super. LEXIS 1955, at *14-16 (Super. Ct. June 11, 1992) (failure to disclose self-dealing transaction violated fiduciary duty); Restatement (Second) of Agency §§ 387, 389 (1958) (duty of loyalty requires agent to act solely for the benefit of principal; agent must not deal with principal as adverse party without principal's knowledge).[2]

And while Daly would like to limit his losses to the $4.2 million that he and his wife pocketed, the law is clear that one who breaches his fiduciary duties is liable for all of the losses to the one to whom the fiduciary duties are owed. See Dietler v. Your Bottle Shop, No. CV 940045362S, 1998 Conn. Super. LEXIS 825, at *8-9 (Super. Ct. Mar. 27, 1998) (fiduciary responsible for all losses flowing from breach of duty); Restatement (Second) of Agency § 401 (agent liable to principal for all losses stemming from breach of duty). Daly is, therefore, liable as a matter of law for the entire $6.016 million that he and Beacher stole from Crown Theatres.

## III. DALY AND TAYLOR-LEIGH ARE LIABLE FOR CONVERSION.

The undisputed facts also establish Daly and Taylor-Leigh's liability for conversion. In an effort to avoid the inevitable, Daly misstates the record, asserting that he "did not know that the construction invoices and payment applications submitted by Beacher, through BB Construction, were false or fraudulent." (Daly Br. at 12.) He also asserts that "he believed that

---

[2] All unpublished opinions cited herein are attached hereto as Ex. A.

he had negotiated less expensive construction contracts with Beacher," and that he believed that "the payments to BB Construction were all for real construction services and at a better price." (Daly Br. at 12-13.) But a review of Daly's citations to the record (various pages of the transcript of his deposition) finds no support for these factual assertions. This Court is invited to look for itself. Moreover, whether Daly knew that the invoices and payment applications were phony is immaterial. Conversion requires only the intent to exercise dominion and control over the property of another. See Aubin v. Miller, 64 Conn. App. 781, 796, 781 A.2d 396, 407 (2001). There is no requirement that the defendant know that the property in question belongs to another or was wrongfully obtained. Plikus v. Plikus, 26 Conn. App. 174, 180, 599 A.2d 392, 395 (App. Ct. 1991). See also Luciani v. Stop & Shop Co., 15 Conn. App. 407, 411-12, 544 A.2d 1238, 1240 (App. Ct. 1988) ("[T]he defendant may be liable for conversion where he has in fact exercised dominion or control, although he may be quite unaware of the existence of the rights with which he interferes. Thus, he may be a converter when he dispossesses another of a chattel in the entirely reasonable belief that it is his own, or where he innocently buys stolen goods.") (quoting Restatement (Second) of Torts § 224 cmt. c (1965)); Restatement (Second) of Torts § 229 (1965) (receiver of stolen property with intent to keep property commits conversion, even without knowledge of fraud).

Daly speculates that the money used to pay the kickbacks was not converted because it was paid out of the "profits" earned by Beacher and, therefore, it "belonged" to Beacher, not Crown Theatres. (Daly Br. at 13.) But Daly himself admitted that the funds belonged to Crown Theatres. (Dep. of Milton L. Daly, May 21, 2003 at 140, attached hereto as Ex. B; see also Dep. of Milton L. Daly, August 5-6, 2003 at 241, attached hereto as Ex. C.) And, Crown Theatres' forensic accountant has traced the money trail in painstaking detail. For Daly's contention to be

JZG/32310/2/682742v1
06/14/04-HRT/

even remotely plausible, he would need to establish that Beacher or the entities that he controlled actually did the work that was reflected on the payment applications and that Beacher was, therefore, entitled to payment. The undisputed facts, however, demonstrate that the Beacher entities were sham corporations with no employees, that they performed no work, that the alleged work reflected on the payment applications was either not the responsibility of Crown Theatres or it was performed by another contractor, and that the payments never should have been made to Beacher or the Beacher entities. (Crown Br. at 2-4.)

Daly questions the amount of damages he should be required to pay. (See Daly Br. at 18 n. 2.) But the law is clear that where funds are converted through collaborative efforts, each wrongdoer is jointly responsible for the entire sum taken, not just the amount that he personally obtained. (See Crown Br. at 12 n. 12.) Thus, Daly and Taylor-Leigh are liable on Counts VII (Daly and Taylor-Leigh) and XIV (Daly) for the conversion of the full $6.016 million.

## IV.   THE UNDISPUTED FACTS ESTABLISH UNJUST ENRICHMENT.

Daly makes no meaningful response to the undisputed facts that establish that he was unjustly enriched by virtue of receiving $4.2 million in kickbacks. He asserts that he was not unjustly enriched because of "the absence of any fraud on the plaintiff by Daly." (Daly Br. at 15.) Fraud, however, is not an element of a claim for unjust enrichment. See Fitzpatrick v. Scalizi, 72 Conn. App. 779, 786-87, 806 A.2d 593, 599 (2002). Daly also recycles his assertion that the kickbacks did not belong to Crown Theatres and, thus, Daly was not unjustly enriched at Crown Theatres' expense. (Daly Br. at 15.) For the reasons set forth in the above section dealing with conversion, this argument is without merit and contrary to the undisputed facts.

Crown Theatres is, therefore, entitled to judgment against Daly on its Count XVI claim for unjust enrichment in the amount of $4.2 million, plus prejudgment interest.

6

## V. THE UNDISPUTED FACTS ESTABLISH DALY'S CUTPA LIABILITY.

Daly claims that he cannot be liable for a CUTPA violation (Count X) because his actions constituted nothing more than a "purely intracorporate conflict." (Daly Br. at 16.) But Daly mischaracterizes the nature and scope of his conduct. The undisputed facts show that Daly's actions ranged well-beyond the scope of his duties as executive vice president and chief operating officer when he entered into a secret, unauthorized deal with a third party to benefit himself at the expense of Crown Theatres. Acts by an employee that take place outside the scope of the employer-employee relationship may constitute CUTPA violations. See Larsen Chelsea Realty Co. v. Larsen, 232 Conn. 480, 493-94, 656 A.2d 1009, 1018-19 (1994); see also Spector v. Konover, 57 Conn. App. 121, 133-34, 747 A.2d 39, 46 (App. Ct. 2000).

Daly has no answer to Spector v. Konover, which Crown Theatres discussed at length in its opening brief. (Crown Br. at 15.) There, the defendant partner diverted partnership funds to accounts owned by the partner's outside business ventures. The court found that this breach of fiduciary duty was actionable under CUTPA because it placed him in "direct competition with the interests of [the plaintiff]." Spector, 57 Conn. App. at 133-34. This is precisely the situation here, where Daly diverted Crown Theatres' money to an entity that he controlled, and ultimately to himself.[3]

## VI. DALY'S STATUTE OF LIMITATIONS ARGUMENT IS MERITLESS.

Daly asserts that over $1 million of Crown Theatres' damages are barred by the applicable three-year statute of limitations. This argument is without merit because the statute of

---

[3] The cases upon which Daly relies do not help him. In Ostrowski v. Avery, 243 Conn. 355, 703 A.2d 117 (1997), the Connecticut Supreme Court remanded the case because the factual record was insufficient to determine whether a CUTPA violation occurred. In Fink v. Golenbock, 238 Conn. 183, 680 A.2d 1243 (1997), the court found a CUTPA violation because the defendant's actions "went well beyond the governance of the corporation, and placed him in direct competition with the interests of the corporation." Id. at 213. The same can be said for Daly's actions here.

7

limitations was tolled by Daly's continuing course of conduct. See Fenn v. Yale University, 283 F. Supp. 2d 615, 638 (D. Conn. 2003). The continuing course of conduct doctrine applies where there is "a breach of a duty that remained in existence after the commission of the original wrong" arising out of "a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Id. The situation here satisfies either test.

First, Daly owed a fiduciary duty to Crown Theatres as one of its senior officers (Crown Br. at 8-9) which gave rise to a special relationship that tolled the statute of limitations. See Fenn 283 F. Supp. 2d at 638 (statute tolled by continuing fiduciary duty to disclose); Spector v. Konover, No. CV950554967S, 2001 Conn. Super. LEXIS 2394, at *12 n. 6 (Super. Ct. Aug. 16, 2001) (fiduciary relationship tolled statute of limitations for fiduciary duty and CUTPA claims); Vigneau, 1995 Conn. Super. LEXIS 3361, at *19-20 (fiduciary relationship tolls statute of limitations for CUTPA); Fed. Nat'l Mortgage Assoc. v. Jessup, No. CV980169417S, 2000 Conn. Super. LEXIS 3373, at *5-7 (Super. Ct. Dec. 8, 2000) (same for common law torts). Daly's fiduciary duties remained in effect at least until he resigned in June 2001. Crown Theatres filed this action in December 2002, clearly within the three-year limitations period.

Daly's conduct also meets the alternative requirement for invoking the continuous course of conduct doctrine. The evidence is undisputed that the kickback scheme continued up until at least April 2001. (See Ex. F to the report of Frederick C. Hamilton, Ex. G to Crown Br.) Each submitted and approved payment application, and each kickback payment, was part of the same, ongoing scheme. Hence, the statute of limitations was tolled until the final tortious act, which, again, would place all of Crown Theatres' claims squarely within the limitations period. See Fenn, 283 F. Supp. 2d at 638; Efthimiou v. Smith, No. X05CV00180898S, 2002 Conn. Super.

8

LEXIS 1892, at *37 (Super. Ct. June 6, 2002) (multiple self-dealing transactions constituted continuing course of conduct).[4]

## VII. THIS COURT SHOULD AWARD PREJUDGMENT INTEREST.

Seeking to avoid compensating Crown Theatres fully for his admitted wrongdoing, Daly maintains that prejudgment interest is "a question for the jury, not the court" and that the issue of prejudgment interest, therefore, "must await the trial of the case." (Daly Br. at 22.) Were Daly correct, then no trial court could ever award prejudgment interest on a motion for summary judgment. Of course, it would make no sense that a plaintiff who prevailed on a motion for summary judgment would forfeit its right to be made whole. Not surprisingly, Daly's depiction of the law is erroneous. Courts can and regularly do award prejudgment interest at the summary judgment stage. See, e.g., Warner v. Lancia, 46 Conn. App. 150, 158, 163-64, 698 A.2d 938, 942, 945 (App. Ct. 1997) (affirming award of prejudgment interest on summary judgment); Coregis Ins. Co. v. Fleet Nat. Bank, No. CV980580210, 2001 Conn. Super. LEXIS 1225, at *2-4 (Super. Ct. May 4, 2001) (awarding prejudgment interest upon grant of summary judgment).

The case on which Daly purports to rely, Retepromaca Representaciones Tecnicas Proyectos Y Sistemas, C.A. v. The Ensign-Bickford Co., No. 3:98CV1857 (SRU), 2004 U.S. Dist. LEXIS 5552 (D. Conn. Mar. 30, 2004), is not to the contrary. There, the plaintiff brought a post-trial motion for prejudgment interest after the jury had returned a verdict. The court held

---

[4] The statute of limitations was also tolled by Daly's fraudulent concealment of the facts underlying Crown Theatres' cause of action. Conn. Gen. Stat. § 52-595. Daly's admitted failure to disclose his transactions constitutes fraudulent concealment, since Daly had a fiduciary duty to disclose his self-dealing transactions. See Fenn, 283 F. Supp. 2d at 636-37. The statute may be tolled on a reasonable inference that the defendant's failure to disclose was for the purpose of delaying or preventing legal action. Id. This is a reasonable inference here, because Daly knew the facts necessary to establish Crown Theatres' cause of action; he intentionally concealed those facts; and his concealment was done to mislead Crown Theatres into inaction. See id. Because of Daly's concealment, Crown Theatres did not discover and could not have reasonably discovered Daly's misconduct until after he left Crown Theatres, in June 2001.

9

that it was unable to award prejudgment interest because the finder-of-fact (in that case the jury) had not been given the opportunity to determine whether the facts necessary for an award of prejudgment interest had been established. Here, by contrast, there are no open factual questions: the required elements for an award of prejudgment interest – (1) defendant wrongfully detained funds from plaintiff; and (2) date from which the wrongful detention began – have been established. (Crown Br. at 16-17.) There is no need, therefore, for a trial with respect to the issue, and this Court should award prejudgment interest as a matter of law in the amounts set forth in Crown Theatres' opening brief.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief, Crown Theatres' Motion for Summary Judgment against Milton L. Daly and Taylor-Leigh, Inc. should be granted.

CROWN THEATRES, L.P.

By: _____
H. James Pickerstein (Bar No. Ct 05094)
Jodi Zils Gagné (Bar No. Ct 24376)
PEPE & HAZARD, LLP
30 Jelliff Lane
Southport, CT  06490
(203) 319-4000
(203) 259-0251 (fax)
hpickerstein@pepehazard.com
jgagne@pepehazard.com

and

Craig C. Martin (Bar No. Ct 12198)
Lawrence S. Schaner (Bar No. Ct 24756)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 222-9350
(312) 840-7776 (fax)
cmartin@jenner.com
lschaner@jenner.com

10

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served all counsel of record in this action with a copy of **Crown Theatres' Reply Memorandum in Support of Its Motion for Summary Judgment Against Milton L. Daly and Taylor-Leigh, Inc.**, by mailing a copy of the same by United States Mail, postage prepaid, to the following:

> Kerry M. Wisser
> Weinstein & Wisser, P.C.
> 29 South Main Street
> Suite 207
> West Hartford, CT  06107
>
> Mark Seiden
> Marisa Lanza
> Milber, Makris, Plousadis & Seiden, L.L.P.
> 3 Barker Ave.
> 6th Floor
> White Plains, NY  10601
>
> Robert M. Frost
> Zeldes, Needle & Cooper
> 1000 Lafayette Blvd.
> P.O. Box 1740
> Bridgeport, CT 06601-1740

_____
Jodi Zils Gagné

Dated:  June 14, 2004