## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------------X

CROWN THEATRES, L.P.,

                   Plaintiff,

    -against-

MILTON L. DALY, *et al.*

                   Defendants.

-------------------------------------------------------------X

Case No.  3:02 CV 2272 (AVC)
Jury Trial Demanded

June 14, 2004

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MARTINO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN REGARD TO COUNTS VIII AND IX OF THE PLAINTIFF'S SECOND AMENDED COMPLAINT.

Defendants James T. Martino and James Thomas Martino Architects, P.C. (the "Martino Defendants") have moved for summary judgment in their favor in connection with Counts VIII (breach of contract) and IX (professional negligence) asserted in Crown Theatres, L.P.'s ("Crown") Second Amended Complaint. Crown has failed to raise any genuine issues of material fact sufficient to refute the Martino Defendants' summary judgment motion.  For the reasons set forth below and previously set forth in the Martino Defendants' Memorandum of Law, dated April 23, 2004, Counts VIII and IX of the Second Amended Complaint should be dismissed and the Martino Defendants' motion for summary judgment should be granted in its entirety.

a)    **Crown Has Failed To Cite Material Questions Of Fact Sufficient To Refute That The Conduct Of The Martino Defendants Was Not The Proximate Cause Of The Embezzlement Scheme.**

The Martino Defendants are entitled to summary judgment dismissing Crown's claims because the alleged conduct of the Martino Defendants was not, as a matter of law, the proximate cause of Crown's loss.  As set forth in greater detail in the Martino Defendants Memorandum of Law, dated April 23, 2004, Crown's claims are not cognizable as a matter of law, because the conduct of a third-parties (Daly and/or Beacher) intervened breaking the causal chain thereby preventing the Martino

Defendants from being liable for the harm caused by another's conduct. *See* Burns v. Gleason Plant Sec., Inc., 10 Conn.App. 480, 523 A.2d. 940 (1987).

Crown's entire rebuttal rests on Crown alleged reliance upon the Martino Defendants' signature in processing payment applications, a factual allegation that is unsupported by the pre-trial record. Crown, in a desperate attempt to avoid the obvious superceding cause created by the embezzlement scheme, attaches the affidavits of Catherine E. Nonnenmacher, Crown's Comptroller, Suzy Herrera, Crown's Account Payable Supervisor, and Daniel M. Crown, Crown's Chief Executive Officer, who state that prior to processing construction invoices, the accounting department reviewed the applications for payment, including confirming the presence of the signatures of the Martino Defendants, Daly and Beacher. However, their affidavits are in direct conflict with David Clifford, Crown's Executive Vice-President and Chief Financial Officer from 1996 to November 2002 (Depo. of Clifford at p. 14). Clifford testified, throughout his deposition very clearly and unequivocally, that the only procedure undertaken by the accounting department was to confirm that Daly's signature[1] was on the payment application prior to issuing payment and that it was not within the job responsibilities of the accounts payable personnel to review payment applications (Depo. of Clifford at pp. 174-176 & 275-276). Clifford, who was in charge of Crown's accounting department on a daily basis, would have the most direct knowledge as to the obligations and procedures implemented by and for his department. The only personnel at Crown that was responsible for reviewing the payment applications was Daly, the alleged embezzler (Depo. of Clifford at p. 170)

> Q:    I am sorry. Before Ms. Nonnenmacher signed a pay application – before she signed a check do you know if she ever reviewed the pay application?
> A:    Not her job to review the pay application?
>    *   *   *
> Q:    Would anyone in the accounts payable department have reviewed a pay application?
> A:    No.
> Q:    Besides to check for Mr. Daly or someone else?

---

[1] Clifford also testified that besides Daly, Dan Crown, Glenn Garfinkel and his signature on the invoices authorized the accounting department to issue payment. (Depo. of Clifford at p. 176-177)

> A:    To look for Mr. Daly's signature or my signature or Dan's, that's what they are
>        looking for.

Depo. of Clifford at p. 178-179; *See also* Depo. of Clifford at p. 181-182.

Crown's unsupported contention that it relied upon the Martino Defendants in paying payment applications is wholly without merit[2]. It was not the practice of Crown to check for signatures on payment applications other than that of Daly. Moreover, Crown admits that tens of thousands of dollars worth of payment applications were processed and paid by Crown either without the signature of the Martino Defendants or with fraudulent signatures (Crown's Brief at 17, Footnote 2). The actual procedure of Crown was to process payment applications without any consideration of the signature of the Martino Defendants. Crown cannot refute the undisputed fact that many payment applications were processed without the Martino Defendants' signature or with fraudulent signatures. Thus, how can Crown suggest that the Martino Defendants' signature was a condition precedent to payment when it is undisputed that Crown paid many payment applications without the Martino Defendants' signature and that Daly, the alleged embezzler, had final payment authority? In short, the record is undisputed that Crown did not rely upon the Martino Defendants' signature to process the subject payment applications. Therefore, even if we assume the Martino Defendants negligently processed certain payment applications, such conduct cannot be the proximate cause of Crown's loss.

In a footnote, Crown attempts to minimize the relevance that at least 5 out of the 23 payment applications at issue herein, (approximately 25%), were paid without any reliance on the Martino Defendants' signature. It is illogical for Crown to assert that it would not have paid any invoices without the Martino Defendants' signature, in light of the undisputed evidence that at least a quarter of the payment applications at issue herein were paid without the Martino Defendants' signature. The pre-trial record is clear and undisputed that the payment applications were paid based on Daly's approval

---

[2] It is also quite interesting that Crown cites to Milton Daly's testimony to support its position that Crown relied upon the Martino Defendants' signature to process payment application, especially since Crown is alleging that Daly was the mastermind behind implementing the embezzling scheme. It is astonishing that Crown would rely upon Daly's testimony as to any factual assertion, when it is Daly's creditability that Crown is attacking. It appears that Crown is picking and choosing what testimony from Daly is creditable or not, depending on their underlying motives.

and not upon the Martino Defendants' signature, thereby eliminating, as a matter of law, the first component for establishing proximate cause, "cause-in-fact."

Crown also attempts to argue that the embezzling scheme was not a superseding cause of Crown's injuries since there was "no intervention by another force" and the harm was foreseeable. Crown's argument is without merit. The intervening force was the conduct of Daly and Beacher in devising and implementing an embezzlement scheme to defraud Crown. The undisputed intervening force, *i.e.* the embezzling scheme, was the direct and exclusive cause of Crown's injuries. Even under Crown's definition of superceding cause, the sole proximate cause of Crown's injuries was the alleged intentional conduct of third-parties, and not the alleged negligence act or omission of the Martino Defendants. Crown would have suffered the same harm, irrespective of the conduct of the Martino Defendants. This is evidenced by the fact that Crown processed and paid a significant portion (25%) of the payment applications without the Martino Defendants' signature. Simply stated, the ultimate cause of Crown's damages was the embezzlement. If the conduct of the Martino Defendants were removed from the "picture," the result would have been the same, Crown would have suffered the same injury.

There is no evidence that the "embezzlement" was foreseeable. There is no expert testimony supporting Crown's claim that "kickback schemes – especially in the construction industry – are all too common"[3] and hence foreseeable. It is not foreseeable that a company's chief operating officer along with the company's construction manager would devise a scheme to allegedly embezzle approximately $6.2 million dollars.

In conclusion, when a fair and reasonable person could reach only one conclusion, as in the matter at hand, proximate cause is appropriate for summary judgment. Coste v. Riverside Motors, Inc., 24 Conn.App. 109, 585 A.2d 1263 (1990). Crown cannot as a matter of law establish that the alleged conduct of the Martino Defendants was the proximate cause of its injuries. Crown is not entitled to

---

[3] The reference to Mr. Hamilton's Prejudgment Remedy Hearing, dated Sept. 18, 2003 at pp. 24-26 makes no suggestion as to the foreseeeablity of "kickback schemes" in the construction industry. Instead, Mr. Hamilton testifies at great lengths concerning the fraudulent invoices submitted by Beacher to Daly and the flow of money from then Crown's payment to Beacher, who in turned issued checks to Daly though Taylor-Leigh, Inc.

4

recovery those damages that are not proximately caused by the Martino Defendants. Accordingly, Crown's Second Amended Complaint should be dismissed as against the Martino Defendants.

**b)**     **The Affidavits Do Not Refute The Unconverted Pre-Trial Record.**

Crown has submitted three affidavits in an eleventh hour attempt to create confusion in order to raise material questions of fact. However, the affidavits do not refute the unconverted pre-trial record established in the matter and are conclusory. A party opposing summary judgment may not rely upon mere allegations or denials of the adverse party's argument to overcome summary judgment. *See* Rule 56(e). The opposing party must substantiate its adverse claim by showing there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Clarke v. Sweeney, _ F.Supp.2d _, 2004 WL 728029 (Mar. 30, 2004 D. Conn.); Matney v. First Protection Life Insurance Co., 73 F.R.D. 696 (D.C. Va, 1977); Vaughn v. Baldwin, 940 F.2d 662 (July 22, 1991, 6th Cir.)

Even when the non-moving party submits allegations that there are disputed facts, the moving party is still entitled to summary judgment as a matter of law, in the absence of specific facts. Shannon v. New York City Transit Authority, 332 F.3d. 95 (2d Cir. 2003). The affidavits of Catherine E. Nonnenmacher, Suzy Herrera and Daniel M. Crown, viewed in the light most favorable to Crown, do not offer any specific facts and more importantly do not refute the conclusive fact that many payment applications were paid without the signature of the Martino Defendants. Hence, the affidavits are nothing more than conclusory allegations, conjecture and speculation in a frantic attempt to avoid summary judgment. Kerzer v. Kingly Mfg., 156 F.3d 396 (2d Cir. 1998); Logan v. Commercial Un. Ins. Co., 96 F.3d 971 (7th Cir. 1996)(Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute). Although all facts and inferences therefrom are to be construed in favor of the non-moving party, the non-moving party must raise more than just a "metaphysical doubt" as to a material fact. Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

The affidavits offer no excuse or reason to explain why approximately 25% of the payment applications at issue were processed and paid without the Martino Defendants' signature. Only when faced with the within motion has Crown presented the affidavits, hence the Court should not consider them in rendering a decision on the within motion. *Cf* Cowan v. Prudential Ins. Co., 141 F.3d. 751 (7th Cir. 1998)('parties cannot thwart the purpose of [FRCP] 56 by creating sham issues of fact with affidavits that contradict their prior deposition."); Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d. 1162 (7th Cir. 1996). Crown has never and cannot dispute the fact that approximately 25% of the payment applications at issue herein were paid without the "so-called" required signature of the Martino Defendants[4]. Hence, any argument that Crown relied upon the Martino Defendants' signature is immaterial. Crown has failed to make a sufficient showing on the essential elements of it claims against the Martino Defendant with respect to its burden of proof, hence in the absent of such a showing, summary judgment is appropriate.

c)   **Crown Continues To Rely On Incorrect And Incomplete Facts Concerning The Conduct Of The Martino Defendants.**

Crown repeatedly omits and distorts material testimony from its papers. For example, as set forth in Crown's Brief at pp. 3-4, under Statement of Facts, Crown fails to advise the Court that the terms and obligations of the contractual relationship between the Martino Defendants and Crown was based upon the letter agreement between the Martino Defendants and R.D. Scinto, Inc. (hereinafter the "letter agreement"). The letter agreement was adopted by Crown and subsequently modified by Crown, (through Milton Daly) and the Martino Defendants to completely eliminate the requirements of on-site visits or out-of-town projects,[5] because those services would be duplicative of Robert Beacher, Crown's construction manager and owner's representative (*See* Depo. of Martino at p. 109).

---

[4] Furthermore, there is also evidence of payment applications being processed and checks being issued based on payment applications, unsigned by the Martino Defendants. Therefore, in addition to the payment applications discussed above, many other payment applications were processed without the Martino Defendants' signature.
[5] The issues surrounding the contractual obligations of the Martino Defendants and Crown are discussed in greater detail in the Martino Defendants' Memorandum of Law In Opposition to Crown's Motion For Partial Summary Judgment, dated May 21, 2004.

Crown also distorts and excludes relevant portions of the pre-trial record concerning the review process undertaken by the Martino Defendants' prior to signing payment applications. Crown erroneously recites its slanted version of the facts, *i.e.* that "Beacher handed the payment applications to Martino in stacks, usually in Beacher's car on the way to construction meetings at Crown's Theatres' home office or at Crown Theatres' home office in Norwalk, Connecticut. Martino signed the Architect's Certificates without reviewing them" (Crown's Brief at p 4). However, the undisputed testimony is that Martino Defendants prior to "processing" the payment applications reviewed and relied upon numerous factors, including, *inter alia*, Beacher's prior certification of the applications, Martino's attendance at regular progress meetings, review of shop drawings and progress photos, discussions with Beacher, responses to RFI's, discussions with contractors, review of project correspondence, inspection certifications from local municipal officials, as well as on-site visits prior to signing payment applications (*See* Depo. of Martino at pp. 201-202, 325-326, 329-330, 335-337, 370-371 & 457-458).

**d)     Crown Has Failed To Establish That Under Connecticut's Choice Of Law Principles, New York Law Should Not Apply To The Within Claims Against The Martino Defendants.**

Crown argues that Connecticut has the more significant relationship to this action because the "relationship of the parties is centered in Connecticut" (Crown's Brief at p. 10). Crown bases its conclusion on the fact that: (a) Martino was first introduced to Plaintiff at a meeting in Plaintiff's Connecticut office; (b) Plaintiff was Martino's most important client during the pertinent time period; (c) Martino attended weekly meetings in Plaintiff's Connecticut office; and (d) the Martino Defendants' work product was received by Plaintiff in its Connecticut office. Id. At best, the Martino Defendants' Connecticut contacts are peripheral to the performance of its professional services under the parties' agreement. The bulk of the Martino Defendants' performance took place in its New York office. In New York, the Martino Defendants: (a) designed preliminary schemes for each project; (b) finalized design drawings and prepared construction documents for the projects; (c) prepared and issued working drawings and project specifications; (d) responded to requests for information (questions) from contractors; and (e) processed contractors' shop drawings. Connecticut's only relationship to the work

7

performed by the Martino Defendants is that Crown maintains a Connecticut office, where it held meetings. By its own admission, Crown merely received the Martino Defendants' work product in its Connecticut office. The work produce was prepared in New York. Furthermore, the fact that two projects were located in Connecticut is of no consequence. Under that theory, then Crown could argue that Florida law should apply, because two theatre projects were located in Florida. The test is what state has the most significant relationship to the occurrence and has the greatest interest in governing the conduct of its professionals. *See* MM Global Services, Inc. v. The Dow Chemical Company, 283 F.Supp.2d 689 (D.Ct. 2003). Clearly, the weight of the factors relating to the Martino Defendants' conduct should be governed by New York. Therefore, any interest demonstrated by Connecticut is trumped by New York.

**e)      Crown Misapprehends The Holding And Applicability Of The Clark-Fitzpatrick Holding To The Within Action.**

In its brief, Crown argues that since the present matter involves a professional negligence claim, the "economic loss" rule of Clark-Fitzpatrick v. Long Island Railroad does not apply because New York courts have refused to apply the economic loss rule to in cases involving services rendered by professionals (Crown's Brief at pp. 20-21). However, the cases Crown cites relate to third party negligence claims by an entity not in privity of contract with a design professional for pecuniary loss. *See* Robinson Redevelopment Company v. Anderson, 155 A.D.2d 755, 547 N.Y.S.2d 458 (1989), Baisch v. Willey, 2002 W.L. 31974576 (W.D.N.Y.). The Clark-Fitzpatrick doctrine relates to parties in privity of contract. The basis of this doctrine, clearly applicable in the present matter, is that the parties' duties and obligations are governed by the contractual relationship. To hold otherwise would cause contract law to "drown in a sea of tort." Key Intern. Mfg., Inc. v. Morse/Diesel, Inc., 536 N.Y.S.2d 792 N.Y.A.D. (2nd Dept. 1988).

Crown's reliance on 17 Vista Fee Ass. V. Teacher's Ins. & Annuity, 259 A.D.2d. 75, 693 N.Y.S.2d 554 (1st Dep't 1999) is misplaced. In 17 Vista, the seller of the property, who had an obligation to design a smoke purge system had delegated full responsibility for the design of the system

8

to the mechanical engineer, was permitted to seek indemnification against the engineer. This is not the situation in the case at hand. The parties in the present matter unquestionably had a contractual agreement. Therefore, Crown may not assert a negligence claim arising out of the same underlying facts and duties without alleging that the Martino Defendants violated a duty wholly independent of the contract itself. The Limited, Inc. v. McCrory Corporation, 169 A.D.2d 605 (1st Dept. (1991). The same holds true under Connecticut law, which has adopted these principles. Gazo v. City of Stamford, 225 Conn. 245, 765 A.2d 505 (2001). Crown's complaint fails to allege that the Martino Defendants violated a legal duty independent of the contract itself. Therefore, the Martino Defendants' present motion should be granted and Crown's Count IX should be dismissed in its entirety.

## f)    The Four Payment Applications Identified In The Martino Defendants' Moving Papers Are Indeed Time-Barred.

Crown primary argument lies on the incorrect notation that Connecticut Law applies to the Martino Defendants. However, as set forth above (See section e, above), Crown's contention is incorrect as a matter of law and New York Law should apply to the within causes of actions against the Martino Defendants. Crown argues that its causes of action against the Martino Defendants do not accrue until the Martino Defendants ceased performing its contractual obligations to Crown. It is generally true that, "in cases against architects or contractors, the accrual date for statute of limitations purposes is completion of performance." City School District of the City of Newburgh v. Hugh Stubbins and Associates, Inc., 85 N.Y.2d 535, 538, 626 N.Y.S.2d 741 (1995)(citations omitted). What Crown fails to address, however, is that New York courts must apply this principle, on a case-by-case basis. See Parsons Brinckerhoff Quade & Douglas, Inc. v. EnergyPro Construction Partners, 271 A.D.2d 233, 234, 707 N.Y.S.2d 30, 31, (1st Dep't 2000). ("Completion is not a statutorily defined word but must be judicially interpreted in light of the given situation and the responsibilities of the parties in carrying out their agreement."). Crown admits, "this case is not about negligent design" (Crown's Brief at p. 10). This is further supported by the fact that Crown cites only to negligent design cases. In the matter at hand, however, Crown has based its claims not upon negligence design but upon its allegations

9

of 29 specific and independent acts of negligence that are completely unrelated to project design, *i.e.* *approving the payment applications*. The date that the cause of action accrues for the purpose of the negligent approval of the payment application starts running each and every time that the Martino Defendants allegedly negligently approved the payment application. Accordingly, partial summary judgment should be granted in favor of the Martino Defendants as to the four payment applications that are time-barred.

## CONCLUSION

For all of the reasons in the Martino Defendants' Memorandum of Law In Support of its Motion for Summary Judgment and for the additional reasons set forth herein, the Martino Defendants respectfully requests that this Court grants summary judgment be entered in their favor on Count VIII (breach of contract) and IX (professional negligence) of the Plaintiff's Second Amended Complaint.

RESPECTFULLY SUBMITTED,
DEFENDANTS/THIRD-PARTY PLAINTIFFS JAMES T. MARTINO and JAMES THOMAS MARTINO ARCHITECTS, P.C.

By: _____

Mark Seiden (ct 24637)
Marisa Lanza (ct 24554)
MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP
3 Barker Avenue, 6th Floor
White Plains, New York 10604
(914) 681-8700
(914) 681-8709 (fax)
mseiden@milbermakris.com
mlanza@milbermakris.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify and I a copy of the foregoing **Memorandum Of Law In Further Support Of The Martino Defendants' Motion For Summary Judgment In Regard To Counts VIII And IX Of The Plaintiff's Second Amended Complaint** was served by first class mail, postage prepaid, on all counsel of record in this action on the 14th day of June 2004, upon:

Lawrence S. Schaner, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611

H. James Pickerstein, Esq.
Pepe & Hazard, LLP
30 Jelliff Lane
Southport, CT 06490

Kerry M. Wisser, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Robert M. Frost
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd
P.O. Box 1740
Bridgeport, CT 06601

Marisa Lanza