UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CROWN THEATRES, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:02CV2272AVC |
| | ) | Jury Trial Demanded |
| MILTON L. DALY, TAYLOR-LEIGH, | ) | |
| INC., ANNE E. DALY, JAMES C. | ) | |
| CELLA, G.U.S. DEVELOPMENT, INC., | ) | July 9, 2004 |
| JAMES T. MARTINO AND JAMES | ) | |
| THOMAS MARTINO, ARCHITECT, | ) | |
| P.C., and RCD HUDSON, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD-PARTY DEFENDANTS DAVID CLIFFORD AND GLENN GARFINKEL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, III, V, VI AND VII OF THE AMENDED THIRD-PARTY COMPLAINT

Defendants James T. Martino and James Thomas Martino, Architect, P.C.

(collectively, "Martino") seek to complicate this lawsuit by asserting third-party claims against

two officers of plaintiff Crown Theatres, L.P. ("Crown Theatres"). This Court has already

dismissed Martino's first attempt to drag David Clifford, Crown Theatres' former chief financial

officer, and Glenn Garfinkel, its former general counsel, into this action. While this Court gave

Martino leave to amend, Martino's second attempt fails to cure the problems that led this Court

to grant Clifford and Garfinkel's initial motion to dismiss.

This Court should now dismiss and/or strike with prejudice each of the counts

pleaded against Clifford and Garfinkel in Martino's Amended Third-Party Complaint.

### BACKGROUND

On December 20, 2002, Plaintiff Crown Theatres, L.P. ("Crown Theatres") filed

this action against Martino and others for claims relating to a scheme to defraud Crown Theatres

through the submission of bogus invoices and payment applications for work on theatre construction projects. (2nd Am. Compl. ¶ 1.) In its Second Amended Complaint, Crown Theatres alleged that Martino, Crown Theatres' architect on the construction projects, breached his contract for architectural services and committed professional negligence by, among other things, negligently approving fraudulent payment applications and failing to detect the fraud. (2nd Am. Compl. ¶¶ 243-56.)

In his answer to the Second Amended Complaint, Martino alleged several affirmative defenses, including contributory negligence on the part of Crown Theatres. (Def. Ans. 2nd Am. Compl. at 60.) Martino also asserted a counterclaim against Crown Theatres, which could be construed as asserting claims for indemnification and contribution. (Id. at 64.)[1]

On February 14, 2003, Martino filed a third-party complaint against David Clifford, Crown Theatres' former executive vice president and chief financial officer, and Glenn Garfinkel, Crown Theatres' former executive vice president and general counsel. The third-party complaint asserted claims against Clifford and Garfinkel for indemnification, contribution and unjust enrichment. On March 31, 2004, this Court dismissed the third-party complaint, ruling that Martino failed to state claims for contribution or indemnification, and that impleader was therefore improper. (Ruling on the Third-Party Defendant's Motion to Dismiss ("Ruling"), dated March 31, 2004, at 9-10, 13.) This Court further held that absent a valid claim for contribution or indemnification, Martino's claims for unjust enrichment could not be joined pursuant to Fed. R. Civ. P. 18. (Id. at 14.) The motion to dismiss was granted with leave to amend.

---

[1] Crown Theatres has moved for summary judgment on this counterclaim in its Motion for Summary Judgment on the Martino Defendants' First and Third Counterclaims, filed April 30, 2004.

2

Sixty days later, on June 1, 2004, Martino filed his Amended Third-Party Complaint ("Amended Complaint"), asserting seven counts against Clifford, Garfinkel and Robert Beacher. Five of the seven counts are directed to Clifford and/or Garfinkel.[2]

In Count I, Martino seeks indemnification from Clifford and Garfinkel, asserting that Clifford and Garfinkel were negligent by "failing to fulfill their duties and obligations as officers of Crown." (Id. ¶ 13.) He also asserts a number of other bases for Clifford and Garfinkel's negligence, all of which involve their purported failure to uphold their corporate responsibilities. (Id.) In further support of his indemnification claim, Martino contends that Clifford and Garfinkel's alleged negligence was the proximate cause of the injury to Crown Theatres; Clifford and Garfinkel were in control of the situation; and Martino had no reason to anticipate that Clifford and Garfinkel would be negligent. (Am. Third-Party Compl. ¶¶ 13-17.)

Count III purports to state a claim against Clifford and Garfinkel for contribution. The claim rests on the same negligence allegations as those pleaded in Count I. (Id. ¶ 33.)

In Count V, Martino adds a new claim against Clifford and Garfinkel for alleged negligence. The original third-party complaint did not include a negligence claim. In his new negligence claim, Martino asserts that "the damages sustained by Crown occurred as a result of the negligent acts and omissions of Clifford and Garfinkel, in their capacity as employees and officers," and that, as a result of Clifford and Garfinkel's negligence, "Crown Theatres sustained damages." (Am. Third-Party Compl. ¶¶ 39-43.)

Counts VI and VII assert claims for unjust enrichment. In Count VI, Martino contends that Clifford was unjustly enriched due to work that Martino allegedly performed on Clifford's house for which Clifford did not pay. (Am. Third-Party Compl. ¶¶ 44-48.) In Count

---

[2] The two counts of the Amended Complaint asserted against Beacher, Counts II and IV, are not addressed by this motion.

3

VII, Martino makes the same allegations with respect to work he claims to have performed on

Garfinkel's home. (Am. Third-Party Compl. ¶¶ 49-53.) Martino does not allege that he ever

submitted a bill to Clifford or Garfinkel or that he ever asked to be paid. He also does not allege

that he ever entered into a contract with Clifford or Garfinkel whereby they agreed to pay for

Martino's alleged services.

## ARGUMENT

## I.    MARTINO'S INDEMNIFICATION CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT FAILS TO PLEAD ESSENTIAL ELEMENTS.

Martino's Count I claim for indemnification should be dismissed pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") because it fails to plead each

of the elements required to state a claim for common law indemnity. This Court originally

dismissed this claim for these exact reasons, and it should do so again.

The Connecticut supreme court stated the rules for pleading common law

indemnification in Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 694 A.2d 788 (1997). The

court recognized that "[o]rdinarily there is no right of indemnity or contribution between joint

tortfeasors." Id. at 697. In order to state a cause of action for indemnity, a party must allege

facts showing:

> (1) that the other tortfeasor was negligent, (2) that [the other
> tortfeasor's] negligence, rather than [the third-party plaintiff's],
> was the direct, immediate cause of the accident and injuries; (3)
> that the other tortfeasor was in control of the situation to the
> exclusion of the [third-party plaintiff]; and (4) that [the third-party
> plaintiff] did not know of such negligence, had no reason to
> anticipate it, and could reasonably rely on the other tortfeasor not
> to be negligent.

Id. at 698 (quotations omitted). Martino fails to allege three of the four elements.

4

While Martino asserts that Clifford and Garfinkel were negligent, he fails to plead

facts that show their negligence was the direct and immediate cause of Crown Theatres' injury.

As this Court rightly explained in its ruling on Martino's original third-party complaint:

> Since Martino is the only party with an alleged duty to Crown for
> architectural services, it is unclear how Clifford and Garfinkel
> could share in any liability arising out of a breach of duty
> concerning architectural services.

(Ruling at 9.) This problem is not cured in the Amended Complaint. Martino makes no

allegation that Clifford and Garfinkel owed a duty to Crown Theatres for architectural services.

Moreover, he fails to allege facts showing that they were somehow to blame for Martino's

negligence in approving the fraudulent payment applications or his failure to discover the

massive fraud perpetrated on his watch. Thus, it remains "unclear how Clifford and Garfinkel

could share in any liability arising out of a breach of duty concerning architectural services."

Furthermore, Martino failed to plead facts showing that Clifford and Garfinkel

were "in control of the situation to the exclusion of Martino." Martino makes a bare assertion in

an effort to satisfy the requirement, but this effort falls short. How was Martino excluded? He

does not say. To satisfy the pleading requirement, Martino needed to allege that he had nothing

to do with the approval of the false invoices and payment applications. No such allegation

appears in the Amended Complaint. The Amended Complaint therefore fails for the same reason

as the original third-party complaint. (Ruling at 9 ("Further, the complaint alleges no facts that

show that Clifford and Garfinkel were in control of the situation to the exclusion of Martino.").)

Finally, Martino does not allege facts to show that he could reasonably rely on

Clifford and Garfinkel "not to be negligent," which is what the fourth element of an

indemnification claim requires. Instead, Martino asserts only that that he "reasonably relied

upon Clifford and Garfinkel." (Am. Third-Party Compl. ¶ 17.) This statement falls short of

5

JZG/32310/2/686152v1
07/09/04-HRT/

what is required. Although this Court specified what Martino needed to plead, he did not do it.
(Ruling at 9-10.)

## II. MARTINO'S INDEMNITY AND CONTRIBUTION CLAIMS SHOULD BE STRICKEN UNDER RULE 14 BECAUSE THEY ARE DUPLICATIVE OF HIS CONTRIBUTORY NEGLIGENCE AFFIRMATIVE DEFENSE.

Martino seeks to hold Crown Theatres' officers, Clifford and Garfinkel,
individually liable to him for indemnification in Count I and contribution in Count III, in the
event that he is found to be liable to Crown Theatres. Martino asserts that he is entitled to
indemnification and contribution as a result of the allegedly negligent conduct of Clifford and
Garfinkel during the course of performing (or failing to perform) their corporate duties. But
Martino has also pleaded contributory negligence on the part of Crown Theatres as an
affirmative defense. He, thus, already has asserted that any liability on his part to Crown
Theatres should be reduced or eliminated altogether due to Crown Theatres' own negligence or
misconduct, which presumably includes all of the allegedly negligent conduct of its officers,
Clifford and Garfinkel. Courts do not permit defendants to assert claims against third parties that
are duplicative of their affirmative defenses. Where defendants attempt such maneuvers, the
proper recourse is for the court to strike the offending third-party claims under Fed. R. Civ. P.
14.[3]

Federal Rule of Civil Procedure 14 ("Rule 14") allows a defendant to implead any
third party "who is or may be liable to the [defendant] for all or part of the plaintiff's claim
against the [defendant]." To maintain an impleader action under Rule 14, the third-party
defendant:

---

[3] Martino's "overpleading" is compounded by his first counterclaim against Crown Theatres
which, though largely indecipherable, may be construed as yet another attempt to assert claims
for indemnification and contribution.

6

> must be liable secondarily to the original defendant or . . . must
> necessarily be liable over to the defendant for all or part of the
> plaintiff's recovery, or . . . the defendant must attempt to pass on to
> the third party all or part of the liability asserted against the
> defendant.

Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 437-38 (2d Cir. 2000) (quotations

omitted). Whether a defendant may implead a third-party defendant is solely within the

discretion of the trial court. See Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d

Cir. 1984). "The right to implead third parties is not automatic, and the court must balance the

benefits of settling related matters in one suit against the possible prejudice to the plaintiff and

third party defendants." International Medical Technology, Inc. v. Lintech, LLC, 203 F.R.D. 90,

91 (S.D.N.Y. 2001) (internal quotation marks omitted) (citations omitted). Any party may move

to strike a third-party claim, and a third-party claim should be stricken if it is "obviously

unmeritorious." Fed. R. Civ. P. 14; Fed. R. Civ. P. 14 advisory committee's note.

This Court should not permit impleader because Clifford and Garfinkel cannot be

secondarily liable for any portion of a judgment in favor of Crown Theatres. Their negligence, if

any, would be imputed to Crown Theatres, their employer. See Larsen Chelsea Realty Co. v.

Larsen, 232 Conn. 480, 500, 656 A.2d 1009, 1021 (1995) (employer liable for torts committed

by employees within the scope of their employment). As a consequence, a jury would

necessarily take into account their alleged negligence in passing on Martino's contributory

negligence defense. Martino is not entitled to "double count" the negligence of Crown Theatres

as Clifford and Garfinkel's employer through an affirmative defense or counterclaim, and also

seek recovery by means of a third-party complaint. See Ivor Wolfson Corp. SA v. Locke Liddell

& Sapp LLP, No. 99 Civ. 11471 (AKH), 2001 U.S. Dist. LEXIS 2513, at *11-13 (S.D.N.Y. Mar.

13, 2001).[4] Yet, that is precisely what Martino seeks to accomplish.

Ivor Wolfson Corp. SA is directly on point. In that case, the court refused to

grant leave to implead agents of the plaintiff where the defendant had already asserted an

affirmative defense of comparative negligence, because any third-party claim would be

duplicative. As the court explained:

> Most significantly, Defendants already have asserted as an
> affirmative defense the comparative negligence of Plaintiff's agent
> . . . . Because the actions and state of mind of an agent are imputed
> to the principal, there is no need for Defendants to bring a third-
> party action seeking contribution by Plaintiffs' agent for its "share"
> of Plaintiff's damages. If Defendants win on their denials and
> defenses, there is no need to pursue the same issues in a third-party
> complaint. If Defendants lose on their denials and defenses, they
> may not have an effective third-party case. In such situations, the
> Court may properly exercise its discretion to deny leave to file a
> third-party complaint.

Id.

The situation here is identical. Martino already has an avenue to air his

allegations that Clifford and Garfinkel were negligent, and to have that claim, if successful,

reduce his ultimate liability to Crown Theatres. There is no need to allow Martino two bites at

the apple. See Gabriel Capital, L.P. v. NatWest Finance, Inc., 137 F. Supp. 2d 251, 265-66

(S.D.N.Y. 2000) ("No authority has been found or cited permitting a contribution claim against a

plaintiff's agent where that claim is identical to defendant's affirmative defense."); New York

Islanders Hockey Club v. Comerica Bank-Texas, 115 F. Supp. 2d 348, 351 (E.D.N.Y. 2000)

(third-party complaint dismissed where plaintiff liable for negligence of agent); Connell v.

Connell, 1985 U.S. Dist. LEXIS 21638, at *10-12 (S.D.N.Y. Mar. 19, 1985) ("no practical

necessity to implead" where "any recovery would be subject to an appropriate reduction for their

---

[4] All unpublished opinions cited herein are attached as **Exhibit A.**

agent's negligence"); <u>Ruszkowski v. Sears, Roebuck & Co.</u>, 188 A.D.2d 967, 968 (N.Y. App. Ct.

1992) (dismissing third-party claim where defendant asserted comparative negligence defense

for same acts).

Martino's indemnification and contribution claims are mere harassment. Adding

Clifford and Garfinkel to this action adds nothing except for the risk of confusion resulting from

the litigation of duplicative theories, and the corresponding waste of financial and judicial

resources. If such blatant duplication were permissible, every defendant would bring third-party

claims against officers or employees of the plaintiff, needlessly expanding the scope of virtually

every case involving a corporate plaintiff. Accordingly, this Court should exercise its discretion

to deny impleader in this case.[5]

## III.    MARTINO LACKS STANDING TO ASSERT NEGLIGENCE CLAIMS AGAINST CLIFFORD AND GARFINKEL.

In Count V, Martino purports to assert a claim against Clifford and Garfinkel for

negligence. He alleges that Clifford and Garfinkel committed a series of negligent acts and

omissions and as a result of such acts and omissions "Crown Theatres sustained damages." (Am.

Third-Party Compl. ¶¶ 42-43.) Martino does not allege that he was injured by the purported

negligence. He, therefore, lacks standing under Rule 14 to bring a third-party claim against

---

[5] Martino has tacitly admitted the correctness of Crown Theatres' argument. In its motion to
dismiss the original third-party complaint, Crown Theatres contended that this Court should deny
impleader because claims in the third-party complaint were duplicative of Martino's
counterclaim. (Mem. Supp. Pl. Mot. to Dismiss Third-Party Compl. at 8-9.) In his response,
Martino urged that the claims were not duplicative because Clifford and Garfinkel's acts could
have been *ultra vires* and therefore beyond the scope of Crown Theatres' respondeat superior
liability. (Defs. Mem. Opp. Pl. Mot. to Dismiss Third-Party Compl. at 7.) But Martino makes
no allegation in the Amended Complaint of *ultra vires* conduct. In fact, he repeatedly alleges the
opposite, including the allegation that Clifford and Garfinkel were negligent in "failing to fulfill
their duties and obligations as officers of Crown." (Am. Third-Party Compl. ¶¶ 10, 13, 33, 42.)

JZG/32310/2/686152v1
07/09/04-HRT/

Clifford and Garfinkel. Count V should also be dismissed under Rule 12(b)(6) because it fails to state a claim for negligence.

Rule 14 allows a defendant to implead any party "who is or may be liable to the [defendant] for all or part of the plaintiff's claim against the [defendant]." Fed. R. Civ. P. 14. Rule 14 does not, however, permit impleader for claims that the third-party defendant is liable directly to the plaintiff. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 368 n. 3, 98 S. Ct. 2396 (1978) (potential liability to plaintiff insufficient grounds for impleader); see also Watergate Landmark Condo. Unit Owners Assoc. v. Wiss, 117 F.R.D. 576, 578 (E.D. Va. 1987) (same); Moore's Federal Practice 3d § 14.04 (2004) (impleader claim is proper only to assert that the third-party defendant is liable to the party impleading it).

Martino fails to allege that Clifford and Garfinkel are liable directly to him. Instead, the Amended Complaint alleges only that they are liable to Crown Theatres. Accordingly, Martino lacks standing to bring a third-party claim against Clifford and Garfinkel. See Index Fund, Inc. v. Hagopian, 417 F. Supp. 738, 744 (S.D.N.Y. 1976) (defendant lacked standing to implead third party where alleged injury was to plaintiff, not defendant).

In addition to failing to satisfy Rule 14, Count V should also be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim. Under Connecticut law, a party alleging negligence must plead and prove the following elements: (1) a duty owed to the plaintiff; (2) a breach of that duty by the defendant; (3) causation; and (4) actual injury. Estate of LePage v. Horne, 262 Conn. 116, 123, 809 A.2d 505, 510-11 (2002). Here, Martino has failed to allege at least two of these elements.

First, Martino does not allege that Clifford or Garfinkel owed a duty to Martino. (Am. Third-Party Compl. ¶¶ 39-41.) A claim for negligence should be dismissed where the

10

plaintiff fails to allege that the defendant owed the plaintiff a duty of care. See Hurlburt v. Baldyga, No. CV020079846S, 2003 Conn. Super LEXIS 2197, at *6-11 (Super. Ct. Aug. 6, 2003).

Second, Martino does not allege that he (as opposed to Crown Theatres) suffered any direct injury as a result of Clifford and Garfinkel's alleged misconduct. (Id. ¶ 43.) A plaintiff alleging negligence must show that the defendant's act or omission was both the cause in fact and the proximate cause of the plaintiff's injury. Paige v. St. Andrew's Roman Catholic Church Corp., 250 Conn. 14, 24-25, 734 A.2d 85, 90-91 (1999). Martino makes no such allegations. This omission is yet another reason to dismiss Count V.

## IV. IN THE ABSENCE OF A SUITABLE CLAIM FOR IMPLEADER, MARTINO'S UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

Counts VI and VII purport to assert claims for unjust enrichment against Clifford and Garfinkel for architectural services alleged to have been performed by Martino at their private residences. These claims should be dismissed for the same reason that they were originally dismissed by this Court: absent a suitable claim for impleader under Rule 14(a) for indemnity, contribution, or anything else, these otherwise unrelated claims may not be joined pursuant to Fed. R. Civ. P. 18 ("Rule 18").

The unjust enrichment counts, alone, clearly cannot justify impleader under Rule 14, as they do not relate in any way to Martino's liability to Crown Theatres. See Fed. R. Civ. P. 14(a); Bank of India, 239 F.3d at 437-38 (impleader proper only where third-party defendant is secondarily liable to defendant for plaintiff's claim). Rule 18 allows a defendant to join "as many claims, legal, equitable, or maritime, as the party has against an opposing party." But the ability to join claims pursuant to Rule 18 is contingent on a valid claim for impleader under Rule 14. See Schwab v. Erie Lackawanna Railroad Co., 438 F.2d 62, 69 (3d Cir. 1971); Wright,

Miller & Kane, Federal Practice and Procedure 2d § 1452 (1990). Therefore, if this Court

dismisses Martino's claims for indemnity, contribution and negligence, Counts VI and VII

should be dismissed as well. See Tietz v. Blackner, 157 F.R.D. 510, 512 (D. Utah 1994) (Rule

18 allows joinder of claims, but does not support joinder of parties); see also Ruling at 14 ("The

Court therefore concluded, because the related Martino claims for contribution and indemnity are

dismissed, that the unjust enrichment claims against Clifford and Garfinkel must also be

dismissed.").

JZG/32310/2/686152v1
07/09/04-HRT/

## CONCLUSION

For the foregoing reasons, Third-Party Defendants David Clifford and Glenn

Garfinkel's Motion to Dismiss Counts I, III, V, VI, and VII of the Amended Third-Party

Complaint should be granted, and such counts should be dismissed or alternatively stricken with

prejudice.

DAVID CLIFFORD AND GLENN GARFINKEL

By:_____

H. James Pickerstein (Bar No. Ct 05094)
Jodi Zils Gagné (Bar No. Ct 24376)
PEPE & HAZARD, LLP
30 Jelliff Lane
Southport, CT  06490
(203) 319-4000
(203) 259-0251 (fax)
hpickerstein@pepehazard.com
jgagne@pepehazard.com

and

Craig C. Martin (Bar No. Ct 12198)
Lawrence S. Schaner (Bar No. Ct 24756)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 222-9350
(312) 840-7776 (fax)
cmartin@jenner.com
lschaner@jenner.com

13

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served all counsel of record in

this action with a copy of **Third-Party Defendants David Clifford and Glenn Garfinkel's**

**Memorandum of Law in Support of their Motion to Dismiss Counts I, III, V, VI and VII of**

**the Amended Third-Party Complaint**, by mailing a copy of the same by United States Mail,

postage prepaid, to the following:

> Kerry M. Wisser
> Weinstein & Wisser, P.C.
> 29 South Main Street
> Suite 207
> West Hartford, CT  06107
>
> Mark Seiden
> Marisa Lanza
> Milber, Makris, Plousadis & Seiden, L.L.P.
> 3 Barker Ave.
> 6th Floor
> White Plains, NY  10601
>
> Robert M. Frost
> Zeldes, Needle & Cooper
> 1000 Lafayette Blvd.
> P.O. Box 1740
> Bridgeport, CT 06601-1740

Jodi Zils Gagné

Dated:  July 9, 2004

14

# EXHIBIT A

LEXSEE

**IVOR WOLFSON CORPORATION SA and TREMMER LIMITED, Plaintiffs, -against- LOCKE LIDDELL & SAPP LLP, PHILLIP WYLIE, REFCO SECURITIES, INC. and JONATHAN SLAVIN, Defendants.**

### 99 Civ. 11471 (AKH)

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2001 U.S. Dist. LEXIS 2513*

**March 12, 2001, Decided
March 13, 2001, Filed**

**DISPOSITION:** [*1] Defendants' motions for leave to file third-party complaints denied without prejudice.

**LexisNexis(R) Headnotes**

**COUNSEL:** For IVOR WOLFSON CORPORATION SA, TREMMER LIMITED, plaintiffs: John B. Harris, Stillman & Friedman, P.C., New York, NY.

For IVOR WOLFSON CORPORATION SA, TREMMER LIMITED, plaintiffs: Thomas N. O'Connor, Hale and Dorr L.L.P., Boston, MA.

For LOCKE LIDDELL & SAPP LLP, defendant: Michael C. Silberberg, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., NYC, NY.

For PHILLIP WYLIE, defendant: Adam D. Mitzner, RICHARDS SPEARS KIBBE & ORBE, New York, Ny.

For REFCO SECURITIES, INC., JONATHAN SLAVIN, defendants: Nick S. Williams, Mayer, Brown & Platt, New York, NY.

**JUDGES:** ALVIN K. HELLERSTEIN, United States District Judge.

**OPINIONBY:** ALVIN K. HELLERSTEIN

**OPINION:**

### MEMORANDUM AND ORDER REGULATING DISCOVERY AND DENYING

### WITHOUT PREJUDICE DEFENDANTS' MOTIONS FOR LEAVE TO FILE THIRD-PARTY COMPLAINTS

ALVIN K. HELLERSTEIN, U.S.D.J.:

I have three motions before me: (1) a motion by Defendants Locke Liddell & Sapp LLP and Phillip Wylie for leave to file a third-party complaint for contribution against EFG Reads Trust Company Ltd. and EFG Private Bank, Ltd.; (2) a similar motion by Defendants [*2] Refco Securities, Inc. and Jonathan Slavin; and (3) a joint request by Plaintiffs Ivor Wolfson Corporation SA and Tremmer Limited to determine various discovery issues. I deny both motions for leave to file a third-party complaint and I determine the discovery issues in the fashion set out later in my decision.

The complaint is extraordinarily long, unnecessarily detailed, and of confusing credibility. Plaintiff Ivor Wolfson Corporation SA ("Wolfson"), a Panamanian corporation operating in Jersey, Channel Islands (a popular situs for personal and commercial transactions near England's south shore), is alleged to have made a loan of $ 20 million to John Stearns, a citizen of Texas, repayable in one year in the amount of $ 40 million, evidenced by a promissory note in the latter amount, and secured by a $ 40 million bond issued and registered by the Federal Home Loan Bank. Plaintiff alleges that Stearns and his lawyer, Phillip Wylie, misrepresented the custodial status of the security, that there really was no security, and that plaintiff made the $ 20 million loan by wiring the money on March 15, 1999 into the trust bank

account of Wylie's law firm in Dallas, Texas, Locke Liddell & [*3] Sapp LLP. Plaintiff Wolfson alleges that the security was to be in the custody of Refco Securities, Inc., a New York corporation engaged in business as a securities broker-dealer, that Jonathan Slavin, a representative of Refco, made various representations concerning Refco's constructive possession of the collateral, and that Plaintiff relied on those representations in extending the loan. Plaintiff Wolfson also alleges, inconsistently, that it was aware, when it extended the loan to Stearns, that Refco was unable to act in the way that was represented, and that Plaintiff extended the loan knowing that not Refco, but a different company, Trans-Global Asset Management Group, Inc., purported to act as custodian of the collateral. It appears that Trans-Global was owned or managed by Stearns, that is, the borrower controlled the security that collateralized his loan obligation.

Upon these facts, detailed and multiplied by 61 paragraphs of allegations covering 16 pages of the complaint, Plaintiff Wolfson sues Wylie, Locke Liddell, Refco and Slavin.

Jurisdiction of the lawsuit is founded on diversity of citizenship, and venue is founded on the place of misrepresentations, New York City, [*4] and the provisions of the loan and collateral documents authorizing suits to be brought in the state or federal courts in New York. The theories of action are multiple, spread over eight counts: fraud, conspiracy to defraud, aiding and abetting fraud, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, breach of warranty against Wylie and Locke Liddell, and breach of warranty against Refco Securities and Slavin.

A second set of allegations is made on behalf of the second Plaintiff, Tremmer Limited. Tremmer is alleged to be a company organized in the British Virgin Islands, operating also in Jersey, Channel Islands. The Tremmer transaction involved an alleged six million dollar loan, wired into the trust account of Locke Liddell in May 1999, repayable in three weeks at eight million four hundred thousand dollars, supposedly secured initially by 84,000 shares of Trans-Global's preferred stock, but later by substituted collateral said to constitute nine million dollars face amount of notes of Barclays Bank Plc. Plaintiff Tremmer alleges that the loan was defaulted.

The Tremmer allegations are spread over 46 paragraphs of allegations, covering 12 pages of text. [*5] The level of prolixity is extraordinary.

Review of Complaint and Apparent Legal Insufficiencies

Before proceeding to describe the motions before me, I should pause to reflect on this unusual complaint.

We are presented, as I learn from other papers submitted by the parties, with trust accounts for a noted English family. According to the allegations of the complaint, the managers of those accounts purported to lend to someone in Texas, for undescribed purposes, at 100 per cent interest with regard to the Wolfson transaction, and at 680 per cent interest with regard to the Tremmer transaction, substantially unrepresented by their counsel and under conditions of complete carelessness with regard to collateral. The managers, in the complaint before me, plainly seek to cover up their own neglects (or worse) by blaming those who acted for the obligor for having made misrepresentations.

At this stage, I am required to accept the pleadings of a complaint as true. That does not mean that a district judge, consistent with his obligation to manage proceedings in the interest of justice and fairness and economy to litigants, see *Fed. R. Civ. P. 16*, must passively accept all that is [*6] stated. If it is plain from the face of a document that the prolixity of allegations is cover for legal insufficiencies, and that such prolixity is likely to lead to a multiplication of proceedings, the district judge's mandate pursuant to Rule 16 is to regulate such proceedings and provide a critical path for a swift, fair and efficient disposition of the merits.

I therefore proceed to note my grave reservations about the bulk of Plaintiffs' complaint, for it is not clear, midst its morass of detail, what precisely are Plaintiffs' causes of action and theories of recovery. My intention is to invite motions and briefing by the parties, in order to ascertain the merits of Plaintiffs' causes of action.

I note, first, that no claim is made against Stearns upon the loans to him; thus, the obligor has not been sued. Plaintiffs have the right to choose their defendants, but the omission explains much that is confused.

Plaintiffs seek to recover, not their losses aggregating $ 26 million, but the rich returns of the loans they claim they were induced to make. However, a claim for fraud generally covers losses, not contractual gains, especially where third parties are alleged to have made [*7] representations that caused a party to contract. A claim based on fraud should not be disguise for a claim based on a non-existent guaranty. The merits of the ad damnum should be tested by motion.

It is not clear from the allegations what, if any, demands were made upon Stearns, nor what disposition occurred of the funds that Plaintiffs wired into the Locke Liddell trust accounts, to the extent Plaintiffs know or have information on which to base a belief. Allegations of such are material to plead loss.

Plaintiffs also seek punitive damages. New York law is restrictive on the availability of punitive damages. Plaintiffs' right to such damages should be tested.

Theories of conspiracy, aiding and abetting, fraudulent concealment and negligent representation (counts II - V) are either not causes of action under New York law or are unnecessary restatements of the basic cause of action for fraudulent representation. Their presence in a pleading serves to confuse and multiply discovery unnecessarily. Their presence in the complaint should be tested by motion.

Plaintiffs' sixth cause of action seems to dress up a claim of misrepresentation by adverse counsel into a claim based on a non-existent [*8] fiduciary obligation. Wylie and Locke Liddell were not counsel for Plaintiffs; they represented Stearns. At argument, Plaintiffs conceded this lack of merit, and stated that they had previously stated their intention to withdraw the count. They should do so, promptly and formally.

Plaintiffs' seventh and eighth causes of action plead breaches of warranty, by Wylie and Locke Liddell and by Refco and Slavin, respectively. However, the contract in issue was supplanted when Refco withdrew and Trans-Global became the custodian of collateral. Although Wolfson alleges that it wired $ 20 million of funds before Refco withdrew, Plaintiff Wolfson's allegations show that the deal was not complete and the funds remained in the Locke Liddell trust account from whence they would have had to be returned to Plaintiff Wolfson if Wolfson so demanded. Hence, it would seem that there is little or no basis for a breach of warranty count, particularly against Refco and Slavin.

The observations I have made for the Wolfson transaction apply as well for the Tremmer allegations and causes of action.

Plaintiffs stated, at oral argument, an intention to amend the complaint and show claims for relief more clearly [*9] and with less redundancy. Accordingly, before we proceed further, I grant Plaintiffs leave to file an amended complaint by March 30, 2001. The parties then shall declare, by joint letter delivered to me by April 11, 2001, what if any motions Defendants intend to make and what briefing schedule they propose. I stress that the views I have stated above are impressions only, subject to revision and reformulation in response to briefs and representations made by the parties.

Defendants' Motions for Leave to File Third-Party Complaints

Defendants Wylie and Locke Liddell move to add the English managers of plaintiffs, EFG Reads Trust Company Ltd. and EFG Private Bank, as third-party defendants. Wylie and Locke Liddell wish to allege that

the EFG parties breached obligations or duties of care that they owed to Plaintiffs, or Plaintiffs' beneficiaries, as fiduciaries, and that they are therefore subject to an order of contribution to Wylie and Locke Liddell. Wylie and Locke Liddell argue that they only recently learned of the EFG parties' conduct in depositions taken in London. Defendants Refco and Slavin move for similar relief on substantially the same grounds.

*Rule 14(a), Fed. R.* **[*10]** *Civ. P.*, provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

Whether to grant a motion to file a third-party complaint pursuant to Rule 14(a) "is left to the sound discretion of the district court. . . . When exercising its discretion, the court must take care to avoid prejudice to the plaintiff or the third-party defendant." *National Westminster Bank PLC v. Empire Energy Management Systems, Inc.*, 1996 *U.S. Dist. LEXIS 18286*, *23-24, *No. 93 Civ. 5331, 1996 WL 709763* at *8 (S.D.N.Y. Dec. 10, 1996). See also *Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984)*. Although leave with respect to such motions generally is freely granted, in my discretion and on the law I deny both motions in this case without prejudice.

There already has been extensive discovery, and many witnesses have had their depositions taken. Adding new parties at this time will require a re-doing of the proceedings **[*11]** already had, and thus cause a large waste of expense and time.

The relations of the third parties also will require me to become involved in many extraneous issues. Jurisdiction of this court over English subjects will have to be tested. The minimal and tenuous nature of the EFG parties' contacts with this forum suggest that, if impleaded, the EFG parties would move to dismiss on jurisdictional grounds, further delaying proceedings and compounding the burdens on this Court, and quite possibly resulting in dismissal for lack of jurisdiction under *N.Y. C.P.L.R. § 302*. Furthermore, the relationships and duties under English law of the EFG parties to their clients will, of necessity, come in for exacting scrutiny. It is not necessarily fitting for a federal judge in New York to pass judgment on the relationships of fiduciaries under English law, except if those issues are tendered in a case fairly within this court's usual jurisdiction.

Most significantly, Defendants already have asserted as an affirmative defense the comparative negligence of Plaintiffs' agent, an employee of the EFG parties. Defendants also have denied Plaintiffs' allegations of reasonable reliance. Because the actions [*12] and state of mind of an agent are imputed to the principal, there is no need for Defendants to bring a third-party action seeking contribution by Plaintiffs' agent for its "share" of Plaintiffs' damages. If Defendants win on their denials and defenses, there is no need to pursue the same issues in a third-party complaint. If Defendants lose on their denials and defenses, they may not have an effective third-party case. In such situations, the Court may properly exercise its discretion to deny leave to file a third-party complaint. See, e.g. *Gabriel Capital, L.P. v. NatWest Finance, Inc., 137 F. Supp. 2d 251, 2000 U.S. Dist. LEXIS 17458,* *31, *2000 WL 1774607* at *9-10 (S.D.N.Y. 2000) (concluding that "no authority has been found or cited permitting a contribution claim against a plaintiff's agent where that claim is identical to defendant's affirmative defense" and dismissing third-party complaint); *Ruszkowski v. Sears, Roebuck & Co., 188 A.D.2d 967, 592 N.Y.S.2d 115* (3d Dep't 1992) ("where, as here, a defendant asserts as an affirmative defense that any damages awarded to plaintiffs should be reduced due to the injured plaintiff's culpable conduct, that defendant cannot also maintain [*13] a third-party action against the injured plaintiff's employer seeking to impute to the employer the very same negligence upon which the culpable conduct defense is based."). Accordingly, at this time, a third-party action against the agent or the agent's employer is not appropriate.

The issues of the lawsuit before me must test the conduct of Wylie, Locke Liddell, Refco and Slavin, in terms of any duties they took on towards Wolfson and Tremmer, and whether or not they breached any such duties. The issues need not be complicated; we need to know what they said and wrote, to whom, and at what times, and whether or not such statements were material and were relied on. If Defendants are found not liable, that will be the end of it as far as third parties are concerned. If Defendants are found liable, a cause of action for contribution, if any exists, will then accrue and can then be brought in the appropriate jurisdiction. Denial of the motions at this stage will not cause any prejudice.

For the reasons stated above and on the record at the March 9, 2001 argument, the motions to file a third-party complaint are denied without prejudice.

The Discovery Issues

Plaintiffs seek to [*14] question a Locke Liddell partner, Cynthia Bast, Esq., on the substance of information that she had learned from another client

about John Stearns, and which she had passed on to Phillip Wylie. The inquiry is permissible. The allegations of the complaint show a fraud on the part of Stearns and allege Wylie's participation in that fraud. If Wylie had negative information about Stearns of some measure of reliability, he would have had to take that into consideration in his representation and in the context of what statements he could permissibly make to Plaintiffs' representatives.

Plaintiffs' request to learn the identities of Locke Liddell's clients is denied as irrelevant. The argument about motivation is too tangential.

Defendants seek to examine into conversations and written communications between Richard J.S. Prosser, plaintiffs' business representative, and S. Stephen Hatfield, Esq., a partner of Akin Gump Strauss Hauer & Feld in London, attorneys for Plaintiff at or around the time of the negotiations in New York between Prosser, Wylie and Stearns. If and to the extent that Plaintiffs intend to present at trial any conversations with Akin Gump lawyers at or around those dates, [*15] Defendants may inquire. If Plaintiffs assert privilege, Plaintiffs will be barred from presenting evidence of conversations or written communications between Prosser and Plaintiffs' lawyers. Furthermore, I would be prepared to permit Defendants to present to the jury evidence that Plaintiffs communicated with their lawyers on such dates (without inquiring into the content of such communications), to state the fact that Plaintiffs asserted privilege as to those communications, and to argue what inferences they believe the jury should draw from the evidence.

Defendants' request for discovery of the time sheets of Akin Gump, a non-party, is denied as redundant of discovery already obtained from party witnesses.

I caution the parties that proceedings under my Chambers Rule 2E are intended to allow the parties to receive prompt and timely responses to discrete discovery issues. The parties abuse this privilege by burdening me with extensive and unnecessary argumentation of the underlying merits. Rule 2E is not intended to promote premature trial briefs, or supplant formal Rule 37 motions. There will be time and place to argue the merits of the case when the merits are reached.

SO ORDERED. [*16]

Dated: New York, New York

March 12, 2001

ALVIN K. HELLERSTEIN

United States District Judge

3 of 3 DOCUMENTS

**HUGH P. CONNELL and SUSAN H. CONNELL, Plaintiffs, -against- HENRY WALTER WEISS, Defendant and Third-Party Plaintiff, -against- BREED, ABBOTT & MORGAN, Third-Party Defendant**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1985 U.S. Dist. LEXIS 21638*

**March 19, 1985**

**LexisNexis(R) Headnotes**

**OPINIONBY:** [*1]

HAIGHT

**OPINION:**

MEMORANDUM OPINION

AND ORDER

HAIGHT, District Judge:

This action is before the Court on defendant Henry Walter Weiss' ("Weiss") motion to dismiss the complaint by plaintiffs Hugh P. Connell and Susan H. Connell (the "Connells"), pursuant to *Fed.R.Civ.P. 12(b)(6)*, and on third-party defendant Breed, Abbott & Morgan's ("Breed Abbott") motion to dismiss third-party plaintiff Weiss' complaint.

In deciding a motion to dismiss a court must assume the truth of the factual allegations contained in the complaint. *Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)* (per curiam). Further, a motion to dismiss "must be denied unless it is clear that no reasonable interpretation of the facts can support the plaintiff's claim for relief." *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery, 72 F.R.D. 556, 558 (S.D.N.Y. 1976); Conley v. Gibson, 355 U.S. 41, 45-46,*

*S.Ct. 99, 2 L.Ed.2d 80 (1957); Clay v. Martin, 509 F.2d 109, 112 (2d Cir. 1975);* see also *Bd. of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assoc., Inc., 38 N.Y.2d 397, 380 N.Y.S.2d 635, 642 (1975)* (on motion to dismiss the court must [*2] assume the truth of the facts pleaded and every favorable inference).

Plaintiffs' complaint alleges that in May, 1983, the Connells entered into a contract with R. Lee Hulko ("Hulko") to sell to Hulko real property the Connells owned in Bedfor, New York. Hulko made a down payment on the contract. Attorney Weiss represented Hulko in the transaction. The closing of the contract between Hulko and the Connells was scheduled for the afternoon of June 6, 1983.

According to the complaint, some time before June 6, 1983 Weiss informed Hulko, his client, that the closing had been adjourned. The Connells had not agreed to such an adjournment.

On the morning of the June 6, 1983, Weiss telephoned Breed Abbott, counsel for the Connells, and announced that Hulko would not proceed with the closing that day, and that he wanted to "get out" of the contract. (Connell Complaint [P] 5). The Connells appeared at the appointed time and place for the contract closing. Hulko did not appear, allegedly on the strength of Weiss' misrepresentation that the closing had been

adjourned. The property was never sold to Hulko. The Connells retained Hulko's down payment.

On July 14, 1983, Weiss filed a notice of [*3] pendency pursuant to *N.Y. CPLR § 6501* in the office of the Clerk of the County of Westchester, New York. On the same day a corresponding action was brought for repudiation and anticipatory breach of the contract by Hulko against the Connells in state court. n1 At the time the notice of pendency was filed and the suit by Hulko was initiated, Weiss allegedly was aware that the Connells had not breached the contract for sale of the Bedford property and that the failure to close on the property was the fault of Weiss himself of his client, Hulko.

> n1 The case was removed to the District Court for the Southern District Court for the Southern District of New York in October, 1983. Hulko v. Connell, 83 Civ. 7760 (CSH).

The Connells sold the Bedford property to another purchaser on December 15, 1983. By Order of this Court dated January 26, 1984, the notice of pendency filed by Weiss was cancelled for technical deficiencies. n2

> n2 The order cancelled the notice of pendency for failure to serve notice on the Connells within 30 days after the filing in accordance with *N.Y. CPLR § 6512*.

The Connells state two causes of action against Weiss. First, they claim that Weiss tortiously [*4] interfered with the contract of sale between Hulko and Connells. Second, the Connells claim that Weiss' filing of the notice of pendency was an abuse of process.

Weiss, in turn, brings a third-party complaint against Breed Abbott for indemnification or contribution in the event that the Connells recover a judgment against Weiss. Weiss alleges that any misrepresentations as to Hulko's plans made to the Connells were the result of the culpable conduct of Breed Abbott.

I.

Defendant's Motion to Dismiss

A. Tortious Interference

The Connells alleged that Weiss "wrongfully, knowingly, intentionally, maliciously, and without reasonable justification or excuse" interfered with the contract for sale of the Bedford property. (Connell Compl. [P]). Under New York law, the elements of a

cause of action for tortious interference with contractual relations are:

(1) the existence of a valid contract;

(2) the defendant's knowledge of the contract;

(3) the defendant's intentional procuring of the breach of that contract, and

(4) damages for plaintiff.
*Israel v. Wood Dolson Co., Inc., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 5 (1956); Robbins v. Ogden Corp., 490 F.Supp. 801,* [*5] *810 (S.D.N.Y. 1980)*.

Weiss concedes that there was a valid contract between Hulko and the Connells, and that he was aware of the contract. He also assumes, for the purpose of this motion, that the Connells suffered damages. The element at issue is Weiss' intentional procurement of the breach of the contract.

It is well-established that a cause of action for interference with an existing contract requires no malicious motive. Conduct taken by defendant with knowledge of plaintiff's rights and with the intention of interfering with those rights is sufficient to support a cause of action for tortious interference; the malicious motive is inferred from the acts taken with knowledge of the contract. *Campbell v. Gates, 236 N.Y. 457, 141 N.E. 914 (1923); Kroger v. Weber, 116 Misc.2d 726, 455 N.Y.S.2d 935, 936 (1982)*. It is only in regard to claims for interference with precontractual negotiations that an action will lie "[o]nly if the defendant's sole purpose is to damage the plaintiff...." *Robbins, 490 F.Supp. at 811*. However, "[w]here a contract exists, intentional interference by the defendant is actionable even in the absence of malice...." Id.

The facts alleged [*6] in the complaint support the inference that Weiss acted intentionally to procure the breach of the contract: it alleges that Weiss misrepresented to the Connells that Hulko was unwilling to complete the closing, and that he misrepresented to Hulko that the closing had been postponed. (Connell Compl. [P][P] 5-8). It is claimed that these alleged misrepresentations directly resulted in the non-occurrence of the June 6th closing. (Connell Compl. [P] 9). Because a reasonable interpretation of the facts alleged in the complaint supports the contention that Weiss intentionally interfered with the contract, and because Weiss concedes the existence and his knowledge of the contract and damage to the Connells, the complaint states a cause of action for tortious interference. Israel, supra, 151 N.Y.S.2d at 5.

The fact that Weiss was acting as an attorney when he allegedly interfered with the contract does not defeat the cause of action. "It cannot be said, as a matter of law,

that the alleged torts of an attorney are privileged or are otherwise insulated from suit. An attorney may be held liable to third parties if he or she has been 'guilty of fraud, or collusion, or of a malicious [*7] or tortious act.'" *Kroger v. Weber, 116 Misc.2d 726, 455 N.Y.S.2d 935, 936 (1982)* (quoting *Gifford v. Harley, 62 A.D.2d 5, 7, 404 N.Y.S.2d 405 (1978)*. The Connells have stated a cause of action for an intentional tort. I cannot say at this stated a cause of action for an intentional tort. I cannot say at this stage that plaintiffs will succeed, but Weiss does not enjoy any immunity from suit merely because he is an attorney. "[A]dmission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others." *Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1080 (2d Cir. 1977)*, cert. denied, *434 U.S. 1035 (1978)*. n3

> n3 Contrary to defendant's assertion, the outstanding breach-of-contract action between Hulko and the Connells, see note 1 supra, does not preclude this action from going forward. Defendant argues that this case must be delayed until "certain indispensible elements" of the Connells" claim have been proven in the breach-of-contract action. However, that some of the same factual issues to be litigated in this action are at issue in another does not require this case to be held in abeyance. Phillippson v. Hexalon Real Estate, Inc., N.Y.L.J., Aug. 31, 1984, at 7, col. 6 (N.Y.Sup.Ct.), cited by defendant, is inappote, Any efficiencies in case management which may have resulted from that court's stay or a tort claim against one co-defendant would not be realized in this case by waiting on the outcome of Hulko's action against the Connells. At most the factual congruency of the two cases suggests that consolidation might be appropriate. [*8]

B. Abuse of Process

Under New York law the elements of the tort of abuse of process are:

(1) the procurement of regularly issued process, civil or criminal, which compels the performance or forbearance of some act:

(2) the person activating the process must be moved by a purpose to do harm without economic or social excuse or justification; and

(3) the person activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process. *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers*

*Assoc., Inc., 38 Society Magazine, Inc., 498 F.Supp. 401 (S.D.N.Y. 1980)*.

The improper filing of a notice of pendency can support an action for abuse of process. *Chappelle v. Gross, 26 A.D.2d 340, 274 N.Y.S.2d 555 (1966)*. However, it has been stated in dictum that "a party, unless acting maliciously, cannot be liable for filing (as opposed to continuing) a notice of pendency, an act permitted by statute...." *Chain Locations of America, Inc. v. T.I.M.E.-D.C., 99 A.D.2d 111, 472 N.Y.S.2d 462, 464 (1984)* (citations omitted) (emphasis added).

Plaintiffs' [*9] complaint alleges that Weiss, aware that the Connells were "ready, willing and able to close" the contract as scheduled, filed the notice of pendency and initiated the suit against the Connells for breach of contract improperly. n4 (Connell Compl. [P][P] 12-13). Assuming as I must "the truth of the facts pleaded along with every favorable inference," Board of Education of Farmingdale, supra at 642, it is evident that the complaint states a cause of action for abuse of process. Weiss allegedly filed the notice of pendency without a valid claim against the Connells, and in any case without a claim which would support a lis pendens under *N.Y. CPLR § 6501*, in order to impel the Connells to return Hulko's down payment. If Plaintiffs' allegations can be proved, then Weiss acted without economic or social excuse or justification in order to gain a collateral advantage over the Connells outside the legitimate ends of the notice of pendency. Therefore, the claim for abuse of process may not be dismissed. n5

> n4 Hulko's action for breach of contract against the Connells could not support a filing of a notice of pendency. That suit is not for specific performance of the contract, but is for money damages only. "[T]he notice of pendency is not available where plaintiff claims no right, title or interest in the property itself. If a complaint asserts in the property itself. If a complaint forfeits his right to use the notice of pendency." *Long Island City Savings and Loan Assoc. v. Gottlieb, 90 A.D.2d 766, 455 N.Y.S.2d 300, 300-301 (1982)*, aff'd in relevant part, *58 N.Y.2d 931, 460 N.Y.S.2d 513 (1983)*. [*10]

> n5 Weiss is no more insulated by his status as an attorney from liability for abuse of process than he is for tortious interference with a contract. See, e.g., *Silberstein v. Presbyterian Hospital, 95 A.D.2d 773, 96 A.D.2d 1096, 463 N.Y.S.2d 254, 256 (1983)* "(an attorney is liable if he causes

Case 3:02-cv-02272-AVC    Document 174    Filed 07/09/2004    Page 24 of 29

Page 4
1985 U.S. Dist. LEXIS 21638, *

irregular process to be issued which occasions loss to the party against whom it is enforced").

II.

Third-Party Defendant's Motion to Dismiss

Weiss alleges in his third-party complaint that if "any misrepresentations were made to [the Connells] concerning Hulko's plans to proceed or not to proceed with purchasing the property or whether or not he would appear for the closing, ...such misrepresentations were the negligent or intentional misrepresentations of third-party defendant Breed Abbott...." (Third-Party Compl. [P] 5). Weiss seeks indemnification or contribution against Breed Abbott for any damages recovered by the Connells in the primary action. (Third-Party Compl. [P] 7).

The defendant in an action may implead another party who may be liable for him for all or part of the plaintiff's claim against him, pursuant to *Fed.R.Civ.P. 14*, "only where defendant can [*11] show that if he is found liable to the plaintiff, then the third party will be liable to [defendant]." *Index Fund, Inc. v. Hagopian, 417 F.Supp. 738, 743 (S.D.N.Y. 1976)*. There must be a substantive basis for defendant's claim against the third party. *Id. at 744*.

Weiss alleges no facts to support his claim for indemnification. He asserts no contractual or other relationship between Weiss and Breed Abbott which would make Weiss legally responsible for the alleged negligent or intentional misrepresentations made by Breed Scott to the Connells. See *Margolin v. New York Life Ins. Co., 32 N.Y.2d 149, 344 N.Y.S.2d 336, 338-339 (1973); Malette v. Coblaws, Inc., 61 A.D.2d 1054, 402 N.Y.S.2d 474, 477 (1978)*.

It appears that Weiss' claim for contribution must also fail. In his answer to the Connells' complaint Weiss

asserted as a defense that if "plaintiff were injured or damages....then such injury or damage was caused or was contributed to by carelessness, negligence, want of care, or other culpable conduct on the part of plaintiffs or their agents or other representatives, including the attorneys who represented them in connection with the sale or the property." (Weiss [*12] Ans. [P] 10). As a result any recovery by the Connells will be reduced by the amount of damages attributable to the alleged misconduct of Breed Abbott. Under the New York comparative negligence doctrine any culpable conduct by Breed Abbott, acting as the Connells' agent, is imputable to the Connells. Thus any recovery by the Connells against Weiss would be subject to an appropriate reduction for their agent's negligence. There is, therefore, no practical necessity for Weiss to implead Breed Abbott. See *Hercules Chemical Co., Inc. v. North Star Reinsurance Corp., 72 A.D.2d 538, 421 N.Y.S.2d 67 (1979); Eurocom, S.A. v. Mahoney, Cohen & Co., 522 F.Supp. 1179 (S.D.N.Y. 1981)*.

III.

Plaintiffs' Rule II Claim

I decline to assess counsel fees, pursuant to *Fed.R.Civ.P. 11*, against Weiss as requested by plaintiffs. While Weiss' arguments in support of his motion to dismiss have not prevailed, it cannot be said that they were so completely unwarranted "by existing law" as to make Rule II sanctions appropriate.

IV.

Defendant's motion to dismiss is denied. Third-party defendant's motion to dismiss is granted. Plaintiff's prayer for attorney's fees under Rule 11 is [*13] denied.

It is SO ORDERED.

LEXSEE 2003 CONN. SUPER LEXIS 2197

**Michael S. Hurlburt, PPA Michael A. Hurlburt v. Stanley Baldyga**

**CV020079846S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF TOLLAND, AT ROCKVILLE**

*2003 Conn. Super. LEXIS 2197*

**August 6, 2003, Decided**
**August 6, 2003, Filed**

**NOTICE: [\*1]** THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**LexisNexis(R) Headnotes**

**JUDGES:** Jane S. Scholl, J.

**OPINIONBY:** Jane S. Scholl

**OPINION:** *MEMORANDUM OF DECISION RE MOTION TO STRIKE (103) AND PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO STRIKE (105)*

*Introduction*

This is an action brought by a minor plaintiff, Michael Hurlburt, by and through his father, against Stanley Baldyga. The complaint in this matter is brought in two counts, in the first count the plaintiff claims negligence and in the second count the plaintiff claims negligent supervision.

The complaint alleges that Baldyga lives next door to the Hurlburt property. The plaintiff alleges that Joseph Ivanisin and his brother and mother lived at the Baldyga property where the mother cohabitated with Baldyga. It is further alleged that at least twice Baldyga instructed and supervised the Ivanisin children on the use and procedure for firing paint ball guns which were kept on the Baldyga property. On October 17, 2000 the plaintiff engaged in target shooting with an air rifle behind the Baldyga and Hurlburt properties. He was joined by three other [\*2] minors including Joseph Ivanisin, age thirteen at the time, and they engaged in target shooting in the woods behind the properties. Ivanisin used a Crossman Powermaster .177 caliber air rifle which was kept in the house on Baldyga's property and with his knowledge. The plaintiff decided to leave the other boys to look for squirrels and birds. Unbeknownst to him, the other boys followed him and began shooting. The plaintiff fled, but was later detected by Joseph Ivanisin who thereafter borrowed a Powermaster Air Rifle as well as pellets from another boy, Peter Fischer. Ivanisin pumped up the rifle to create as much pressure and power as possible and then discharged a pellet which struck the plaintiff in the right eye resulting in the loss of his eye.

The plaintiff claims that his injuries are due to the carelessness and negligence of Baldyga in that he knew or should have known that the Crossman rifle was accessible to the Ivanisins; he failed to determine whether the Ivanisins were familiar with the operation of the rifle; he failed to determine if they had adequate and proper training; he permitted the use of the Crossman rifle by the Ivanisins when he knew or should have known they [\*3] would use it in an unsafe manner; and he failed to exercise reasonable care in controlling the Ivanisins. In the second count, the plaintiff claims his injuries were due to the failure of Baldyga to properly supervise the two Ivanisin children who lived in his home in that they were part of his household; he undertook to train them in the use of deadly weapons; he failed to supervise the children who were left unattended with access to an air rifle in the Baldyga home; he entrusted the Ivanisins with the Crossman rifle, a dangerous instrument, without properly instructing or supervising them; he failed to restrain and supervise the

Ivanisin children although he knew or should have known they had violent tempers and a propensity for violence; and the defendant failed to exercise reasonable and proper control over the use of the Crossman rifle.

The defendant has moved to strike both counts of the complaint as well as the second paragraph of the claim for relief which seeks exemplary damages. The defendant claims that count one lacks sufficient factual allegations to support a legal conclusion that the defendant's conduct constituted negligence, in particular, the allegations fail to [*4] support a claim of duty and causation of the plaintiff's injuries. As to count two, the defendant claims that the plaintiff has failed to allege the existence of a special relationship necessary to support a negligent supervision cause of action; in the alternative, insufficient facts are alleged to support the legal conclusion that the defendant is liable for the actions of children for whom he is neither parent or guardian; the facts do not satisfy the element of causation; the allegations do not set forth a cause of action; and the legal theories alleged in count two are essentially the same as alleged in the first count. Lastly, the defendant moves to strike the second paragraph of the prayer for relief seeking punitive damages since such damages can only be awarded when the evidence shows a reckless indifference to the rights of others or an intentional or wanton violation of those rights.

### Discussion

" 'The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.' (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997)*; [*5] see Practice Book § 10-39. 'A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . Thus, if facts provable in the complaint would support a cause of action, the motion to strike must be denied.' (Citations omitted; internal quotation marks omitted.) *Vacco v. Microsoft Corp., 260 Conn. 59, 64-65, 793 A.2d 1048 (2002)*. 'A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged.' *Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992)*." *Fort Trumbull Conservancy, LLC v. Alves, 262 Conn. 480, 498, 815 A.2d 1188 (2003)*. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. *King v. Board of Education, 195 Conn. 90, 93, 486 A.2d 1111 (1985)*." *Gordon v. Bridgeport Housing Authority, 208*

*Conn. 161, 170, 544 A.2d 1185 (1988)*. [*6] Thus the court will not consider facts beyond those stated in the complaint in reviewing the motion to strike. n1

> n1 In light of this, the court will not consider the additional facts alleged in the plaintiff's objection, in particular, the references to the deposition testimony of the defendant and Debra Ivanisin.

The essence of the defendant's motion to strike is that the plaintiff has failed to allege a cause of action against the defendant because the plaintiff has simply alleged that the Ivanisins resided in his house and that he had in his a home a Crossman air rifle and paint ball guns which the Ivanisins used. Yet the defendant was not the Ivanisins' parent or guardian and the plaintiff was not shot with the Crossman rifle but with a Powermaster air rifle which was borrowed from another boy.

"In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury. *RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994)*. [*7] " *LaFlamme v. Dallessio, 261 Conn. 247, 251, 802 A.2d 63 (2002)*. The defendant claims that the first count of the complaint fails to allege two essential elements of a negligence claim: duty and causation.

As to duty, the court must determine whether the defendant was under a duty to prevent the alleged harm. See, *Stokes v. Lyddy, 75 Conn.App. 252, 257, 815 A.2d 263 (2003)*. " 'Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25-7.' *Jaworski v. Kiernan, 241 Conn. 399, 405, 696 A.2d 332 (1997)*; *RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 385, 650 A.2d 153 (1994)*. (Internal quotation marks omitted.) 'The determination of whether a duty exists between individuals is a question of law. *Petriello v. Kalman, 215 Conn. 377, 382, 576 A.2d 474 (1990)*; *Shore v. Stonington, 187 Conn. 147, 151, 444 A.2d 1379 (1982)*. [*8] Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty. *Petriello v. Kalman, supra*, 382-83 . . . We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered

was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. [*RK Constructors, Inc. v. Fusco Corp., supra*] 386-87.' (Internal quotation marks omitted.) *Zamstein v. Marvasti, 240 Conn. 549, 558, 692 A.2d 781 (1997).* 'Our first step in an analysis of whether a duty exists and the extent of the defendant[s'] duty, therefore, is to determine the foreseeability of the plaintiff[s'] injury . . .' *Jaworski v. Kiernan, supra, 241 Conn. 406*." *Lodge v. Arett Sales Corporation, 246 Conn. 563, 571-72, 717 A.2d 215 (1998). [*9]* " 'It is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty.' (Citations omitted; internal quotation marks omitted.) *Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 566, 707 A.2d 15 (1998)* . . . We sometimes refer to the scope of that duty as the requisite standard of care. See, e.g., *Santopietro v. New Haven, 239 Conn. 207, 226, 228-29, 682 A.2d 106 (1996)*; *Shore v. Stonington, 187 Conn. 147, 151, 444 A.2d 1379 (1982)*; see also 57A Am.Jur.2d, *Negligence § 85* (1989). 'Our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' (Internal quotation marks omitted.) *Gomes v. Commercial Union Ins. Co., 258 Conn. 603, 615; [*10] Jaworski v. Kiernan, 241 Conn. 399, 405, 696 A.2d 332 (1997)*; see also 57A Am.Jur.2d 216, *supra*, § 154 ('ordinary care has reference to probabilities of danger rather than possibilities of peril'). 'The idea of risk in this context necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may possibly follow.' W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 31, p. 170; see also *Schiavone v. Falango, 149 Conn. 293, 298, 179 A.2d 622 (1962)* ('reasonable care does not require that one must guard against eventualities which, at best, are too remote to be reasonably foreseeable'). Accordingly, the fact finder must consider whether the defendant knew, or should have known, that the situation at hand 'would obviously and naturally, even though not necessarily, expose [the plaintiff] to probable injury unless preventive measures were taken.' *Bonczkiewicz v. Merberg Wrecking Corp., 148 Conn. 573, 579, 172 A.2d 917 (1961)*." *LePage v. Horne, 262 Conn. 116, 123-24, 809 A.2d 505 (2002).*

Here the plaintiff has not alleged facts to show that the defendant [*11] breached any duty he had to the plaintiff. The plaintiff alleges only that the Ivanisins resided in the defendant's home, that there was in the dwelling a Crossman rifle that the Ivanisins used, and that the defendant had instructed the Ivanisins on how to use a paint ball gun. There are no allegations that on the day of the incident that the defendant gave the Ivanisins the air rifle to use or that he even knew they were using it that day, or that he was supervising their use of the gun on that occasion or even present when they were using it, or that he had any obligation to control the Ivanisins who are not alleged to be his children or his wards. Based on the bare allegations of the complaint that the Ivanisins resided in the defendant's home; that in the home there was a Crossman air rifle; and that the defendant had instructed the Ivanisins in the past regarding the use of a paint ball gun, it cannot be found that the defendant should have foreseen that Joseph Ivanisin would chase the plaintiff, then borrow Fischer's Powermaster air rifle and shoot the plaintiff in the eye. In the absence of the foreseeability of such an event the defendant owed no duty to the plaintiff.

The [*12] plaintiff also cites *Irons v. Coles, 46 Conn.Sup. 1, 734 A.2d 1052 (1998)*, 25 Conn. L. Rptr. 59, as support for his claims against the defendant. However in *Irons* the court found a duty on the part of the defendant to the plaintiff based on the defendant's control of the premises recognized in *Stewart v. Federated Department Stores, Inc., 234 Conn. 597, 662 A.2d 753 (1995)*, and not of the person who caused the injury. In *Stewart* the court upheld a jury verdict which found the defendant liable for the murder of the plaintiff's decedent in the defendant's parking garage where previous robberies as well as other violent crimes had occurred in the garage and the defendant had been advised by its security manager of the need for increased security in the garage. Here the plaintiff alleges only that the defendant owned the property where the Ivanisins lived and that there was kept on the property a Crossman rifle and paint ball guns with the defendant's knowledge. In fact, the complaint reveals that the incident occurred on the Fischer's property while Joseph Ivanisin was using the minor Fischer's rifle. This does not meet the test of *Stewart* [*13] .

The plaintiff also cites *Restatement (Second), Torts 2 § 318* (1965), quoted in *Irons*. "The text of that section provides: 'If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason

to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control.' " *Irons v. Coles, 46 Conn.Sup. 1, 7, 734 A.2d 1052 (1998).* Even under this standard the complaint does not state a cause of action. There is no allegation that the defendant entrusted Joseph Ivanisin with the air rifle with which he shot the minor plaintiff, in fact the complaint alleges it was given to him by another boy. The complaint also does not allege that defendant was present when the shooting occurred.

As to causation, "a plaintiff must establish that the defendant's conduct 'legally caused' the [*14] injuries, that is, that the conduct both caused the injury in fact and proximately caused the injury. *Paige v. St. Andrew's Roman Catholic Church Corp., 250 Conn. 14, 24-25, 734 A.2d 85 (1999); Wu v. Fairfield, 204 Conn. 435, 438, 528 A.2d 364 (1987).* 'The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct.' *Kowal v. Hofher, supra, 181 Conn. 355, 359.* The test of proximate cause is whether the defendant's conduct is a 'substantial factor' in producing the plaintiff's injury. The substantial factor test asks, 'whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' *Merhi v. Becker, 164 Conn. 516, 521, 325 A.2d 270 (1973).* This requirement 'tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty . . . Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations [*15] for obscure consequences or inconsequential causes . . . In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice . . . 'The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence . . . In applying this test, we look from the injury to the negligent act complained of for the necessary causal connection.' " *Craig v. Driscoll, 262 Conn. 312, 330-31, 813 A.2d 1003 (2003).*

The facts alleged in the complaint here do not support a claim that the defendant's conduct was a cause of the plaintiff's injuries. It is clear that any negligence as alleged in the complaint by the defendant was not the proximate cause of the plaintiff's injury. It is not alleged that the defendant owned or controlled the gun with which the plaintiff was shot or that he gave it to Joseph Ivanisin to use or that he was there when he used it. The complaint alleges simply [*16] that the Ivanisins resided in the defendant's home; that in the home there was a Crossman air rifle; and that the defendant had instructed the Ivanisins in the past regarding the use of a paint ball gun. There is no causal connection alleged between these actions and the plaintiff's injuries.

Therefore the motion to strike the First Count is granted.

As to the second count alleging negligent supervision, as the Court stated in *Fraser v. United States, 236 Conn. 625, 632, 674 A.2d 811 (1996)*, "existing Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. Our point of departure has been that 'absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another. See 2 Restatement (Second), Torts § 315 (1965); F. Harper, F. James & O. Gray, The Law of Torts (2d Ed. 1986) § 18.7; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 56.' *Kaminski v. Fairfield, 216 Conn. 29, 33-34, 578 A.2d 1048 (1990)*; see also *Dennison v. Klotz, 12 Conn.App. 570, 578-79, 532 A.2d 1311 (1987)*, cert. denied, *206 Conn. 803, 535 A.2d 1317 (1988)*. [*17] "

The plaintiff has cited to no cases which have found that simply because an adult resides in the same house as a child, without more, that adult is responsible for the torts of the child or has a duty to control the child such that he is restrained from harming others. The cases on which the plaintiff relies for his argument that the court should impose a duty on the Defendant for the behavior of the members of his household are clearly distinguishable. Those cases relate to the interpretation of policies of insurance which cover family members or to the rights of custody and visitation regarding a minor child. The fact that, as the plaintiff states, in modern family life various people not necessarily related by blood or marriage live under one roof as a single household, does not suggest, in the absence of legislative mandate or judicial precedent, that the court should impose liability for the actions of a minor member of the household on a unrelated adult who takes on a parenting role in relation to the minor child or simply allows the child to reside in his home with a parent. In any event "at common law, the torts of children do not impose vicarious liability upon parents qua [*18] parents, although parental liability may be created by statute; see *General Statutes 52-572*; or by independently negligent behavior on the part of parents. *LaBonte v. Federal Mutual Ins. Co., 159 Conn. 252, 256, 268 A.2d 663 (1970)*." (Footnote omitted.) *Kaminski v. Fairfield, 216 Conn. 29, 34, 578 A.2d 1048 (1990).* Although Connecticut trial courts have recognized a cause of action for negligent supervision of a minor child by the child's parents and, by extension, a claim for reckless

supervision, *Doe v. Favreau*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 02393019 (March 7, 2003, Thim, J.), 34 Conn. L. Rptr. 276, these principles have not been extended so as to impose liability on persons who are not the child's parent or guardian.

Therefore the Motion to Strike the Second is also granted.

Since the court has granted the motion to strike as to both counts of the complaint the court need not address the motion to strike addressed to the prayer for relief.

### Conclusion

The defendant's Motion to Strike is granted and the plaintiff's Objection to defendant's Motion to Strike is overruled. **[*19]**

Jane S. Scholl, J.