UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
CROWN THEATRES, L.P.,        Case No. 3: 02 CV 2272 (AVC)
                                      Jury Trial Demanded
               Plaintiff,

   -against-

MILTON L. DALY, DALY TAYLOR-LEIGH,
INC., JAMES C. CELLA, G.U.S. DEVELOPMENT,
INC., JAMES T. MARTINO, JAMES THOMAS
MARTINO, ARCHITECT, P.C. and
RCD HUDSON, LLC,

                Defendants.
---------------------------------------------------------------X
JAMES T. MARTINO and JAMES THOMAS
MARTINO, ARCHITECT, P.C.

               Third-Party Plaintiffs,

   - against –

B.B. CONSTRUCTION CONSULTANTS,
LTD., DAVID CLIFFORD,
and GLENN GARFINKEL,

               Third-Party Defendants
---------------------------------------------------------------X

## AMENDED THIRD-PARTY COMPLAINT

1.      Defendants/Third-Party Plaintiffs JAMES T. MARTINO and JAMES THOMAS MARTINO ARCHITECTS, P.C. ("The Martino Defendants") brings this action against Defendants B.B. CONSTRUCTION CONSULTANTS, LTD. ("B.B. Construction"), DAVID CLIFFORD ("Clifford") and GLENN GARFINKEL ("Garfinkel") (collectively "Third-Party Defendants") for the full amount of any verdict and judgment, or a proportionate share thereof, that Plaintiff may recover against Defendants/Third-Party Plaintiffs.

## PARTIES

2. Defendant/Third-Party Plaintiff JAMES THOMAS MARTINO ARCHITECTS, P.C. was retained by Plaintiff as the architect in connection with the design and/or renovations of various theatres in Connecticut, Florida, Illinois, Maryland, Minnesota and New York.

3. Defendant/Third-Party Plaintiff JAMES T. MARTINO is a licensed as an architect in the State of New York.

4. Third-Party Defendant B.B. Construction is and was Plaintiff's Crown Theatres' former construction consultant, and on-site construction representative for Plaintiff's construction-related theatre operations.

5. B.B. Construction is a New York corporation that had its principal place of business at certain relevant times in Lynbrook, New York and in Woodmere, New York and that presently maintains no offices.

6. B.B. Construction provides consulting services to the theatre construction and management industry, including, without limitation, supervision and inspection.

7. Third-Party Defendant Clifford has been and continues to be Executive Vice President and Chief Financial Officer for Plaintiff.

8. Third-Party Defendant Garfinkel has been and continues to be Executive Vice President and General Counsel for Plaintiff.

9. Plaintiff Crown Theatres, L.P. ("Crown") has commenced the underlying litigation against the defendants alleging breach of contract and negligence. A copy of the Complaint is annexed hereto as Exhibit A. A copy of Martino's Answer is annexed as Exhibit B.

10. As part of Third-Party Defendants' duties and responsibility, they managed and oversaw all of Crown Theatre's construction projects, including its renovation and expansion

programs described in Plaintiff's Complaint and herein. Third-Party Defendants were responsible for the selection of new theatre site locations, theatre construction, theatre design and the projection of costs and budgeting associated with theatre construction. Third-Party Defendants were also responsible for and did approve all invoices for payment from Crown Theatres to third-parties relating to the construction activities of Crown Theatres.

## FIRST COUNT

11. Defendants/Third-Party Plaintiffs repeats and realleges each and every allegation of paragraphs "1" through "10" as if fully set forth at length herein.

12. The Complaint of the Plaintiff alleged damages, *inter alia*, arising out of and/or relating to the construction/expansion program relating to the conduct of Clifford and Garfinkel.

13. Accordingly, and regardless of the claims of Plaintiff's Complaint, the truth of which are denied, Clifford and Garfinkel were negligent:

- In failing to exercise reasonable care in approving payment applications to third-parties;
- In failing to implement appropriate corporate procedures to prevent and/or detect fraud, misappropriation or an embezzlement scheme;
- In failing to detect the "embezzlement scheme;"
- In processing and approving payment applications that were exaggerated and/or fraudulent;
- In failing to fulfill their duties and obligations as officers of Crown; and
- In failing to managed and oversaw all of Crown's construction projects, including its renovation and expansion programs described in Plaintiff's Complaint and herein

- In failing to properly retain the owner's representative; and
- In failing to prepare and supervise the theatre construction, theatre design and the projection of costs and budgeting associated with theatre construction.

14. The errors and omission of Clifford and Garfinkel was the proximate, direct and immediate cause of Crown paying the subject invoices and thereby incurring damages as alleged by Crown in the underlying complaint.

15. Furthermore, the errors and omissions of Clifford and Garfinkel permitted and allowed the situation whereby Crown's Chief Operating Officer Milton Daly and Crown's Owner's Representative Robert Beacher embezzled monies from Crown.

16. Clifford and Garfinkel were in control of the situation to the exclusion of the Martino Defendants in that they were responsible for, managed and oversaw all of Crown's construction projects, including the selection of new theatre site locations, the selection of the general contractors, theatre construction, theatre design, projection of costs, budgeting and approving all invoices for payment from Crown to third-parties relating to the construction activities of Crown.

17. The Martino Defendants had no knowledge of the negligence of the Clifford and Garfinkel, nor did the Martino Defendants have reason to anticipate their negligence and reasonably relied upon Clifford and Garkinkel.

18. Without admitting any liability for the claims asserted by Plaintiff in this action, the truth of which are denied, any liability that may be adjudged against the Martino Defendants are strictly passive, secondary and/or vicarious and in the event of any such judgment, the Martino Defendants are entitled to indemnification from Clifford and Garfinkel based upon common law and statutory principles of indemnification.

19. The Martino Defendants are entitled to be indemnified and held harmless from and against any and all claims of Plaintiff, which arise out of and/or relating to the conduct or inactions of Clifford and Garfinkel in their performance and obligations to Plaintiff.

20. By reason of the foregoing the Martino Defendants have been damaged and are entitled to damages and/or indemnify from Clifford and Garfinkel, in an amount to be determined at time of trial.

## SECOND COUNT

21. Defendants/Third-Party Plaintiffs repeats and realleges each and every allegation of paragraph "1" through "20" as if fully set forth at length herein.

22. The Complaint of the Plaintiff alleged damages, *inter alia*, arising out of and/or relating to the construction/expansion program relating to the conduct of B.B. Construction.

23. Accordingly, and regardless of the claims of Plaintiff's Complaint, the truth of which are denied, B.B. Construction was negligent in developing and implementing a scheme by which B.B. Construction would submit fraudulent invoices to Crown, in order to cause Crown to issue payments for consulting and construction work that was not performed, or overpayments for work actually performed, among other things.

24. The errors and omission of B.B. Construction was the proximate, direct and immediate cause of Crown paying the subject invoices and thereby incurring damages as alleged by Crown in the underlying complaint.

25. B.B. Construction as the owner representative was in control of the situation in approving and processing payment applications to the exclusion of the Martino Defendants.

26. The Martino Defendants had no knowledge of the negligence of B.B. Construction, nor did the Martino Defendants have reason to anticipate B.B. Construction's negligence and reasonably relied upon B.B. Construction.

27. Without admitting any liability for the claims asserted by Plaintiff in this action, the truth of which are denied, any liability that may be adjudged against the Martino Defendants are strictly passive, secondary and/or vicarious and in the event of any such judgment, the Martino Defendants are entitled to indemnification from B.B. Construction based upon common law and statutory principles of indemnification.

28. The Martino Defendants are entitled to be indemnified and held harmless from and against any and all claims of Plaintiff, which arise out of and/or relating to the conduct or inactions of B.B. Construction in their performance and obligations to Plaintiff.

29. By reason of the foregoing the Martino Defendants have been damaged and are entitled to damages and/or indemnify from B.B. Construction, in an amount to be determined at time of trial

### THIRD COUNT

30. Defendants/Third-Party Plaintiffs repeats and realleges each and every allegation contained in paragraph "1" through "29" as if fully set forth at length herein.

31. Without admitting any liability for the claims asserted by Crown in the underlying action, the truth of which are denied, if the Martino Defendants are found liable herein for damages, it is entitled to contribution from Clifford and Garfinkel based upon common law and/or statutory principles of contribution.

32. The Complaint of the Plaintiff alleged damages, *inter alia*, arising out of and/or relating to the construction/expansion program relating to the conduct of Clifford and Garfinkel.

33. Accordingly, and regardless of the claims of Plaintiff's Complaint, the truth of which are denied, Clifford and Garfinkel were negligent:

- In failing to exercise reasonable care in approving payment applications to third-parties;
- In failing to implement appropriate corporate procedures to prevent and/or detect fraud, misappropriation or an embezzlement scheme;
- In failing to detect the "embezzlement scheme;"
- In processing and approving payment applications that were exaggerated and/or fraudulent;
- In failing to fulfill their duties and obligations as officers of Crown; and
- In failing to managed and oversaw all of Crown's construction projects, including its renovation and expansion programs described in Plaintiff's Complaint and herein
- In failing to properly retain the owner's representative; and
- In failing to prepare and supervise the theatre construction, theatre design and the projection of costs and budgeting associated with theatre construction.

34. By reasons of the foregoing and in such event, Martino has been damaged and is entitled to contribution from Clifford and Garfinkel in an amount to be determined at trial.

## FOURTH COUNT

35. Defendants/Third-Party Plaintiffs repeats and realleges each and every allegation contained in paragraph "1" through "34" as if fully set forth at length herein.

36. Without admitting any liability for the claims asserted by Crown in the underlying action, the truth of which are denied, if the Martino Defendants are found liable herein for damages, it is entitled to contribution from B.B. Construction based upon common law and/or statutory principles of contribution.

37. Accordingly, and regardless of the claims of Plaintiff's Complaint, the truth of which are denied, B.B. Construction was negligent in developing and implementing a scheme by which B.B. Construction would submit fraudulent invoices to Crown, in order to cause Crown to issue payments for consulting and construction work that was not performed, or overpayments for work actually performed, among other things.

38. By reasons of the foregoing and in such event, Martino has been damaged and is entitled to contribution from B.B. Construction in an amount to be determined at trial.

## FIFTH COUNT

39. Defendants/Third-Party Plaintiffs repeats and realleges each and every allegation of paragraph "1" through "38" as if fully set forth at length herein.

40. Upon information and belief, Clifford and Garfinkel were directly responsible for, managed and oversaw all of Crown's construction projects, including the selection of new theatre site locations, the selection of the general contractors, theatre construction, theatre design, projection of costs, budgeting and approving all invoices for payment from Crown to third-parties relating to the construction activities of Crown and for implementing an review process of each invoice prior to payment.

41.  Upon information and belief, Clifford and Garfinkel agreed to perform the services delineated above and to perform such services and take such other acts using their best skill and judgment, as are customarily and reasonably required to be take by such officers of Crown.

42.  The damages sustained by Crown occurred as a result of the negligent acts and omissions of Clifford and Garfinkel, in their capacity as employees and officers:

- In failing to properly perform their duties and responsibilities;
- In failing to exercise reasonable care in approving payment applications to third-parties;
- In failing to implement appropriate corporate procedures to prevent and/or detect fraud, misappropriation or an embezzlement scheme;
- In failing to detect the "embezzlement scheme;"
- In processing and approving payment applications that were exaggerated and/or fraudulent;
- In failing to fulfill their duties and obligations as officers of Crown; and
- In failing to managed and oversaw all of Crown's construction projects, including its renovation and expansion programs described in Plaintiff's Complaint and herein
- In failing to properly retain the owner's representative; and
- In failing to prepare and supervise the theatre construction, theatre design and the projection of costs and budgeting associated with theatre construction.

43.  As a direct and proximate result of the foregoing negligence and carelessness of Clifford and Garfinkel, Crown Theatres sustained damages.

## SIXTH COUNT

44. Defendants/Third-Party Plaintiffs Martino repeats and realleges each and every allegation contained in paragraph "1" through "43" as if fully set forth at length herein.

45. Defendants/Third-Party Plaintiffs Martino at the special instance and request of Third-Party Defendant David Clifford, performed work, labor, equipment, material, supplies and architectural services in connection with David Clifford's home in Connecticut.

46. Defendants/Third-Party Plaintiffs Martino provided such labor, equipment, material, supplies and architectural services to Third-Party Defendant David Clifford and his agents, servants and/or employees with the expectation that it would be compensated for such labor, equipment, material and supplies and receive from Third-Party Defendant David Clifford the fair and reasonable value of such labor, equipment, material, supplies and architectural services.

47. Third-Party Defendant David Clifford failed and/or refused to fully compensate Defendants/Third-Party Plaintiffs Martino for the fair and reasonable value of such labor, equipment, material, supplies and architectural services provided.

48. As a result of the foregoing, Third-Party Defendant David Clifford and his agents, servants and/or employees has been unjustly enriched at the expense of Defendants/Third-Party Plaintiffs Martino and Defendants/Third-Party Plaintiffs Martino demands judgment against Plaintiff for the fair and reasonable value of the labor, equipment, material, supplies and architectural services provided to date together with the costs and disbursements of this action, including interest, to be determined at the time of trial.

## SEVENTH COUNT

49. Defendants/Third-Party Plaintiffs Martino repeats and realleges each and every allegation contained in paragraph "1" through "44" as if fully set forth at length herein.

50. Defendants/Third-Party Plaintiffs Martino at the special instance and request of Third-Party Defendant Glenn Garfinkel, performed work, labor, equipment, material, supplies and architectural services in connection with Glenn Garfinkel's home in Connecticut.

51. Defendants/Third-Party Plaintiffs Martino provided such labor, equipment, material, supplies and architectural services to Third-Party Defendant Glenn Garkinkel and his agents, servants and/or employees with the expectation that it would be compensated for such labor, equipment, material, supplies and architectural services and receive from Third-Party Defendant Glenn Garfinkel the fair and reasonable value of such labor, equipment, material, supplies and architectural services.

52. Third-Party Defendant Glenn Garfinkel failed and/or refused to fully compensate Defendants/Third-Party Plaintiffs Martino for the fair and reasonable value of such labor, equipment, material, supplies and architectural services provided.

53. As a result of the foregoing, Third-Party Defendant Glenn Garfinkel and his agents, servants and/or employees has been unjustly enriched at the expense of Defendants/Third-Party Plaintiffs Martino and Defendants/Third-Party Plaintiffs Martino demands judgment against Plaintiff for the fair and reasonable value of the labor, equipment, material, supplies and architectural services provided to date together with the costs and disbursements of this action, including interest, to be determined at the time of trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Defendants/Third-Party Plaintiffs JAMES T. MARTINO and JAMES THOMAS MARTINO ARCHITECTS, P.C. prays for judgment against Third-Party Defendants, jointly and severally, as appropriate, as follows: awarding Defendants/Third-Party Plaintiffs judgment on the First, Second, Third, Fourth, Fifth, Sixth and Seventh Counts of the Third-Party Complaint, in an amount to be determined at the time of trial, including attorneys' and investigative fees;

Dated: White Plains, New York
       June 1, 2004

                      DEFENDANTS/THIRD-PARTY PLAINTIFFS
                      JAMES T. MARTINO and JAMES THOMAS
                      MARTINO ARCHITECTS, P.C.

                      By: */Marisa Lanza/*
                          Mark Seiden (CT 24637)
                          Marisa Lanza (CT 24554)
                          MILBER MAKRIS PLOUSADIS
                          & SEIDEN, L.L.P.
                          3 Barker Avenue, 6th Floor
                          White Plains, New York 10601
                          (914) 681-8700
                          (914) 681-8709 (fax)
                          mseiden@milbermakris.com
                          mlanza@milbermakris.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendants James T. Martino and James Thomas Martino Architects, P.C.'s Amended Third-Party Complaint was served by first class mail, postage prepaid, on the 1st day of June 2004, upon:

Craig C. Martin, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, Illinois 60611
Attorneys for Plaintiff

H. James Pickerstein, Esq.
Pepe & Hazard, LLP
30 Jelliff Lane
Southport, CT 06490
Local Counsel for Plaintiff

Kerry M. Wisser, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Robert M. Frost, Esq.
Zeldes, Needles & Cooper
1000 Lafayette Boulevard
Bridgeport, CT 06604

B.B. Construction Consultants, Ltd.
*Defendant*
300 Merrick Road
Lynbrook, NY 11563

*/s/ Marisa Lanza*
Marisa Lanza

Not Reported in F.Supp.2d
2002 WL 1359726 (S.D.N.Y.)
(Cite as: 2002 WL 1359726 (S.D.N.Y.))

Page 1

H
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

A.I.A. HOLDINGS, S.A., et al., Plaintiffs,
v.
LEHMAN BROTHERS, INC. and BEAR, STEARNS & CO. INC., Defendants.

No. 97 CIV. 4978(LMM).

June 20, 2002.

MEMORANDUM AND ORDER

MCKENNA, D.J.

*1 This action was commenced by 277 plaintiffs who allege that they were defrauded by their Lebanese investment broker, Ahmad Ihsan El-Daouk ("Daouk") in connection with the individual brokerage accounts that Daouk established for them. The plaintiffs assert numerous tort and contract claims against defendants Lehman Brothers, Inc. ("Lehman") and Bear, Stearns & Co, Inc. ("Bear Stearns") (collectively, "defendants"), two brokerage houses who consecutively served as Daouk's clearing broker between 1988 and 1995. Plaintiffs move to dismiss counterclaims filed by defendants against two plaintiffs, Sami Khoury ("Khoury") and Omar Salhab ("Salhab"), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, plaintiffs' motion is denied.

Background

In this action, plaintiffs allege that they were victims of a massive fraud perpetrated by Daouk and that the defendants knew and participated in Daouk's fraudulent scheme. In answering plaintiffs' First Amended Complaint, Bear Stearns and Lehman asserted comparative fault affirmative defenses. (Pls.' Mem. of Law Exs. A and B.) Specifically, Bear Stearns asserted that "[t]he claimed damages, losses and injury, if any, were caused, if at all, by the negligence or other conduct of the plaintiffs and Bear Stearns has no liability therefor" (Pls.' Mem. of Law Ex. A ¶ 271) and Lehman asserted that "[t]he [plaintiffs'] damages, if any, were caused by the misconduct of others and Lehman has no liability therefor." (Pls.' Mem. of Law Ex. B ¶ 269.)

Subsequently, on January 10, 2001, defendants sought leave to file counterclaims against plaintiffs Khoury and Salhab for negligently or recklessly advising certain plaintiffs to invest with Daouk and for breach of fiduciary duty. On December 17, 2001 Magistrate Judge Pitman granted defendants' motion for leave to file the counterclaims, rejecting plaintiffs' arguments of undue delay and futility. *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* No. 97 Civ. 4978, 2001 WL 1631412, at *3-5 (S.D.N.Y. Dec. 18, 2001). Defendants then filed the counterclaims seeking contribution from Khoury and Salhab and alleging, *inter alia,* that Khoury and Salhab: (a) inadequately investigated Daouk and his trading strategy before making the recommendations, (b) failed to determine whether the investments were suitable for the plaintiffs they advised, (c) and failed to monitor the investments. (Pls.' Mem. of Law Ex. C ¶¶ 72-73, 78-79, 94,-95, 101-102.) Plaintiffs now move to dismiss the counterclaims.

Discussion

A. 12(b)(6) Standard

Under Rule 12(b)(6), a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Court must read the complaint generously accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "A court should only dismiss a suit under Rule

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

12(b)(6) if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

B. Defendants' Counterclaims

**\*2** Plaintiffs move to dismiss defendants' counterclaims primarily on the ground that they are identical to defendants' affirmative defenses of comparative fault and therefore barred as a matter of law. (Pls.' Mem. of Law at 5-8.) Defendants argue that plaintiffs' motion should be denied due to Judge Pitman's December 17, 2001 opinion concerning the counterclaims or, in the alternative, on the ground that the counterclaims are not duplicative of the affirmative defenses. (Defs.' Mem. of Law in Opp'n at 5-12.)

In granting defendants' motion for leave to file the counterclaims, Judge Pitman concluded that plaintiffs' futility arguments, which he analyzed under a 12(b)(6) standard, rested on the inaccurate assumption that Khoury and Salhab's knowledge "must be attributed to the entities that each advised." *A.I.A. Holdings, Inc.,* 2001 WL 1631412, at \*4 (emphasis in original). Under New York law, the general agency rule of imputing knowledge from the agent to the principal does not apply "when the agent has abandoned his or her principal's interests and is acting entirely for his or her own or another's purposes." *Id.* (citing *Center v. Hampton Affiliates,* 497 N.Y.S.2d 898, 899-890 (1985)). Judge Pitman concluded that due to the agency exception, there is no "absolute legal impediment to the proposed counterclaims" and he granted defendants' request to file the counterclaims. *Id.* at \*5.

This Court concurs with Judge Pitman's analysis and concludes that defendants' counterclaims are not barred as a matter of law. The cases relied upon by plaintiffs, in which contribution claims were dismissed where similar comparative fault affirmative defenses were asserted, do not compel this Court to dismiss the counterclaims here. In those cases, the courts applied the general rule that it is unnecessary to maintain a claim for contribution where the claim is based on the same conduct supporting a comparative negligence affirmative defense because it was assumed that the agent's knowledge was imputed to the principal. ***Ivor Wolfson Corp.** SA v. Locke Liddell & **Sapp** LLP,* 99 Civ. 11471, 2001 WL 246384, at \*4 (S.D.N.Y. Mar. 13, 2001) ("Because the actions and state of mind of an agent are imputed to the principal, there is no need for Defendants to bring a third-party action seeking contribution by Plaintiffs' agent for its "share" of Plaintiffs' damages."); *Gabriel Capital, L.P. v. Natwest Fin., Inc.,* 137 F.Supp.2d 251, 266 (S.D.N.Y 2000) (assuming that culpable conduct of agent is imputed to the principal); *New York Islanders Hockey Club, LLP v. Comerica Bank-Texas,* 115 F.Supp.2d 348, 351-52 (S.D.N.Y.2000)(same).

Here, on the other hand, as Judge Pitman concluded, Khoury and Salhab might fall into the agency exception. Whether they were acting within the scope of the alleged agency relationship, and therefore whether their knowledge is imputable to the plaintiffs they allegedly advised, is an issue that has not yet been decided in this litigation. Therefore, the counterclaims cannot be dismissed as a matter of law. [FN1]

> FN1. Plaintiffs' other contentions, *i.e.,* that permitting defendants' counterclaims to go forward would confuse the jury (Pls.' Mem. of Law at 9) are unavailing. In addition, the Court will not convert plaintiffs' motion to dismiss to a summary judgment motion. (Pls.' Reply Mem. at 7.)

Conclusion

**\*3** In sum, plaintiffs' motion to dismiss defendants' counterclaims is denied.

So Ordered.

2002 WL 1359726 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 1:97CV04978 Docket)
(Jul. 08, 1997)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works