UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CROWN THEATRES, LP, | : | CIVIL ACTION NO. |
| | : | 3:02-CV-2272 (AVC) |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| MILTON L. DALY, ET AL., | : | |
| | : | NOVEMBER 16, 2004 |
| Defendants. | : | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Defendant Milton L. Daly hereby opposes the plaintiff's Motion For Entry of A Temporary Restraining Order and Preliminary Injunction Against Defendant Milton L. Daly (dated November 8, 2004). The plaintiff's motion improperly asks this Court to substitute its judgment for that of a non-party business regarding how to best use insurance proceeds to repair hurricane damage to the business's movie theatre in Foley, Alabama, a decision that is presently being litigated in the state court in Alabama. Because the plaintiff's motion is based on a misstatement of the facts, seeks relief that is beyond the authority of the court, seeks relief that is not necessary to protect the limited interests of the plaintiff, and seeks to interfere with state court proceedings, the plaintiff's motion for a temporary restraining order and a preliminary injunction should be denied.

**Facts Relevant to Pending Motion**

Defendant Milton Daly owns a 70% interest in Odyssey Entertainment LLC ("Odyssey"). Odyssey owns and operates the Riviera 12 movie theatre (the "Riviera 12") in Foley, Alabama. The Riviera 12 was damaged by Hurricane Ivan. It cannot operate, and therefore it cannot produce any income for Odyssey, unless and until it is repaired. Because of this, Odyssey is using its accrued cash to make mortgage payments as they become due, and Odyssey has therefore temporarily suspended making payments to Milton and Anne Daly on the promissory note to them. However, Odyssey does have some additional accrued cash and the likelihood of substantial insurance proceeds that should become available to Odyssey in the near future, both of which will assist with the repair of the Riviera 12. Odyssey has proposed to use those funds to not simply rebuild the theatre as it was before the hurricane damage, but to bring certain improvements to the theatre and its operations in order to make the Riviera 12 more competitive with other, newer movie theatres in the greater Foley area. These improvements are needed to meet competition; without these improvements, the bottom line of Odyssey will suffer.[1] None of the proposed expenditures will benefit defendant

---

[1] The necessity for the proposed improvements to the Riviera 12 theatre is substantiated in a motion that Milton Daly has filed in ongoing litigation between the plaintiff's affiant (Robert Abramsky) and Milton Daly in state court in Alabama. That motion seeks the release of Odyssey funds to in order to construct the proposed improvements to the Riviera 12 theatre. A copy of that motion is attached hereto as Exhibit A.

Milton Daly, either directly or indirectly, except to the extent of increasing the value of his ownership interest in Odyssey. Presently, the only direct financial benefit that Milton Daly realizes from his operation of Odyssey is the fixed salary that he draws for his management of Odyssey; he does not realize any of the profits made by Odyssey.[2] Because the plaintiff has a prejudgment attachment of Daly's interest in Odyssey, Odyssey will accumulate any profits until the conclusion of this litigation so that the money is available to maintain Odyssey as a viable business venture and so that those funds may be available to the plaintiff should a judgment enter against defendant Milton Daly and should the plaintiff choose to take the appropriate post-judgment steps to execute on Daly's interest in Odyssey. To the extent that Daly operates Odyssey efficiently and increases its accumulated profits, both in the short-term and in the long-term, he will benefit either by having a greater sum available to pay any judgment to the plaintiff or by having a greater sum available for himself once any judgment is satisfied. However, if the proposed improvements are not made very soon, it is very possible that Odyssey will turn to bankruptcy, causing the plaintiff's attachment of Daly's interest in Odyssey to be worthless. That is something that Daly does not want, nor presumably does the plaintiff.

---

[2] Pursuant to the Prejudgment Remedy that has been granted by this Court, Milton Daly's interest in Odyssey is already subject to a garnishment order. By agreement of the parties, Milton Daly can receive only a fixed salary from Odyssey for his work as an employee and reimbursement for certain employment-related expenses.

The ongoing management of Odyssey has been the subject of litigation in the state court in Alabama. That dispute is between Milton Daly, who is Odyssey's chairman and chief executive officer, and Robert Abramsky, who is Odyssey's president and chief operating officer. So far, the Alabama court has rebuffed Abramsky's efforts to interfere with Daly's decisions regarding the day-to-day operations of Odyssey.[3] The plaintiff in the instant case now relies on Abramsky's affidavit, which is loaded with the same assertions regarding Daly's use of Odyssey funds that were presented to the Alabama court and found to be insufficient by that court to warrant preventing Daly from conducting the affairs of Odyssey. As to Daly's proposal to use the insurance proceeds to make improvements to the Riviera 12, that proposal has been opposed by Abramsky and is the subject of a November 16, 2004 court hearing in Alabama.[4]

---

[3] A copy of the Order of Preliminary Injunction issued by the Circuit Court in Baldwin County, Alabama in <u>Abramsky v. Daly</u>, No. CV-2003-62 (Jan. 23, 2003) is attached hereto as <u>Exhibit B</u>. Notwithstanding the averments of Robert Abramsky that appear in Exhibit 1 to the plaintiff's motion, which averments are intended to suggest that Milton Daly has not been properly managing the funds belonging to Odyssey, the Alabama court saw fit to place the day-to-day operations of Odyssey in the hands of Milton Daly. (See <u>Exhibit B</u>, ¶ 4.) In addition, the Alabama court enjoined Mr. Abramsky from interfering with the same. (See <u>Exhibit B</u>, ¶ 14.) Furthermore, it should be noted that all of the financial wrongdoings at Odyssey that Mr. Abramsky asserts were committed by Daly <u>predate</u> the ruling of the Alabama court. Clearly, the Alabama court found Mr. Abramsky's allegations to lack merit.

[4] Notwithstanding the short timeframe for submitting this response and the difficulty in contacting the client who is located in Florida, the undersigned is attempting to obtain an affidavit from Milton Daly to substantiate these facts. That affidavit will be presented to the Court on November 17, 2004, if counsel is able to obtain same.

**Legal Argument**

The plaintiff has been granted a prejudgment remedy against the defendants. However, that prejudgment remedy does not provide the plaintiff with the right to effectively determine the operation of a business (Odyssey Entertainment, LLC) in which the defendant has an ownership interest. Milton Daly is presently in a struggle with Robert Abramsky over the management of Odyssey. Over Abramsky's objections, an Alabama court has decided that, both law and equity, require that Daly is the proper person to manage the business of Odyssey. Now, apparently dissatisfied with the decision of the Alabama court and perhaps not too hopeful his pending challenge to the Riviera 12 proposal will succeed in Alabama, Abramsky has convinced the plaintiff to do his bidding in this Court, and/or the plaintiff has convinced Abramsky to bring the management dispute to Connecticut, even though Odyssey is not a party to this action.

    1.    <u>The Plaintiff's Request for Relief is Not Yet Ripe</u>

Whether Odyssey can go forward with the proposal to improve the Riviera 12 is a matter that is currently before the state court in Alabama. A hearing on Daly's motion to release funds will be heard by the Circuit Court in Baldwin County (Alabama) today. Only <u>after</u> the Alabama state court determines that Odyssey can pursue Milton Daly's Riviera 12 proposal will there be any real possibility that Odyssey will do so. Therefore, the predicate for the plaintiff's request for emergency relief – the possibility that Odyssey will repair the hurricane damage to the Riviera 12 theatre by making

improvements thereto – is speculative at this point in time.  Accordingly, the plaintiff cannot demonstrate any need for immediate court action, and the plaintiff's request for a temporary restraining order and an injunction is premature.  For this reason, the motion must be dismissed or denied.

Furthermore, should this Court grant the relief sought by the plaintiff <u>before</u> the Alabama state court decides the same issue, then the necessary effect of this Court's order will be to stay the proceedings in the state court.  Yet, 28 U.S.C. § 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  Section 2283, known as the Anti-Injunction Act, has as its "basic purpose . . . to prevent needless friction between state and federal courts."  <u>Mitchum v. Foster</u>, 407 U.S. 225, 232-33 (1972) (internal quotation marks omitted).  Its reach, moreover, "cannot be avoided by framing an injunction as a restraint on a party rather than directly on the state court."  17 Wright, Miller & Cooper, Federal Practice and Procedure 2d § 4222, p. 505 (1988)  This provision, then, prevents the court from acting until the propriety of going forward with the Riviera 12 improvements has been decided by the Alabama court.

2.     The Court Must Abstain From Granting the Relief Sought by the Plaintiff

Under the guise of protecting its prejudgment remedy against Milton Daly, the plaintiff wants this Court to effectively intervene in a matter that is presently pending in the state court in Alabama – namely, the question of who should be making management decisions for Odyssey and what business decisions are in Odyssey's best interests.  Precisely because that decision is before the Alabama court, it should not be addressed by this Court.  This Court's exercise of jurisdiction over the plaintiff's causes of action in this case do not require it to also become involved in the management decisions of a nonparty entity, especially where an identical dispute over such management decisions is presently the subject of state court action.  Certainly, the principles underlying what is known as <u>Colorado River</u> absention; see generally 17A Wright, Miller & Cooper, Federal Practice and Procedure 2d § 4247 (1988 & 2004 Supp.); can guide this Court, especially where reliance on that doctrine here will not divest the Court of jurisdiction or otherwise stay these proceedings on the plaintiff's underlying causes of action, but will merely promote the laudable goal of federal court comity for a parallel state court proceeding.[5]

---

[5] In this regard, it is evident that, in regard to the pending motion, Abramsky has provided the plaintiff with an affidavit, and the plaintiff is willingly using the same, in an effort to undermine the order of the Alabama court.  The Alabama court put Milton Daly in charge of the day-to-day operations of Odyssey (<u>Exhibit B</u>, ¶ 4); the Alabama court enjoined Abramsky from interfering with the day-to-day operations of Odyssey (<u>Exhibit B</u>, ¶ 14); the Alabama court specifically instructed Abramsky to return to that court if he

### 3. The Relief Sought By the Plaintiff Is Not Authorized

The plaintiff has a prejudgment remedy against defendant Milton Daly. Pursuant to the remedy, it has attached Daly's interest in Odyssey. That attachment, however, does not provide the plaintiff with any ownership interest in Odyssey nor does the attachment provide the plaintiff with any management rights with respect to Odyssey. The plaintiff's attachment protects its claim to Daly's ownership interest, but it does not authorize the plaintiff to intervene in or otherwise affect the separate property of Odyssey, a limited liability company that is not a party to this action. This fact distinguishes the cases relied on by the plaintiff wherein the injunctive relief was

---

has cause to believe that Daly is not operating Odyssey in a proper manner (<u>Exhibit B</u>, ¶ 14). Notwithstanding those orders, both the plaintiff and Abramsky are trying to get this Court involved in the subject matter of that state court action. The plaintiff's motion itself, then, appears to violate the spirit, if not the letter, of the Alabama court's Order of Preliminary Injunction. Certainly, this Court should not encourage such conduct by entertaining the motion.
     Furthermore, while the Alabama court did order that there would be no construction done to the Riviera 12 (<u>Exhibit B</u>, ¶ 7), Milton Daly has properly filed a motion in the Alabama court to modify that portion of the order so that the Riviera 12 may be rebuilt with improvements. That matter will be argued to the Alabama court on November 16, 2004. Again, rather than recognizing the proper jurisdiction of the Alabama court over the operations of Odyssey and the issue of repairs and improvements to the Riviera 12 theatre, Abramsky through the plaintiff herein (and vice versa) seek to undermine the authority and the lawful authority of the Alabama court through the plaintiff's spurious request to this Court for an injunction that will only interfere with the request for release of funds that is now before the Alabama court. Certainly, this manner of proceeding, which demonstrates an utter lack of respect and contempt for the legitimate authority of the Alabama court in regard its ongoing oversight of the business operations of Odyssey, should not be countenanced by this Court. Clearly, for this additional reason, the equities do not favor the injunctive relief that is now being sought by the plaintiff in this case.

ordered as to *a defendant's* assets.  Here, the underlying property sought to be affected – namely, the use of accrued funds being held by Odyssey and/or the use of insurance proceeds that are to be paid to Odyssey, in order to finance the reconstruction and improvement of its business in Foley, Alabama – are <u>not assets of any defendant in this litigation</u>.  Thus, unlike those cases, the funds sought to be frozen by the plaintiff are not at issue in this lawsuit.  Instead, the plaintiff is improperly seeking to expand the reach of its prejudgment remedy to effectively put a *nonparty* entity (Odyssey) into receivership, with the Court monitoring and controlling that nonparty entity's business decisions.  The plaintiff cites no authority for such far-reaching judicial relief under the guise of protecting a prejudgment remedy, where neither the entity that is the subject of the requested injunction nor the funds to be expended are the subject of the underlying action.  Certainly, if the plaintiff is ultimately successful in this action, it may be able to garnish or otherwise obtain a charging order in regard to any distributions of profits that Odyssey might ultimately make to Daly.  However, until then, its interests in Odyssey are inchoate, at best, and not the proper subject of a preliminary injunction.

     In fact, through its Motion for Temporary Restraining Order and Preliminary Injunction, the plaintiff is asking this Court to grant it more relief than it would be entitled to even if it ultimately obtains a judgment against Milton Daly on the underlying causes of action.  Even if the plaintiff obtains a money judgment against Daly, in order for the plaintiff to ultimately obtain an interest in Odyssey, the plaintiff would have to file a post-

judgment application for a charging order against Daly's interest in Odyssey pursuant to C.G.S. § 34-171. However, such a charging order provides a judgment creditor with only a limited interest: "[t]o the extent so charged, the judgment creditor has *only the rights of an assignee* of the member's limited liability company interest." C.G.S. § 34-171 (emphasis added). C.G.S. § 34-170 sets forth the rights of an assignee of a member's limited liability company interest. Significantly, an assignee of a member's interest is entitled "to receive . . . *only the distributions* to which the assignor (here, Daly) would be entitled"; C.G.S. § 34-170(a)(2) (emphasis added); and such assignment "*does not . . . entitle the assignee to participate in the management and affairs of the limited liability company* or to become or exercise any rights of a member." C.G.S. § 34-170(a)(3). Thus, even post-judgment, the plaintiff will not be entitled to participate in the business of Odyssey; yet, that is what it is asking this Court to allow it to do in the pre-judgment setting.

In other words, even if the plaintiff prevails against Daly in this litigation, it will <u>never</u> be entitled to interfere with the management and affairs of Odyssey. Thus, under the guise of preliminary injunction, the plaintiff is asking this Court to provide it with an ultimate remedy that the law does not provide to it. In light of this, the plaintiff can make no claim that its prejudgment remedy should be expanded to permit it relief that is unavailable post-judgment. Such an outcome would stand the law of prejudgment remedies on its head. For this reason, as a matter of law, the plaintiff cannot establish a

reasonable likelihood of success on the merits because the plaintiff will never have the right to affect Odyssey's business decision regarding the utilization of accrued funds to retrofit the Riviera 12 or to direct how Odyssey's insurance proceeds should be utilized.

Armed with only a prejudgment remedy, the plaintiff is asking this Court to expand its rights beyond those available to a holder of a prejudgment attachment, by allowing it to use the power of the Court to intervene in the management decisions of a nonparty limited liability company. There is no theory of law that permits such relief under the guise of prejudgment remedy, and consequently the plaintiff cannot demonstrate any likelihood of success on the merits of its claim that the requested injunction is necessary to protect its prejudgment remedy.

Additionally, even if such relief could be granted by way of a prejudgment remedy, the plaintiff cannot demonstrate that such relief is appropriate under the circumstances of this case. Here, Odyssey needs to act immediately to save itself from financial ruin. The Riviera 12 has been destroyed by Hurricane Ivan. The Riviera 12 will not be able to contribute to Odyssey's financial wellbeing until it is rebuilt. However, because of new competition in the area, the Riviera 12 will not produce sufficient income if it is simply rebuild as it was before the hurricane. In the reasonable exercise of his management prerogatives with respect to Odyssey, Milton Daly has determined that the proposed improvements to the Riviera 12 must be undertaken at once. The pursuit of those improvements will not only benefit Odyssey, but will ultimately protect

the plaintiff's prejudgment remedy by ensuring that Daly's ownership interest, which has been attached by the plaintiff, remains financially viable. The relief sought by the plaintiff, then, will not only interfere with the order of the Alabama court but will harm Odyssey, and Daly, and thereby diminish the protection that the prejudgment remedy affords to the plaintiff.

Under such circumstances, not only does the Court lack the authority to grant the requested relief, but the plaintiff cannot possibly demonstrate that the standards for granting a preliminary injunction, much less a temporary restraining order, are met in this case.

Accordingly, for all of the foregoing reasons, the plaintiff's Motion For Entry of A Temporary Restraining Order and Preliminary Injunction Against Defendant Milton L. Daly should be denied in its entirety.

DEFENDANT,
MILTON L. DALY


By_____
   Kerry M. Wisser of
   WEINSTEIN & WISSER, P.C.
   29 South Main Street, Suite 207
   West Hartford, CT  06107
   Telephone No. (860) 561-2628
   Facsimile No. (860) 521-6150
   Federal Bar No. ct01205

## **CERTIFICATION**

This is to certify that on the 16th day of November, 2004, a copy of the foregoing was served upon the following counsel of record by way of facsimile transmission and by way of First Class Mail, postage prepaid:

Harold James Pickerstein, Esquire
Jodi Zils Gagne, Attorney
Pepe & Hazard
30 Jelliff Lane
Southport, CT 06890-4000

Craig C. Martin, Esquire
Lawrence S. Schaner, Esquire
Jenner & Block
One IBM Plaza
Chicago, IL 60611-7603

Mark Seiden, Esquire
Marisa Lanza, Attorney
Milber Makris Polusadis & Seiden, LLP
108 Corporate Park Drive, Suite 200
White Plains, NY 10604

Robert M. Frost, Jr., Esquire
Zeldes, Needle & Cooper
1000 Lafayette Boulevard
Bridgeport, CT 06601

                                                Kerry M. Wisser