## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CROWN THEATRES, L.P.,              :
  Plaintiff,                      :
                                       :
v.                                 :    Civil No. 3:02CV02272(AVC)
                                       :
MILTON L. DALY, TAYLOR-LEIGH,      :
INC., ANNE E. DALY, JAMES          :
C. CELLA, G.U.S. DEVELOPMENT,      :
INC., JAMES T. MARTINO,            :
JAMES THOMAS MARTINO,              :
ARCHITECT, PC.,                    :
AND RCD HUDSON, LLC                :
  Defendants.                     :

**RULING ON CROWN THEATRES' MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS MILTON L. DALY AND TAYLOR-LEIGH, INC.**

This is an action for damages arising out of, inter alia, the plaintiff, Crown Theater, L.P.'s (Crown), claim that the defendant, Milton Daly and his closely held corporation, Taylor-Leigh, Inc. (Taylor-Leigh), embezzled 6.016 million dollars from Crown. In relevant part, the action is brought pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110, and common law tenets concerning breach of fiduciary duty, conversion, and unjust enrichment.

The plaintiff has filed the within motion for summary judgment (doc. no.132) pursuant to Fed. R. Civ. P. 56, arguing that no genuine issue of material fact exists as to the CUTPA, breach of fiduciary duty, conversion, and unjust enrichment

1

claims against Daly[1] and the conversion claim against Taylor-Leigh, and that Crown is therefore entitled to judgment as a matter of law.  Specifically, Crown argues that "Daly's admissions and the other undisputed evidence demonstrate that Crown Theatres is entitled to judgment against Daly and Taylor-Leigh."  Daly responds that the motion "should be denied in its entirety, or alternately only granted in limited respects, because genuine issues of material fact exist."  Specifically, "the plaintiff is not entitled to judgment on Count X [CUTPA] as a matter of law" and "genuine issues of fact exist" as to the breach of fiduciary duty, conversion, CUTPA, and unjust enrichment claims "in regard to the amount of damages."

The issues presented are: 1) whether Crown is entitled to summary judgment against Daly for breach of fiduciary duty; 2) if Crown is entitled to summary judgment for breach of fiduciary duty, whether the applicable statute of limitations limits Crown's recovery; 3) if Crown is entitled to summary judgment for fiduciary duty, whether Daly is only liable for the $4,211,200.00 that he personally gained or whether he is also liable for the $1.8 million dollars that one Robert Beacher gained; 4) whether Crown is entitled to summary judgment against Daly and Taylor-Leigh for conversion; 5) whether Crown is entitled to summary

---

[1] In addition to the claims at issue in this ruling, the second amended complaint also states claims against Daly for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, fraud, and civil conspiracy.

judgment against Daly on the CUTPA claim; 6) whether Crown is entitled to summary judgment against Daly for unjust enrichment; and 7) if Crown is entitled summary judgment on any of these claims, whether Crown is entitled to prejudgment interest on the damages.

The court concludes that: 1) Crown is entitled to summary judgment against Daly for breach of fiduciary duty; 2) Daly's continuing conduct tolled the statute of limitations; 3) Daly is liable to Crown for $4,211,200.00 for breach of fiduciary duty, but questions of fact exist as to whether Daly is also liable to Crown for the 1.8 million dollars Beacher gained from the fraudulent invoices; 4) Crown is entitled to summary judgment against Daly and Taylor-Leigh for conversion and damages in the amount of $4,211,200.00, however genuine issues of material fact remain as to whether Daly is also liable for the conversion of the additional 1.8 million dollars; 5) issues of fact preclude summary judgment on the CUTPA claim; 6) summary judgment is denied on the unjust enrichment claim; and 7) Crown is entitled to prejudgment interest on the $4,211,200.00 that Daly and Taylor-Leigh owe Crown for breach of fiduciary duty and conversion, however the amount of prejudgment interest will be determined by the jury.

For the reasons set forth below, the motion for summary judgement is GRANTED in part and DENIED in part.

3

**STANDARD**

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims... [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

**FACTS**

Examination of the complaint, Local Rule 56 statements, exhibits, motion for summary judgment, and the responses thereto reveals the following undisputed, material facts:

The plaintiff, Crown Theatres, L.P. (Crown) is an Illinois partnership with its primary place of business in Norwalk, CT.

4

Crown is in the business of developing and running movie theaters.

In early 1996, Crown named the defendant, Milton L. Daly, executive vice president and chief operating officer of Crown. Daly reported to Daniel Crown, president of Crown. Daly's duties included overseeing construction projects and approving expenditures related to construction projects.

Daly owns one hundred percent of the stock of Taylor-Leigh, Inc. (Taylor-Leigh), a Connecticut corporation. Daly and his wife, one Anne Daly, are the sole officers of the corporation.

In the mid-1990s, Crown began to expand its movie theater business by constructing new theaters in Connecticut, Maryland, and Florida.

One Robert Beacher worked as a construction consultant for Crown. Beacher's firm, B.B. Construction Consultants (BB), provided consulting and construction-related services in connection with Crown's building the new theaters. Specifically, Beacher was the intermediary between Crown and the companies constructing the new theaters.

During construction, Beacher submitted false invoices on behalf of fictitious companies to Crown. In addition, when real contractors submitted valid invoices, Beacher created new invoices that inflated the amounts due. Beacher then submitted the false and inflated invoices to Crown for payment. The false

and inflated invoices charged Crown for $ 6,016,000.00 worth of
sham construction services.

Daly admits that he approved the invoices.  Specifically,
Daly admits that between 1996 and May 2001, he approved payments
of $ 6,016,000.00 from Crown to Beacher that Daly now
acknowledges were in excess of actual construction costs.
However, there is an issue of fact as to whether Daly knew that
the invoices were fake and/or inflated at the time he approved
them.  Beacher has testified that Daly knew the invoices were
false and/or inflated.  In contrast, Daly has testified that he
did not know the invoices were false and/or inflated.

Once Crown paid the inflated invoices, Beacher would pay the
contractors what they had actually charged, and take the
difference.  Daly admits that he and Beacher had an agreement
that they would divide the money Beacher gained from Crown
between themselves.  Under the agreement, Beacher would keep
thirty percent of the money and pay seventy percent to Daly's
corporation, Taylor-Leigh.  Daly admits that Taylor-Leigh
performed no work for Crown.

Daly admits that he received $4,211,200.00 through this
agreement.  However, Daly argues that although Beacher paid him
$4,211,200.00, at the time of the payments, Daly "believed that
they were valid bills for construction services rendered, and
nothing about them suggested otherwise."  Daly argues that it was

his "understanding that the theater project work would be performed for Crown by BB Construction at an expected savings for Crown." Then, "any profits that Beacher and BB Construction might thereby derive . . . would be split between Daly and Beecher on a 70/30 basis." Daly further states that "[t]he intent was to save the company [Crown] money under the agreement."

On June 1, 2001, Daly resigned from Crown after Crown discovered that the movie theater expansion projects were experiencing huge losses. On December 20, 2002, Crown filed this action.

Daly admits that he had a fiduciary duty to Crown, and that he breached that fiduciary duty through self-dealing.

## DISCUSSION

## I.        Breach of Fiduciary Duty Against Daly (Count XXI)

Crown first argues that it is "entitled to judgment as a matter of law on . . . [the] claim against Daly for breach of fiduciary duty." Specifically, Crown argues that "the undisputed facts demonstrate that Daly owed fiduciary duties to Crown Theatres, and that he violated those duties by – at the very least – self-dealing."

Daly admits that he breached a fiduciary duty to Crown and that Crown is entitled to judgment as a matter of law on the breach of fiduciary duty claim. Specifically, Daly states that

"[i]n accepting the payments for the business that was given to Beacher . . . Daly acknowledges that he breached his fiduciary duty to the plaintiff."  Furthermore, Daly states that he "cannot (and does not) dispute that, on that basis, a judgment of liability may enter against him in regard to the breach of fiduciary duty claim."

Pursuant to Connecticut law, to prevail on a breach of fiduciary duty claim, a plaintiff must first establish "the existence of a fiduciary duty." Ostrowski v. Avery, 243 Conn. 355, 361 (2003).[2]  After the plaintiff establishes the existence of such a duty, "the burden shifts to the corporate fiduciary to prove fair dealing by clear and convincing evidence." Id.

"An officer . . . occupies a fiduciary relationship to the corporation." Chanoff v. U.S. Surgical Corp., 857 F. Supp. 1011, 1020 (D. Conn. 1994)(applying Connecticut law; internal quotation marks and citations omitted).  As Crown's executive vice president and chief operating officer, Daly owed a fiduciary duty to Crown.  Id. Furthermore, Daly admitted at his deposition that he "had a fiduciary responsibility" towards Crown.

Because Crown has met its initial burden of establishing that Daly owed a fiduciary duty to Crown, the burden shifts to

---

[2] "The fiduciary duty comprises two prongs: a duty of care, and a duty of loyalty . . . While the duty of care requires that the . . . fiduciaries exercise their best care and judgment . . . the duty of loyalty derives from the prohibition against self- dealing that inheres in the fiduciary relationship." Matrix Inv. Corp. v. Ward, 2004 WL 2284195, at *2 (Conn. Super. Sep 16, 2004) (internal quotation marks and citation marks omitted).

Daly to prove by clear and convincing evidence that he dealt fairly with Crown. See Konover Devel. Corp. v. Zeller, 228 Conn. 206, 219 (1994).

Daly admits that his "fiduciary responsibility was not upheld by self-dealing." The court therefore concludes that a reasonable jury could not find that Daly has established by clear and convincing evidence that he dealt fairly with Crown. Accordingly the motion for summary judgement is granted in this regard.

### A.    Damages

Although the parties agree that Crown is entitled to summary judgment against Daly on the breach of fiduciary duty claim, the parties disagree on the appropriate amount of damages.

Crown argues that the court should enter judgment in favor of Crown on the breach of fiduciary duty claim "in the amount of $6.016 million plus prejudgment interest." Daly responds that the statute of limitations limits the damages that Crown is entitled to, that "disputed facts" preclude Crown from recovering the full $ 6,016,000.00, and that Crown is not entitled to prejudgment interest.[3]

As set forth below, the court concludes that Daly's continuing conduct tolled the statute of limitations. Specifically, Crown is entitled to damages in the amount of

---

[3] Section V addresses the issue of prejudgment interest.

9

$4,211,200.00 from Daly as a matter of law.  However, issues of
fact exist as to whether Daly is also liable for the 1.8 million
dollars that Beacher gained as a result of the false invoices.

### 1.  Tolling the Statute of Limitations

Daly argues that a three year statute of limitations limits
Crown's "damages . . . to the damages attributable to actions
taken within three-years of the filing of the complaint."  Under
Daly's analysis, because Crown filed this action on December 21,
2002, Daly would not liable for acts that he committed before
December 19, 1999.  Crown responds that Daly's statute of
limitations "argument is without merit because the statute of
limitations was tolled by Daly's continuing course of conduct."

Connecticut General Statute § 52-577 provides that "[n]o
action founded upon a tort shall be brought but within three
years from the date of the act or omission complained of."
Crown's breach of fiduciary duty claim is subject to this three
year statute of limitations.  See In re Colonial Ltd. Partnership
Litigation, 854 F. Supp. 64, 90 (D. Conn. 1994)(applying
Connecticut law)("All common law tort claims, including . . .
breach of fiduciary duty, are subject to a three-year statute of
limitations.")

Generally, the statute of limitations begins to run the day
of "the act or omission complained of." Id.(citing Conn. Gen.
Stat. § 52-577).  However, when a "special relationship between
the parties giv[es] rise to a continuing duty," such as a

10

"fiduciary duty," and, "the wrong sued upon is a continuing course of conduct, the statute does not begin to run until the course of conduct is completed." <u>Fenn</u> v. <u>Yale Univ</u>., 283 F. Supp. 2d 615 (D. Conn. 2003)(applying Connecticut law and noting that "the limitations period must be tolled when defendants . . . have breached their ongoing fiduciary duties of disclosure").

Daly admits that over the course of his employment with Crown, he engaged in self-dealing.  This continuous course of conduct tolled the statute of limitations until Daly completed his conduct.  Daly left Crown on June 1, 2001.  Accordingly, the three year statute of limitations did not begin to run until Daly completed his conduct on June 1, 2001.  Because Crown filed this action less than three years later, on December 20, 2002, Crown may recover for Daly's admitted breaches of fiduciary duty from 1996 to 2001.

## 2.  The Amount of Damages

While Daly agrees that the court should enter summary judgement against him on the breach of fiduciary duty claim, Daly argues that "the maximum amount of the judgment that can be entered in favor of the plaintiff . . . is 4.2 million."  In contrast, Crown argues that Daly is "liable as a matter of law for the entire $6.016 million that he and Beacher stole from Crown."  Specifically, "while Daly would like to limit his losses to the $4.2 million he and his wife pocketed, the law is clear that one who breaches his fiduciary duties is liable for all the

11

losses to the one to whom the fiduciary duties are owed."

"A function of damages for breach of fiduciary duty is to place the plaintiff in the same position he would have been in had the breach not occurred." Hoffnagle v. Henderson, 2003 WL 22206236 (Conn.Super. Sep 10, 2003).

It is undisputed that by accepting $4,211,200.00 from Beacher without disclosing the deal to Crown, Daly engaged in self-dealing. Klopot v. Northrup, 37 A.2d 700(Conn. 1944)(noting "[w]here a director of a corporation enters into a transaction with it which will inure to his individual profit" the director has the burden of proving, inter alia, that the transaction was made "upon a full understanding"). Furthermore, it is undisputed that as a result of this self-dealing, Daly is liable to Crown for the $4,211,200.00 that he gained as a result of the self-dealing. Accordingly, Daly is liable to Crown in the amount of $4,211,200.00.

However, a question of fact exists that precludes the court from concluding that, as a matter of law, Daly is liable to Crown for an additional 1.8 million dollars. Specifically, it is not clear whether Daly breached his fiduciary duty by signing the invoices that Beacher submitted to Crown, which in turn led to Beacher receiving 1.8 million dollars of Crown's money. Beacher has stated under oath that Daly did know the invoices were false when he approved them. In contrast, Daly has stated under oath that he did not know the invoices were false when he approved

12

them.

If Daly did know that the invoices were false, he may have breached his fiduciary duty by signing the invoices. See Oakhill Assoc. v. D'Amato, 228 Conn. 723, 727 (1994)(addressing claim of plaintiff partnership, in which named defendant was a partner, that defendant breached fiduciary duty when his corporation charged the plaintiff "excessive amounts" for construction; noting "damages would be measured by the amount of unjustifiable charges made or profits retained by the defendants"). Furthermore, Daly may be liable for the full amount of money he caused Crown to loose.  Specifically, Daly might be liable not only for the $4,211,200.00 that he received, but also the approximately 1.8 million that Beacher received. See Restatement (Second) of Agency § 401 ("An agent is subject to liability for loss caused to the principal by any breach of duty").

Accordingly, 1) Daly is liable for $4,211,200.00 as a matter of law for breach of fiduciary duty, but 2) a jury must determine whether Daly knew that the invoices were false, and whether therefore, Daly is liable for the additional 1.8 million dollars that Beacher gained as a result of the false invoices.

## II.      Conversion Against Daly and Taylor-Leigh (Counts VII and XIV)

Crown next argues that "[t]here are no disputed material facts" and that the court should grant summary judgment "against both Milton Daly and Taylor-Leigh" for conversion and that Crown

is thereby entitled to damages in the amount of "$6.016 million plus prejudgment interest." Specifically, Crown argues that Daly is liable for conversion on two grounds. First, Crown argues that "Daly caused checks for $6 million to be paid to fictitious entities for work that was never performed or that was invoiced to Crown at an inflated rate" and that "70% of the proceeds were then directed into Daly's Taylor-Leigh account." Second, Crown argues that "Daly and Taylor-Leigh, Inc. . . . converted Crown Theatres' funds when they received the proceeds of the scheme, and retained them without authorization from Crown Theatres."[4]

Daly responds that Crown is not entitled to judgment as a matter of law for two reasons. First, Daly argues that since he "was authorized to negotiate the best price for construction services, and since he believed that he had negotiated a good and fair price, he cannot be found liable for conversion." Second, Daly argues that Crown "cannot establish . . . that the funds taken by the defendant belonged to the plaintiff." Specifically, Daly argues that the funds "represented valid payments to Beacher for work performed by Beacher and because they . . . represented funds (profit) that belonged to Beacher . . . and not funds that belonged to the plaintiff."

---

[4] On August 8, 2004, the court denied the parties' cross motions for summary judgment concerning Crown's claims against Anne Daly for conversion and unjust enrichment. (document no. 178). Specifically, the court held that "issues of fact exist" precluding summary judgment such as "whether Anne Daly exercised control over and benefitted from the funds that Milton Daly embezzled from Crown."

Under Connecticut law, "[c]onversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights." <u>Luciani</u> v. <u>Stop & Shop Co.</u>, 15 Conn. App. 407, 409 (1988)(citation omitted).  The Connecticut supreme court has noted that "the tort of conversion has traditionally been confined to chattels." <u>Aetna Life and Casualty Co.</u> v. <u>Union Trust Co.</u>, 230 Conn. 779 (1994).  Generally, however, "[a]n action will lie for the conversion of money where there is an obligation to return or otherwise particularly treat specific money." 44 A.L.R.2d 927. <u>See</u> <u>e.g.</u> <u>Omar</u> v. <u>Mezvinsky</u>, 13 Conn. App. 533, 536, <u>cert denied</u> 208 Conn. 803 (1988)(entrusted funds can be subject of conversion).

The elements of conversion are: (1) the property at issue

> belonged to the plaintiff[], (2) the defendant
> deprived the plaintiff[] of [its] funds for an
> indefinite period of time, (3) the defendant's
> conduct was unauthorized and (4) the defendant's
> conduct harmed the plaintiff[].

<u>Aubin</u> v. <u>Miller</u>, 64 Conn. App. 781, 796 (2001)(citing <u>Discover Leasing, Inc.</u>, v. <u>Murphy</u>, 33 Conn. App. 303, 309 (1993)).

"The tort of conversion requires no intent or fault." <u>Aeroglide</u> v. <u>Zeh</u>, 301 F.2d 420, 422 (2d Cir. 1964). Specifically, "the defendant may be liable for conversion where he has in fact exercised dominion or control, although he is quite unaware of the existence of the rights with which he interferes." <u>Luciani</u> v. <u>Stop & Shop Co.</u>, 15 Conn. App. 407, 409

15

(1988)(citing <u>Restatement (Second), Torts</u> § 224, cmt. c.). <u>See also</u> <u>Conn. Actions & Remedies: Tort Law</u> § 5:07 (1996)(describing conditions under which an individual may be an "innocent converter"). An individual "may be a converter when he dispossesses another . . . in the entirely reasonable belief that it is his own." <u>Id</u>.[5]

First, Crown argues that Daly and Taylor-Leigh are liable for conversion in the amount of "$6.016 million plus prejudgment interest" because "Daly caused checks for $6 million to be paid to fictitious entities" and that "70% of the proceeds were then directed into Daly's Taylor-Leigh account." Genuine issues of material fact preclude the court from entering summary judgment against Daly in the full amount of $6.016 million dollars. Specifically, an issue of fact exists as to whether Daly knew that the invoices were false and thereby "without authorization, assum[ed] or exercis[ed] the right of ownership" over Crown's 6.016 million dollars.

Second, Crown argues that Daly and Taylor-Leigh "converted Crown Theatres' funds when they received the proceeds of the scheme, and retained them without authorization." The court concludes that Daly is liable as a matter of law for conversion

---

[5] Furthermore, § 229 of the <u>Restatement (Second) of Torts</u>(1965) provides: "One who receives possession of a chattel from another with the intent to acquire for himself . . . a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel."

of the 4.2 million dollars that Day personally acquired as a result of his agreement with Beacher.

As to the first element of conversion, whether the 4.2 million dollars belonged to Crown, it is undisputed that Beacher acquired through fraud the $ 6,016,000.00.  It is undisputed that Beacher then gave $4,211,200.00 of that fraudulently acquired money to Daly.  Nonetheless, Daly argues that Crown "cannot establish . . . that the funds" belonged to Crown, "because they represented valid payments to Beacher." However, it is undisputed that the $ 6,016,000.00 was not the result of valid payments from Crown to Beacher.  Rather, both parties agree that Beacher fraudulently acquired the $6,016,000.00.  Therefore, the court rejects the argument that the $4,211,200.00 did not belong to Crown because it represented "valid payments." See Conn. Actions & Remedies: Tort Law, § 5:09 (1996)(explaining that to prevail in an action for conversion, the plaintiff "must prove that he or she had title" to the property at issue "superior to the defendant's title").

As to the second element, Daly has deprived Crown of the $4,211,200.00, for "an indefinite period of time."  At the time the plaintiff commenced this action on December 20, 2002, Daly had exercised control of the $4,211,200.00 at least since June 1, 2001, approximately a year and a half.  Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303, 310 (1993)(concluding the plaintiff had established prima facie case of conversion where the

17

defendant deprived the plaintiff deprived the defendant "of its funds for five to seven months").

As to the third element, whether the conduct was "unauthorized," Crown clearly did not authorize Daly to receive $4,211,200.00 from Beacher through self-dealing.  As to the fourth element, the loss of $4,211,200.00 clearly "harmed" Crown financially.

Even assuming that Daly did not know that the invoices that Beacher submitted to Crown were fraudulent, Daly is still liable for the conversion of $4,211,200.00.  An individual is still liable for conversion even when he is under the "entirely reasonable belief that it is his own." Luciani v. Stop & Shop Co., 15 Conn. App. 407, 409 (1988)(citing Restatement (Second), Torts § 224, cmt. c.).

Daly cites to a Connecticut supreme court case, Aetna Life and Casualty Co. v. Union Trust Co., 230 Conn. 779 (1994), in support of the argument that he cannot be held liable for conversion because he thought 4.2 million dollars "came from profit that Beacher made on the purportedly legitimate, lower price contracts."

In Aetna Life and Casualty Co. v. Union Trust Co., 230 Conn. 779 (1994), the Connecticut supreme court addressed the case of a fiduciary who instructed a bank to take money out of a beneficiary's trust account and use the funds for the payment of the fiduciary's personal debt to the bank.  The court first held

18

that the bank was not liable for breach of trust and then held
that the bank was not liable for conversion.

Specifically, the court stated that an element of "[t]he
tort of conversion" is that "the party sought to be held liable
has engaged in conduct that *wrongfully* has harmed the plaintiff."
Aetna Life and Casualty Co. v. Union Trust Co., 230 Conn. 779,
791 (1994)(emphasis in original). The court reasoned that
because the bank was not liable "for breach of trust under
Connecticut law regarding the specific obligations of a bank as
applied to this case" the court "fail[ed] to see why the
defendant ought nonetheless be held liable under more general
tort . . . principles." Id. at 792.

Even in light of Aetna, Daly is still liable for conversion
of 4.2 million dollars. In Aetna, the court based its holding on
the conclusion that the bank had not breached its duty of trust
and therefore had not "wrongfully" obtained the money. Id. at
791-92. Even assuming that Daly did not know the invoices were
false, he admits he breached his fiduciary duty and wrongfully
obtained the 4.2 million dollars through self-dealing.

Crown is entitled to summary judgment against Daly and
Taylor-Leigh for conversion and damages in the amount of
$4,211,200.00. See Conn. Actions & Remedies: Tort Law, § 5:10
(1996)("Generally, the usual measure of damages for conversion is
the fair market value of the chattel at the time of the
conversion"). However, genuine issues of material fact remain as

19

to whether Daly is also liable for the conversion of an additional 1.8 million dollars.

## III.    CUTPA Claim Against Daly (Count X)

Crown next argues that the court "should enter summary judgment" against Daly on the claim that his actions violated CUTPA.  Specifically, Crown argues that "Daly's actions constitute prohibited unfair trade practices" because they "offend public policy" and breached his "fiduciary duty" to Crown.

Daly responds that Crown "is not entitled to summary judgment in its favor on the CUTPA claim."  First, Daly argues that Daly's conduct "occurred in the course of his employment relationship with the plaintiff" and that "purely intracorporate conflicts do not constitute CUTPA violations."  Second, Daly argues that "a breach of fiduciary duty [is] actionable under CUTPA only" when "the conduct at issue" amounts to "direct competition with the business activities of the one to whom the fiduciary duty was owed."  Third, Daly argues that while "the money that was given to Daly by Beacher may [have] breached Daly's fiduciary duty" to Crown, "it did not constitute the kind of unfair competition that is required to establish a CUTPA violation."  Finally, Daly argues that the same factual disputes that he asserts underlie the conversion claim "remain disputed" as to the CUTPA claim.

Connecticut General Statute § 42-110(b) provides: "No person

shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To determine whether an act violates CUTPA, the Connecticut supreme court applies the following three factors:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].

Williams Ford Inc. v. Hartford Courant Co., 232 Conn. 559, 591 (1995)(internal quotations omitted; bracketed text in original)(quoted in Rudel Machinery Co., Inc. v. Giddings & Lewis, Inc., 68 F. Supp. 2d 118, 129 (D. Conn. 1999)).

The court concludes that issues of fact preclude the entry of summary judgment on the CUTPA claim. For example, an issue of fact exists as to whether Daly knew that the $ 6,016,000.00 worth of invoices he approved were fraudulent. Accordingly, it is not clear that as a matter of law Daly "unlawfully, unfairly or otherwise improperly competed with the business interests" of Crown by approving the $ 6,016,000.00 worth of invoices or receiving the $4,211,200.00. Therefore the plaintiff's motion is denied as to the CUTPA claim.

## IV.    Unjust Enrichment Against Daly (Count XVI)

Crown next argues that it is "entitled to judgment against Daly on its . . . claim for unjust enrichment in the amount of 4.2 million, plus prejudgment interest." Specifically, Crown

21

argues that Daly "was unjustly enriched by virtue or receiving
$4.2 million in kickbacks."  In response, Daly argues that "the
disputed issues of fact . . . preclude the Court from rendering
summary judgment" on the unjust enrichment claim.  Daly argues
that "in the absence of fraud on the plaintiff by Daly, Daly has
received no improper benefit from the plaintiff."  Daly further
argues that he was "authorized to negotiate the best price for
the construction services, and since he believed that he
negotiated a good and fair price . . . he cannot be found liable
for unjust enrichment."  Finally, Daly argues that "none of those
monies belonged to the plaintiff, as it is required to do in
order to prevail on its claim of unjust enrichment."

　　　"The equitable remedy of unjust enrichment may be invoked
when justice requires that a party be compensated for property or
services rendered under a contract, and no [legal] remedy is
available by an action on the contract." Garwood & Sons Const.
Co., Inc. v. Centos Assoc. Ltd. Partnership, 511 A.2d 377, 378-79
(quoting Williston, Contracts (Rev. Ed.) § 1479 and citing Cecio
Bros. Inc. v. Greenwich, 156 Conn. 561, 564 (1968)).  "An
allegation of a contract enforceable at law would, of course,
preclude the equitable remedy of unjust enrichment." U.S.
Fidelity and Guar. Co. v. Metro. Property and Liability Ins. Co.
521 A.2d 1048, 1050 (Conn. App. 1987).

　　　The doctrine of unjust enrichment is inapplicable here.
Crown did not render property or services under a contract for

which no legal remedy is available.  Rather, Crown has a legal remedy against Daly.  As stated above, Crown is entitled to judgment as a matter of law on the breach of fiduciary duty and conversion claims.  Accordingly, the court denies summary judgment on the unjust enrichment claim.

### V.    Prejudgment Interest

Crown argues that the court should award Crown "compensatory prejudgment interest with respect to amounts due and owing to it on each of the counts for which it seeks summary judgment." Specifically, Crown argues that "simple interest" on the award of damages is appropriate at the rate of "10% annum."

In response, Daly argues that Crown "cannot be awarded such interest . . . through a motion for summary judgment for several reasons."  First, Daly argues "the disputed issues of fact . . . go directly to the issue of whether the money at issue was 'wrongfully detained,'as is required to authorize an award of prejudgment interest." Second, Daly argues that ten percent interest "is <u>not</u> a fixed amount but represents a <u>maximum</u> amount that can be adjusted by the trier of fact based on the circumstances of the case."  Finally, Daly argues that prejudgment interest "is a question for the jury, not for the court."

Connecticut General Statute § 37-3a(a) provides, in relevant part, that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as

damages for the detention of money after it becomes payable."
Conn. Gen. Stat. § 37-3a(a).

The Connecticut supreme court has stated that "[a] trial
court must make two determinations when awarding compensatory
interest under § 37-3a." Blakeslee Arpaia Chapman, Inc. v. EI
Constructors, Inc., 239 Conn. 708, 734 (1997).  Specifically,

> (1) whether the party against whom interest is sought
> has wrongfully detained the money due the other party;
> and (2) the date upon which the wrongful detention
> began in order to determine the time from which
> interest should be calculated.

Id.

As to the first element, Connecticut courts have held that
breach of fiduciary duty and conversion are both wrongful for
purposes of awarding prejudgment interest. See Stuart v. Stuart
2004 WL 1730143, *43 (Conn.Super. June 28, 2004.)(awarding
prejudgment interest pursuant to Conn. Gen. Stat. § 37-3a(a) for
breach of fiduciary duty); Alderman v. RPM of New Haven, 20 Conn.
App. 566, 571 (1990)(holding that trial court abused its
discretion in failing to award prejudgment interest pursuant to
Conn. Gen. Stat. § 37-3a(a) where defendant converted
$38,927.05).

As to the second element, it is undisputed that Daly owed
the 4.2 million dollars to Crown when he left the company on June
1, 2001.  Therefore, June 1, 2001 is the date from which interest
should be calculated.

As to the end date for calculating interest, the Connecticut

24

superior courts have awarded prejudgment interest on damages running to the date that the decision is issued. <u>See</u> <u>Bray</u> v. <u>Founders C.D., LLC</u>. 2004 WL 1558071, *22 (Conn.Super. June 22, 2004)(awarding interest "[t]hrough the date of this decision").

Because breach of fiduciary duty and conversion are wrongful under Connecticut law, Crown is entitled to prejudgment interest on the $4,211,200.00 of damages from June 1, 2001 to the date of this ruling.

### 1. Applicable Rate of Interest

The court agrees with Daly that ten percent interest is the maximum, not mandatory, rate of interest pursuant to Conn. Gen. Stat. § 37-3a(a). "[C]onsistent with its plain language, § 37-3a establishes a *maximum* rate above which a trial court should not venture in the absence of specific legislative direction." <u>Sears, Roebuck & Co.</u> v. <u>Board of Tax Review</u>, 241 Conn. 749, 765-66 (1997)(emphasis added).

Because Conn. Gen. Stat. §37-3a(a) only sets forth the maximum interest rate, the court cannot rule as a matter of law that Crown is entitled to a prejudgment interest at a certain rate. Accordingly, the court leaves the issue of the amount of prejudgment interest for the jury to determine.

**CONCLUSION**

The motion for summary judgment (document no.132) is DENIED in part and GRANTED in part.

Summary judgment is DENIED as follows: 1) summary judgment is denied on the CUTPA claim (count X), and 2)summary judgment is denied on the unjust enrichment claim (count XVI).

Summary judgment is GRANTED as follows: 1) summary judgment is granted against Daly on the breach of fiduciary duty claim (count XXI); 2) summary judgment is granted against Daly and Taylor-Leigh on the conversion claims(counts VVI and XIV).

As to damages: 1) Daly is liable to Crown for $4,211,200.00 plus prejudgment interest as a matter of law for breach of fiduciary duty and conversion; 2) Taylor-Leigh is liable to Crown for $4,211,200.00 plus prejudgment interest as a matter of law on the conversion claim ; 3) a jury must determine whether Daly is liable to Crown for an additional 1.8 million dollars for breach of fiduciary duty and conversion; 4) a jury must determine the rate of prejudgment interest.

It is so ordered this 2nd day of December, 2004 at Hartford, Connecticut.

                    /s/ _____
                    Alfred V. Covello
                    United States District Court Judge